# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

AKO K. BURRELL,

                    Plaintiff,

          v.                                          9:22-CV-1156
                                                      (DNH/MJK)


REGINALD BISHOP, et al.,

                    Defendants.

---

AKO BURRELL, Plaintiff, *pro se*
NOAH C. ENGELHART, ESQ., Assistant Attorney General for Defendants

MITCHELL J. KATZ, U.S. Magistrate Judge

TO THE HONORABLE DAVID N. HURD, SENIOR U.S. DISTRICT JUDGE:

## ORDER and REPORT-RECOMMENDATION

Senior U.S. District Judge David N. Hurd referred this matter to the Court for a report and recommendation. [1] Before the Court is Defendants' Fed. R. Civ. P. 41 motion to dismiss for failure to prosecute and Fed. R. Civ. P. 37 motion to dismiss for failure to obey a discovery order. (Dkt. 107). Mr. Burrell opposes the motion. (Dkt. 109). For the reasons below, the Court recommends granting Defendants' motion.

---

[1] Pursuant to 28 U.S.C. §636(b) and Local Rule 72.3(c).

1

## I.  **BACKGROUND**

On November 7, 2022, *pro se* plaintiff Ako Burrell, commenced this action

by filing a Complaint and moving to proceed *in forma pauperis* ("IFP"). (Dkts. 1,

2). Mr. Burrell alleges violations of his constitutional rights in September 2022 and

October 2022, while confined at Upstate Correctional Facility. *See generally* (Dkt.

1).

By Decision and Order filed on December 5, 2022, Judge Hurd granted Mr.

Burrell's IFP application and reviewed the sufficiency of the Complaint under 28

U.S.C. §§ 1915(e) and 1915A. (Dkt. 4). Based on that review, Judge Hurd:

    (a) dismissed with prejudice, Mr. Burrell's § 1983 claims for monetary
        damages against Defendants in their official capacity;

    (b) dismissed without prejudice, Mr. Burrell's: (1) Eighth Amendment
        deliberate medical indifference claims; (2) Eighth Amendment
        condition of confinement claims; (3) First Amendment retaliation
        claims related to suicide watches, medical treatment, and claims
        against Defendant Rieff; (4) First Amendment access to court claims;
        and (5) claims against Defendants Bishop, Baynes, Hana, Harrigan,
        Boyer, Denney, and Doe #2;

    (c) determined that Mr. Burrell's (1) Eighth Amendment excessive force
        and failure to intervene claims against Defendants Chantosh, Bullock,
        Plonka, McGregor, A. Martin, Mitchell, Cary, Locke, Hill, Merrick,
        Blackburn, E. Martin, Healy, Conto, Doe #1, Dtullio, and Vesenke;
        and (2) First Amendment retaliation claims against Defendants
        Dumas, Plonka, Bullock, McGregor, Chantosh, A. Martin, Mitchell,
        Cary, Merrick, Hill, Locke, Blackburn, Giller, and Santos survived
        *sua sponte* review and required a response:

    (d) directed Mr. Burrell to take reasonable steps through discovery to
        ascertain the identity of Defendant Doe #1. Judge Hurd also warned

Mr. Burrell that his failure to timely serve Defendant Doe #1 would result in dismissal of the claims asserted against him and termination of Defendant Doe # 1 from the action; and

(e) dismissed Defendants Bishop, Baynes, Hana, Harrigan, Boyer, Denney, Sturgen, Murry, Fleunry, Lewis, Lashway, Hart, Hastings, Cook, Rieff, Doe #2, and Philips as parties from this action.

On June 12, 2023, Defendants answered the Complaint. (Dkt. 40). The next day, the Court issued a Mandatory Pretrial Discovery and Scheduling Order ("Scheduling Order") which was served on Mr. Burrell via regular mail. (Dkt. 43).

On December 27, 2024, Defendants filed the pending motion.

## II.    **The Parties' Positions**

### A. Defendants' Motion
#### 1.  Paper Discovery

On August 3, 2023, Defendants served their disclosures required by the Scheduling Order and filed a status report confirming their compliance with the Court's order. (Dkt. 45). Defendants also assert that they have responded to Mr. Burrell's numerous discovery demands. (Dkts. 107-2, 107-3 and 107-4). According to Defendants, Mr. Burrell has neither provided Defendants with the discovery they are entitled to under ¶ I(A)(1) of the Scheduling Order nor filed a status report confirming his compliance with the Court's order. Mr. Burrell does not dispute Defendants' allegations.

#### 2.  Deposition Testimony

Defendants allege the following about their efforts to depose Mr. Burrell:

3

1. On October 31, 2023, Defendants served a Notice of Deposition, directing Mr. Burrell to appear for a deposition on **November 17, 2023** via video conference from Wende Correctional Facility where he was incarcerated at the time. (Dkt. 107-5).

2. On **November 17, 2023**, a court reporter and defense counsel appeared virtually for Mr. Burrell's deposition. Mr. Burrell failed to appear because of a medical appointment which he failed to notify defense counsel about. (Dkt. 49).

3. On **November 17, 2023**, Defendants filed a letter motion notifying the Court of Mr. Burrell's failure to appear for his deposition and requesting an extension of the discovery deadline. (Dkt. 49). The Court granted Defendants' extension request. (Dkt. 50).[2]

4. On **December 29, 2023**, Defendants served a Notice of Deposition, directing Mr. Burrell to appear for a deposition on **January 17, 2024** via video conference. (Dkt. 107-6).

5. On **January 17, 2024**, a court reporter and defense counsel appeared virtually for Mr. Burrell's deposition. But again, Mr. Burrell failed to appear because of an alleged scheduling issue with the correctional facility where he was housed at the time. (Dkt. 107-1, at ¶ 12).

6. **On January 17, 2024**, Defendants served another Notice of Deposition, directing Mr. Burrell to appear for a deposition on **January 26, 2024** via video conference. (Dkt. 107-7).

7. On **January 26, 2024**, a court reporter and defense counsel appeared virtually for Mr. Burrell's deposition. Mr. Burrell appeared, but he repeatedly refused to testify because he was restrained. (Dkt. 58).

8. Defendants filed a letter motion on **January 26, 2024** informing the Court of Mr. Burrell's refusal to testify and requesting a conference to "discuss a potential motion for sanctions, including the costs for the court reporter's appearance on **January 26, 2024**

---

[2] There is no hyperlink for Dkt. 50.

and a court-ordered date for his deposition with a condition that his action would be dismissed in the event he failed to appear or give testimony." (Dkt. 58). Defendants also requested an extension of the existing deadlines. (Dkt. 58). The Court granted that request. (Dkt. 59)[3].

9.   The Court held a video conference on February 28, 2024. (Dkt. 68).[4]

10.  During the **February 28, 2024** video conference, the Court, among other things, reminded Mr. Burrell of his obligation to provide deposition testimony and stated that neither the Court nor Defendants' counsel controlled DOCCS' security procedures regarding use of restraints. (Dkt. 107-5, ¶ 14); *see also (*Dkt. 116, 2/28/24 video conference transcript)

11.  Following the **February 28, 2024** conference, the pretrial deadlines remained stayed (Dkt. 74) which the Court eventually extended past Mr. Burrell's expected release date of **June 21, 2024** (Dkt. 78).[5]

12.  Mr. Burrell was released from DOCCS' custody on or around **June 20, 2024**. (Dkt. 107-8); *see also* (Dkt. 83) (updating Mr. Burrell's address to 1541 Oneida Street, Utica, NY 13501).

13.  On **August 16, 2024**, after his release from DOCCS custody, Defendants served Mr. Burrell with a Notice of Deposition, directing him to appear for a deposition on **September 3, 2024** at 10:00 a.m. at the Federal Courthouse in Utica, New York, a location chosen due to its proximity to Mr. Burrell's post-release address. (Dkt. 107-9).

---

[3] No hyperlink is available for Dkt. 59.

[4] No hyperlink is available for Dkt. 68.

[5] No hyperlinks are available for Dkts. 74 and 78.

14. Mr. Burrell failed to appear for the **September 3, 2024** deposition. (Dkt. 107-10)[6]

15. Because Mr. Burrell again failed to appear for his deposition, Defendants, on **September 3, 2024,** moved for permission to file a motion to dismiss under Fed. R. Civ. P. 37 and 41 or alternatively, requesting that a conference be scheduled. (Dkt. 84).

16. In response to Defendants' **September 3, 2024** letter motion, the Court issued a text order on **September 19, 2024**, scheduling a conference for **September 23, 2024** and directing the Oneida County Correctional Facility to make Mr. Burrell available at that time. (Dkt. 86).[7] [8]

17. During the **September 23, 2024** conference, the Court reminded Mr. Burrell of his obligation to provide deposition testimony. The Court granted Defendants leave to file a letter request that the deposition be held virtually. However, the Court encouraged defense counsel to schedule an in-person deposition at a mutually agreed upon location. *See* Text Minute Entry for Video Conference held on September 23, 2024.[9]

18. Defendants filed a letter motion on **October 15, 2024** requesting that the Court "So-Order" Mr. Burrell's virtual deposition for **November 13, 2024**. (Dkt. 88).

19. On **November 6, 2024**, the Court issued the following text order: **"[d]iscovery in this matter has been substantially delayed by plaintiff's continued failure to appear and/or participate in his deposition. Plaintiff is ordered to appear for a remote**

---

[6] The case caption of the deposition transcript incorrectly reflects a different matter filed by Mr. Burrell. However, the body of the transcript contains the correct docket number for this matter.

[7] No hyperlink is available for Dkt. 86.

[8] Mr. Burrell filed a Notice of Change of Address on September 18, 2024 listing the Oneida County Correctional Facility as his new address. (Dkt. 85).

[9] No hyperlink is available for the September 23, 2024 text minute entry.

**deposition on November 13, 2024 at 10:00 a.m.”** (Dkt. 94) (Emphasis added).[10]

20. On **October 23, 2024**, Defendants served a Notice of Deposition for the **November 13, 2024** deposition. (Dkt. 107-11).

21. On **November 13, 2024**, a court reporter and defense counsel appeared for Mr. Burrell's deposition. Mr. Burrell appeared for his deposition from the Oneida County Correctly Facility but refused to be sworn-in, and Court intervention was necessary before Mr. Burrell agreed to take the required oath or affirmation to give his deposition testimony. (Dkt. 107-12); *see also* text minute entry for November 13, 2024.[11]

22. Mr. Burrell's **November 13, 2024** deposition was not completed on that day because of his initial refusal to be placed under oath (Dkt. 107-12, at 10-22), multiple conversations between Mr. Burrell and individuals outside of the visitation room during the deposition **(**Dkt. 107-12, at 107, 114-16, 148), self-reported medical issues and need to be seen by medical staff during the deposition (Dkt. 107-12, at 111-16), and, upon information and belief, the Court kiosk and visitation room at the Oneida County Correctional Facility only available/reserved until 2:00 p.m. that day (Dkt. 96; *see also* Dkt. 107-12 , at 155-58). The **November 13, 2024** deposition was suspended at approximately 2:00 p.m. without being completed. **(**Dkt. 107-12, at 158).

23. During his **November 13, 2024** testimony, Mr. Burrell repeatedly indicated that he neither recalled the incidents in question nor remembered any details about them. (Dkt. 107-12 at 40-41, 45-46, 50-52, 53-61, 74-78, 99-101, 102, 108-09).

24. In a letter dated **September 30, 2024** and docketed on **November 13, 2024**, Mr. Burrell requested that the Court issue a protective order, terminating his deposition. (Dkt. 95). Defendants opposed

---

[10] No hyperlink is available for Dkt. 94.

[11] No hyperlink is available for the November 13, 2024 text minute entry.

the motion. (Dkt. 96). The Court denied Mr. Burrell's motion. (Dkt. 97).[12]

25. At Defendants' request (Dkt. 96), the Court "So-Ordered" that Mr. Burrell's virtual deposition be continued on **December 18, 2024**. (Dkt. 97). In its **November 19, 2024** text order, the Court again noted that "discovery in this matter has been substantially delayed by plaintiff's conduct, which continues to undermine the progression of his action." Mr. Burrell was also "reminded [] that his failure to attend his deposition could result in sanctions." (*Id.*).

26. Defendants served a Notice of Deposition for the **December 18, 2024** deposition. (Dkt. 107-13).

27. Mr. Burrell appeared virtually on **December 18, 2024** from the Oneida County Correctional Facility and again refused to testify, alleging medical issues and that the restraints made it "impossible" for him to sit down. At the request of Defendants' counsel, the Court and the parties participated in a video call to address Mr. Burrell's refusal to testify. During the call with the Court, and while not on the record at the time, Mr. Burrell acknowledged that his refusal to provide deposition testimony could be the basis for a motion to dismiss for failure to prosecute. (Dkt. 107-1, at ¶ 25).

28. **On December 18, 2024**, Defendants moved for leave to file a motion under Fed. R. Civ. P. 37 and 41. (Dkt. 101). The Court granted Defendants' request and stayed all deadlines pending the outcome of the motion. (Dkt. 105).[13]

---

[12] No hyperlink is available for Dkt. 97.

[13] No hyperlink is available for Dkt. 105.

## B.  Mr. Burrell's Response

Mr. Burrell makes the following arguments in response to Defendants'

motion:

1. Mr. Burrell was not allowed into the Utica Courthouse on **September 3, 2024** because he was wearing a GPS monitor and possessed a cell phone. (Dkt. 109-1, ¶ 4).

2. Defense counsel knew Mr. Burrell's email address as well as his Microsoft Teams and Webex accounts. (Dkt. 109-1, ¶ 5).

3. Mr. Burrell has always been available to testify but was unable to do so because he was restrained. (Dkt. 109-1, ¶¶ 6, 7).

4. Mr. Burrell's "actions" on **November 13, 2024** did not last longer than five minutes and therefore did not cause a delay. Alternatively, defense counsel should have continued Mr. Burrell's deposition the following day. (Dkt. 109-1, ¶¶ 8, 9).

5. Mr. Burrell appeared for the **December 18, 2024** deposition at Oneida County Correctional Facility in restraints. (Dkt. 109-1, ¶ 9)

6. Mr. Burrell has been deposed in other actions pending in the Northern District without being restrained. (Dkt. 109-1, ¶ 14).

7. Mr. Burrell is willing to pay "the $98.00 fee, associated with the deposition cost & would submit to the deposition, even if he has to [wear] restraints, only due to the fact, Mr. Burrell does not want his case to be dismissed." (Dkt. 109-1, ¶ 15).

## C. Defendants' Reply

Defendants offer the following in reply to Mr. Burrell's response:

1. This is Mr. Burrell's first time stating that he was denied access to the Utica Courthouse which does not excuse his failure to inform

defense counsel that he was turned away from the courthouse. (Dkt. 114, at 3-4).

2. Mr. Burrell's statement that he had an email account and was available for a virtual deposition via Microsoft Teams or Webex is belied by Mr. Burrell's repeated opposition to being deposed virtually. (Dkt. 114, at 4; *see also* Dkts. 94, 95, 97, 98).

3. Mr. Burrell's objection to being restrained "is not an appropriate basis for his refusal to attend and provide deposition testimony." (Dkt. 114, at 4).

4. Mr. Burrell's allegations that Defense counsel sought a virtual deposition "with no good cause" is belied by the Court's November 6, 2024 text order (Dkt. 94) and the District Court's January 8, 2025 Decision and Order (Dkt. 108). (Dkt. 114, at 4).

5. Mr. Burrell's assertion that he "caus[ed] no delay" or only delayed his November 13, 2024 deposition by "approximately 5 minutes at best" is wholly unsupported by the record. Mr. Burrell's refusal to be sworn-in resulted in documented delays of at least an hour. *See* (Dkt. 107-12, pp. 10-27 Transcript of Mr. Burrell's Deposition dated 11/13/24 (documenting a 22-minute delay awaiting the Court's intervention, followed by approximately 15 pages of discussion between Mr. Burrell and the Court)). (Dkt. 114, at 5).

6. Mr. Burrell's assertion that Defendants' counsel was "required to continue" the November 13, 2024 partial deposition the following day (Dkt. 109-1, ¶ 9) is both unsupported and irrelevant because the Court ordered the deposition be continued at a later date. (Dkt. 97). As noted above, Mr. Burrell has already objected to this order and his objection was properly denied by the District Judge. (Dkts. 95, 108). Mr. Burrell's demand that Defendants "provide any proof or documentation" regarding the need to continue the November 13, 2024 partial deposition (*see* Dkt. 109-1, ¶¶ 16-17) is irrelevant considering the Court's order granting Defendants' request to continue Mr. Burrell's deposition, and Mr. Burrell's subsequent obligation to comply with that order. Dkt. 97. (Dkt. 114, at 5).

7. Mr. Burrell's offer to pay a "$98.00 sanction is "woefully inadequate to reflect Mr. Burrell's behavior in this case cause and

would fail to ensure any future compliance by Mr. Burrell in this matter." (Dkt. 114, at 6).

## III.  Legal Standard

### A. Fed. R. Civ. P. 41

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon a plaintiff's failure to prosecute their case, or comply with the procedural rules or orders of the court. *See* Fed. R. Civ. P. 41(b); *see also Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962); *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006). The power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, No. 95-CV-1190 (RSP/RWS), 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996).

Determining whether an action should be dismissed under Rule 41(b) involves an analysis of five factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether [the] plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (citations omitted). No singular factor is dispositive. *Nita v. Connecticut Dep't of Environmental Protection*, 16

11

F.3d 482, 485 (2d Cir. 1994). "When imposed, the sanction of dismissal 'operates as an adjudication upon the merits,' but may be without prejudice if so specified by the court imposing it." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) (quoting Fed. R. Civ. P. 41(b)).

Here, in recommending dismissal of Mr. Burrell's Complaint, the Court recognizes that dismissal under Rule 41(b) is considered a harsh remedy, especially in an action brought by a *pro se* plaintiff. *See LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). However, it is irrefutable that Mr. Burrell has not taken any meaningful action to advance *his case*, has failed to timely communicate with Defendants, has failed to cooperate in moving his case forward, and has usurped the Court's resources with his obstructive behavior. Accordingly, the Court finds that all five factors considered in deciding a Rule 41(b) motion warrant dismissal.

### 1. Duration of Mr. Burrell's failure to comply with court orders

As to the duration of Mr. Burrell's failure to comply, the Court considers two questions: (1) whether the delays associated with the failures to prosecute were caused by the plaintiff, and (2) whether the duration of these delays existed for a significant period. *See Lynch v. Hanley*, No. 1:21-CV-00025 (AMN/ML), 2023 WL 4763941, at *4 (N.D.N.Y. July 26, 2023).

Here, Mr. Burrell is responsible for many of the delays in this action. Mr. Burrell has intentionally delayed the prosecution of the action that *he commenced* by failing to comply with this Court's orders and otherwise failing to comply with his discovery obligations under the Scheduling Order. Specifically, it is undisputed that Mr. Burrell has not complied with Section I(A)(1) of the June 13, 2023 Scheduling Order which provides as follows:

> **A. Documents.** Within sixty (60) days of the date of this order:
>
> **1. Plaintiff(s)** shall serve defendant(s) a list specifying the following, and shall produce to defendant(s) copies of any that are within the possession, custody or control of plaintiff(s):
>
>> **a.** Documents and other materials which plaintiff(s) may use to support the claims in the complaint;
>>
>> **b.** Correspondence, grievances, grievance appeals, and other documents relating to requests for administrative remedies or the inability or failure to exhaust such remedies; and
>>
>> **c.** Complaints and petitions filed by plaintiff(s) in any other cases in any court relating to the same issues raised in the complaint in this action or, if such documents are not within the possession of plaintiff(s), plaintiff(s) shall provide to counsel for defendant(s) a list of any such legal proceedings stating the court in which the proceeding was filed, the caption of the case, and the court number.

(Dkt. 43).

Defendants, on the other hand, have timely complied with their obligations under the Scheduling Order (as evidenced by their August 3, 2023 status report

13

(Dkt. 45)) and have responded to Mr. Burrell's numerous discovery demands.

(Dkts. 107-2, 107-3, 107-4). Mr. Burrell does not dispute Defendants' compliance.

More than 31 months have passed since Mr. Burrell initiated this action and

Defendants still do not have the benefit of Mr. Burrell's complete sworn testimony

to shed light on his claims that would allow Defendants to formulate an appropriate

defense to this action. Mr. Burrell's refusal to testify because he remained shackled

does not excuse or justify his behavior. Section 1(D) of the Scheduling Order

expressly states:

> **PLAINTIFF(S) SHALL TAKE NOTICE** that disagreement with
> any directive of security staff at the correctional facility at which the
> deposition is scheduled is not a ground on which plaintiff(s) may
> refuse to answer appropriate questions. The failure of the plaintiff(s)
> to attend, be sworn, and answer appropriate questions may result in
> sanctions, including dismissal of the action pursuant to Fed. R. Civ. P.
> 37. Objections made in good faith in accordance with governing rules
> are not prohibited.

(Dkt. 43), *see also Barnes v. Dominic*, No. 9:22-CV-62 (BKS/CFH), 2024 U.S.

Dist. LEXIS 34863 (N.D.N.Y. Feb. 29, 2024) (motion to dismiss for lack of

prosecution granted where the incarcerated individual refused to provide testimony

while restrained).

Denying Mr. Burrell's letter motion seeking not to be restrained during his

deposition, the Court again reminded Mr. Burrell during a February 28, 2024 video

conference of his obligation to testify notwithstanding being restrained. (Dkt. 62).

The Court also informed Mr. Burrell that it did not "have the power to tell the

14

facility how [he] should be presented and whether [he] should or should not be handcuffed." (Dkt. 116, 2/24/24 video conference transcript, at 12). In response, Mr. Burrell stated that the Defendants should be "granted leave to move to dismiss the complaint because [he is] going to refuse to testify again." (*Id.,* at 17).

During a video conference held on September 23, 2024 (after Mr. Burrell's release from DOCCS custody), the Court addressed Mr. Burrell as follows:

> I also would appreciate your reflection, please, on your attitude about these cases. You are the plaintiff, you have subjected yourself to the jurisdiction of this Court and you have subjected yourself to the Federal Rules of Civil Procedure. You will conduct your cases in accordance with those rules and you will not dictate terms. That is not expected.
>
> But I, again, am still hoping that you and Mr. Engelhart, along with his colleagues in your other cases, can work out an arrangement to conduct a deposition at a place, at a time, that is acceptable.
>
> (Dkt. 117, 9/23/24 video conference transcript, at 10).

Finally, in its November 6, 2024 text order directing Mr. Burrell to appear for a virtual deposition on November 13, 2024, the Court noted that **"[d]iscovery in this matter has been substantially delayed by plaintiff's continued failure to appear and/or participate in his deposition. Plaintiff is ordered to appear for a remote deposition on November 13, 2024 at 10:00 a.m."** (Dkt. 94) (emphasis added).[14] To date, Mr. Burrell's deposition has not been completed. Now, faced

---

[14] There is no hyperlink for Dkt. 94.

with the possibility that his claims may be dismissed, Mr. Burrell agrees to "submit to the deposition even if he has to [wear] restraints, only" because he "does not want his case to be dismissed." (Dkt. 109-1, at ¶ 15). Unfortunately, Mr. Burrell lacks any credibility with the Court and, if history is any indication, Mr. Burrell may "show up," but will refuse to testify for one reason or another.

Mr. Burrell's self-imposed delays in prosecuting *his case* have been excruciating and he has no one to blame but himself for his current predicament. In *Barnes*, the Court held that the two years that the action had been pending, coupled with the ten-month delay since the first Notice of Deposition, weighed in favor of dismissal. *See Barnes,* 2024 U.S. Dist. LEXIS 34863, at *4; *see also Chira v. Lockheed Aircraft Corp*., 634 F.2d 664 (2d Cir. 1980) (delay of six months in completing discovery and proceeding to trial justifies dismissal under Rule 41(b)); *Cucurillo v. Schulte, Bruns Schiff Gesellschaft, M.B.H.*, 324 F.2d 234 (2d Cir. 1963) (one year of inactivity is grounds for dismissal with prejudice); *Harrelson v. United States*, 613 F.2d 114 (5th Cir. 1980) (22 months deemed "significant inactivity" warranting dismissal); *M & H Cosmetics v. Alfin Fragrances, Inc.*, 102 F.R.D. 265, 267 (E.D.N.Y. 1984) (plaintiff's failure to move case forward in 17 month period indicates lack of intent to prosecute). More than 31 months have passed without Mr. Burrell complying with the Court's orders and meaningfully participating in the prosecution of *his action*. He has been given several "second

16

chances" over Defendants objections. All Mr. Burrell has done is offer excuses as to why he cannot, or will not, testify.

Accordingly, it is the Court's recommendation that factor number 1 weighs in Defendants' favor.

### 2.  Notice

The record is beyond clear: Mr. Burrell was keenly aware of the consequences of failing to provide deposition testimony. Defendants and the Court repeatedly cautioned Mr. Burrell that his failure to participate in discovery could lead to a dismissal of *his action*. Each Notice of Deposition served by Defendants contained the following warning:

> PLEASE TAKE FURTHER NOTICE that your failure to attend, be sworn, and answer appropriate questions may result in sanctions being imposed against you, including dismissal of the action or costs and attorney's fees being assessed against you pursuant to Federal Rule of Civil Procedure 37.

*See* (Dkts. 107-5, 107-6, 107-7, 107-9, 107-11, 107-13).

The Court also made it abundantly clear to Mr. Burrell from the outset of this action what could happen if he failed to attend, be sworn, and testify at his deposition. Section "D" of the Mandatory Pretrial Discovery And Scheduling Order issued by the Court on June 13, 2023 explicitly warned Mr. Burrell that:

> The failure of the plaintiff(s) to attend, be sworn, and answer appropriate questions may result in sanctions, including dismissal of the action pursuant to Fed. R. Civ. P. 37.

17

*See* (Dkt. 43); *see also Barnes,* 2024 U.S. Dist. LEXIS 34863, at * 5 ("Plaintiff was on notice that [t]he scheduling order specifically advised Plaintiff that a failure to attend, [be] sworn and answer appropriate questions may result in sanctions including dismissal." (internal quotations and citations omitted).

As noted, the Court's admonition was reiterated during a February 28, 2024 video conference—which was only held because Mr. Burrell refused to participate in a January 26, 2024 deposition. He was again reminded in a November 19, 2024 text order of his obligation to participate in *his deposition*, to respect the Court's proceedings, and that "[h]is continued failure to do so may result in sanctions." (Dkt. 97).[15] Notably, the November 19, 2024 text order was issued in response to Mr. Burrell's November 13, 2024 letter motion requesting that the Court "terminate" his examination. (Dkt. 95).

Mr. Burrell is a prolific litigant in the Northern District and has been warned in other pending actions that his failure to provide deposition testimony is grounds for dismissal. *See Burrell v. Spence et al.* 9:23-CV-00454 (MAD/DJS) at Dkts. 50, 51, 59[16]; *Burrell v. McIntyre et al.,* 23-CV-0392 (MAD/DJS) at Dkts. 54, 60[17];

---

[15] There is no hyperlink for Dkt. 97.

[16] There is no hyperlink for Dkt. 59.

[17] There is no hyperlink for Dkt. 60.

*Burrell v. DOCCS et al.,* 22-CV-702 (DNH/MJK) at Dkts. 57, 58[18], 74, 76[19]. In all, Mr. Burrell has been warned more than one dozen times of the consequences of refusing to provide deposition testimony.

Thus, the second factor weighs in favor of dismissal.

### 3. Prejudice to Defendants

The third factor is also satisfied because Mr. Burrell's failure to adhere to court orders and deposition notices has prejudiced Defendants. "Where a plaintiff has become inaccessible for months at a time, courts presume prejudice." *Caussade v. United States*, 293 F.R.D. 625, 630 (S.D.N.Y. 2013) (collecting cases) (citations omitted); *see also Mayer v. Clinton Cty.*, No. 9:17-CV-905 (GLS/CFH), 2020 WL 5536800, at *5 (N.D.N.Y. Aug. 7, 2020); *Hutcheon v. Farnum*, No. 9:18-CV-00203 (MAD/CFH), 2019 WL 7971873, at *3 (N.D.N.Y. Nov. 4, 2019) ("[The] defendant has been prejudiced by [the] plaintiff's complete failure to participate in discovery."), *report and recommendation adopted*, 2020 WL 90786 (N.D.N.Y. Jan. 8, 2020). Here, it is undeniable that Mr. Burrell  is hindering Defendants' ability to proceed. *See Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999) ("[D]elay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be

---

[18] There is no hyperlink for Dkt. 58.

[19] Theere is no hyperlink for Dkt.  76.

made more difficult."). His continued delays and recalcitrance is preventing Defendants from concluding this matter. Accordingly, this factor weighs in favor of dismissal.

### 4. The Court's interest in managing its own docket

As to the fourth factor, the Court finds that its interest in managing the docket outweighs Mr. Burrell's interest in prosecuting this action. *See Lucas*, 84 F.3d. at 535; *see also Perez v. Wallace*, No. 1:15-CV-240 (GTS/CFH), 2016 WL 2865737, at *3 (N.D.N.Y. Apr. 11, 2016); *Pena v. Zazzle Inc.*, 587 F. Supp. 3d 109, 114 (S.D.N.Y. 2022) (citation omitted) ("Although [the plaintiff's] failure to prosecute is a 'silent' failure," as opposed to one that is "vexatious and burdensome[,]" "the Court has a strong interest in managing its docket and cannot indefinitely wait for [the plaintiff] to turn his attention to this case. Furthermore, his 'failure to comply with the court's order or make an attempt to prosecute this case dismisses his right to have the court hear his claim.").[20] Mr. Burrell has had 31 months to prosecute this case, but discovery is still incomplete because he has totally disregarded his obligations as a litigant in a case he commenced. Factor number 4 therefore also weighs in favor of dismissal.

---

[20] This case is different in a material respect from *Pena*. In this case, Mr. Burrell has not only failed to participate, as during several occasions noted above, he has <u>refused to do so.</u>

### 5. Consideration of lesser sanctions

As to the final factor, the imposition of a lesser sanction would have no effect on Mr. Burrell, or this litigation, given his refusals to comply with the Court's numerous orders and admonitions. Mr. Burrell's offer (made in response to this motion) to pay "the $98.00, associated with the deposition cost" and sit for a deposition should not save Mr. Burrell's claims from being dismissed. *See Cross v. Sullivan Cnty. Jail Adm'r,* 171 F.R.D. 68, 72-73 (S.D.N.Y. 1997) (since plaintiff proceeded *in forma pauperis* and *pro se*, the Court concluded that the imposition of monetary sanctions was not an adequate penalty and dismissed the action with prejudice); *see also McMillan v. Bowers,* No. 9:21-CV-0889 (LEK/CFH), 2022 WL 19405935, at *5 (N.D.N.Y. Nov. 28, 2022) ("A fine is not likely to be effective in addressing the prejudice defendants suffered from the delay in the case as plaintiff is unlikely to be able to pay, and a fine does not mitigate the potential difficulty defendants could face in collecting evidence on an alleged incident that occurred in 2020.") (citing *Cross*); *Workneh v. Super Shuttle International, Inc.*, No. 15:CV-03521, 2020 WL 3492000, at *10 (S.D.N.Y. June 8, 2020) (plaintiff's "continued defiance of court orders after being warned that the consequence of non-compliance  is dismissal indicates that lesser sanctions would be an 'exercise in futility'") (quoting *Coach, Inc. v. O'Brien*, 2011 WL 6122265, at *4 (S.D.N.Y. Nov. 28, 2011)).

21

Given Mr. Burrell's IFP status, there is no evidence in the record that Mr. Burrell has the financial resources to pay the $98.00. And, even if Mr. Burrell did have the ability to make payment, there is no guarantee that Mr. Burrell would actually testify if afforded the opportunity to do so. After all, this Court has already directed him to sit for a deposition and he has not done so.

Beyond the $98 and the Court's wasted time, Mr. Burrell's recalcitrance unnecessarily impacted the resources of the New York State Attorney General's Office and DOCCS. Defense counsel was compelled to prepare for and travel to conduct Mr. Burrell's deposition numerous times, all for naught. Defense counsel's time could have been better spent had they known that Mr. Burrell would unjustifiably refuse to testify. Similarly, DOOCS was compelled to use its resources to arrange for Mr. Burrell's depositions. DOCCS, too, could have used its resources more effectively had it known that Mr. Burrell would refuse to testify.

Finally, Mr. Burrell's comment noted above that Defendants should be "granted leave to move to dismiss the complaint because [he is] going to refuse to testify again." (*infra*, page 14) is not lost on the Court and certainly demonstrates his willful and purposeful disregard of this Court's orders.

Accordingly, factor number 5 weighs in Defendants' favor.

### B. Fed. R. Civ. P. 37

Rule 37 permits a District Court to impose a range of sanctions on a party for failing to obey a discovery order. More severe sanctions, such as preclusion or dismissal, may be imposed when the failure to comply with a court order was due to willfulness, bad faith, or fault on the part of the party refusing discovery. *See Simmons v. Abruzzo*, 49 F.3d 83, 88 (2d Cir. 1995); *see also Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988).[21] In lieu of, or in addition to the sanctions listed in Rule 37(b)(2)(A), the court can assess attorneys' fees and reasonable expenses, unless the court finds that the failure to obey the order was substantially justified or other circumstances make the award of expenses unjust. *See* Fed. R. Civ. P. 37(b)(2)(C).[22]

Similarly, Rule 16(f) provides that if a party or attorney fails to obey a scheduling or other pretrial order, the court, on motion or on its own, "may issue

---

[21] In order for an act to constitute willfulness, the court's order must be clear, with no misunderstanding of the intent of the order, and there must be no other factor beyond the party's control which contributed to the non-compliance. *See Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-53 (2d Cir. 1995). However, Rule 37 "permits the saving grace of substantial justification or harmlessness to blunt the impact of sanctions." *LeGrande v. Adecco*, 233 F.R.D. 253, 257 (N.D.N.Y. 2005) (citations omitted). "Substantial justification in this context means 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.'" *Id.* (citations omitted).

[22] An award of reasonable fees incurred as the result of a violation of a discovery order is the least harsh of all the sanctions allowed under Rule 37. *See JSC Foreign Economic Ass'n Technostroyexport v. Int'l Dev. and Trade Servs., Inc.*, No. 03-CV-5562, 2005 WL 1958361, at *12 (S.D.N.Y. Aug. 16, 2005). Under Rule 37, "a finding of bad faith or willful misconduct is not required before the Court can award attorneys' fees." *Id.*

any just orders" including those authorized by Rule 37(b)(2)(A), and/or may impose attorneys' fees and costs under essentially the same standards as Rule 37(b)(2)(C). *See* Fed. R. Civ. P. 16(f).

The imposition of sanctions under Rule 37 is within the court's discretion. *See Valentine v. Museum of Modern Art*, 29 F.3d 47, 49 (2d. Cir. 1994). In deciding whether to impose sanctions under Rule 37, the court considers the following factors: "(1) the willfulness of the noncompliant party or the reasons for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the noncompliant party had been warned of the consequences of his noncompliance." *Nieves v. City of New York*, 208 F.R.D. 531, 535 (S.D.N.Y.2002) (citing *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 852-54 (2d Cir. 1995)).

The Court's analysis of Defendants' Rule 41 motion is equally applicable to Defendants' Rule 37 motion. Mr. Burrell's behavior and disregard for this Court's unambiguous orders was willful and without justification.

After careful consideration of the relevant factors, the Court concludes that dismissal of Mr. Burrell's Complaint is warranted under Rules 41 and 37. The Court must now decide whether to recommend dismissal with or without prejudice. There is ample caselaw to support both. *See  Lynch v. Hanley*, No. 1:21-CV-00025 (AMN/ML), 2023 WL 4763941, at *6 (N.D.N.Y. July 26, 2023) (dismissing

complaint without prejudice so the plaintiff could bring the lawsuit "at another if and when he is prepared to diligently litigate it"); *see also Cintron v. Gettman*, No. 9:15-CV-542 (BKS/TWD), 2017 WL 2303604, at *4 (N.D.N.Y. May 1, 2017) (recommending dismissal without prejudice due to the plaintiff's failure to appear for two scheduled depositions), *report and recommendation adopted*, No. 9:15-CV-542 (BKS/TWD), 2017 WL 2303990 (N.D.N.Y. May 25, 2017); *but see Galberth v. Bielwiez*, 15-CV-1443 (TJM/TWD), 2019 WL 5895680, at *1 (N.D.N.Y. Nov. 12, 2019) (adopting recommendation of dismissal with prejudice for failure to prosecute where plaintiff refused to attend a deposition, defied court orders to appear, failed to keep the court updated with his current address and was warned that the case could be dismissed due to his actions); *Lewis v. Livingston Cnty.*, 314 F.R.D. 77, 80 (W.D.N.Y. Jan. 12, 2016) (dismissal with prejudice warranted where plaintiff's failure to provide responses to defendant's discovery demands resulted in a ten-month delay in the case); *Samman v. Conyers*, 231 F.R.D. 163, 165 (S.D.N.Y. 2005) (dismissal with prejudice warranted where the plaintiff failed to advance the discovery process and failed to cooperate with defendants' efforts to advance the discovery process over a two year period and prevented defendants from effectively preparing their defense); *Hawhorne v. Ruecker,*No. 1:17-cv-0716 (GTS/TWD), 2020 WL 2062123 (action pending for more than two years dismissed with prejudice where plaintiff made very little

effort to move the litigation forward and had given little indication that he had any genuine intent to do so and disregard orders and procedures of the court despite the many multiple warnings that doing so could result in the dismissal of his claims).

Having considered the relevant case law in the context of the facts of this case, the Court recommends that Mr. Burrell's action be dismissed with prejudice. Mr. Burrell's history for blatantly disregarding this Court's Orders and warnings, repeated failures to testify at properly scheduled depositions, and complete failure to respond to discovery demands, lead to the inescapable conclusion that if the Court recommended dismissal without prejudice and Mr. Burrell recommenced this action (assuming it was not time barred), Mr. Burrell's antics would repeat themselves and the parties would, at some point, be in the same position they currently find themselves.

**WHEREFORE**, for the reasons set forth above, it is hereby

**RECOMMENDED**, that Defendants' motion to dismiss for failure to prosecute and failure to obey a discovery order (Dkt. 107) be **GRANTED**, and that Plaintiff's Complaint (Dkt. 1) be **DISMISSED WITH PREJUDICE**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation and Order on Plaintiff at the address the Court has on file, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2008) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b )(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 11, 2025.

                                             _____

                                             Hon. Mitchell J. Katz
                                             U.S. Magistrate Judge

1996 WL 481534

---

1996 WL 481534
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,

v.

Kevin LUNDRIGAN, C.O., Defendant.

No. 96–CV–1190 (RSP/RWS).
|
Aug. 22, 1996.

**Attorneys and Law Firms**

Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report–Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. *See* Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility—Please Return to Sender." *See* Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. *See* Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link v. Wabash Railroad County Independent School District,* 370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See*

*Rodriguez v. Walsh,* No. 92–Civ–3398, 1994 WL 9688, \*1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." *See* Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty Corr. Facility,* No. 95–CV–1525, 1996 WL 172699, \*1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King,* No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, *See* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and on Steven A. Smith, Esq., attorney for the defendant.

---

1996 WL 481534

**\*2**  IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 481534

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings**

There are no Filings for this citation.

**History**

There are no History results for this citation.

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 32 of 364
Lynch v. Hanley, Not Reported in Fed. Supp. (2023)
2023 WL 4763941

2023 WL 4763941
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. LYNCH, Sr., Plaintiff,
v.
Police Officer HANLEY and Police
Officer John Doe, Defendants.

1:21-cv-00025 (AMN/ML)
|
Signed July 26, 2023

**Attorneys and Law Firms**

MARK A. LYNCH, SR., Troy, NY 12180, Plaintiff, Pro Se.

CAROLYN B. GEORGE, ESQ., COOPER, ERVING &
SAVAGE, LLP, 39 North Pearl Street, 4th Floor, Albany, New
York 12207, Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Anne M. Nardacci, United States District Judge:

### I. INTRODUCTION

**\*1** Plaintiff *pro se* Mark A. Lynch, Sr. ("Plaintiff") brings
this action pursuant to 42 U.S.C. § 1983 alleging that
Defendants, Police Officer Hanley ("PO Hanley") and an un-
named Police Officer "John Doe" ("PO Doe"), of the
Colonie Police Department ("CPD"), violated his Fourth
and Fourteenth Amendment constitutional rights. Dkt. No.
1 ("Complaint"). Presently before the Court is Defendants'
motion to dismiss Plaintiff's Complaint for failure to
prosecute pursuant to Rule 41(b) of the Federal Rules of Civil
Procedure, due to Plaintiff's continued failure to comply with
the Rule and numerous orders of the Court. Dkt. No. 49.

For the reasons set forth below, the Court hereby grants
Defendants' motion to dismiss for failure to prosecute and
orders Plaintiff's Complaint dismissed without prejudice.

### II. BACKGROUND

#### A. Procedural History

On January 8, 2021, Plaintiff filed a civil rights form-
complaint pursuant to 42 U.S.C. § 1983 against CPD, the
Town of Colonie, PO Hanley, and PO Doe arising out
of an altercation at the Colonie Hannaford Supermarket.
Dkt. No. 1. Specifically, Plaintiff alleges that: (1) he was
falsely arrested in violation of his constitutional rights
under the Fourth Amendment; and (2) Defendants deprived
Plaintiff of his property in violation of his constitutional
rights under the Fourth and Fourteenth Amendments. *Id.*
Plaintiff sought leave to proceed *in forma pauperis* ("IFP"),
Dkt. No. 2, and filed a motion seeking the appointment
of counsel to represent him in this action, Dkt. No. 3.
This matter was referred to Magistrate Judge Miroslav
Lovric, who, on April 1, 2021, issued an Order and Report-
Recommendation granting Plaintiff's application to proceed
IFP, denying Plaintiff's motion for appointment of counsel
without prejudice, and recommending that only Plaintiff's
Fourth Amendment claims of (1) false arrest; and (2)
deprivation of property, against PO Hanley and PO Doe in
their individual capacities, proceed. *See* Dkt. No. 5 ("Report-
Recommendation"). [1] On June 7, 2021, this Court (Suddaby,
C.J.) accepted and adopted the Report-Recommendation.
Dkt. No. 6 ("Decision and Order").

[1]     Magistrate Judge Lovric advised Plaintiff that
        under 28 U.S.C. § 636(b)(1), he had fourteen days
        within which to file written objections and that
        failure to object to the Report-Recommendation
        within fourteen days would preclude appellate
        review. *Id.* Plaintiff did not file objections to the
        Report-Recommendation.

On August 11, 2021, Magistrate Judge Lovric ordered the
Clerk of the Court to issue a summons as to PO Hanley and
ordered Plaintiff to take reasonable steps through discovery
to name and serve PO Doe, otherwise such claims would be
subject to dismissal for failure to prosecute and/or failure to
comply with an Order of the Court, pursuant to Fed. R. Civ.
P. 41(b). Dkt. No. 7. On October 15, 2021, PO Hanley and
PO Doe (hereinafter "Defendants") filed an answer asserting
twenty affirmative defenses. Dkt. No. 12.

On November 17, 2021, Magistrate Judge Lovric held an
initial conference wherein he ordered all parties to file
status reports by January 31, 2022, ahead of a further
conference scheduled for February 18, 2022, Dkt. No. 16. [2]
On January 31, 2022, Defendants filed a status report in
compliance with Dkt. No. 16, stating that on December 30,
2021, they served Plaintiff with interrogatories, a request

2023 WL 4763941

for production of documents, and a deposition notice, to which Plaintiff has not responded. Dkt. No. 18. On February 9, 2022, after Plaintiff failed to comply with Dkt. No. 16, Magistrate Judge Lovric directed Plaintiff to file a status report by February 16, 2022. Dkt. No. 19. The Court further stated that "**PLAINTIFF IS ADVISED THAT FAILURE TO COMPLY WITH COURT ORDERS OR FAILURE TO ENGAGE IN THE DISCOVERY PROCESS MAY RESULT IN SANCTIONS BEING IMPOSED PURSUANT TO** FED. R. CIV. P. 37 & 41, **INCLUDING DISMISSAL OF THE CASE.**"[3] *Id.*

[2]     Magistrate Judge Lovric also issued the Uniform Pretrial Scheduling Order requiring that (1) amended pleadings and joinder of parties due by January 31, 2022; (2) discovery due by September 30, 2022; and (3) dispositive motions to be filed by October 31, 2022. Dkt. No. 17.

[3]     Magistrate Judge Lovric used this or similar language and emphasis in subsequent Orders directed at Plaintiff. *See* Dkt. Nos. 23, 30, 33, 36, 44, 48, 53.

**\*2** On February 14, 2022, Plaintiff filed medical records, Dkt. No. 21, and a status report containing a notice of change of address and another motion for the appointment of counsel, Dkt. No. 20, which the Court again denied, Dkt. No. 22. On February 18, 2022, Plaintiff failed to join the scheduled conference and Magistrate Judge Lovric ordered that: (1) Plaintiff file a status report by March 8, 2022 explaining why he failed to join the conference; (2) Plaintiff serve all discovery and respond to all of Defendants' discovery demands no later than March 22, 2022; and (3) all parties file status reports by April 1, 2022. Dkt. No. 23.

On March 4, 2022, Plaintiff filed a status report informing the court that he was living at a new address and stated that he "missed a telephone conference because he did not know about such conf[e]rence or completely forgot." Dkt. No. 25. On March 15, 2022, Plaintiff appealed Magistrate Judge Lovric's order denying counsel, Dkt. No. 26, and on March 18, 2022, Defendants submitted an affidavit in opposition to Plaintiff's appeal, Dkt. No. 28. On April 4, 2022, Magistrate Judge Lovric directed the parties to comply with Dkt. No. 23 and file detailed status reports by April 11, 2022 as to the progress of discovery, including whether Plaintiff had complied with his discovery obligations. Dkt. No. 30. On April 5, 2022, Defendants filed a status report, Dkt. No. 31, and on April 13, 2022, Plaintiff filed a status report, Dkt. No.

32. As detailed in the status reports of the parties, Plaintiff had not complied with his discovery obligations.

On April 14, 2022, Magistrate Judge Lovric directed Plaintiff to immediately comply with the Orders issued by the Court, including Dkt. No. 23, given Plaintiff's failure to serve or respond to discovery demands by the March 22, 2022 discovery deadline. Dkt. No. 33. On April 18, 2022, the Court denied and dismissed Plaintiff's appeal of Magistrate Judge Miroslav's Order denying appointment of counsel. Dkt. No. 34. On April 25, 2022, Plaintiff filed a letter motion requesting an extension of time to file an opposition. Dkt. No. 35. On April 26, 2022, Magistrate Judge Lovric denied Plaintiff's motion as moot as there were no motions filed or pending before the Court requiring a response or opposition filing from Plaintiff. Dkt. No. 36. Magistrate Judge Lovric reminded Plaintiff of Dkt. Nos. 17, 23, 30, and 33, and again advised Plaintiff that failure to comply with Court Orders may results in sanctions, including dismissal of the case. *Id.*

On May 5, 2022, Plaintiff notified the Court of a change of address back to his previous address. Dkt. No. 37. Plaintiff also filed a document containing interrogatories, which the Court struck as improperly filed on the docket. Dkt. No. 39. Defendants filed status reports on June 3, 2022, and August 8, 2022, reporting Plaintiff's continued failure to serve discovery demands or respond to Defendants' document demands. Dkt. Nos. 40, 43. On August 9, 2022, Magistrate Judge Lovric informed Plaintiff that he had violated the Court's Orders by failing to respond to the discovery demands Defendants served on December 30, 2021, Dkt. Nos. 31, 43, and again advised Plaintiff to immediately comply with Dkt. Nos. 23 and 33, as failure to comply could result in dismissal of the case. Dkt. No. 44. On August 17, 2022, Plaintiff filed a status report, requesting appointment of counsel, Dkt. No. 45, which Magistrate Judge Lovric again denied while reminding Plaintiff to immediately comply with Dkt Nos. 23 and 33. Dkt. No. 46.

On September 30, 2022, discovery closed without Plaintiff having participated in any way. On October 14, 2022, Defendants filed a letter informing the Court of their intention to file a dispositive motion as to Plaintiff's failure to respond or comply with the deadlines for discovery and that Plaintiff's Troy address and telephone number appear no longer valid. Dkt. No. 47. On October 17, 2022, Magistrate Judge Lovric granted Defendants' application and reminded Plaintiff that failure to comply with Court orders, failure to engage in discovery, or failure to promptly inform the Court in writing

2023 WL 4763941

of any address change may result in sanctions including dismissal of the case. Dkt. No. 48.

## B. The Instant Motion

**\*3**  On October 20, 2022, Defendants filed a motion to dismiss for lack of prosecution claiming that Plaintiff ignored and/or failed to comply with Court-ordered discovery deadlines and has engaged in conduct that has shown a disregard for court procedures and a disinterest in prosecuting this action. Dkt. No. 49 ("Motion"). Defendants note that Plaintiff "never responded to the[ir] demand for production of documents and failed to appear for an examination before trial on three scheduled dates," "served no discovery demands on his own," "failed to identify any experts," and "moved without informing the Court or defense counsel of his new address." *Id.* at 5.

On October 21, 2022, the Court mailed a copy of Notice to Plaintiff informing him that his response was due by November 10, 2022. Dkt. No. 50. Two and a half months after the deadline, on January 26, 2023, Plaintiff filed a response in opposition to the Motion, noting that he was having difficulty litigating the case and requesting appointed counsel for the fifth time. [4] Dkt. No. 52 at 2 ("Plaintiff again request[s] appointment of counsel, and disagrees with the motion to Dismiss"). The parties have not filed any further briefs with the Court, and the Motion is thus ripe for determination.

[4]  On January 27, 2023, Magistrate Judge Lovric denied Plaintiff's request for appointment of counsel for the reasons set forth in the Court's earlier Orders, *see* Dkt. Nos. 5, 22, 34, 46, including that "[i]t is well-settled that there is no right to appointment of counsel in civil matters" and "nothing indicates that Plaintiff is unable to investigate the facts alleged", and further directed Plaintiff to immediately comply with the Orders issued by the Court. Dkt. No. 53.

## III. LEGAL STANDARD

Defendants move to dismiss the Complaint pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides:

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 —operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). District courts have an "inherent power" to dismiss an action based on plaintiff's failure to prosecute or comply with an order of the court pursuant to Rule 41(b). *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). This authority "is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 42 (2d Cir. 1982). However, dismissal under Rule 41(b) is a "harsh remedy to be utilized only in extreme situations," *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (quotation omitted), especially in circumstances where a plaintiff is proceeding *pro se*, *see Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (holding that the circuit court will give due deference to the district court's decision to dismiss a *pro se* complaint "only when the circumstances are sufficiently extreme"). Notwithstanding a plaintiff's *pro se* status, failure to prosecute under Rule 41(b) "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics" such as "repeated requests for continuances or persistent late filings of court ordered papers." *Lyell Theatre Corp*, 682 F.2d at 42.

In determining whether dismissal under Rule 41(b) is warranted, courts in the Second Circuit consider the following five factors, none of which are dispositive: (1) the duration of the plaintiff's failure to comply with orders of the court; (2) whether the plaintiff received notice that failure to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether an appropriate balance has been struck between the court's interest in managing its docket and plaintiff's interest in receiving a fair opportunity to be heard; and (5) whether the judge has adequately considered lesser sanctions than dismissal. *See Baptiste v. Sommers*, 768 F.3d 212, 216 (2d Cir. 2014) (quoting *Lucas*, 84 F.3d at 535); *see also United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004).

#### IV. DISCUSSION

**\*4** In ordering the dismissal of Plaintiff's Complaint, the undersigned is cognizant that dismissal is considered a harsh remedy, especially in an action brought by a *pro se* plaintiff. *See LeSane*, 239 F.3d at 209. However, Plaintiff has not taken any meaningful action to advance his case and has continuously failed to timely communicate with the Court and Defendants. As such, the Court finds that all five factors considered in deciding a Rule 41(b) motion favor dismissal.

In examining the first factor, the Court considers two inquiries: (1) whether the delays associated with the failures to prosecute were those of the plaintiff, and (2) whether the duration of these delays existed for a significant period. *See Drake*, 375 F.3d at 255 (citing *Martens v. Thomann*, 273 F.3d 159, 180 (2d. Cir. 2001)). This action has been pending for over two years and no discovery has been completed as Plaintiff never served discovery demands of his own and never responded to the Defendants' December 30, 2021 demands. Dkt. No. 33; Dkt. No. 49-7 at 2. Plaintiff failed to appear for a deposition on July 26, 2022 after Defendants unilaterally scheduled it due to Plaintiff's failure to choose a date from forty-three offered dates over a three-month period. Dkt. No. 49-1 at 5; Dkt. No. 49-4. Plaintiff's deposition was rescheduled twice more, for August 4 and 16, 2022, both of which were cancelled by Plaintiff. *Id.* Plaintiff's only participation in the prosecution of this case has been to request appointment of counsel, which he has done unsuccessfully five times since filing the Complaint. *See* Dkt. Nos. 5, 22, 34, 46, 53. As such, the delays in this case were caused by the Plaintiff. *See Drake*, 375 F.3d at 255.

Although there is no "magic number" to determine whether Plaintiff's delay endured for a "significant" period, *see Ransom v. United States*, No. 1:09-CV-1272 (MAD/RFT), 2011 WL 2893067, at \*5 (N.D.N.Y. July 15, 2011) (citing *Copeland v. Rosen*, 194 F.R.D. 127, 132 (S.D.N.Y. 2000)), the Court notes that Northern District New York Local Rule 41.2(a) provides that "plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." Here, Plaintiff has not taken any action to further this litigation since he filed an opposition to Defendants' motion to dismiss on January 26, 2023, despite Magistrate Judge Lovric issuing a text order the following day which directed Plaintiff to immediately comply with the Orders issued by the Court. *See* Dkt. Nos. 52, 53; *see also Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) (holding that failure to respond to proposed dates for deposition for over nine months weighs in favor of dismissal). Furthermore, Plaintiff has been noncompliant in the discovery process or otherwise progressing this litigation since December 2021. *See* Dkt. Nos. 17, 49; *see also Heendeniya v. St. Joseph's Hosp. Health Ctr.*, 830 F. App'x 354, 358 (2d Cir. 2020) ("[T]he duration of [plaintiff's] noncompliance was significant: by the time the court issued its decision, eleven months had passed since [plaintiff's] response to discovery demands was first due."). In the context of Rule 41(b) dismissals, the Second Circuit has found delays far less than this to be sufficient to support dismissal. *See, e.g., Ruzsa v. Rubenstein & Sendy Attys at Law*, 520 F.3d 176, 177 (2d Cir. 2008) (seven months); *Lucas*, 84 F.3d at 535 (thirty-nine days); *Chira v. Lockheed Aircraft Corp.*, 634 F.2d 664, 666 (2d Cir. 1980) (six months). As such, this factor weighs squarely in favor of dismissal.

**\*5** Regarding the second factor, Plaintiff was certainly on notice that further delay could result in dismissal. *See Clarke v. WestRock Servs.*, No. 2:18 CV 802 (ENV) (CLP), 2020 WL 13664144, at \*7 (E.D.N.Y. Aug. 6, 2020) ("noncompliance is willful where the party has received notice of the Court's order and repeatedly fails to comply") (citations omitted). As discussed above, Plaintiff continuously failed to comply with discovery deadlines and Court Orders, *see* Dkt. Nos. 23, 33, despite receiving notice from the Court on six occasions that such failures could result in sanctions, including dismissal of the case pursuant to Rule 41, *see* Dkt. Nos. 19, 30, 33, 44, 46, 48. Therefore, this factor weighs in favor of dismissal. *See, e.g., Chavis v. City Of New York*, No. 17-CV-9518 (PAE) (BCM), 2018 WL 6532865, at \*3 (S.D.N.Y. Oct. 12, 2018) (dismissal after two warnings); *Leybinsky v. United States Citizenship And Immigration Services*, No. 19-CV-6154 (RPK) (LB), 2020 WL 7295661, at \*2 (E.D.N.Y. Dec. 2, 2020) (dismissal after one warning).

As to the third factor, Defendants have been prejudiced as a result of Plaintiff's failure to adhere to Court Orders. *See Lyell*, 682 F.2d at 43 ("[P]rejudice to defendants resulting from unreasonable delay may be presumed"). Defendants have been deprived of crucial information required to prepare their defense, given that Plaintiff never responded to Defendants' discovery demands and failed to appear at deposition on three separate scheduled occasions. [5] Dkt. No. 49-1 at 5; *see Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 195 (2d Cir. 1999) ("[D]elay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult."). Therefore,

Defendants have demonstrated actual prejudice and this factor weighs in favor of dismissal.

5      Defendants' showing of prejudice included difficulties contacting Plaintiff, citing that the telephone number he provided "belonged to someone else," Dkt. No. 49-6 at 3, and mail sent to Plaintiff's updated address was returned as undeliverable. Dkt. No. 49-1. Defendants further filed a request with the Troy Post Office requesting Plaintiff's forwarding address. Dkt. No. 49-6.

As to the fourth factor, the Court finds that the Court's interest in managing the docket outweighs Plaintiff's interest in receiving further opportunity to be heard. *See Lucas, 84 F.3d at 535*. A plaintiff's interest in receiving a fair opportunity to be heard is sufficiently protected where the plaintiff receives specific notice that his or her claims are in danger of dismissal and fails to act upon that notice. *See McMillan v. Bowers, No. 9:21-CV-0889 (LEK/CFH), 2022 WL 19405935, at *4 (N.D.N.Y. Nov. 28, 2022), report and recommendation adopted, No. 9:21-CV-0889 (LEK/CFH), 2023 WL 2534413 (N.D.N.Y. Mar. 16, 2023)* (weighing this factor in favor of dismissal where plaintiff failed to appear at a telephone conference, notify the court and all parties of any change in address, and abide by court orders and deadlines despite receiving notice that failure to do so will result in dismissal). Plaintiff was directed to respond to all discovery demands no later than March 22, 2022, and all discovery was due to have been completed by September 30, 2022. Dkt. No. 17. However, Plaintiff's participation has largely been limited to repetitive requests for counsel, Dkt. Nos. 5, 22, 34, 46, 53, and improper or unnecessary filings and motions, Dkt. Nos. 21, 35, 38, 39. Plaintiff has thus made clear that he is unable to effectively prosecute his case under the rules and Court Orders, and the result is congestion on the Court's docket. Though certainly not "vexatious," Plaintiff's failure to prosecute is more than "silent"; Plaintiff has acknowledged that he has neither the time nor capability to effectively prosecute this case, *see* Dkt. No. 52, and the Court cannot indefinitely wait for Plaintiff to proceed. *See Pena v. Zazzle Inc., 587 F. Supp. 3d 109, 114 (S.D.N.Y. 2022)* ("[C]ourts distinguish between failures to prosecute based on vexatious and burdensome conduct versus silent unobtrusive failures to prosecute in which the plaintiff simply does not file the requisite papers") (internal quotation marks omitted). Furthermore, the Court reminded Plaintiff on at least eight occasions that his continued failure to comply with Court Orders could result in sanctions including the dismissal of his claims, Dkt. Nos. 19, 23, 30, 33, 36, 44, 48, 53, providing

Plaintiff multiple opportunities to be heard. *See McDonald v. Head Crim. Ct. Supervisor Officer, 850 F.2d 121, 124 (2d Cir. 1988)* ("[A]ll litigants, including *pro ses*, have an obligation to comply with court orders. When they flout that obligation they, like all litigants, must suffer the consequences of their actions."). Therefore, this factor also weighs in favor of dismissal.

**\*6**  As to the final factor, the Court finds that the imposition of a lesser sanction would have no effect on Plaintiff, or this litigation, given Plaintiff's repeated refusals to comply with Court Orders or the discovery process. *See Anthony v. Lyons, No. 9:18-CV-0849 (GLS/CFH), 2021 WL 1701754, at *5 (N.D.N.Y. Apr. 12, 2021), report and recommendation adopted, No. 9:18-CV-0849 (GLS/CFH), 2021 WL 1699858 (N.D.N.Y. Apr. 29, 2021)* ("imposing a lesser sanction would be ineffective because Plaintiff's failure to comply with the Court's orders indicates that a lesser sanction would not motivate him to participate in this action") (citations omitted). This litigation has been pending since January 8, 2021, Dkt. No. 1, and Plaintiff's ongoing refusal to comply with Court Orders demonstrates that "there is no meaningful way to secure Plaintiff's appearance before the Court to litigate this action." *Lando v. Claudio, No. 9:18-CV-01472 (TJM/TWD), 2022 WL 3701719, at *4 (N.D.N.Y. Apr. 21, 2022), report and recommendation adopted, No. 9:18-CV-01472 (TJM/TWD), 2022 WL 3701572 (N.D.N.Y. Aug. 26, 2022).* Nevertheless, given Plaintiff's *pro se* status, the Court finds that dismissal without prejudice is appropriate, permitting Plaintiff to bring this lawsuit at another time if and when he is prepared to diligently litigate it. *See Cintron v. Gettman, No. 9:15-CV-0542 (BKS/TWD), 2017 WL 2303604, at *3 (N.D.N.Y. May 1, 2017), report and recommendation adopted sub nom. No. 9:15-CV-0542 (BKS/TWD), 2017 WL 2303990 (N.D.N.Y. May 25, 2017)* (recommending dismissal without prejudice after plaintiff failed to appear for two scheduled depositions).

As such, the Court finds that each of the factors relevant to the Rule 41(b) analysis favors dismissal, and therefore, the Court grants Defendants' Motion.

## V. CONCLUSION
Accordingly, the Court hereby

**ORDERS** that Defendants' Motion to Dismiss, Dkt. No. 49, is **GRANTED**; and the Court further

2023 WL 4763941

**ORDERS** that Plaintiff's Complaint, Dkt. No. 1, is **DISMISSED without prejudice**; and the Court further

**ORDERS** that the Clerk serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2023 WL 4763941

---

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 1:21-CV-00025**<br>Lynch, Sr. v. Hanley et al | — | N.D.N.Y. | Jan. 08, 2021 | Docket |

**History (3)**

**Direct History (1)**

1. Lynch v. Hanley
   2023 WL 4763941 , N.D.N.Y. , July 26, 2023

**Related References (2)**

2. Lynch v. Hanley
   2021 WL 2792267 , N.D.N.Y. , Apr. 01, 2021

   *Report and Recommendation Adopted by*

3. Lynch v. Hanley
   2021 WL 2309688 , N.D.N.Y. , June 07, 2021

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 40 of 364
Mayer v. Clinton County, Not Reported in Fed. Supp. (2020)

2020 WL 5536800

2020 WL 5536800
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Martin Peter MAYER, Plaintiff,

v.

CLINTON COUNTY, et al., Defendants.

No. 9:17-CV-905 (GLS/CFH)
|
Signed 08/07/2020

**Attorneys and Law Firms**

Martin Peter Mayer, 51 Richmond Avenue, Apartment AO, Buffalo, New York 14222, Plaintiff pro se.

OF COUNSEL: APRIL J. LAWS, ESQ., COREY A. RUGGIERO, ESQ., GREGG T. JOHNSON, ESQ., LORRAINE CLARE JELINEK, ESQ., Johnson & Laws, LLC, 648 Plank Road, Suite 204, Clifton Park, New York 12065, Attorneys for defendant Shannon Finnell.

**REPORT-RECOMMENDATION AND ORDER** [1]

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

*1 Plaintiff pro se Martin Peter Mayer ("plaintiff"), a former pretrial detainee who was, at all relevant times, in the custody of the Clinton County Correctional Facility ("Clinton County C.F."), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Registered Physician Assistant Scott Liberty ("Liberty"), Dr. Glenn Schroyer ("Schroyer"), and Registered Nurse Shannon Finnell [2] ("Finnell")—who, at all relevant times, were employed at Clinton County C.F.—violated his constitutional rights under the Fourteenth Amendment. See Dkt. No. 21. Presently pending before the Court are Finnell's renewed Motions to Dismiss pursuant to Rule 37(b), Rule 37(d), and Rule 41(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), as well as Local Rules 10.1(c)(2) and 41.2(b). See Dkt. Nos. 65, 66. For the following reasons, it is recommended that Finnell's motions be granted.

[2] The correct spelling of this defendant's name is "Finnell," not "Finnel." See Dkt. No. 45 at 1 (noting that defendant's correct name is "Shannon Finnell," but that she was sued as "Shannon Finnel."). The Clerk of the Court is respectfully requested to modify the docket accordingly.

**I. Background**

Plaintiff commenced this action in the Western District of New York on July 18, 2017, while incarcerated at Buffalo Federal Detention Center, located at 4250 Federal Drive, Buffalo, New York 14020. See Dkt. No. 1. On August 17, 2017, the Western District transferred the action to this Court. See Dkt. No. 3. On September 5, 2017, plaintiff filed a motion for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 6. On September 27, 2017, Senior District Court Judge Gary L. Sharpe granted plaintiff's IFP application and dismissed plaintiff's claims for monetary damages against Clinton County C.F. and the Clinton County Sheriff, David N. Faro ("Faro"), in his official capacity, with prejudice, and all other remaining claims without prejudice. See Dkt. No. 9 at 13-15. The Court instructed plaintiff that, if he wished to proceed with this action, he must file an amended complaint. See id. On October 12, 2017, plaintiff filed an amended complaint. See Dkt. No. 10. The Court dismissed plaintiff's amended complaint for failure to state a claim and, again, ordered that if plaintiff wished to proceed in this action, he must file an amended complaint within 30 days of the Court's Decision and Order. See Dkt. No. 14 at 3. Plaintiff filed a second amended complaint on December 18, 2017. See Dkt. No. 16.

On January 24, 2018, upon review of plaintiff's second amended complaint (Dkt. No. 16), the Court dismissed plaintiff's claims against Clinton County and Faro pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b); and ordered that plaintiff's Fourteenth Amendment claims against defendants Finnell, Liberty, and Schroyer survived sua sponte review and required a response. See Dkt. No. 19 at 9. In the January 24, 2018 Decision and Order, the Court stated: "Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; [his] failure to do so will result in the dismissal of his action." Dkt. No. 19 at 10 (emphasis omitted). In addition, because plaintiff's second amended complaint was not signed, the Court granted him permission to submit a

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 41 of 364

Mayer v. Clinton County, Not Reported in Fed. Supp. (2020)

2020 WL 5536800

signed certificate verifying his signature within 30 days, see id. at 8-9, which he did, and his second amended complaint was re-filed on February 6, 2018. See Dkt. No. 21. On April 26, 2018, plaintiff notified the Court of his change in address from Buffalo Federal Detention Center to 221 Rapin Place, Buffalo, New York 14211. See Dkt. No. 29.

**\*2** On May 1, 2018, the undersigned issued a Mandatory Pretrial Discovery and Scheduling Order, which set discovery and motion deadlines. See Dkt. No. 30. The undersigned also directed plaintiff to produce specific categories of documents to Finnell, and granted Finnell leave to conduct a deposition of plaintiff. See id. at 1, 4. On August 14, 2018, Finnell served plaintiff with a document entitled First Demand for the Production of Documents and Things, dated July 9, 2018. See Dkt. No. 45-2. On September 12, 2018, Finnell sent plaintiff a letter requesting that he complete and sign a form authorizing the release of his health information so that she could obtain his records from the Clinton County Sheriff's Department. See Dkt. No. 45-3. On October 19, 2018, Finnell served plaintiff a Deposition Notice. See Dkt. No. 45-4. Finnell requested that plaintiff confirm his appearance at the deposition. See id. at 2. Finnell mailed the aforementioned documents to plaintiff's 221 Rapin Place address provided in his April 26, 2018 Notice of Change of Address. See Dkt. No. 45-6. Plaintiff did not respond to these discovery demands and failed to communicate with Finnell. See Dkt. No. 45-5 at 6-7.

On October 26, 2018, Finnell filed a letter motion requesting that the undersigned hold a conference to address plaintiff's failure to respond to the Mandatory Pretrial Discovery and Scheduling Order, demands for production of documents, and a letter requesting confirmation of a properly-noticed deposition. See Dkt. No. 40 at 1. On November 8, 2018, the undersigned issued a Text Order scheduling a status conference for November 27, 2018. See Dkt. No. 41. The undersigned directed both parties to appear in person and advised plaintiff that he should immediately inform the Court if he was unable to appear. See id. The undersigned also informed plaintiff that "failing to attend court Ordered conferences as directed and failing to notify the Court of any change in address may result in the dismissal of this case." Id. Plaintiff failed to appear at the November 27, 2018 conference, and did not otherwise contact the Court. See Text Min. Entry dated Nov. 27, 2018; Dkt. No. 45-5 at 7. That same day, the undersigned set a briefing schedule for Finnell to file a Motion to Dismiss for failure to prosecute. See Dkt. No. 42.

On January 11, 2019, Finnell filed a motion to dismiss pursuant to Fed. R. Civ. P. 41(b) for failure to prosecute the action or comply with Court orders or, in the alternative, pursuant to Fed. R. Civ. P. 37(b)(2)(A) for failure to comply with the Court's May 2018 discovery Order. See Dkt. Nos. 45; 45-5 at 8-16, 17-20. On January 30, 2019, Finnell renewed her motion to dismiss after plaintiff failed to respond by the January 25, 2019 deadline. See Dkt. No. 46. On February 25, 2019, the undersigned issued a Text Order indicating that it appeared that plaintiff had changed addresses. See Dkt. No. 48; see also Dkt. No. 47 (letter addressed to the Board of Immigration Appeal, but sent to the Northern District, indicating that plaintiff resided at 50 Wyoming Ave, Buffalo, New York 14215). In light of plaintiff's pro se status, the Court granted him an extension of time until March 18, 2019, to file a response. See Dkt. No. 48. The undersigned noted that "[p]laintiff's failure to file any response to the motion may result in the motion being granted since the court will not have the benefit of the plaintiff's response to consider in making its decision." Id. On March 8, 2019, plaintiff filed a response. See Dkt. No. 49.

In April 2019, the undersigned issued a Report-Recommendation & Order recommending that, in light of plaintiff's pro se status, Finnell's motion to dismiss be denied without prejudice to renew. See Dkt. No. 50 at 8-10. On June 6, 2019, plaintiff filed objections to the April 2019 Report-Recommendation & Order by letter with a return address of 51 Richmond Ave, Buffalo, New York 14222. See Dkt. No. 52. On July 18, 2019, the Court sent notice of a telephone conference to the parties to be held on August 1, 2019. See Dkt. No. 53. The Court mailed the notice to plaintiff's 50 Wyoming Ave, Buffalo, New York 14125 address. See Dkt. No. 57. Plaintiff did not appear for that conference and Finnell was given permission to renew her motion to dismiss. See Text Min. Entry dated August 1, 2019. Thereafter, the Court set a briefing schedule for Finnell's renewed motion to dismiss in which plaintiff was directed to respond to the motion by September 25, 2019, and the Court warned plaintiff that his "failure to respond, abide by Court Orders and failing to attend Court Ordered conferences may result in sanctions to include dismissal of this action." Dkt. No. 54.

**\*3** On August 15, 2019, the Court received a letter from plaintiff that listed his current address as 51 Richmond Ave, Apt. AO, Buffalo, New York 14222; indicated that he received the Court's July 18, 2019 notice of conference, which he referred to as the "Minute Entry filed on [August 1, 2019]"; and stated that he was currently homeless and

Mayer v. Clinton County, Not Reported in Fed. Supp. (2020)

2020 WL 5536800

awaiting his pending immigration hearing. Dkt. No. 55 at 1 (internal quotation marks omitted); see id. at 2, 4, 5. Plaintiff explained that he was unable to afford, among other things, to obtain print outs of his "Clinton County medical records again" and that he had sent "all documents [he] had to [the] Court." Id. at 4. On August 19, 2019, the Court gave the parties notice of a teleconference scheduled for August 22, 2019. See Dkt. No. 56. On August 21, 2019, the Court's July 18, 2019 notice of conference, which was sent to plaintiff's 50 Wyoming Ave address, was returned to the Court marked "not deliverable." Dkt. No. 57 at 1 (capitalization omitted).

On August 22, 2019, plaintiff appeared via telephone for a status conference in which the Court inquired as to the status of plaintiff's immigration proceedings, his ability to respond to discovery and travel to Albany for deposition and, if necessary, trial. See Text Min. Entry dated August 22, 2019. Plaintiff advised the Court that his immigration hearing was scheduled for September 10, 2019. See id. The Court then directed Finnell to again provide plaintiff with her discovery demands at "the address now confirmed as plaintiff's residence." Id. On August 23, 2019, the Court issued a Text Order extending the discovery deadline to December 31, 2019, and the motion deadline to February 10, 2020, and "strongly reminded [plaintiff] that failure to abide by Court Orders, to attend court directed conferences, or to respond to [d]iscovery demands can result in sanctions that may include dismissal of [the] case." Dkt. No. 58. On August 26, 2019, Finnell then sent a Deposition Notice to plaintiff's 51 Richmond Ave address; however, the notice was returned as undeliverable. See Dkt. No. 65-5 at 7-8. On September 10, 2019, Senior District Court Judge Gary L. Sharpe adopted the undersigned's April 2019 Report-Recommendation & Order in its entirety. See Dkt. No. 59.

On September 11, 2019, plaintiff sent a letter to the Court in response to Finnell's discovery requests in which he acknowledged the receipt of Finnell's requests, but stated that he was unable to comply due to being homeless and without funds to pay for the fees associated with obtaining the pertinent documents. See Dkt. No. 60 at 2-3. Thereafter, plaintiff did not communicate with the Court for a period of nearly three months, until he sent a letter to the Court on December 9, 2019, requesting a jury trial. See Dkt. No. 61. Finnell then filed a letter motion requesting the Court to schedule a conference "to address [p]laintiff's continu[ed] refusal to comply with discovery and Court Orders," Dkt. No. 62 at 1, which the Court granted and scheduled for December 27, 2019. See Dkt. No. 63.

On January 10, 2020, the Court issued a Text Order that instructed Finnell to file her motion to dismiss by February 21, 2020, and directed plaintiff to respond by March 12, 2020. See Dkt. No. 64. On February 21, 2020, Finnell filed her renewed motion to dismiss for failure to prosecute and failure to comply with Court orders pursuant to Fed. R. Civ. P. 41(b), failure to comply with this Court's May 2018 discovery order pursuant to Fed. R. Civ. P. 37(b)(2)(a), failure to appear for deposition pursuant to Fed. R. Civ. P. 37(d)(1)(A), and failure to provide this Court with an updated address pursuant to Fed. R. Civ. P. 42(b) and N.D.N.Y. L.R.10.1(c)(2) and 41.2(b). See generally Dkt. No. 65. Plaintiff did not file a response. On March 18, 2020, following the expiration of plaintiff's response deadline, Finnell filed a letter motion requesting dismissal of the action due to plaintiff's lack of response to her renewed motion to dismiss. See Dkt. No. 66.

## II. Discussion [3]

[3]    All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

**\*4** First, Finnell moves to dismiss the amended complaint for failure to prosecute and failure to comply with a court order pursuant to Fed. R. Civ. P. 41(b). See Dkt. No. 65-5. Finnell acknowledges, by reference to her first motion to dismiss, that the legal standard governing dismissal for failure to prosecute is very similar to the legal standard governing dismissal for failure to comply with a court order. See Dkt. No. 65-5 at 13; Dkt. No. 45-5 at 14. Fed. R. Civ. P. 41(b) provides that a court may dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order...." FED. R. CIV. P. 41(b); see Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962); Baptiste v. Sommers, 768 F.3d 212, 216 (2d Cir. 2014); see also N.D.N.Y. L.R. 41.2 (requiring dismissal when "it appears that the plaintiff has failed to prosecute an action...."). Since a Rule 41(b) dismissal "is a harsh remedy[, it] is appropriate only in extreme situations." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citation omitted). "Further, where a plaintiff is proceeding pro se, 'courts should be especially hesitant to dismiss for procedural deficiencies....' " Perez v. Wallace, No. 1:15-CV-240 (GTS/CFH), 2016 WL 2865737, at *2 (N.D.N.Y. Apr. 11, 2016) (quoting Spencer v. Doe, 139 F.3d 107, 112 (2d Cir. 1998)), report and recommendation adopted, No. 1:15-CV-240 (GTS/CFH), 2016 WL 2858870 (N.D.N.Y.

Case 9:22-cv-01156-DNH-MJK   Document 119   Filed 07/14/25   Page 43 of 364

Mayer v. Clinton County, Not Reported in Fed. Supp. (2020)

2020 WL 5536800

May 16, 2016). A determination of whether to dismiss an action pursuant to Rule 41(b) involves consideration of:

(1) the duration of the plaintiff's failure to comply with the court order,

(2) whether [the] plaintiff was on notice that failure to comply would result in dismissal,

(3) whether the defendants are likely to be prejudiced by further delay in the proceedings,

(4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and

(5) whether the judge has adequately considered a sanction less drastic than dismissal.

Lucas, 84 F.3d at 535 (spacing added) (citing Jackson v. City of New York, 22 F.3d 71, 74 (2d Cir. 1994)). "Generally, no one factor is dispositive." Shannon v. Gen. Elec. Co., 186 F.3d 186, 194 (2d Cir. 1999) (internal quotation marks and citation omitted). "When imposed, the sanction of dismissal 'operates as an adjudication upon the merits,' but may be without prejudice if so specified by the court imposing it." Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982) (quoting FED. R. CIV. P. 41(b)).

After assessing the Lucas factors, the undersigned concludes that dismissal is appropriate. First, the duration of plaintiff's failure to comply with Court orders weighs in favor of dismissal. Prior to plaintiff's letter dated February 15, 2019, plaintiff had not been in contact with Finnell or the Court for a period over eight months. See Dkt. Nos. 45-5 at 8, 47. In that time, plaintiff failed to serve documents pursuant to the Court's May 2018 discovery Order or Finnell's July 2018 Demand for the Production of Documents and Things, did not obtain authorizations for medical records, and failed to respond to Finnell's Deposition Notice. See Dkt. Nos. 30, 45-5 at 7. Plaintiff filed a response to Finnell's January 2019 motion to dismiss and filed objections to the undersigned's Report-Recommendation and Order in March and June 2019, respectively. See Dkt. Nos. 49, 52. However, plaintiff failed to appear for a court-ordered conference on August 11, 2019. See Dkt. No. 54.

Although plaintiff notified this Court of a change in his address to 51 Richmond Ave on August 15, 2019; appeared for a Court ordered teleconference on August 22, 2019; and sent a letter regarding the outstanding discovery requests

on September 11, 2019, plaintiff then did not contact this Court for nearly three months. See Dkt. Nos. 58, 60; Text Min. Entry dated Aug. 22, 2019. Following this period of inactivity, plaintiff filed a letter motion on December 9, 2019, and appeared for a Court ordered conference on January 9, 2020. See Dkt. No. 61; Text Min. Entry dated Jan. 9, 2020. However, he has not been in contact with this Court or Finnell since that date—a period of over six months—and has not opposed Finnell's renewed motion to dismiss. See Dkt. No. 61; Text Min. Entry dated Jan. 9, 2020. Additionally, plaintiff still has not resolved the outstanding discovery requests or responded to Finnell's second Deposition Notice. See Dkt. No. 45-5 at 7-8.

**\*5** Plaintiff's failure to communicate with this Court for the last six months, appear for conferences, or respond to Finnell's renewed motion to dismiss weighs in favor of dismissal. See Smith v. Graziano, No. 9:08-CV-469 (GLS/RFT), 2010 WL 1330019, at \*3 (N.D.N.Y. Mar. 16, 2010) (finding that the plaintiff's failure to communicate with the court or the defendant for "more than six months" weighed in favor of dismissal), report and recommendation adopted, No. 9:08-CV-469 (GLS/RFT), 2010 WL 1332503 (N.D.N.Y. Apr. 6, 2010); Hartley v. Devlin, No. 9:14-CV-1366 (GLS/CFH), 2018 WL 4087976, at \*2 (N.D.N.Y. July 30, 2018) (holding that no communication for a period of five months weighed in favor of dismissal when the plaintiff failed to appear for two conferences and failed to respond to the defendant's second motion to dismiss after the plaintiff had previously not been in communication for a period of four months), report and recommendation adopted, No. 9:14-CV-1366 (GLS/CFH), 2018 WL 4078267 (N.D.N.Y. Aug. 27, 2018); see also N.D.N.Y. L.R. 41.2(a) ("[T]he plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution."). Plaintiff's failure to resolve the outstanding discovery issues also weighs in favor of dismissal. See Perez, 2016 WL 2865737, at \*3 (holding that plaintiff's failure to participate in discovery for over a year weighed in favor of dismissal).

Second, regarding whether plaintiff was on notice that his failure to comply could result in dismissal, this Court notified him on at least three occasions that his failure to attend court ordered conferences or to notify the Court of any changes in address could result in dismissal of his case. See Dkt. Nos. 19, 41, 50. On at least three separate occasions, this Court also notified plaintiff that his failure to participate in this action could result in the dismissal of his case. See Dkt. Nos. 50, 54, 58. Thus, plaintiff was on notice that failing to comply with

Case 9:22-cv-01156-DNH-MJK   Document 119   Filed 07/14/25   Page 44 of 364

Mayer v. Clinton County, Not Reported in Fed. Supp. (2020)

2020 WL 5536800

court orders or otherwise participate in this action could result in dismissal. See Hartley, 2018 WL 4087976, at *2 (finding that the plaintiff had sufficient notice to justify dismissal for failure to prosecute where he "was advised on at least four occasions that the failure to comply with Court rules or to attend Court conferences may result in the dismissal of [his] action.").

Third, with respect to whether Finnell is likely to be prejudiced by further delays in the proceedings, Finnell's inability to depose plaintiff or collect necessary documents to defend herself in this matter weighs in favor of dismissal. See Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc., No. 99-CV-9311 (SAS), 2000 WL 1677984, at *3 (S.D.N.Y. Nov. 8, 2000) (finding that the defendants' inability to depose the plaintiff "makes it difficult, if not impossible [for the defendants] to defend the lawsuit" and weighs in favor of Rule 41(b) dismissal). Fourth, the undersigned concludes that "[p]laintiff's continu[ed] failure to comply with court orders [or] participate in discovery has significantly delayed the resolution of this matter, thereby contributing to the Court's congestion." Perez, 2016 WL 2865737, at *3. Fifth, with regard to whether lesser sanctions than dismissal would be appropriate, the Court is aware that dismissal is a harsh remedy, especially when the plaintiff is pro se. See Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986). However, the undersigned concludes that lesser sanctions would have no effect on plaintiff or this litigation —which has been pending since July 2017. See Perez, 2016 WL 2865737, at *3 (finding that lesser sanctions would have no effect on litigation that had been pending for 13 months).

Finnell also moves to dismiss pursuant to Local Rules 10.1(c) (2) and 41.2(b) for plaintiff's failure to provide this Court with an updated address. See Dkt. No. 65-2 at 19. "All ... pro se litigants must immediately notify the Court of any [c]hange of address." N.D.N.Y. L.R. 10.1(c)(2) (emphasis omitted). "Failure to notify the Court of a change of address in accordance with [N.D.N.Y.] L.R. 10.1(c)(2) may result in the dismissal of any pending action." N.D.N.Y. L.R. 41.2(b). The undersigned concludes that plaintiff's failure to keep his address current with the Court weighs in favor of dismissal. See Benitez v. Taylor, No. 9:13-CV-1404 (TJM/TWD), 2014 WL 7151607, at * 2-3 (N.D.N.Y. Dec. 13, 2014) (holding that the plaintiff's failure to prosecute and to inform the court of any changes in address weighed in favor of dismissal).

*6 Alternatively, Finnell moves to dismiss pursuant to Fed. R. Civ. P. 37(b)(2)(A) for failure to comply with this Court's

May 2018 discovery Order. Rule 37(b)(2)(A)(v) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders[, including] dismissing the action or proceeding in whole or in part."

> Courts must consider the following relevant factors when determining whether dismissal is appropriate under Fed. R. Civ. P. 37(b): "[1] the willfulness of the non-compliant party [and] the reason for the non-compliance; [2] the efficacy of lesser sanctions; [3] the duration of the period of non-compliance; and [4] whether the non-compliant party has been warned of the consequences of non-compliance."

Heendeniya v. St. Joseph's Hosp. Health Ctr., No. 5:15-CV-1238 (GTS/TWD), 2018 WL 5297806 (GTS/TWD), at *2 (N.D.N.Y. Oct. 25, 2018) (quoting Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)). "Notably, in order to impose the extreme sanction of dismissal, the court must find 'willfulness, bad faith, or [ ] fault on the part of' the individual from who discovery is sought." Id. (quoting Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 758, 764 (2d Cir. 1990) (additional citation omitted)).

As to the willfulness of plaintiff's failure to comply with discovery, the undersigned concludes that this factor weighs in favor of dismissal. The Court instructed plaintiff that failing to abide by Court Orders or respond to discovery demands could result in dismissal of his case on at least three occasions. See Dkt. Nos. 50, 54, 58. Despite these warnings, plaintiff has not served any of the documents Finnell requested in the two years since her initial requests were made. Although plaintiff has indicated that he was homeless and could not obtain the documents, he stated that he would "actively approach the [document-holding] entities again for document copies." Dkt. No. 60 at 3. However, plaintiff still has not complied, nor offered any further explanation for his inability to do so for a period of over six months. See Dkt. No. 65-2 at 22. Therefore, this factor weighs in favor of dismissal. See Heendeniya, 2018 WL 5297806, at *5 (holding that the plaintiff's failure to participate in discovery without explanation weighed in favor of dismissal). Concerning the remaining three factors, as discussed in detail above, the undersigned concludes that (1) lesser sanctions would have no effect on plaintiff or this litigation, (2) plaintiff's failure to participate in discovery weighs in favor of dismissal, and (3) plaintiff had sufficient notice that his failure to participate in discovery could lead to dismissal of his action. See supra, pp. 10-11.

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 45 of 364
Mayer v. Clinton County, Not Reported in Fed. Supp. (2020)
2020 WL 5536800

As a final matter, Finnell also argues that the amended complaint must be dismissed due to plaintiff's failure to appear for his deposition pursuant to Fed. R. Civ. P. 37(d)(1)(A). A court may impose sanctions on a party, including dismissal of the action, if the party "fails, after being served with proper notice, to appear for that person's deposition." FED. R. CIV. P. 37(d)(1)(A)(i). "Dismissal is a drastic remedy which should generally only be used when lesser sanctions would be inappropriate." Ruffin v. Mack, No. 9:17-CV-0481 (MAD/CFH), 2018 WL 2926275, at *3 (N.D.N.Y. Apr. 9, 2018) (citing S. New Eng. Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (additional citations omitted)), report and recommendation adopted, No. 9:17-CV-0481 (MAD/CFH), 2018 WL 2926278 (N.D.N.Y. June 8, 2018). "[H]owever, discovery orders are meant to be followed; thus, dismissal is justified when noncompliance is attributed to willfulness, bad faith, or fault of the offending party." Ruffin, 2018 WL 2926275, at *3 (internal quotation marks and citations omitted). "In deciding an appropriate sanction, 'the court may consider the full record ... [specifically] the willfulness of the non-compliant party; the reasons for the noncompliance; the efficacy of lesser sanctions; the duration of the non-compliance; and whether the party has been warned of the consequences of noncompliance.' " Id. (quoting Broad. Music, Inc. v. Metro Lounge & Café LLC, No. 10-CV-1149 (NAM/ATB), 2012 WL 4107807, at *2 (N.D.N.Y. July 18, 2012)) (alterations in original).

**\*7** "The goals of sanctions are to 'ensure that a party will not benefit from its own failure to comply ... [, act as] specific deterrents and seek to obtain compliance with the particular order issued [, and] ... serve [as] a general deterrent on the case at hand and on other litigation....' "

Id. (quoting Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988)) (alterations in original). Here, Finnell served plaintiff with a proper Deposition Notice. See Dkt. No. 45-4. However, as stated above, plaintiff failed to confirm his appearance for his deposition, failed to attend his deposition, and has offered no valid reason for doing so. See Dkt. No. 65-5 at 25. Thus, in light of plaintiff's repeated failure to participate in this litigation or comply with discovery orders, and the Court's repeated warnings that continuing this course of action could result in dismissal, the undersigned concludes that plaintiff's failure to attend his deposition weighs in favor of dismissal.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, that the defendant Finnell's motions (Dkt. Nos. 65, 66) be **GRANTED** in their entirety; and it is further

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 21) be **DISMISSED** with prejudice insofar as asserted against defendant Finnell; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with the Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [4]

[4]    If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**IT IS SO ORDERED**.

### All Citations

Not Reported in Fed. Supp., 2020 WL 5536800

---

**End of Document**           © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.** **Docket 9:17-CV-00905**<br>Mayer v. Clinton County et al | — | N.D.N.Y. | Aug. 17, 2017 | Docket |

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (4)**

**Direct History (2)**

1. Mayer v. Clinton County
   2020 WL 5536800 , N.D.N.Y. , Aug. 07, 2020

   *Report and Recommendation Adopted by*

2. Mayer v. Liberty
   2020 WL 5531543 , N.D.N.Y. , Sep. 15, 2020

**Related References (2)**

3. Mayer v. Clinton County
   2019 WL 4279907 , N.D.N.Y. , May 15, 2019

   *Report and Recommendation Adopted by*

4. Mayer v. Liberty
   2019 WL 4276704 , N.D.N.Y. , Sep. 10, 2019

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 48 of 364
Hutcheon v. Farnum, Not Reported in Fed. Supp. (2019)

2019 WL 7971873

2019 WL 7971873
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott M. HUTCHEON, Plaintiff,

v.

E. FARNUM, Defendant.

9:18-CV-00203 (MAD/CFH)
|
Signed 11/04/2019

**Attorneys and Law Firms**

Scott M. Hutcheon, P.O. Box 602, Bellmore, New York 11710, Plaintiff pro se.

Hon. Letitia James, OF COUNSEL: MATTHEW P. REED, ESQ., Assistant Attorney General, Attorney General for the State of New York, The Capitol, Albany, New York 12224, Attorneys for Defendant.

**REPORT-RECOMMENDATION & ORDER** [1]

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. Magistrate Judge

**\*1** Plaintiff pro se Scott M. Hutcheon ("plaintiff"), a former inmate who was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendant E. Farnum ("defendant") – who, at all relevant times, was employed at Marcy Correctional Facility ("Marcy") – violated his constitutional rights under the Eighth Amendment. See Dkt. Nos. 1 ("Compl."); Dkt. No. 8. Presently pending before the Court is defendant's Motion to Dismiss pursuant to Rules 37 and 41 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 26. For the following reasons, it is recommended that defendant's motion be granted.

**I. Background**

Plaintiff commenced this action on February 16, 2018. See Compl. On February 27, 2018, plaintiff submitted his Motion for Leave to Proceed in forma pauperis ("IFP"). Dkt. No. 5. In this Motion, plaintiff also notified the Court of his pending release and provided a new mailing address for future correspondence. See id. On August 20, 2018, the undersigned issued the Mandatory Pretrial Discovery and Scheduling Order, which set the discovery deadline for February 20, 2019. Dkt. No. 20. A copy of this order was served via regular mail to plaintiff's updated address. See Text Entry dated Aug. 20, 2018. On January 2, 2019, defendant served plaintiff with a Notice of Deposition for January 28, 2019. See Dkt. No. 26-2 ("Reed Decl.") ¶ 8; Dkt. No. 26-2, Exh. C. On January 28, 2019, plaintiff failed to appear for his deposition. Reed Decl. ¶¶ 10,11; Dkt. No. 26-2; Exh. D. Plaintiff did not contact defendant's counsel or communicate that he was unable to attend. Reed Decl. ¶ 10. Additionally, defendant had no reason to believe that the Notice of Deposition mailed to plaintiff on January 2, 2019, did not reach plaintiff at his updated address as it was not returned as undeliverable. Id. ¶ 9. Defendant incurred costs of $77.80 for the January 28, 2019, deposition transcript. Id. ¶ 11.

On February 4, 2019, the undersigned set a telephone status conference for February 15, 2019, and advised plaintiff that "fail[ure] to participate in court conferences or abide by Court Orders may result in the dismissal of [the] action." Dkt. No. 23. The Court sent notice of the telephone status conference by regular mail to plaintiff's updated address that day. Id. Plaintiff failed to appear for the February 15, 2019, telephonic status conference and did not contact the Court. Text Min. Entry dated Feb. 15, 2019. On February 27, 2019, the undersigned granted defendant's request to file a motion to dismiss and set a briefing schedule. See Dkt. No. 25. On April 2, 2019, defendant filed a Motion to Dismiss for Lack of Prosecution. Dkt. No. 26. Plaintiff was afforded until April 26, 2019, to file a response to the Motion to Dismiss. Dkt. No. 25. To date, plaintiff has not responded to defendant's Motion to Dismiss, nor has he engaged in any activity or communication with the Court since filing his Motion for Leave to Proceed IFP in February 2018. See Dkt. No. 26.

**II. Discussion** [2]

[2] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Hutcheon v. Farnum, Not Reported in Fed. Supp. (2019)

2019 WL 7971873

**\*2** Defendant requests an order from the Court "dismissing this action, with prejudice, pursuant to Fed. R. Civ. P. 41(b), Fed. R. Civ. P. 37(b)(2)(v), and Local Rule 1.1(d), on the ground that plaintiff has failed to prosecute this action and has failed to comply with the Court's discovery orders." Dkt. No. 26-1 ("Def. Mem. of Law") at 3. [3]

[3]      The page numbers following citations to Def. Mem. of Law refer to the pagination of the header numbers generated by CM/ECF, not the pagination within the document.

### A. Fed. R. Civ. P. 41(b)

Fed. R. Civ. P. 41(b) provides that a court may dismiss an action "[i]f the plaintiff fails to prosecute or comply with [the Federal Rules of Civil Procedure] or a court order ..." FED. R. CIV. P. 41(b); see Link v. Wabash R.R. Co., 370 U.S. 626, 629 (1962); Baptiste v. Sommers, 768 F.3d 212, 216 (2d. Cir. 2014); see also N.D.N.Y. L.R. 41.2. Since a Rule 41(b) dismissal "is a harsh remedy ... [it] is appropriate only in extreme situations." Lucas v. Miles, 84 F.3d 532, 535 (2d. Cir. 1996) (citation omitted). A determination of whether to dismiss an action pursuant to Rule 41(b) involves consideration of:

(1) the duration of the plaintiff's failure to comply with the court order,

(2) whether [the] plaintiff was on notice that failure to comply would result in dismissal,

(3) whether the defendants are likely to be prejudiced by further delay in the proceedings,

(4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and

(5) whether the judge has adequately considered a sanction less drastic than dismissal.

Lucas, 84 F.3d at 535 (citing Jackson v. City of New York, 22 F.3d 71,74 (2d Cir. 1994)) (additional citations omitted). "Generally, no one factor is dispositive." Shannon v. Gen. Elec. Co., 186 F.3d 186, 194 (2d Cir. 1999) (internal quotation marks and citation omitted). "When imposed, the sanction of dismissal 'operates as an adjudication upon the merits,' but may be without prejudice if so specified by the court imposing

it." Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982) (quoting FED. R. CIV. P. 41(b)).

A review of the Court's docket shows that plaintiff's inactivity began after he filed his Motion for Leave to Proceed IFP and notice of change of address on February 27, 2018. See Dkt. No. 5. On October 17, 2018, defendant provided plaintiff documents in accordance with the Mandatory Pretrial Discovery and Scheduling Order, yet plaintiff never provided defendant with any discovery. Reed Decl. ¶¶ 4, 6. Although plaintiff received adequate notice from defendant and the Court's Mandatory Pretrial Discovery and Scheduling Order, which advised him that "failure ... to attend, be sworn, and answer appropriate questions may result in sanctions, including dismissal of the action[,]" he failed to appear for his deposition on January 28, 2019. Reed Decl. ¶¶ 8, 10; Dkt. No. 20; Dkt. No. 26-2, Exhs. C, D. After plaintiff's failure to appear at his deposition, the Court set a telephone status conference for February 15, 2019, and again advised plaintiff that "failing to participate in court conferences or abide by Court Orders may result in the dismissal of his action." Dkt. No. 23. However, plaintiff did not appear for that conference. See Text Min. Entry dated Feb. 15, 2019. Additionally, Plaintiff failed to respond to defendant's Motion to Dismiss, despite being informed of that duty and the consequences of failing to respond. See Dkt No. 20 at 5; Dkt. No. 25; Dkt. No. 26-1 at 1; Text Min. Entry dated Feb. 15, 2019. For the past eighteen months plaintiff has not communicated with defendant or the Court in any manner.

**\*3** Further, defendant has been prejudiced by plaintiff's complete failure to participate in discovery. See Lucas, 84 F.3d at 535. Defendant has been denied access to necessary information to defend herself in this action and has incurred costs in preparing for and arranging plaintiff's January 28, 2019 deposition. See Def. Mem. of Law at 4; Reed Decl. ¶11. Defendant argues that she will be prejudiced by further delay because "[m]emory of the events giving rise to plaintiff's claims has likely faded from witnesses, and from the plaintiff himself, who has yet to be deposed" and since plaintiff is no longer in the custody of DOCCS "it [is] possible that documents that were once in [plaintiff's] possession have been lost during his transition." Def. Mem. of Law at 6; see Shannon v. Gen. Elec., 186 F.3d 186, 195 (2d. Cir. 1999) (discussing how unreasonable delay can be presumed even in the absence of a District Court's finding of specific prejudice to a defendant because "delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 50 of 364

Hutcheson v. Farnum, Not Reported in Fed. Supp. (2019)

2019 WL 7971873

will be made more difficult.") (citation omitted); Antonios A. Alevizopoulos & Associates, Inc. v. Comcast Int'l Holdings, Inc., No. 99-CV-9311 (SAS), 2000 WL 1677984, at *3 (S.D.N.Y. Nov. 8, 2000) (finding that the defendants' inability to depose the plaintiff "makes it difficult, if not impossible, [for the defendants] to defend the lawsuit" and weighs in favor of Rule 41(b) dismissal.). The undersigned agrees with defendant that she will be further prejudiced by plaintiff's failure to participate in discovery as the events that gave rise to this lawsuit occurred in September 2017. Although defendant has participated in court conferences, very little progress has been able to be made due to plaintiff's absence. Further, witness' and parties' recollection of these events has likely faded and will continue to fade. See Georgiadis v. The First Boston Corp., 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("[t]he passage of time always threatens difficulty as memories fade."). Additionally, since plaintiff has failed to produce any discovery, access to relevant discovery, such as the parties' abilities to locate witnesses and preserve evidence, will be impacted by further delay. See Shannon, 186 F.3d at 195 (finding that the defendants would be prejudiced by further delay due to the likelihood evidence had been misplaced and witness' memories had faded since the events at issue in the lawsuit took place over a decade prior, and witness' recollection had diminished.).

The undersigned is cognizant of plaintiff's pro se status; however, sanctions less extreme than dismissal will not be effective in this case. Mindful of the principles of law set forth herein, the undersigned determines that dismissal is appropriate in this matter. Plaintiff's failure to communicate with defendant and the Court subsequent to filing his Motion for Leave to Proceed IFP on April 18, 2018, establishes his intent to abandon this action. Moreover, his complete inactivity and disregard of the Court's notices and orders demonstrates that there is no meaningful way to secure plaintiff's appearance before the Court to litigate this action. See McKnight v. J. Ferrick, et al., No. 9:16-CV-0957 (TJM/DEP), 2017 WL 3172794, at *3 (N.D.N.Y. June 30, 2017) ("[P]laintiff's failure to communicate, which by now is nearly six months, weighs in favor of dismissal ... [a]lthough the length of plaintiff's delay to date is not exceedingly long, there is no indication of an end to his inactivity."). Plaintiff was warned that failure to participate in discovery and appear for a deposition may result in dismissal of his action, see Dkt. Nos. 20, 23, 26-1 at 1; however, he chose to disregard these warnings. Given plaintiff's apparent abandonment and his ongoing refusal to comply, despite being warned of the consequences, the undersigned finds that imposition of any

lesser sanction would not motivate plaintiff to litigate this action.

The undersigned has considered all of the relevant factors and finds that they weigh heavily in favor of dismissal. Thus, it is recommended that defendant's Motion to Dismiss on this ground be granted. Even considering plaintiff's pro se status, it is recommended that the dismissal of the action be with prejudice due to plaintiff's apparent abandonment of this case as evidenced by his lack of communication and participation over the last twenty months, including his failure to appear for his deposition, telephone status conference, or respond to defendant's motion to dismiss. See Karim-Rashid v. T. LaValley, No. 9:18-CV-495 (TJM/DEP), 2019 WL 1557164, at *1 (N.D.N.Y. Apr. 10, 2019) (granting the defendants' motion to dismiss with prejudice based on the pro se plaintiff's failure to appear for his deposition despite a warning from the Court and the plaintiff's failure to respond to the defendants' motion); Gaines v. Bezio, No. 9:09-CV-0176 (GTS/DEP), 2009 WL 2252140, at *1 (N.D.N.Y. July 28, 2009) (dismissing the pro se plaintiff's complaint with prejudice for failure to prosecute and failure to comply with a Court order); Solomon v. Beachlane Management, No. 03 Civ. 5688 (DLC), 2004 WL 2403950, at *1 (S.D.N.Y. Oct. 26, 2004) (discussing a district court's "inherent power to dismiss a case with prejudice for lack of prosecution pursuant to" Fed. R. Civ. P. 41(b)); but c.f. Cintron v. Gettman, No. 9:15-CV-0542 (BKS/TWD), 2017 WL 2303604, at *4 (N.D.N.Y. May 1, 2017) (recommending dismissal of the plaintiff's action be without prejudice for failure to appear for two scheduled depositions); Perkins v. Rock, No. 9:12-CV-0459 (LEK/RFT), 2014 WL 4988224, at *4 (N.D.N.Y. Oct. 7, 2014) (recommending dismissal of the plaintiff's action for failure to prosecute be without prejudice); Jones v. Hawthorne, No. 9:12-CV-1745 (GTS/RFT), 2014 WL 2533166, at *2 (N.D.N.Y. June 5, 2014) (dismissing the pro se plaintiff's complaint without prejudice where the plaintiff had been released from DOCCS custody and failed to provide the Court with an updated address or communicate with the Court for ten months); Grace v. New York, No. 10 Civ. 3853 (LTS/GWG), 2010 WL 3489574, at *2 (S.D.N.Y. Sept. 7, 2010) (recommending dismissal for failure to prosecute without prejudice where the plaintiff could not be reached at the address provided).

**B. Fed. R. Civ. P. 37**

Hutcheson v. Farnum, Not Reported in Fed. Supp. (2019)

2019 WL 7971873

**\*4** In the alternative to dismissal under Rule 41(b), defendant argues that plaintiff's complaint should be dismissed pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) and Fed. R. Civ. P. 37(d) for plaintiff's failure to submit to his deposition on January 28, 2019. See [Redacted] at 7-9. Fed. R. Civ. P. 37(b)(2)(A) provides for sanctions when a party fails to comply with a court order and states in relevant part: "If a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). Fed. R. Civ. P. 37(b)(2)(A)(v) allows for dismissal of the action in its entirety or in part. See FED. R. CIV. P. 37(b)(2)(A)(v). Fed. R. Civ. P. 37(d)(1)(A)(i) provides that the court can issue sanctions when "a party ... fails, after being served with proper notice, to appear for that person's deposition[.]" FED. R. CIV. P. 37(d)(1)(A)(i).

Dismissal is a drastic remedy which should generally only be used when lesser sanctions would be inappropriate. See Southern New England Tel. Co. v. Global NAPs Inc., 624 F.3d 123, 144 (2d Cir. 2010) (citations omitted). "[H]owever, discovery orders are meant to be followed"; thus, dismissal is justified when noncompliance is attributed to willfulness, bad faith, or fault of the offending party. See id. (internal quotation marks and citations omitted). In deciding an appropriate sanction, "the court may consider the full record ... [specifically] the willfulness of the non-compliant party; the reasons for noncompliance; and whether the party has been warned of the consequences of noncompliance." Broadcast Music, Inc. v. Metro Lounge & Café LLC, No. 5:10-CV-1149 (NAM/ATB), 2012 WL 4107807, at \*2 (N.D.N.Y. July 18, 2012) (citations omitted); see also Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 852-54 (2d Cir. 1995). The goals of sanctions are to "ensure that a party will not benefit from its own failure to comply ... [, act as] specific deterrents and seek to obtain compliance with the particular order issued [, and] ... serve [as] a general deterrent effect on the case at hand and on other litigation ..." Update Art, Inc. v. Modiin Pub., Ltd., 843 F.2d 67, 71 (2d Cir. 1988) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc. 427 U.S. 639 (1976)) (per curiam) (additional citation omitted).

As evidenced above, all relevant considerations support the dismissal of plaintiff's action as he has not communicated with either the Court or defendant since February 27, 2018, shortly after commencing this action. See Dkt. No. 5. Moreover, plaintiff did not comply with the Mandatory Pretrial Discovery and Scheduling Order by failing to appear for his deposition, despite being given proper notice

of the deposition, nor did he participate in the Court's telephonic status conference despite being given notice of the deposition and being warned of the consequences of failing to participate. See Dkt. Nos. 20, 23. Plaintiff's mail was never returned to the Court as undeliverable and he has never provided the Court with a different address; thus, it is presumed that plaintiff received all of the Court's communications. There is no indication that plaintiff's refusal to appear for his deposition or the Court's conference was anything but willful. The undersigned finds that the need to alleviate congestion on the Court's docket and prejudice to defendant outweighs plaintiff's right for a further opportunity to be heard in this matter. Accordingly, in the alternative to dismissal under Rule 41(b), it is recommended that dismissal be granted pursuant to Rule 37.

### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**\*5 RECOMMENDED**, that defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 41(b) (Dkt. No. 26) be **GRANTED** and plaintiff's complaint (Dkt. No. 1) be **DISMISSED with prejudice**; and it is further

**RECOMMENDED**, that, in the alternative to dismissal pursuant to Fed. R. Civ. P. 41(b), defendant's Motion to Dismiss, insofar as it seeks dismissal pursuant to Fed. R. Civ. P. 37(d), be **GRANTED** and plaintiff's complaint (Dkt. No. 1) be **DISMISSED with prejudice**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 626(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72. [4]

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 52 of 364
Hutcheon v. Farnum, Not Reported in Fed. Supp. (2019)
2019 WL 7971873

4    If you are proceeding pro se and are served with this
Order by mail, three additional days will be added
to the fourteen-day period, meaning that you have
seventeen days from the date the Order was mailed
to you to serve and file objections. FED. R. CIV. P.
6(d). If the last day of that prescribed period falls
on a Saturday, Sunday, or legal holiday, then the
deadline is extended until the end of the next day

that is not a Saturday, Sunday, or legal holiday. Id.
§ 6(a)(1)(C).

**IT IS SO ORDERED**.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 7971873

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:18-CV-00203**<br>Hutcheon v. Farnum et al | — | N.D.N.Y. | Feb. 16, 2018 | Docket |

**History (2)**

**Direct History (2)**

1. Hutcheon v. Farnum
2019 WL 7971873 , N.D.N.Y. , Nov. 04, 2019

*Report and Recommendation Adopted by*

2. Hutcheon v. Farnum
2020 WL 90786 , N.D.N.Y. , Jan. 08, 2020

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2020 WL 90786

2020 WL 90786
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Scott M. HUTCHEON, Plaintiff,
v.
E. FARNUM, Defendant.

9:18-CV-203 (MAD/CFH)
|
Signed 01/08/2020

**Attorneys and Law Firms**

SCOTT M. HUTCHEON, P.O. Box 602, Bellmore, New York
11710, Plaintiff pro se.

OF COUNSEL: MATTHEW P. REED, ESQ., OFFICE OF
THE NEW YORK STATE ATTORNEY GENERAL, The
Capitol, Albany, New York 12224, Attorneys for Defendant.

**DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge:

**\*1** On February 2, 2018, Plaintiff commenced this action *pro
se* pursuant to 42 U.S.C. § 1983 against Defendant E. Farnum.
See Dkt. No. 1-1. Plaintiff asserts that Defendant Farnum,
who was employed at Marcy Correctional Facility, violated
his constitutional rights under the Eighth Amendment. *See id.*
at 1–2.

On August 20, 2018, Magistrate Judge Christian F. Hummel
issued the Mandatory Pretrial Discovery and Scheduling
Order, setting a discovery deadline for February 20, 2019,
a copy of which was served via regular mail to Plaintiff's
provided address. *See* Dkt. No. 20; Text Entry dated Aug.
20, 2018. On January 28, 2019, Plaintiff failed to appear
for his deposition, after having been served with a notice
of same by Defendant on January 2, 2019. *See* Dkt. No.
26-2 at ¶¶ 8, 10, 11; Dkt. No. 26-2, Ex. C. Plaintiff did
not contact Defendant's counsel or communicate that he was
unable to attend, nor was the Notice of Deposition returned to
Defendant as undeliverable. *See* Dkt. No. 26-2 at ¶¶ 9, 10. On
February 4, 2019, Magistrate Judge Hummel set a telephone
status conference for February 15, 2019, and advised Plaintiff
that "fail[ure] to participate in court conferences or abide by
Court Orders may result in the dismissal of [the] action." Dkt.

No. 23. Notice was sent to Plaintiff's provided address, *see
id.*, after which Plaintiff failed to appear and did not contact
the Court. *See* Text Min. Entry dated Feb. 15, 2019.

On April 2, 2019, Defendant moved to dismiss the current
matter for failure to prosecute pursuant to Federal Rule of
Civil Procedure 41(b) and failure to obey a discovery order
pursuant to Federal Rule of Civil Procedure 37(d). *See* Dkt.
No. 26-1. Plaintiff was afforded until April 26, 2019, to file
a response. *See* Dkt. No. 25. To date, Plaintiff has not
responded to Defendant's Motion to Dismiss, filed objections
to Magistrate Judge Hummel's Report-Recommendation and
Order, or engaged in any activity or communication with the
Court since February 2018. *See* Dkt. Nos. 26, 27.

In a Report-Recommendation and Order dated November
4, 2019, Magistrate Judge Hummel recommended that
Plaintiff's complaint be dismissed for failure to prosecute,
and in the alternative, failure to obey a discovery order.
*See* Dkt. No. 27 at 10–11. Magistrate Judge Hummel
considered the five factors the court is required to consider
in determining whether dismissal for failure to prosecute
pursuant to Rule 41(b) of the Federal Rules of Civil Procedure
is appropriate. *See id.* at 4. Specifically, Magistrate Judge
Hummel found that "[e]ven considering plaintiff's *pro se*
status, it is recommended that the dismissal of the action
be with prejudice due to plaintiff's apparent abandonment
of this case as evidenced by his lack of communication and
participation over the last twenty months, including his failure
to appear for his deposition, telephone status conference, or
respond to defendant's motion to dismiss." *Id.* at 7. Having
considered the relevant factors, Magistrate Judge Hummel
recommended that the Court find that they "weigh decidedly
in favor of dismissal." *Id.*

**\*2** When a party files specific objections to a magistrate
judge's report-recommendation and order, the district court
"make[s] a *de novo* determination of those portions of the
report or specified proposed findings or recommendations to
which objection is made." 28 U.S.C. § 636(b)(1)(c). However,
when a party files "[g]eneral or conclusory objections, or
objections which merely recite the same arguments [that he]
presented to the magistrate judge," the court reviews these
recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-
CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011)
(citations and footnote omitted). After the appropriate review,
"the court may accept, reject, or modify, in whole or in part,
the findings or recommendations made by the magistrate
judge." 28 U.S.C. § 636(b)(1)(c).

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 57 of 364

Hutcheon v. Farnum, Not Reported in Fed. Supp. (2020)
2020 WL 90786

Rule 41(b) of the Federal Rules of Civil Procedure provides that,

> [i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits.

Fed. R. Civ. P. 41(b). Dismissal of an action with prejudice under this rule is a "harsh remedy to be utilized only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (internal quotation marks and citation omitted). This is particularly true where a plaintiff is proceeding *pro se. See, e.g., Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (holding that the circuit court will give due deference to the district court's Rule 41(b) dismissal of a *pro se* litigant's complaint "only when the circumstances are sufficiently extreme").

Notwithstanding a plaintiff's *pro se* status, Rule 41(b) gives the district court explicit authority to dismiss a case where the plaintiff fails to comply with the court's orders or otherwise fails to prosecute the action "diligently." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982). As explained in *Lyell Theatre*, this authority "is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Id.* at 42.

In determining whether dismissal for failure to prosecute is warranted, the district court must consider the following factors, none of which are dispositive: (1) the duration of the plaintiff's failures; (2) whether the plaintiff received notice that further delays would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay; (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights; and (5) whether lesser sanctions would be appropriate. *See United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004) (citations omitted).

In the present matter, Plaintiff received adequate notice that his failure to comply with Magistrate Judge Hummel's orders could lead to dismissal, and the Court agrees that no sanction short of dismissal is appropriate. Mindful of the fact that *pro se* cases should not readily be dismissed for procedural deficiencies, the Court concludes that Plaintiff's failures in this case go beyond procedural deficiencies and constitute actual neglect. Plaintiff has failed to prosecute this action diligently and has failed to comply with orders of this Court. As such, the Court finds that each of the factors relevant to the Rule 41(b) analysis favors dismissal.

**\*3** Having reviewed Magistrate Judge Hummel's November 4, 2019 Report-Recommendation and Order and the applicable law, the Court finds that Magistrate Judge Hummel correctly recommended that the Court should dismiss the claim against Defendant with prejudice in light of Plaintiff's failure to prosecute and obey court orders. *See* Dkt. No. 27 at 4–8.

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order is **ADOPTED in its entirety;** and the Court further

**ORDERS** that Plaintiff's complaint is **DISMISSED** with prejudice; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 90786

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1. Docket 9:18-CV-00203**<br>Hutcheon v. Farnum et al | — | N.D.N.Y. | Feb. 16, 2018 | Docket |

**History (2)**

**Direct History (2)**

1. Hutcheon v. Farnum
2019 WL 7971873 , N.D.N.Y. , Nov. 04, 2019

*Report and Recommendation Adopted by*

2. Hutcheon v. Farnum
2020 WL 90786 , N.D.N.Y. , Jan. 08, 2020

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Perez v. Wallace, Not Reported in Fed. Supp. (2016)

2016 WL 2865737

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 60 of 364

2016 WL 2865737
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gladys PEREZ, Plaintiff,
v.
Jack WALLACE, Defendant.

No. 1:15-CV-240 (GTS/CFH)
|
Signed 04/11/2016

**Attorneys and Law Firms**

Gladys Perez, 63 Second Street, Unit 1, Waterford, New York 12188, Plaintiff pro se.

City of Albany Corporation Counsel, City Hall, 24 Eagle Street, OF COUNSEL: VALERIE A. LUBANKO, ESQ., JOHN JOSEPH REILLY, ESQ., Albany, New York 12207.

**REPORT–RECOMMENDATION AND ORDER** [1]

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

CHRISTIAN F. HUMMEL, U.S. MAGISTRATE JUDGE

 **\*1** Plaintiff *pro se* brings this action regarding a single car accident and her subsequent arrest which occurred in March 2014. Dkt No. 1 ("Compl.") at 8.[2] Presently pending before the Court is defendant Jack Wallace's motion to dismiss pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P") Rule 41(b). Dkt. No. 37. Plaintiff failed to file a response to that motion. For the reasons set forth below, it is recommended that defendant's motion to dismiss for failure to prosecute be granted.

[2] The arrest did not result in any charges or incarceration. Compl. at 12.

**I. Background** [3]

[3] Any unpublished decisions cited within this Report–Recommendation and Order are attached hereto.

Plaintiff commenced this action on March 3, 2015 with the filing of a complaint and application to proceed in forma pauperis ("IFP"). Compl., Dkt. No. 2. On March 6, 2015, the Court issued a Report–Recommendation and Order which granted plaintiff's IFP application and recommended that (1) all claims against defendant Wallace in his official capacity be dismissed with prejudice; (2) all claims against defendant Albany Housing Authority be dismissed with prejudice; (3) the Fourth Amendment claim be dismissed without prejudice and with leave to amend; and (4) the assault, battery, and false arrest claims be dismissed without prejudice, and with leave to amend. Dkt. No. 4. Plaintiff did not file objections. On April 21, 2015, the District Court issued a Decision and Order adopting the Report–Recommendation and Order. Dkt. No. 6. That Decision and Order provided that plaintiff's Fourth Amendment claims and assault, battery and false arrest claims would be dismissed with prejudice and without further order of the Court unless, within thirty (30) days of the Decision and Order, plaintiff filed an amended complaint. Dkt. No. 6. Plaintiff failed to file an amended complaint.

On April 24, 2015, an Order was issued scheduling a Rule 16 conference for July 15, 2015. Dkt. No. 8. A copy of that Order was served on plaintiff by regular mail. *Id.* On July 2, 2015, the Court served a text reminder notice on all the parties regarding the Rule 16 conference. Dkt. Entry dated July 2, 2015. Plaintiff failed to appear for that conference. Text Minute Entry dated July 15, 2015. On July 15, 2015, the undersigned issued a text order rescheduling the Rule 16 conference for August 11, 2015. Dkt. No. 29. A copy of that text order was served upon plaintiff by certified mail, return receipt requested, at the address which appears on the court docket. *Id.* That mail was returned to the Court marked "return to sender-unclaimed-unable to forward." Dkt. No. 31.

On August 7, 2015, the United States Judicial Panel on Multidistrict Litigation issued a Transfer Order With Simultaneous Separation and Remand. Dkt. No. 30. Plaintiff's claims against defendants General Motors, LLC, General Motors Holding, LLC, Delphi Automotive, PLC, DPH–DAS, LLC F/K/A/ Delphi Automotive Systems, LLC, and Goldstein Chrysler Jeep, Inc., were transferred to the Southern District of New York. Dkt No. 30. Plaintiff's claims against the City of Albany and defendant Wallace were

2016 WL 2865737

remanded, pursuant to 28 U.S.C. § 1407(a), to the Northern District of New York. Dkt No. 30 at 3.[4]

[4]     As plaintiff did not file an amended complaint in accordance with the Court's Decision and Order dated April 21, 2015, all claims against the City of Albany are dismissed. Dkt. No. 6. The only remaining defendant is patrolman Jack Wallace.

**\*2** On August 11, 2015, a Rule 16 Conference was conducted. Plaintiff failed to appear for the Rule 16 Conference. Dkt. Entry dated August 11, 2015. Also on August 11, the Court issued a Uniform Pretrial Scheduling Order. Dkt. No. 32. That Order required, among other things, that each of the parties was to file a status report by November 20, 2015. Dkt. No. 32 at 10. Defendant filed his status report on November 20, 2015. Dkt. No. 34. Plaintiff failed to file a status report as directed by the Court.

On August 11, 2015, the undersigned issued a text order addressed to plaintiff's failure to attend two Rule 16 conferences. Dkt. No. 33. The text order provided that "plaintiff is advised that her failure to attend court conferences or to comply with court orders may result in the dismissal of her case for failure to prosecute." *Id.* A copy of that text order was served on plaintiff by regular mail. *Id.*

On November 23, 2015, the Court issued a text notice scheduling a conference for December 9, 2015. Dkt. No. 35. The parties were directed to appear in person for that conference. *Id.* The notice further provided that plaintiff was to immediately advise the Court if she was unable to appear in person for the conference. *Id.* A copy of that notice was served on plaintiff by regular mail. *Id.* Plaintiff failed to appear for that conference and did not notify the Court that she was unable to attend that conference in person. *Id.*

On December 9, 2015, the undersigned issued a text order setting a briefing schedule for defendant's Motion to Dismiss. Dkt No. 36. Defendant was ordered to file the Motion to Dismiss by December 31, 2015. *Id.* Plaintiff's response was due by January 9, 2016, with any reply to be filed by January 19, 2016. *Id.* The text order again advised plaintiff that failure to attend court conferences and/or to comply with court orders may result in dismissal of this action for failure to prosecute. *Id.*

On December 31, 2015, defendant filed a Motion to Dismiss for failure to prosecute and comply with a court order pursuant to Fed. R. Civ. P 41(b). Dkt. No. 37. Plaintiff was ordered to file any response to that motion by January 12, 2016. *Id.* On January 6, 2016, the Court issued a notice which extended plaintiff's time to file a response to the pending motion until January 19, 2016. Dkt. Entry dated Jan. 6, 2016. A copy of that notice was served on plaintiff by regular mail. *Id.*

## II. Discussion

Fed.R.Civ.P. 41(b) provides that a court may dismiss an action "[i] the plaintiff fails to prosecute or comply with [the Federal Rules of Civil Procedure] or a court order ..." *See* Link v. Wabash R.R. Co., 370 U.S. 626,629 (1962); Baptiste v. Sommers, 768 F.3d 212, 216 (2d. Cir.2014); *see also* N.D.N.Y.L.R. 41.2(b). Since a Rule 41(b) dismissal "is a harsh remedy ... [it] is appropriate only in extreme situations." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir.1996) (citation omitted). Further, where the plaintiff is proceeding *pro se*, "courts should be especially hesitant to dismiss for procedural deficiencies ..." Spencer v. Doe, 139 F.3d 107,112 (2d Cir.1998) (quoting Lucas, 84 F.3d at 535); *see also* Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir.2006). A determination of whether to dismiss an action pursuant to Rule 41(b) involves consideration of:

(1) the duration of the plaintiff's failure to comply with the court order,

(2) whether the plaintiff was on notice that failure to comply with result in dismissal,

(3) whether the defendants are likely to be prejudiced by further delay in the proceedings,

**\*3** (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and

(5) whether the judge has adequately considered a sanction less drastic than dismissal.

Lucas, 84 F.3d at 535 (citing Jackson v. City of New York, 22 F.3d 71,74 (2d Cir.1994)) (additional citations omitted).

A review of this case's procedural history shows that the complaint was filed on April 3, 2015. *See* Compl. As such, over one year has elapsed since the filing of this action, yet virtually no discovery has been conducted. A Rule 16 conference was scheduled for July 15, 2015. Dkt No. 8.

**Perez v. Wallace, Not Reported in Fed. Supp. (2016)**

2016 WL 2865737

Plaintiff failed to appear for that conference. Dkt. Entry dated July 15, 2015. A second Rule 16 conference was scheduled for August 11, 2015. Dkt. No. 29 Plaintiff again failed to appear for that conference. Dkt. Entry dated August 11, 2015. On August 11, 2015, the undersigned issued a text order which advised plaintiff that her failure to attend court conferences or comply with court orders may result in the dismissal of her case for failure to prosecute. *Id.* On December 9, 2015, the undersigned issued a text order which again advised plaintiff that failure to attend court conferences and/or to comply with court orders may result in dismissal of this action. Dkt. No. 36. Despite that warning, plaintiff failed to appear for the conference schedule for December 9, 2015. In view of the foregoing, it is clear that plaintiff has repeatedly been advised that failure to comply with the Court's orders may result in dismissal of this matter.

As a result of plaintiff's failure to participate in discovery and her refusal to attend court conferences, defendant has been denied access to information which he needs to prepare his defense in this matter. *See Shannon v. Gen. Elec. Co.,* 186 F.3d 186,195 (2d Cir.1990). In addition, it appears the address at which plaintiff provided to the Court is no longer valid, as mail sent to plaintiff at that address has been returned as undeliverable. Dkt. Nos. 31 and 38. However, plaintiff has failed to meet her duty to provide this Court with an updated address. Plaintiff's continuing failure to comply with court orders and participate in discovery has significantly delayed the resolution of this matter, thereby contributing to the Court's congestion.

The final consideration in determining whether to dismiss plaintiff's action for failure to prosecute is assessing whether there is a sanction less drastic than dismissal. *See Lucas,* 84 F.3d at 535. The Court is aware that dismissal is a particularly harsh remedy, especially when invoked against a *pro se* plaintiff. *Salahuddin v. Harris,* 782 F.2d 1127,1132 (2d Cir.1986); *Sec. and Exch. Comm'n v. Research Automation Corp.,* 521 F.2d 585,588–89 (2d Cir.1975). Mindful of the principles of law pronounced above, the undersigned finds that the imposition of a lesser sanction would have no effect on plaintiff or this litigation which has been pending since March 3, 2015. *See* Dkt. No. 1. The Court reaches this conclusion based on plaintiff's failure to provide the Court with a viable address for the service of court orders, refusal to participate in discovery, and plaintiff's continuing failure to comply with court orders and appear for scheduled court proceedings.

### III. Conclusion

**\*4 WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED** that defendant Jack Wallace's motion to dismiss plaintiff's complaint (Dkt. No. 37) pursuant to Fed.R.Civ.P. 41(b) be **GRANTED**, and that the complaint be **DISMISSED in its entirety with prejudice**; and it is

**ORDERED** that the Clerk of the Court serve this Report–Recommendation and Order on the parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.

### All Citations

Not Reported in Fed. Supp., 2016 WL 2865737

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:15cv00240**<br>PEREZ v. GENERAL MOTORS LLC ET AL | — | N.D.N.Y. | Mar. 03, 2015 | Docket |

**History (3)**

**Direct History (2)**

1. Perez v. Wallace 🐾
   2016 WL 2865737 , N.D.N.Y. , Apr. 11, 2016

   *Report and Recommendation Adopted by*

2. Perez v. Wallace
   2016 WL 2858857 , N.D.N.Y. , May 16, 2016

**Related References (1)**

3. Perez v. Gen. Motors, LLC
   2015 WL 1823438 , N.D.N.Y. , Apr. 21, 2015

McMillan v. Bowers, Not Reported in Fed. Supp. (2022)

2022 WL 19405935

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 66 of 364

2022 WL 19405935
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Timothy MCMILLAN, Plaintiff,
v.
BOWERS, et al., Defendants.

9:21-CV-0889 (LEK/CFH)
|
Signed November 28, 2022

**Attorneys and Law Firms**

Timothy McMillan, Bellevue Shelter, 400 E. 30th Street, New York, New York 10016, Plaintiff pro se.

RACHAEL S. OUIMET, ESQ., Assistant Attorney General, Attorney General for the State of New York, The Capitol, Albany, New York 12224, Attorney for Defendants Bowers and Clapper.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, UNITED STATES MAGISTRATE JUDGE

**\*1** Plaintiff pro se Timothy McMillan ("plaintiff"), a former inmate who was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that defendants Nurse Bowers, Nurse Clapper,[1] and Registered Nurse Clielliny – who, at all relevant times, were employed at Marcy Correctional Facility ("Marcy") – violated his constitutional rights under the Eighth Amendment. See Dkt. No. 1 ("Compl."). Presently pending before the Court is defendants Bowers and Clapper's ("defendants") motion to dismiss pursuant to Rules 41(b) and 16(f)(1) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). See Dkt. No. 33. For the following reasons, it is recommended that defendants' motion be granted.

1    The correct spelling of this defendant's name is "Clapper," not "Clappermi." See Dkt. No. 18 ("the Clerk of the Court is respectfully requested to modify the docket accordingly").

**I. Background**

Plaintiff commenced this action on August 9, 2021, while incarcerated at Marcy Correctional Facility. See Compl. On October 19, 2021, the Court granted plaintiff's in forma pauperis ("IFP") application and dismissed without prejudice all but plaintiff's Eighth Amendment deliberate indifference claims against defendants Bowers, Clapper, and Clielliny. See Dkt. No. 7. The Court also notified plaintiff of his duty "to promptly notify the Clerk's Office and all parties or their counsel of any change in his address," and advised him that his "failure to do so will result in the dismissal of this action[.]" Id. On December 27, 2021, defendants Bowers and Clapper filed their answer. See Dkt. No. 16.

Plaintiff's last interaction with the Court was on January 10, 2022, when the Court received plaintiff's "response" to defendants' answer.[2] Dkt. Nos. 19, 20. On February 3, 2022, the Court ordered that plaintiff file, within 30 days, "an affidavit with the Court showing cause why the claims asserted against defendant Clielliny should not be dismissed pursuant to Rule 4(m) of the Federal Rules of Civil Procedure for failure to timely serve her with process[.]" Dkt. No. 25. The Court mailed this Decision & Order to plaintiff at Marcy, which was returned to the Court as undeliverable, labeled "Return to Sender – Released." Dkt. No. 26.

2    The "response" has since been stricken from the record as the Court determined it was "unnecessary and not permitted since no counterclaims were asserted in the answer." Dkt. Nos. 19, 20.

On April 11, 2022, the Court set a telephone status conference for April 27, 2022, and advised plaintiff that "fail[ure] to participate in Court ordered conferences or abiding by Court ordered deadlines may result in the imposition of sanctions to include dismissal of this action." Dkt. No. 29. The Court sent notice of the April 27 telephone status conference by regular mail to plaintiff's last known address at Marcy and by e-mail to Marcy. See Dkt. No. 30. Marcy responded to the e-mail service advising the Court that plaintiff is no longer in NYS DOCCS custody. See Text Min. Entry dated Apr. 11, 2022. The Court's April 11, 2022, Text Order and Order directing plaintiff's participation in the conference were returned as undeliverable, labeled "Return to Sender – Released." Dkt. No. 31.

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 67 of 364
McMillan v. Bowers, Not Reported in Fed. Supp. (2022)
2022 WL 19405935

**\*2** On April 27, 2022, plaintiff failed to appear for the telephone status conference. See Text Min. Entry dated Apr. 29, 2022. On April 29, 2022, the Court granted defendants' request to file a motion to dismiss. See Dkt. No. 32. The Court sent notice of this Text Order by regular mail to plaintiff at Marcy and at the Bellevue Shelter ("Bellevue"), which Marcy provided as plaintiff's releasing address. See Dkt. No. 32; Ouimet Aff. ¶ 8. Both mailings were returned to the Court as undeliverable. See Dkt. Nos. 34-35.

On May 5, 2022, defendants Bowers and Clapper filed a motion to dismiss for lack of prosecution. See Dkt. No. 33. To date, plaintiff has not responded to defendants' motion to dismiss, nor has he engaged in any communication with the Court since his "response" to defendants' answer. See Dkt. No. 19.

## II. Discussion [3]

[3]     Copies of all unpublished cases cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

Defendants Bowers and Clapper request an order from the Court "dismissing the action, with prejudice, pursuant to Fed. R. Civ. P. 41(b) and Fed. R. Civ. P. 16(f)(1) on the ground that plaintiff has failed to prosecute this action and comply with the Court's Orders." Dkt. No. 33-1 at 1.

### a. Fed. R. Civ. P. 41(b)

First, defendants Bowers and Clapper move to dismiss the complaint for failure to prosecute pursuant to Fed. R. Civ. P. 41(b). See Dkt. No. 33-1. Fed. R. Civ. P. 41(b) provides that a court may dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order...." FED. R. CIV. P. 41(b); see Link v. Wabash R.R. Co., 370 U.S. 626, 630 (1963); see also N.D.N.Y. L.R. 41.2 (requiring dismissal when "it appears that the plaintiff has failed to prosecute an action ..."). As Rule 41(b) is a "harsh remedy," it is "appropriate only in extreme situations." Lucas v. Miles, 84 F.3d 532, 535 (2d Cir. 1996) (citing Alvarez v. Simmons Market Research Bureau, Inc., 839 F.2d 930, 932 (2d Cir. 1988)). Further, "district courts ... 'should be especially hesitant to dismiss for procedural deficiencies where ... the failure is by a pro se litigant.' " Davis v. Town of Hempstead, 597 F. App'x. 31, 32 (2d Cir. 2015) (summary

order) (quoting Lucas, 84 F.3d at 535). A determination whether to dismiss an action pursuant to Rule 41(b) involves consideration of:

(1) the duration of the plaintiff's failure to comply with the court order,

(2) whether [the] plaintiff was on notice that failure to comply would result in dismissal,

(3) whether the defendants are likely to be prejudiced by further delay in the proceedings,

(4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and

(5) whether the judge has adequately considered a sanction less drastic than dismissal.

Lucas, 84 F.3d at 535 (citing Jackson v. City of New York, 22 F.3d 71, 74 (2d Cir. 1994) (additional citation omitted)). "No one factor is dispositive." United States ex rel. Drake v. Norden Sys., Inc., 375 F.3d 248, 254 (2d Cir. 2004) (citing Peart v. City of New York, 992 F.2d 458, 461 (2d Cir. 1993)). "When imposed, the sanction of dismissal 'operates as an adjudication upon the merits,' but may be without prejudice if so specified by the court imposing it." Lyell Theatre Corp. v. Loews Corp., 682 F.2d 37, 43 (2d Cir. 1982) (quoting FED. R. CIV. P. 41(b)).

### i. Duration

In considering the duration of the delay, the Court reviews two inquiries: "(1) whether the failures to prosecute were those of the plaintiff, and (2) whether those failures were of significant duration." Drake, 375 F.3d at 255 (citing Martens v. Thomann, 273 F.3d 159, 180 (2d Cir. 2001)). The primary focus of this inquiry is "whether or not the delay was caused by plaintiff's side as a whole." Id.

**\*3** Here, the delays were due to (1) plaintiff's failure to comply with Court orders to show cause regarding why the claims asserted against defendant Clielliny should not be dismissed pursuant to Fed. R. Civ. P. 4(m), and (2) plaintiff's failure to appear at the April 27, 2022, telephone status conference as directed by the Court. See Dkt. Nos. 25, 30; Text Min. Entry dated Apr. 29, 2022. Additionally, plaintiff failed to respond to defendants' motion to dismiss, despite being reminded of that duty and the consequences of failing

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 68 of 364

McMillan v. Bowers, Not Reported in Fed. Supp. (2022)

2022 WL 19405935

to respond. As such, plaintiff caused the delay in this case. See Drake, 375 F.3d at 255.

As to whether plaintiff's failures were of significant duration, "there is no 'magic number' " for the length of the delay. Copeland v. Rosen, 194 F.R.D. 127, 131-32 (S.D.N.Y. 2000) ("the Second Circuit has affirmed the dismissal of cases for delays of less than two months") (citing Lucas, 84 F.3d at 535) (additional citations omitted); Drake, 375 F.3d at 255. The inquiry instead focuses on whether the plaintiff delayed the case "without excuse" by, for example, "disregarding the orders of the Court" and missing deadlines. Copeland, 194 F.R.D. at 132, 134. Plaintiff has not participated in this case since filing his "response" to defendants' answer. See Dkt. No. 19.

Significantly, plaintiff failed to "promptly notify" the Court and all parties with any change in his address, despite a warning that his "failure to do so may result in the dismissal of this action[.]" Dkt. No. 7 at 12. Due to this failure, all communications with plaintiff since February 3, 2022, have been returned as undeliverable. See Dkt. No. 25, Dkt. No. 26, Dkt. No. 31, Dkt. No. 34, Dkt. No. 35.

Local Rule 41.2(a) provides, "the plaintiff's failure to take action for four ... months shall be presumptive evidence of lack of prosecution." N.D.N.Y. L.R. 41.2(a). Plaintiff's failure to prosecute has stalled this case since January 10, 2022. See Dkt. No. 19. This is a significant delay, given that plaintiff provided no excuse for his failure to comply with Court orders and response deadlines. As such, this factor weighs in favor of dismissal.

### ii. Notice

The Court next assesses whether the plaintiff received express notice from the Court that further delays would result in dismissal. See Lucas, 84 F.3d at 535 (citing Jackson, 22 F.3d at 74) (additional citation omitted). The Court's orders of October 19, 2021, April 11, 2022, and April 29, 2022, all state that plaintiff's failure to notify the Court and all parties of any change in address, abide by Court orders and deadlines, and participate in Court-ordered conferences could lead to the imposition of sanctions, including the dismissal of his case. See Dkt. No. 7 at 12; Dkt. No. 29; Dkt. No. 32. All orders were served on plaintiff at the address he had provided to the Court and his releasing address. See Dkt. No. 7 at 12; Dkt. No. 29; Dkt. No. 32. Thus, as plaintiff received express notice from

the Court that failure to prosecute his case or update the Court with address changes could lead to dismissal of his case, this factor weighs in favor of dismissal.

### iii. Prejudice to Defendants

The third factor examines whether the defendants have been prejudiced by the plaintiff's failure to prosecute. See Lucas, 84 F.3d at 535 (citing Jackson, 22 F.3d at 74) (additional citation omitted). Prejudice to the defendant can be presumed where the plaintiff's delay is unreasonable; however, "the need to show actual prejudice is proportionally greater" if the delay is "moderate or excusable." Lyell Theatre Corp., 682 F.3d at 43 (citing Messenger v. United States, 231 F.2d 328, 331 (2d Cir. 1956)). Prejudice can be presumed in instances of unreasonable delay because "delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." Shannon v. Gen. Elec. Co., 186 F.3d 186, 195 (2d Cir. 1999) (citing Romanette v. Weetabix Co., 807 F.2d 309, 312 (2d Cir. 1986)).

**\*4** Here, plaintiff failed to comply with multiple Court orders, despite warnings that his failure to comply would risk dismissal. See Dkt. No. 7 at 12, Dkt. No. 29, Dkt. No. 32. Plaintiff's actions unreasonably delayed the case such that prejudice to defendants can be presumed. See Shannon, 186 F.3d at 195. Although defendants have participated in court conferences, very little progress has been able to be made due to plaintiff's absence. Further, witnesses' and parties' recollection of these events have likely faded and will continue to fade. See Georgiadis v. First Bos. Corp., 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("[t]he passage of time always threatens difficulty as memories fade"). Since plaintiff has failed to produce any discovery, access to relevant discovery would be impacted by further delay, including further delay of the parties' abilities to locate witnesses and preserve evidence. See Antonios A. Alevizopoulos & Assocs., Inc. v. Comcast Int'l Holdings, Inc., No. 99 Civ. 9311 (SAS), 2000 WL 1677984, at *3 (S.D.N.Y. Nov. 8, 2000) (finding that the defendants' inability to depose the plaintiff "makes it difficult, if not impossible, [for the defendants] to defend the lawsuit" and weighs in favor of Rule 41(b) dismissal). Further, this action has been pending since August 2021 and concerns an event that allegedly occurred in January 2020. See Compl. at 4. Thus, even if prejudice were not presumed, defendants have still been prejudiced by plaintiff's delays as the amount of time that has passed since the occurrence of the alleged incident

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 69 of 364

McMillan v. Bowers, Not Reported in Fed. Supp. (2022)

2022 WL 19405935

makes it more difficult for them to access evidence. See Id.; Shannon, 186 F.3d at 195. Therefore, this factor weighs in favor of dismissal.

#### iv. Balancing the Court's and Plaintiff's Interests

The fourth factor requires "balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard." Lucas, 84 F.3d at 535 (citing Jackson, 22 F.3d at 74) (additional citation omitted). A court cannot weigh its interest in managing its docket too heavily; instead, "compelling evidence of an extreme effect on court congestion" is necessary for this factor to weigh in favor of dismissal. Id. at 535-36. A plaintiff's receipt of "specific notice that his case" is in danger of dismissal, and his failure to act on that notice, is sufficient protection of a plaintiff's right to be heard. Shannon, 186 F.3d at 195. Further, a court's interest in managing its docket supersedes the plaintiff's interest in being heard when the plaintiff fails to "move [the] case toward trial." Heendeniya v. St. Joseph's Hosp. Health Ctr., 830 F. App'x 354, 358 (2d Cir. 2020) (summary order) (citing Chira v. Lockheed Aircraft Corp., 634 F.2d 664, 666 (2d Cir. 1980)). Here, the Court provided plaintiff multiple opportunities to be heard. See Dkt. No. 25, 29. Therefore, this factor weighs in favor of dismissal.

#### v. Consideration of Lesser Sanctions

Finally, the Court must "adequately consider[ ] a sanction less drastic than dismissal." Lucas, 84 F.3d at 535 (citing Jackson, 22 F.3d at 74) (additional citation omitted). Such responses include an extension of time or the imposition of a fine. See Drake, 375 F.3d at 257 ("[t]he trial court briefly considered the possibility of imposing a fine instead of dismissing the case outright"); Spencer v. Doe, 139 F.3d 107, 114 (2d Cir. 1998) ("[a] less drastic and more appropriate response would have been an extension of time"). However, "district courts are not required to exhaust possible lesser sanctions before imposing dismissal ... if such a sanction is appropriate on the overall record." S. New Eng. Tel. Co. v. Glob. NAPs Inc., 624 F.3d 123, 148 (2d Cir. 2010) (citing John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc., 845 F.2d 1172, 1176-77 (2d Cir. 1988)). Moreover, dismissal has been found to be an "adequate remedy for failure to prosecute where a plaintiff cannot be contacted, because the plaintiff would be unaware of any lesser sanction that could be imposed." Rubin v. Abbott Lab'ys, 319 F.R.D. 118, 122 (S.D.N.Y. 2016) (citing Blake v.

Payane, No. 08 Civ. 930, 2011 WL 7163172, at *2 (S.D.N.Y. Mar. 11, 2022)) (additional citations omitted).

Plaintiff has not made any contact with the Court or defendants since the Court received plaintiff's "response" to defendants' answer. See Dkt. No. 19. As such, imposing a lesser sanction would be ineffective because plaintiff's failure to comply with the Court's orders indicates that a lesser sanction would not motivate him to participate in this action. See Rubin, 319 F.R.D. at 122 (citation omitted). Further, given that plaintiff has not provided an updated address, the Court is unable to establish contact with plaintiff. See Flynn v. Ward, No. 9:15-CV-1028 (BKS/CFH), 2019 WL 2085986, at *2 (N.D.N.Y. May 13, 2019) (noting that lesser sanctions were unlikely to be successful where the plaintiff did not update the Court with an address and the Court "currently has no way of contacting [the p]laintiff").

*5 Even if the Court were to impose a lesser sanction, it would have to "adequately address the prejudice defendants had suffered" to be effective. Drake, 375 F.3d at 257. A fine is not likely to be effective in addressing the prejudice defendants suffered from the delay in the case as plaintiff is unlikely to be able to pay, and a fine does not mitigate the potential difficulty defendants could face in collecting evidence on an alleged incident that occurred in 2020. See Coss v. Sullivan Cnty. Jail Adm'r, 171 F.R.D. 68, 72-73 (S.D.N.Y. 1997) (holding that "the imposition of monetary sanctions ... [is not] an adequate penalty" to cure prejudice to the defendant where the plaintiff is proceeding IFP); Jackson v. United States, No. 8:17-CV-1157 (MAD/CFH), 2020 WL 109009, at *5 (N.D.N.Y. Jan. 9, 2020) (finding sanctions less than dismissal inappropriate where the plaintiff repeatedly failed to provide updates about obtaining new counsel, failed to respond to the motion to dismiss for failure to prosecute, and failed to attend court-ordered telephone conferences) (citing Peters-Turnbull v. Bd. of Educ. of City of New York, No. 96-CV-4914, 1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999)). As such, this factor also weighs in favor of dismissal.

Accordingly, it is recommended that dismissal for failure to prosecute be granted pursuant to Rule 41(b).

#### b. Fed. R. Civ. P. 16(f)(1)

Defendants also move to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 16(f)(1) for his failure to participate in the April 27, 2022, telephone conference. See Dkt. No. 33-1

McMillan v. Bowers, Not Reported in Fed. Supp. (2022)

2022 WL 19405935

at 6. Fed. R. Civ. P. 16(f)(1) authorizes the Court to issue "any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)," where a party or its attorney "(A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate – or does not participate in good faith – in the conference; or (C) fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 37(b)(2)(A) provides for sanctions when a party fails to comply with a court order and states, in relevant part, "[i]f a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A).

As demonstrated above, all relevant considerations support the dismissal of plaintiff's action as he has not communicated with the Court or defendants since January 10, 2022, less than six months after commencing this action. See Dkt. No. 19. Moreover, plaintiff did not comply with the Court's February 3, 2022, Decision and Order. See Dkt. No. 25. Plaintiff also failed to participate in the Court's telephone conference despite receiving notice of the Court conference and being warned of the consequences of failing to participate. See Dkt. No. 32. The Court presumes that plaintiff did not receive Court communications since February 3, 2022, because plaintiff's mail was returned to the Court as undeliverable. See Dkt. No. 26. Thus, plaintiff also failed to comply with his obligation to "promptly notify the [Court] and all parties or their counsel, in writing, of any change in ... address" despite being warned that "his failure to do so may result in the dismissal of this action." Dkt. No. 7 at 12. There is no indication that plaintiff's refusal to appear for the Court's conference is anything but willful. The undersigned determines that the need to alleviate congestion on the Court's docket as well as the prejudice to defendants outweigh plaintiff's right for a further opportunity to be heard. Accordingly, in the alternative to dismissal under Rule 41(b), it is recommended that dismissal be granted pursuant to Rule 16(f)(1).

#### c. The Unserved Defendant

Plaintiff never properly identified or served any complaint on defendant Clielliny. Under Fed. R. Civ. P. 4(m), "if a defendant is not served with 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless "the plaintiff shows good cause

for the failure." FED. R. CIV. P. 4(m). The Local Rules shorten this time period for effectuating service to 60 days. N.D.N.Y. L.R. 4.1(b). The Second Circuit has said that "Rule 4 ... is to be construed liberally," and that failure to serve a defendant will lead to dismissal "unless it appears that proper service may still be obtained." Romandette, 807 F.2d at 311 (citing Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir. 1972)) (alteration to original). Moreover, Rule 4(m) gives the court discretion "to extend the time for service." Jones v. Westchester Cnty., 182 F. Supp. 3d 134, 144-45 (S.D.N.Y. 2016) (citing Henderson v. United States, 517 U.S. 654, 662 (1996)) (additional citation omitted).

**\*6** On February 2, 2022, the Court issued an Order giving plaintiff "30 days to file an affidavit with the Court showing cause why the claims asserted against defendant Clielliny should not be dismissed for failure to timely effectuate service of process on that individual." Dkt. No. 25. The Court issued such order even though "the Local Rules of Practice for this Court required that the defendants be served with process on or before December 19, 2021." Id. As plaintiff did not serve defendant Clielliny within 90 days of filing his complaint and has not responded to this Order, dismissal for failure to timely serve is warranted in accordance with Rule 4(m).

#### d. Dismissal Without Prejudice

The undersigned has considered all relevant factors and concludes that they weigh heavily in favor of dismissal. Notwithstanding, in light of plaintiff's pro se status, it is recommended that the dismissal of the action be without prejudice as to defendants Bowers, Clapper, and Clielliny. See Cintron v. Gettman, No. 9:15-CV-542 (BKS/TWD), 2017 WL 2303604, at *4 (N.D.N.Y. May 1, 2017) (recommending dismissal without prejudice due to the plaintiff's failure to appear for two scheduled depositions), report and recommendation adopted, No. 9:15-CV-542 (BKS/TWD), 2017 WL 2303990 (N.D.N.Y. May 25, 2017); Nelson v. VanHoesen, No. 9:20-CV-258 (GLS/CFH), 2022 WL 605741, at *4 (N.D.N.Y. Feb. 1, 2022) (recommending dismissal of the pro se plaintiff's complaint without prejudice for failure to prosecute where the plaintiff could not be reached at the address provided), report and recommendation adopted, No. 9:20-CV-258 (GLS/CFH), 2022 WL 602651 (N.D.N.Y. Mar. 1, 2022); Jones v. Hawthorne, No. 9:12-CV-1745 (GTS/RFT), 2014 WL 2533166, at *2 (N.D.N.Y. June 5, 2014) (dismissing the pro se plaintiff's complaint without prejudice where the plaintiff had been released from

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 71 of 364

McMillan v. Bowers, Not Reported in Fed. Supp. (2022)
2022 WL 19405935

DOCCS custody and failed to provide the Court with an updated address or communicate with the Court for ten months). "When imposed, the sanction of dismissal 'operates as an adjudication [on] the merits,' but may be without prejudice if so specified by the court imposing it." Lyell Theatre Corp. 682 F.2d at 43 (quoting FED. R. CIV. P. to the limited extent it seeks dismissal with prejudice. It is further recommended that the sua sponte dismissal of defendant Cliellliny under Rule 4(m) be without prejudice.

### III. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that defendants Bowers and Clapper's motion to dismiss for failure to prosecute, insofar as it seeks dismissal pursuant to Fed. R. Civ. P. 41 (Dkt. No. 33), be **GRANTED in part,** and plaintiff's complaint against defendants Bowers and Clapper be **DISMISSED in its entirety without prejudice**; and it is further

**RECOMMENDED**, that, in the alternative to dismissal pursuant to Fed. R. Civ. P. 41, defendant Bowers and Clapper's motion to dismiss for failure to prosecute (Dkt. No. 33) be **GRANTED in part**, insofar as it seeks dismissal pursuant to Fed. R. Civ. P. 16(f)(1), and that plaintiff's complaint against defendants Bowers and Clapper be **DISMISSED** in its entirety **without prejudice**; and it is further

**RECOMMENDED**, that defendants Bowers and Clapper's motion to dismiss, only insofar as it seeks dismissal with prejudice, be **DENIED**; and it is further

**RECOMMENDED**, that plaintiff's complaint as set forth against unserved defendant Cliellliny be **DISMISSED without prejudice** pursuant to Fed. R. Civ. P. 4(m); and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Hum. Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 71 & 6(a). [4]

[4]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 19405935

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1.  Docket 9:21-CV-00889**<br>McMillan v. Bowers et al | — | N.D.N.Y. | Aug. 09, 2021 | Docket |

**History (3)**

**Direct History (2)**

1. McMillan v. Bowers
   2022 WL 19405935 , N.D.N.Y. , Nov. 28, 2022

*Report and Recommendation Adopted by*

2. McMillan v. Bowers
   2023 WL 2534413 , N.D.N.Y. , Mar. 16, 2023

**Related References (1)**

3. McMillan v. Bowers
   2021 WL 12314568 , N.D.N.Y. , Oct. 19, 2021

2020 WL 3492000

2020 WL 3492000
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Elias A. WORKNEH, Plaintiff,

v.

SUPER SHUTTLE INTERNATIONAL,
INC., et al., Defendants.

15 Civ. 03521 (ER) (RWL)
|
Signed 06/08/2020

**Attorneys and Law Firms**

Elias A. Workneh, Flushing, NY, pro se.

Jamie Scott Felsen, Matthew Alexander Brown, Milman
Labuda Law Group PLLC, Lake Success, NY, for Defendants.


**REPORT AND RECOMMENDATION TO HON.
EDGARDO RAMOS: MOTION TO DISMISS**

ROBERT W. LEHRBURGER, United States Magistrate
Judge.

 **\*1**  Over five years ago, Plaintiff, proceeding pro se, filed this
action for alleged employment discrimination and wrongful
termination. Throughout the course of the litigation, however,
Plaintiff has repeatedly disobeyed court orders, failed to meet
his discovery obligations, and delayed the proceedings, all
the while forcing Defendants to incur unnecessary legal costs
and the Court to squander judicial resources. Despite multiple
warnings from the Court that Plaintiff's willful misconduct
could and would result in sanctions, including dismissal, his
intransigence continued unabated. Defendants now move to
dismiss the case as a sanction pursuant to Fed. R. Civ. P.
37(b)(2)(A) and for failure to prosecute pursuant to Fed. R.
Civ. P. 41(b). The Court agrees that dismissal at this juncture
is warranted and therefore recommends that Defendants'
motion to dismiss be GRANTED.


**Factual and Procedural Background**

Elias A. Workneh ("Plaintiff" or "Workneh"), proceeding pro
se, filed this action on April 24, 2015, claiming employment
discrimination on the basis of his race, color, and national

origin, and retaliation for complaining about the alleged
discrimination, all in violation of Title VII of the Civil Rights
Act of 1964 and the New York City Human Rights Law. He
also alleged a hostile work environment and violation of the
Family Medical Leave Act ("FMLA"). (Complaint, Dkt. 2.)


**A. Plaintiff's Failure to Comply with Mediation Order**
On May 21, 2015, the Court referred the case to mediation
and directed that pro bono counsel be appointed to represent
Plaintiff for the mediation (the "Mediation Order"). (Dkt. 6.)
The Mediation Order required any objection to participating
in the mediation or appointment of counsel to be filed by
June 4, 2015. (*Id.*) Plaintiff did not file any objection; to the
contrary, he filed a letter affirmatively stating that he had no
objection to either mediation or appointment of counsel for
that purpose. (Dkt. 7.) On June 16, 2015, pro bono counsel
filed his appearance for the limited purpose of representing
Plaintiff for the mediation. (Dkt. 8.) On August 12, 2015, the
mediation was scheduled for October 26, 2015.

The mediation did not take place. On October 23, 2015,
Plaintiff's pro bono counsel informed defense counsel that
Plaintiff would not participate in and would not appear for
the mediation and that he no longer was interested in having
pro bono counsel represent him. (*See* Dkt. 18.) By that time,
defense counsel had already expended resources preparing for
the mediation. (*Id.*) On October 28, 2015, Defendants moved
to dismiss the case as a sanction and for failure to prosecute.
(*Id.*) On October 30, 2015, the Court directed Plaintiff to
inform the Court by November 13, 2020, why Plaintiff
cancelled the mediation. (Dkt. 20.) Plaintiff submitted a letter
stating that he decided not to participate in the mediation
because he disagreed with pro bono counsel about strategy
and the accuracy of statements being made. (Dkt. 22.) The
Court subsequently denied Defendants' motion to dismiss.
(Dkt. 25.)


**B. Plaintiff's Failure to Comply with Discovery Requests
and Orders**
 **\*2**  During 2016 and 2017, the parties engaged in motion
practice, which resulted in the winnowing of Plaintiff's claims
and three amended complaints. (*See* Dkt. 68, 88, 92, 107.) On
April 3, 2018, the Court issued a scheduling order requiring
all fact discovery to be completed by September 28, 2018, and
expert discovery by October 28, 2018. (Dkt. 129.)

On April 11, 2018, Defendants filed a letter motion to compel
to require Plaintiff to respond to Defendants' first set of

2020 WL 3492000

document requests and interrogatories. (Dkt. 132.) Responses to those discovery requests initially were due by March 11, 2018, and Defendants extended the date to March 30, 2018. (*Id.*) Plaintiff, however, did not respond, indicating that he believed the scheduling order had extended dates for responses to discovery requests. (*See id.*) On April 12, 2018, this Court issued an order clarifying that the scheduling order had not changed response deadlines and ordering that Plaintiff must serve his responses to Defendants' first set of requests by May 7, 2018 (the "First Discovery Order"). (Dkt. 133.)

Plaintiff did not comply with the First Discovery Order. On May 29, 2018, Defendants informed the Court that Plaintiff had not responded at all to Defendants' first set of document requests and refused to produce any documents in response to Defendants' second set of document requests which had been served in the interim. (Dkt. 134.) Additionally, Plaintiff provided insufficient responses to Defendants' interrogatory responses. (*Id.*) Following a conference to discuss the matter, this Court issued an order on June 18, 2018, granting Defendants' motion to compel and requiring Plaintiff to respond to Defendants' first set of document requests by June 25, 2018, and supplement his interrogatory responses to cure numerous deficiencies (the "Second Discovery Order"). (Dkt. 139.) The Second Discovery Order warned Plaintiff, "Failure to meet the deadlines herein may result in the imposition of sanctions." (*Id.* ¶ 4.)

Three days before the due date for his responses to the document requests, Plaintiff filed a letter asking for additional time to respond. (Dkt. 140.) On June 26, 2018, this Court granted the extension, issuing an order that extended the response deadline to July 6, 2018, stated there would be no further extensions, and warned that "[a]s before, failure to meet these or any other deadlines may result in the imposition of sanctions, including but not limited to, dismissal of the case." (Dkt. 141 ¶ 2.)

On July 31, 2018, Defendants filed a second letter motion to compel Plaintiff to provide sufficient responses to Defendants' first set of interrogatories and to cure many deficiencies in Plaintiff's responses to Defendants' first set of document requests. (Dkt. 142.) Following receipt of Plaintiff's response to the letter motion, this Court issued an order on August 14, 2018, requiring Plaintiff, with a couple limited exceptions, to "fully comply with all other Document Demands and Interrogatories" and to "provide a sworn statement that Plaintiff has produced all documents and provided all information to the extent he has possession,

custody, or control...." (the "Third Discovery Order"). (Dkt. 147 ¶ 5.) The Third Discovery Order required Plaintiff's compliance by August 27, 2018, and warned that "[f]ailure to comply with this or any other Court Order may result in the imposition of sanctions, including dismissal of the case with prejudice." (*Id.* ¶ 7.) Plaintiff never provided the requisite sworn statement.

**\*3** On August 16, 2018, after receiving supplemental legal authority submitted by Defendants, this Court issued an order directing Plaintiff to respond to an additional document demand (the "Fourth Discovery Order"). (Dkt. 149.) The Court again warned that "[f]ailure to comply with this or any other Court Order may result in the imposition of sanctions, including dismissal of the case with prejudice." (*Id.* ¶ 3.)

On August 24, 2018, Plaintiff filed a letter objecting to the Fourth Discovery Order and seeking "clarification" with respect to the Third Discovery Order. (Dkt. 150.) Plaintiff's letter appeared to be asking the Court to rule on the sufficiency of Plaintiff's response to each document request and interrogatory. (*See id.*)

On September 13, 2018, this Court issued an order overruling Plaintiff's objection, and rendering a specific ruling for each document request and interrogatory for which Plaintiff sought a ruling (the "Fifth Discovery Order"). (Dkt. 154.) The Fifth Discovery Order spelled out in even greater detail the documents and information Plaintiff had to provide, required Plaintiff to provide a sworn statement attesting to the truth of his answers to the interrogatories, and mandated compliance by September 27, 2018. (*Id.*) The Court also extended all deadlines by three months, explaining, "Many of Plaintiff's discovery responses to date have been non-responsive or incomplete. Additional time to complete discovery is necessary." (*Id.* ¶ 24; *see also* Amended Civil Case Discovery Plan and Scheduling Order, Dkt. 156.) The Fifth Discovery Order warned that "[f]ailure to comply with this order and other orders may result in sanctions, including but not limited to preclusion from offering or contesting evidence, dismissal of the case, or any other appropriate sanction." (*Id.* ¶ 26.)

On October 22, 2018, Defendants filed a letter that Plaintiff had complied with the Fifth Discovery Order except in two respects. (Dkt. 158.) On October 24, 2018, this Court issued an order directing Plaintiff to produce the documents to which he continued to object despite the Court's prior orders

2020 WL 3492000

requiring their production (the "Sixth Discovery Order"). (Dkt. 160.)

Defendants deposed Plaintiff on January 16, 2019, and made document requests on the record and in a follow-up email. (*See* Dkt. 171 at 1-3 and Ex. A, C.) Plaintiffs failed to respond at all to several of the requests and raised objections with others. (*See id.* at Ex. B.) On March 11, 2019, this Court issued an order directing Plaintiff to produce six categories of documents or information in response by March 25, 2019 (the "Seventh Discovery Order"). (Dkt. 178.) On March 22, 2019, Plaintiff moved for reconsideration of the Seventh Discovery Order. (Dkt. 179.) This Court denied the application on March 25, 2019, and ordered that Plaintiff produce the materials by April 4, 2019. (Dkt. 181.)

On April 9, 2019, Defendants filed a letter motion to find Plaintiff in contempt for failing to comply with the Seventh Discovery Order. (Dkt. 184.) Following an interceding period of more than a month where Plaintiff violated court orders regarding a settlement conference (see below), the Court issued an order on June 10, 2019, directing Plaintiff to produce certain documents and information that were previously ordered to be produced in the Seventh Discovery Order, by June 24, 2019 (the "Eighth Discovery Order"). (Dkt. 199.) The Eighth Discovery Order warned Plaintiff that failure to comply may result in sanctions "including but not limited to monetary sanction, adverse inferences, or dismissal of Plaintiff's Complaint." (*Id.* ¶ 7.) The Court denied without prejudice Defendants' application to find Plaintiff in contempt but indicated that the Court would entertain a renewed request if Plaintiff failed to comply. (*Id.* ¶ 8.) Finally, the Court extended discovery and other dates, establishing July 31, 2019, as the fact discovery deadline. (*Id.* ¶ 9.)

## C. Plaintiff's Failure to Comply with Settlement Conference Orders

**\*4** On March 6, 2019, this Court issued two orders related to having a settlement conference with the Court. The first order scheduled a pre-settlement conference telephone call with the parties to take place on April 11, 2019 (the "First Settlement Conference Order"). (Dkt. 175.) The First Settlement Conference Order specified the time of the conference and the number the parties were to jointly call. (*Id.*) The second order scheduled the in-person settlement conference for May 8, 2019 (the "Second Settlement Conference Order"). (Dkt. 176.) The Second Settlement Conference Order specified the time of the in-person conference and the room in which it would take place at the Courthouse. (*Id.*)

At the appointed time for the April 11, 2019 telephone call, defense counsel appeared (by phone) but Plaintiff did not. Instead, Plaintiff submitted a letter stating that he is not willing to participate in a settlement conference pro se, and that the April 11 date was scheduled without his having previously agreed to the date. (Dkt. 185.) On April 23, 2019, this Court issued an order finding that Plaintiff's failure to appear was an intentional violation of this Court's orders, and that "Plaintiff's purported excuses are meritless" (the "Third Settlement Conference Order"). [1] (Dkt. 187 at 1.) The Third Settlement Conference Order stated that the May 8, 2019 settlement conference would go forward as scheduled and warned Plaintiff, "Failure to appear at the conference may result in sanctions, including dismissal of the case with prejudice." (*Id.* at 2.)

[1]     Regarding Plaintiff's pro se status, the Court previously had had discussions with Plaintiff and defense counsel about setting a settlement conference date, yet Plaintiff never said that he did not want to participate because he was pro se. (*See* Dkt. 187.) As to the date of the April 11, 2019 conference call, Plaintiff had multiple opportunities in advance of that date to inform the Court that he wanted a different date. (*See id.*) Indeed, between March 6, 2019, when the Court ordered the telephone conference date, and the date of the call, April 11, 2019, Plaintiff filed several letters addressing discovery issues but did not at any time express concern about the April 11, 2019 date. *See* Dkt. 177, 179, 182, 183.

By letter received by the Court May 2, 2019, Plaintiff asked the Court to cancel the May 8, 2019 settlement conference, claiming that he never agreed to that date. (Dkt. 189.) On May 7, 2019, the Court denied that request, warning that failure to appear at the May 8, 2019 conference "will result in dismissal with prejudice" (the "Fourth Settlement Conference Order"). (Dkt. 191 at 1.) Also on May 7, 2019, an attorney named Brian Keith Robinson filed a formal appearance as retained counsel for Plaintiff. (Dkt. 193.) The following day, May 8, 2019, Defendants appeared for the settlement conference, having flown from Chicago to do so. Plaintiff and attorney Robinson also appeared on May 8, 2019, for the settlement conference, but attorney Robinson was thoroughly unfamiliar with the case, and Plaintiff did not make a good faith attempt to resolve the matter. (*See* Dkt. 198.) Shortly thereafter, Plaintiff informed attorney Robinson that Plaintiff no longer wished

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 77 of 364
Worknell v. Super Shuttle International, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 3492000

to be represented and that "he wanted to return to the status quo ante." (Dkt. 196 at 1.) Robinson made a formal request to withdraw, which the Court granted on June 4, 2019. (Dkt. 197.)

### D. Plaintiff's Defiance of the Court's Orders to Provide a HIPAA Release

Following Robinson's withdrawal, Plaintiff continued pro se. During July 2019, further disputes arose as to whether Plaintiff had sufficiently complied with the Seventh and Eighth Discovery Orders, and were resolved by the Court. (*See* Dkt. 206, 209.) That was not, however, the end of Plaintiff's obstructive conduct.

**\*5** On July 25, 2019, Defendants served Plaintiff with a HIPAA authorization form requesting that he sign it so that Defendants could obtain records from a medical provider. (*See* Dkt. 207.) In particular, Defendants were interested in obtaining a dental office report, a copy of which Plaintiff claimed to have been the alleged basis for his absence from the office and which he alluded to in his deposition. (*See* Dkt. 171 at Ex. C.) On August 16, 2019, Plaintiff submitted a letter objecting to the HIPAA request. (Dkt. 208.) Defendants moved to compel. (Dkt. 210.) On August 19, 2019, this Court ordered Plaintiff to execute and return to Defendants a HIPAA authorization no later than September 1, 2019 (the "First HIPAA Order"). (Dkt. 211.)

Plaintiff did not comply with the First HIPAA Order. In refusing to do so, Plaintiff first argued that Defendants already had obtained the relevant medical report from him (which they had not). (Dkt. 208.) After Defendants debunked that excuse (Dkt. 210), Plaintiff again refused, demanding that he first receive from Defendants the documents Defendants already had obtained from his dentist by subpoena. (Dkt. 220.) Months earlier, in January 2019, Defendants had provided Plaintiff with information received in response to the subpoena they served on the dentist – but that limited information did not include the medical record in question, which is why Defendants needed the HIPAA authorization from Plaintiff. (*See* Dkt. 230.) Accordingly, on September 23, 2019, this Court again directed Plaintiff to provide the executed HIPAA authorization by October 7, 2019 (the "Second HIPAA Order").[2] (Dkt. 223.)

Court's orders, the Court later again extended fact discovery to January 10, 2020. (Dkt. 231.)

Plaintiff did not comply with the Second HIPAA Order, again offering the untenable rationale that he would not execute the HIPAA form until Defendants produce the very documents for which they needed the HIPAA. (Dkt. 226.) On October 10, 2019, Defendants wrote to the Court asking it to require Plaintiff to immediately execute the HIPAA form, which Defendants had sent to him several times. (Dkt. 227.) Once again, Plaintiff wrote to the Court contending that defense counsel already had what he was seeking. (Dkt. 229.) And once again, Defendants debunked Plaintiff's purported excuse. (Dkt. 230.)

To address Plaintiff's continued recalcitrance, this Court issued an order on October 21, 2019, scheduling a case management conference in court for November 18, 2019 (the "Third HIPAA Order"). (Dkt. 228.) The date for the conference was selected after extensive efforts by the Court's staff to coordinate with Plaintiff to ensure his availability for an in-person conference. (*See* Dkt. 233.)

When November 18, 2019 arrived, Plaintiff did not. Defense counsel appeared in person. Plaintiff, however, purposefully did not appear in person, which resulted in the Court tracking him down by telephone so that the conference could proceed. During the conference, the Court addressed Plaintiff's ongoing failure to comply with multiple prior court orders regarding his discovery obligations. (*See* Dkt. 233.) The Court stated that it had scheduled the in-person conference so that, among other matters, Plaintiff could execute the HIPAA authorization, which Plaintiff had until then refused to do in violation of the Court's orders. Because Plaintiff failed to appear in person, however, the HIPAA authorization could not be executed. Accordingly, following the conference on November 18, 2019, this Court issued an order requiring Plaintiff to sign the HIPAA authorization and provide it to Defendants by both email and regular mail by November 28, 2019 (the "Fourth HIPAA Order"). (Dkt. 233.) This time, the Court gave its most definitive warning to date: "Failure to comply with the terms of this Order will result in sanctions, including a recommendation that this case be dismissed with prejudice." (*Id.* ¶ 4.)

**\*6** Once again Plaintiff did not comply and failed to provide an executed HIPAA authorization. On December 2, 2019, Defendants informed the Court that Plaintiff had not complied, and requested the Court to issue an order recommending dismissal of the case pursuant to the Court's

2020 WL 3492000

admonition at the November 18, 2019 conference. (Dkt. 234.) Plaintiff responded by submitting a letter raising meritless grounds to forestall his execution of the HIPAA form. (*See* Dkt. 235.)

The Court therefore issued an order on December 6, 2019, directing Defendants to file by January 17, 2020, proposed findings of fact and conclusions of law pertaining to Plaintiff's repeated failure to comply with the Court's orders. (Dkt. 236.) The Court directed that Plaintiff's response, if any, be filed by February 18, 2020. (*Id.*)

### E. Defendants' Motion to Dismiss and Plaintiff's Failure to Substantively Oppose

As scheduled, on January 17, 2020, Defendants filed their Proposed Findings of Fact and Conclusions of Law in support of their motion to dismiss for failure to comply with the Court's orders. (Dkt. 242.) Plaintiff did not file a response. Instead, on February 14, 2020, Plaintiff filed a letter addressed to the Honorable Edgardo Ramos, U.S.D.J., asking him to strike various arguments from Defendants' motion filing and to provide him with three to four additional weeks to reply to the motion to dismiss. (Dkt. 243.)

On February 18, 2020, this Court issued an order denying the relief requested by Plaintiff in his February 14, 2020 letter but granting him an extension of time to substantively respond to the motion to dismiss findings and conclusions until March 10, 2020. (Dkt. 245.) Again, Plaintiff did not substantively respond to the motion to dismiss. Instead, on March 10, 2020, he filed three letters: one requesting a phone conference with Judge Ramos (Dkt. 246); another asking Judge Ramos to withdraw the referral of the case to me now that Defendants intended to file a motion for summary judgment (Dkt. 247); and a third letter requesting that the motion to dismiss be held in abeyance so that investigation can be undertaken of defense counsel's obtaining Plaintiff's medical records (Dkt. 248). Judge Ramos denied all three requests on March 11, 2020. (Dkt. 250.)

### Legal Standards

### A. Dismissal as a Sanction Pursuant to Rule 37(b)(2)(A)

The Federal Rules permit dismissal of an action as a sanction for failure to comply with discovery. "If a party ... fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is

pending may issue further just orders. They may include ... dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v); *Peterson v Apple Inc.*, No. 12 Civ. 6467, 2013 WL 3467029, at *5 (S.D.N.Y. July 10, 2013), *report and recommendation adopted*, 2013 WL 3963456 (S.D.N.Y. Aug. 1, 2013). "Imposing sanctions pursuant to Rule 37 is within the discretion of the district court." *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159 (2d Cir. 2012) (internal quotation marks and citation omitted). While courts in the Second Circuit prefer that cases be decided on the merits, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49-50 (2d Cir. 1994) (internal quotation marks and citation omitted).

**\*7** When considering whether to dismiss a case pursuant to Rule 37, the Second Circuit considers four factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the non-compliant party had been warned of the consequences of ... noncompliance." *World Wide Polymers*, 694 F.3d at 159 (quoting *Agiwal v. Mid Island Mortgage Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)). The factors are not exclusive; nor does each one have to be resolved against the party being sanctioned for dismissal to be appropriate. *World Wide Polymers*, 694 F.3d at 159 (quoting *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010)).

### B. Dismissal for Failure to Prosecute Pursuant to Rule 41(b)

Dismissal for failure to comply with court orders also may be granted pursuant to Fed. R. Civ. Proc. 41(b), which provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). As with dismissal pursuant to Rule 37(b)(2)(A), dismissal under Rule 41(b) lies within the discretion of the district court. *See Ruzsa v. Rubenstein & Sendy Attorneys at Law*, 520 F.3d 176, 177 (2d Cir. 2008) (finding no abuse of discretion in dismissal pursuant to Rule 41(b)).

The Second Circuit has set forth five factors to be considered in determining whether dismissal is appropriate pursuant to

Workneh v. Super Shuttle International, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 3492000

Rule 41(b): (1) whether the plaintiff's failure to prosecute caused a delay of significant duration; (2) whether the plaintiff was given notice that failure to comply or further delay would result in dismissal; (3) whether the defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion balanced against the plaintiff's right to an opportunity for a day in court; and (5) the efficacy of lesser sanctions. *Ruzsa*, 520 F.3d at 177; *United States ex rel. Drake v. Norden Systems, Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). "No one factor is dispositive," and the decision must be based on the entirety of the record. *United States ex rel. Drake*, 375 F.3d at 254.

## C. Plaintiff's Pro Se Status

Dismissal pursuant to either Rule 37(b)(2)(A) or Rule 41(b) "is a harsh remedy and is appropriate only in extreme situations." *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996). Moreover, "*pro se* plaintiffs should be granted special leniency regarding procedural matters." *LeSane v. Hall's Securities Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001); *see also Lucas*, 84 F.3d at 535 ("district courts should be especially hesitant to dismiss for procedural deficiencies where ... the failure is by a pro se litigant."). At the same time, "all litigants, including pro ses, have an obligation to comply with court orders." *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir. 1988). Accordingly, "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal." *Valentine*, 29 F.3d at 50; *see also Agiwal*, 555 F.3d at 302 (although pro se parties are treated with special solicitude, they "are not immune to dismissal as a sanction for noncompliance with discovery orders").

This case, where clear warning of dismissal has been given, presents an extreme situation warranting dismissal. Indeed, courts have routinely dismissed cases brought by pro se plaintiffs with facts similar to those presented here. *See, e.g.*, *Leibovitz v. City of New York*, No. 15 Civ. 546, 2019 WL 4307305 (S.D.N.Y. Aug. 27, 2019), *report and recommendation adopted*, 2019 WL 4303343 (S.D.N.Y. Sept. 11, 2019) (dismissing pro se plaintiff's complaint based on, inter alia, failure to provide medical releases); *Balkani v City of New York*, No. 18 Civ. 3159, 2018 U.S. Dist. LEXIS 185005 (S.D.N.Y. Oct. 26, 2018) (dismissing pro se plaintiff's complaint where he failed to produce HIPAA authorizations); *Heendeniya v St. Joseph's Hospital Health Center*, No. 5:15-CV-1238, 2018 WL 5297806 (N.D.N.Y. Oct. 25, 2018)

(dismissing pro se plaintiff's complaint where he failed to produce discovery, including HIPAA authorizations); *Briel v Fields*, No. CV 12-2868, 2015 WL 13745257 (E.D.N.Y. Nov. 10, 2015), *report and recommendation adopted*, 2016 WL 324966 (Jan. 26, 2016) (same); *see also Bey v City of New York*, No. 11-CV-2376, 2011 WL 6010244 (E.D.N.Y. Oct. 20, 2011), *report and recommendation adopted*, 2011 WL 6010229 (E.D.N.Y. Nov. 28, 2011) (dismissing pro se plaintiff's complaint where he failed to comply with court orders directing him to provide an executed release permitting defendant to access his sealed arrest records).

## Discussion

**\*8** There is a substantial overlap of the factors considered under both Rule 37(b)(2)(A) and Rule 41(b). *See Peters-Turnbull v. Board of Education of City of New York*, 7 Fed. App'x 107, 110 (2d Cir. 2001) ("As the District Court noted ... 'there is little distinction whether the dismissal is technically made under Rule 41 or Rule 37' "); *Samonte v. Wanat*, No. 13-CV-226, 2014 WL 1817605, at \*7 (E.D.N.Y. May 6, 2014) (recognizing "overlap" and dismissing pro se action pursuant to both Rules). The Court will first address the analysis pursuant to Rule 41(b) and then any different or additional factors under Rule 37(b)(2)(A). Regardless of which rule provides the framework, however, all relevant factors weigh in favor of dismissal of the case with prejudice.

## A. Dismissal is Warranted Under Rule 41(b)

The five factors relevant to dismissal pursuant to Rule 41(b) are: (1) whether the plaintiff's failure to prosecute caused a delay of significant duration; (2) whether the plaintiff was given notice that failure to comply or further delay would result in dismissal; (3) whether the defendant was likely to be prejudiced by further delay; (4) the need to alleviate court calendar congestion balanced against the plaintiff's right to an opportunity for a day in court; and (5) the efficacy of lesser sanctions. *Ruzsa*, 520 F.3d at 177. The Court discusses each in turn.

### 1. Plaintiff's Repeated Failures to Comply Have Been Long and Enduring

Plaintiff first violated a court order in 2015 when he refused to appear for mediation despite a court order directing him to do so. Immediately after discovery commenced (following the multiple motions to dismiss), and continuing for the past two years, Plaintiff has failed to comply with numerous court

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 80 of 364
Workneh v. Super Shuttle International, Inc., Not Reported in Fed. Supp. (2020)
2020 WL 3492000

orders pertaining to discovery and potential resolution of this matter. Because of Plaintiff's repeated failures to comply with the Court's orders concerning discovery, discovery has been significantly delayed and is still not completed.

The most enduring, repeated single violation of the Court's orders is Plaintiff's purposeful failure to provide an executed HIPAA authorization. The Court issued the First HIPAA Order on August 19, 2019, requiring Plaintiff to provide the executed release no later than September 1, 2019. Plaintiff did not comply. And he did not comply with the three additional HIPAA orders issued on September 23, 2019, October 21, 2019, and November 18, 2019. Plaintiff not only refused to provide the requisite authorization; he also failed to appear at the mandated court conference to address the issue, thus violating another court order.

Even as of now, Plaintiff has not provided the HIPAA authorization. His failure to do so thus has continued for over nine months and running. That is a more than substantial period of delay. *See, e.g.*, *Balkani*, 2018 U.S. Dist. LEXIS 185005, at *3-4 (dismissing action after four-month failure to provide HIPAA release); *Peterson*, 2013 WL 3467029, at *9 (dismissal warranted after five-month delay, *Rodriguez v. Oak Room*, No. 12 Civ. 2921, 2012 WL 5305551, at *2 (S.D.N.Y. Oct. 23, 2012) (dismissing case after non-compliance lasting more than five months); *Martin v. City of New York*, No. 09 Civ. 2280, 2010 WL 1948597, at *2 (S.D.N.Y. May 11, 2010) (plaintiff failed to satisfy her discovery obligations for at least two-and-a-half months). The duration factor weighs in favor of dismissal.

**2. Plaintiff Received Definitive Notice of Dismissal**
On several occasions, the Court expressly warned Plaintiff in written orders that failure to comply with discovery obligations could result in sanctions, including dismissal. (*See* Dkt. 139, 141, 147, 149, 156, 199.) With respect to the HIPAA authorization, Plaintiff twice violated Court directives to comply and also failed to appear in court as ordered. Finally, in the Fourth HIPAA Order issued on November 18, 2019, the Court informed Plaintiff in no uncertain terms that "[f]ailure to comply with the terms of this Order will result in sanctions, including a recommendation that this case be dismissed with prejudice." (Dkt. 233 ¶ 4.) The notice factor thus clearly weighs in favor of dismissal. *See, e.g.*, *Europacific Asset Management Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) ("A court's prior warning of dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal"); *Feurtado v. City of New York*, 225 F.R.D. 474, 479-80 (S.D.N.Y. 2004) (dismissing for failure to prosecute after court warned plaintiff twice about possibility of dismissal).

**3. Defendants Have Incurred Substantial Prejudice**
**\*9** Prejudice resulting from an unreasonable delay may be "presumed as a matter of law." *Peart v. City of New York*, 992 F.2d 458, 462 (2d Cir. 1993); *Zaeretsky v Zaretsky*, No. CV 10-3771, 2011 WL 8085263, at *3 (E.D.N.Y. Oct. 13, 2011); *Steele v Ralph*, No. 12-CV-461S, 2016 WL 6070145, at *2 (W.D.N.Y. Oct. 17, 2016). However, "in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) (citation omitted). Here, the delays caused by Plaintiff have been neither moderate nor excusable.

Even apart from the presumption, Plaintiff's transgressions have prejudiced Defendants in multiple regards. First, Defendants incurred expense and time in (a) preparing for a mediation that Plaintiff failed to attend despite a court order to do so, (b) preparing numerous letters and court applications seeking Plaintiff's compliance with discovery demands and compliance with previous court orders, and (c) preparing the motion to dismiss filing. *See, e.g.*, *Peart v. City of New York*, 992 F.2d 458, 462 (2d Cir. 1993) (finding prejudice from time and money spent preparing for trial); *Peterson*, 2013 WL 3467029, at *10 (actual prejudice shown by defendant's incurring burden and expense of preparing for deposition at which plaintiff failed to appear).

Second, Defendants have had to endure literally years of delay due to Plaintiff's failures to comply, which augments the risk of faded memories at trial. *See Ruzsa*, F.3d at 177 (ability to defend against action is prejudiced "as the salient events recede[ ] even f[u]rther into the past"); *Folk v. Barton*, No. 15 Civ. 6443, 2016 WL 8993874, at *3 (S.D.N.Y. Dec. 2, 2016) (acknowledging same concern), *report and recommendation adopted*, 2017 WL 2191620 (S.D.N.Y. May 17, 2017). But for Plaintiff's repeated delays and failures to comply with court orders, discovery would be completed, and Defendants would have moved for summary judgment, which motion would have likely been decided by now.

Third, and most directly in relation to the HIPAA issue, Defendants have been deprived of a material piece of evidence relevant to the legitimacy of Plaintiff's termination and going to the underlying merits of the case as well as Plaintiff's credibility. *See Leibovitz*, 2019 WL 4307305, at *3

Worknet v. Super Shuttle International, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 3492000

(finding prejudice from defendant's failure to provide medical releases that were a "fundamental" part of discovery"); *Balkani*, 2018 U.S. Dist. LEXIS 185005, at *5 (plaintiff's delays in executing releases "are particularly prejudicial to Defendants in this case because it entirely undermines their ability to investigate the circumstances under which Plaintiff claims he was harmed").

The prejudice factor weighs strongly in favor of dismissal.

### 4. The Balancing of Court Congestion and Plaintiff's Right to a Day in Court Favors Dismissal

Plaintiff's resistance to complying with discovery and to adhering to the Court's orders has imposed substantial burdens on the Court. The Court has devoted a disproportionate amount of time to dealing with Plaintiff's interference with the progress of his own case, time that could more productively be put to work on litigants more respectful of judicial process. As the Second Circuit has explained, "the authority to invoke dismissal for failure to prosecute is 'vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts.' " *Peters-Turnbull*, 7 Fed. App'x at 110 (quoting *Lyell Theatre*, 682 F.2d at 42); *see also Sanders v. Ramos*, No. 12 Civ. 5302, 2013 WL 592670, at *3 (S.D.N.Y. Jan. 24, 2013), ("noncompliance with the Court's Orders undermines the ability of the Court to manage its docket and dispense justice to all litigants in an expeditious manner"), *report and recommendation adopted*, 2013 WL 594229 (S.D.N.Y. Feb. 14, 2013) (citation omitted). This concern is all the more apt given that "the Southern District of New York is among the busiest districts in the nation." *Stewart v. Manhattan Yacht Club, Inc.*, No. 16 Civ. 9764, 2018 WL 3579849, at *6 (S.D.N.Y. July 25, 2018).

**\*10** The court has afforded Plaintiff numerous opportunities to respond to Defendants' discovery requests, granting numerous extensions of time and refraining from holding him in contempt or imposing some other sanction each time he failed to comply with its orders. "[T]he fact that [Plaintiff] repeatedly disobeyed court orders vastly diminishes his right to have his claim heard by this Court." *Feurtado*, 225 F.R.D. at 480; *see also Dodson v. Runyon*, 957 F. Supp. 465, 470 (S.D.N.Y. 1997), *aff'd*, 152 F.3d 917 (2d Cir. 1998) ("any claim that plaintiff's due process rights were violated ... cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making"). Plaintiff, at times, has asked the Court to move the case forward and go to trial. (*E.g.*, Dkt. 216.) But such a plea is thoroughly disingenuous when

Plaintiff simultaneously and repeatedly has interfered with the case, obstructed Defendants from obtaining discovery, and violated court orders.

Plaintiff is the sole cause for the predicament in which he finds himself. The burdens on the Court and diversion of resources away from deserving litigants significantly outweigh Plaintiff's loss of his ability to further press this case.

### 5. Lesser Sanctions will Not be Effective

Because Plaintiff has repeatedly violated court orders in a variety of contexts (responses to discovery requests, refusal to provide authorization, failure to appear as directed), no sanction short of dismissal would effectively address his conduct. Indeed, Plaintiff's continued defiance of court orders after being warned that the consequence of non-compliance is dismissal indicates that lesser sanctions would be "an exercise in futility." *Coach, Inc. v. O'Brien*, No. 10 Civ. 6071, 2011 WL 6122265, at *4 (S.D.N.Y. Nov. 28, 2011); *see also Peterson*, 2013 WL 3467029, at *11 (plaintiff's "repeated violation of orders of this Court leads to the inexorable conclusion that no sanction short of dismissal would effectively address her conduct"); *Martin*, 2010 WL 1948597, at *2 ("The fact that plaintiff was warned that noncompliance would result in dismissal of her claims and chose not to comply illustrates that lesser sanctions would be insufficient"). Lesser sanctions also cannot be expected to have the requisite effect given that Plaintiff has acted willfully (as discussed below), proffered excuses that are not credible, and persisted in his course of conduct.

Accordingly, this factor weighs in favor of dismissal.

### 6. The Factors Taken Together Countenance Dismissal

Each of the five factors weighs in favor of dismissal. Taking the factors together, in the context of the entirety of this case, the Court finds that dismissal of the action pursuant to Rule 41(b) is appropriate.

### B. Dismissal is Warranted Under Rule 37(b)(2)(A)

As noted above, the factors considered under Rule 37(b) (2)(A) are largely the same as those considered under Rule 41(b). Like the Rule 41(b) factors, the Rule 37 factors include duration, notice, and efficacy of lesser sanctions. But Rule 37 also expressly takes into account willfulness. [3] *See World Wide Polymers*, 694 F.3d at 159. In assessing willfulness, courts consider whether: (1) the orders were clear; (2) the

Worknell v. Super Shuttle International, Inc., Not Reported in Fed. Supp. (2020)

2020 WL 3492000

party being sanctioned understood the orders; and (3) the non-compliance was within the party's control. *Thompson v. Jamaica Hospital Medical Center*, No. 13 Civ. 1896, 2015 WL 7430806, at *3 (S.D.N.Y. Nov. 20, 2015); *Peterson*, 2013 WL 3467029, at *6-7; *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002).

3  As mentioned above, willfulness also is relevant to the Rule 41(b) analysis in that it informs the efficacy of lesser sanctions.

Plaintiff's conduct unquestionably has been willful. He intentionally failed to appear for mediation. He repeatedly resisted fully complying with discovery orders. He intentionally failed to appear for the case management conference to discuss his failures to comply with court orders. He repeatedly and doggedly has refused to provide the HIPAA authorization, offering easily debunked excuses. All of this was within his control.

**\*11** Each of the orders he violated was clear as to what was required. For instance, there was no ambiguity about his having to appear before the Court for the November 18, 2020 conference (a date selected with Plaintiff's input); the notice identified the date, time, address, and courtroom. (Dkt. 228.) Three of the HIPAA orders clearly and unambiguously required Plaintiff to provide an executed authorization to Defendants. *See* Dkt. 211, 223, 233. There is no indication in the record that Plaintiff did not understand the orders. Rather, he simply refused to comply. And the last of those orders unequivocally warned Plaintiff of the consequences of his failure to comply: this Court would recommend dismissal with prejudice. (Dkt. 233 ¶ 4.)

And rather than comply or provide any adequate justification for not doing so, Plaintiff responded to the instant motion to dismiss by frivolously seeking withdrawal of the Court's referral and staying the motion so that an investigation can be made into defense counsel's conduct. (*See* Dkt. 247, 248.)

Taking into account Plaintiff's willful conduct along with the other relevant factors (i.e., lengthy period of delay and non-compliance, notice of consequences, and inefficacy of lesser sanctions), and with due consideration for the entirety of events in the case, the Court finds that dismissal with prejudice is warranted under Rule 37(b)(2)(A).

## Conclusion

For the foregoing reasons, I recommend that Defendants' motion to dismiss be GRANTED and the case dismissed with prejudice. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Edgardo Ramos, United States Courthouse, 40 Foley Square, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, New York, New York 10007. **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

### All Citations

Not Reported in Fed. Supp., 2020 WL 3492000

---

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 1:15-CV-03521**<br>Workneh v. Super Shuttle International Inc. | — | S.D.N.Y. | Apr. 24, 2015 | Docket |

**History (5)**

**Direct History (2)**

1. Workneh v. Super Shuttle International, Inc. 🔖
   2020 WL 3492000 , S.D.N.Y. , June 08, 2020

*Report and Recommendation Adopted by*

2. Workneh v. Super Shuttle International, Inc.
   2020 WL 3489483 , S.D.N.Y. , June 26, 2020

**Related References (3)**

3. Workneh v. Super Shuttle International, Inc.
   2016 WL 5793744 , S.D.N.Y. , Sep. 30, 2016

4. Workneh v. Super Shuttle International, Inc.
   2017 WL 1185221 , S.D.N.Y. , Mar. 28, 2017

5. Workneh v. Super Shuttle International, Inc.
   2017 WL 6729297 , S.D.N.Y. , Dec. 28, 2017

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag

Report and Recommendation Adopted as Modified by Coach, Inc. v. O'Brien, S.D.N.Y., April 13, 2012

2011 WL 6122265
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

COACH, INC. and Coach Services, Inc., Plaintiffs,

v.

Sharon O'BRIEN, et al., Defendants.

No. 10 Civ. 6071(JPO)(JLC).
|
Nov. 28, 2011.

*REPORT AND RECOMMENDATION*

JAMES L. COTT, United States Magistrate Judge.

**\*1** **To the Honorable J. Paul Oetken, United States District Judge:**

Plaintiffs Coach, Inc. and Coach Services, Inc. (together, "Coach"), a well-known luxury brand, bring this action asserting various federal trademark claims against *pro se* defendant Sharon O'Brien, individually and doing business as www.covermycellphone.com ("O'Brien"), who allegedly offered for sale and sold cellular phone covers bearing counterfeits and infringements of Coach's federally registered trademarks. O'Brien has failed to comply with several Court orders relating to both discovery and her defense of this litigation, and has failed to respond to the Court's repeated attempts to contact her. In light of this conduct, which is detailed below, I recommend that the Court find O'Brien in default under Rule 37(b)(2)(A)(vi) of the Federal Rules of Civil Procedure. I further recommend that the Court direct the Clerk of the Court to enter a default judgment pursuant to Rule 55(a), and award Coach, pursuant to Rule 55(b), $12,875.94 in statutory damages for trademark infringement and for costs, and enter a permanent injunction against O'Brien. [1]

[1]     In conducting the inquiry relevant to this Report and Recommendation, I have relied on Coach's Motion to Strike Defendant's Answer and for a Default Judgment, dated January 14, 2011 (Dkt. No. 13) ("Motion for Default Judgment"),

which the Court previously denied. (Dkt. No. 30). Coach renewed its application for a default judgment in a November 15, 2011 letter to the Court ("November 15 Letter"). (Dkt. No. 37). Moreover, although entry of default under Rule 55 necessitates a subsequent inquest to determine the amount of damages, because Coach previously submitted all relevant information in support of its Motion for Default Judgment, and O'Brien submitted her Opposition to the Motion for Default Judgment, there is no need for separate inquest proceedings. *See, e.g., Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 508 (2d Cir.1991) (sufficient basis to evaluate compensatory damages where court was "inundated with affidavits, evidence, and oral presentations by opposing counsel"). Should Coach object to my reliance on the Motion for Default Judgment in considering the renewed application, it should so advise Judge Oetken in any objections to this Report and Recommendation.

# I. BACKGROUND

## A. Basis of the Lawsuit

Coach brings this action against O'Brien, an Illinois resident, asserting claims for trademark counterfeiting; trademark infringement; trademark dilution; and unfair competition, false designation of origin, and false description under 15 U.S.C. §§ 1114, 1125(a), (c). (Complaint, dated Aug. 12, 2010 ("Complaint" or "Compl.") (Dkt. No. 1)). Coach alleges that O'Brien willfully infringed its marks by "selling, offering for sale, distributing, promoting and advertising in interstate commerce" on her website, www.covermycellphone.com, cellular phone covers bearing counterfeit and infringing marks similar to certain protected trademarks owned by Coach. (Compl.¶¶ 10, 25–38). Coach seeks, among other things, injunctive relief and damages for willful infringement under 15 U.S.C. § 1117. (Compl.¶¶ I–XI).

## B. Procedural History

O'Brien was served with the Summons and Complaint on August 17, 2010 (Affidavit of Service, dated Aug. 23, 2010 (Dkt. No. 4)) such that her answer or other response was due on September 7, 2010. Fed.R.Civ.P. 12(a), (b). On September 10, 2010, Coach obtained entry of default against O'Brien (Clerk's Certificate of Default, dated Sept. 10, 2010 (Dkt. No. 13–2)), who was then proceeding *pro se.* (Defendant's Reply Memorandum in Opposition to Plaintiff's Motion to

Strike Defendant's Answer, and Plaintiff's Motion for Default Judgment, dated Jan. 28, 2011 ("Opposition to the Motion for Default Judgment" or "Def.'s Mem.") (Dkt. No. 16), at 2). On November 10, 2010, after obtaining counsel and engaging unsuccessfully in settlement discussions with Coach, O'Brien filed an Answer to the Complaint. (Notice of Appearance, dated Sept. 14, 2010 (Dkt. No. 5); Defendant's Answer, dated Nov. 10, 2010 (Dkt. No. 7)). On January 14, 2011, Coach moved to strike the answer and enter a default judgment against O'Brien. (Dkt. No. 13). Shortly after O'Brien filed her opposition to the motion on January 28, 2011, the Court granted the motion of O'Brien's counsel to withdraw from the case. (Order, dated Jan. 31, 2011 (Dkt. No. 17)). [2]

[2]    Accordingly, O'Brien is again proceeding *pro se.* (Notice of Appearance, dated May 10, 2011 (Dkt. No. 25)).

**\*2** On May 17, 2011, the Honorable George B. Daniels, to whom the case was originally assigned, [3] referred Coach's Motion for Default Judgment to me, and for a potential inquest (Dkt. No. 24), and on June 21, 2011, he also referred the case to me for general pretrial purposes, including settlement. (Dkt. No. 26). I conducted telephone conferences with the parties regarding the possibility of settlement on June 30, July 7, and July 14, 2011. When the parties were unable to reach a settlement and upon Coach's request, I reinstated Coach's Motion for Default Judgment (Endorsed Letter to the Court from Walter–Michael Lee, dated July 18, 2011 (Dkt. No. 28)), which I had deemed withdrawn during the pendency of the settlement discussions. (Order, dated July 7, 2011 (Dkt. No. 27)). In a Report and Recommendation dated July 27, 2011, I recommended that Judge Daniels deny the Motion for Default Judgment. (Dkt. No. 29). Judge Daniels adopted the Report and Recommendation by Memorandum Decision and Order dated September 1, 2011. (Dkt. No. 30).

[3]    On October 6, 2011, this case was reassigned to Judge Oetken. (Dkt. No. 33).

By Order dated September 9, 2011, I directed the parties to complete discovery by October 4, 2011, and to serve and file all dispositive motions by December 3, 2011. (Dkt. No. 31). Shortly thereafter, Coach advised the Court that O'Brien had failed to respond to Coach's First Set of Interrogatories and Request for the Production of Documents, served July 28, 2011 (the "Discovery Requests"). (Letter to the Court from Walter–Michael Lee, dated Sept. 13, 2011, at 1 (Dkt. No. 35)). Consequently, by Order dated September 16, 2011, I directed

O'Brien to respond to the Discovery Requests no later than September 28, 2011. (Dkt. No. 32). O'Brien did not respond to the Discovery Requests, nor did she appear for a noticed deposition on September 30, 2011. (November 15 Letter at 1–2).

Having been advised of O'Brien's failure to comply with the September 16 Order (Letter to the Court from Walter–Michael Lee, dated Sept. 30, 2011, at 2 (Dkt. No. 36)), I instructed counsel for Coach to confer with O'Brien as to the parties' availability for a discovery conference. O'Brien did not respond to counsel for Coach; as a result, on October 4 and 5, 2011, my chambers attempted to contact her both by e-mail and phone. O'Brien did not respond to the Court's messages either. Accordingly, on October 6, 2011, I ordered O'Brien to show cause why the Court should not find her in default pursuant to Rule 37(2)(A)(vi) and recommend the entry of a default judgment pursuant to Rule 55. (Dkt. No. 34). My chambers mailed the October 6 Order to Show Cause —as well as the discovery orders dated September 9 and September 16—to the Alsip, Illinois address O'Brien listed as her contact information on the notice that she would proceed *pro se* after withdrawal of her counsel. (Dkt. No. 25). To date, O'Brien has not responded to the October 6 Order to Show Cause although the deadline for a response was October 21, 2011, nor has she sought an extension of her time to do so. Thus, neither counsel for Coach nor the Court has had any contact with O'Brien since the last settlement conference, held on July 14, 2011. (November 15 Letter at 2).

## II. *DISCUSSION*

### A. Default Judgment as a Sanction Under Rule 37

**\*3** Rule 37(b) (2)(A) authorizes a court to impose a range of sanctions in the event that a party fails to comply with a court order, including the "rendering [of] a default judgment against the disobedient party [.]" Fed.R.Civ.P. 37(b)(2)(A)(vi). Although Rule 37 sanctions are "a harsh remedy to be used only in extreme situations," *Agiwal v. Mid Island Mortgage Corp.,* 555 F.3d 298, 302 (2d Cir.2009) (citation omitted), they "protect other parties to the litigation from prejudice resulting from a party's noncompliance with discovery obligations" and "serve other functions unrelated to the prejudice suffered by individual litigants[,]" including specific and general deterrence. *S. New England Tel. Co. v. Global NAPs Inc.,* 624 F.3d 123, 149 (2d Cir.2010) (internal quotation marks and citations omitted).

2011 WL 6122265

The Second Circuit has articulated "[s]everal factors [that] may be useful in evaluating a district court's exercise of discretion" to impose sanctions pursuant to Rule 37, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been warned of the consequences of noncompliance." *Agiwal,* 555 F.3d at 302–03 (quoting *Nieves v. City of New York,* 208 F.R.D. 531, 535 (S.D.N.Y.2002)) (internal quotation marks and alteration omitted). These factors are not exclusive and none is dispositive, "[b]ecause the text of the rule requires only that the district court's orders be 'just,' " and "because the district court has 'wide discretion in imposing sanctions under Rule 37[.]' " *S. New England Tel. Co.,* 624 F.3d at 144 (quoting *Shcherbakovskiy v. Da Capo Al Fine, Ltd.,* 490 F.3d 130, 135 (2d Cir.2007) (internal quotation marks omitted)). Each of these factors favors "rendering a default judgment" against O'Brien. Fed.R.Civ.P. 37(b)(2)(vi).

O'Brien's current status as a *pro se* litigant does not change this inquiry or my recommendation. "[A]ll litigants, including pro ses, have an obligation to comply with court orders." *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988). "[F]ailure to comply may result in sanctions," including Rule 37 sanctions. *Agiwal,* 555 F.3d at 302; *see also McDonald,* 850 F.2d at 124 ("When [*pro se* litigants] flout that obligation they, like all litigants, must suffer the consequences of their actions.").

### 1. Willfulness

There can be no dispute that O'Brien has failed to comply with her discovery obligations and that her failures were willful under the law. After successfully opposing Coach's Motion for Default Judgment, which afforded her an opportunity to resolve this dispute on the merits, O'Brien then failed to comply with the Court's subsequent discovery order requiring a response to the Discovery Requests by September 28, 2011. She further failed to respond to the attempts of both counsel for Coach and the Court to contact her to schedule a discovery conference in early October. O'Brien's noncompliance continued with her failure to respond to the October 6 Order to Show Cause, despite notification that such a failure to comply could result in an entry of default. The Court deems the noncompliance willful given that these orders were mailed directly to O'Brien's address, and yet she repeatedly failed to comply. *See, e.g., Kuruwa v. Meyers,* No. 09 Civ. 4412(GWG), 2011 WL 5059187, at *6 n. 2 (S.D.N.Y. Oct.24, 2011) (deeming failure to comply with order willful where defendant was aware of order, failed to seek extension

to comply, and then did not respond to subsequent order directing him to show cause why he should not be sanctioned for failure to comply); *accord In re Fosamax Prods. Liab. Litig.,* No. 07 Civ. 3652(JFK), 2010 WL 1779276, at *2 (S.D.N.Y. Apr.27, 2010) ("Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control.") (quoting *Davis v. Artuz,* No. 96 Civ. 7699(GBD), 2001 WL 50887, at *3 (S.D.N.Y. Jan.19, 2001)).

### 2. Efficacy of Lesser Sanctions

**\*4** The Court concludes that a less severe sanction would not secure O'Brien's cooperation. While lesser sanctions should be considered before the Court proceeds to issue a default judgment against a non-compliant party, *see Agiwal,* 555 F.3d at 302, O'Brien's repeated noncompliance with Court orders and her failure to engage with both counsel for Coach and the Court indicates that any lesser sanction would be "an exercise in futility[.]" *Koch v. Rodenstock,* No. 06 Civ. 6586(BSJ) (DF), 2010 WL 2010892, at *7 (S .D.N.Y. Apr. 23, 2010) (Report & Recommendation) (citation omitted), *adopted by,* 2010 WL 2010900 (S.D.N.Y. May 18, 2010).

### 3. Duration of Non–Compliance

O'Brien's failure to engage in discovery and comply with Court orders spans several months, and qualifies as an amount of time sufficient to warrant entry of a default judgment. *See, e.g., Jackson Hewitt, Inc. v. Excellent Prof'l Servs. LLC,* No. 08 Civ. 5237(JG)(RER), 2010 WL 5665033, at *2 (E.D.N.Y. Nov. 8, 2010) (Report & Recommendation) (two-month period of noncompliance with order to show cause, while "not lengthy[,]" warranted dismissal under Rule 41(b) when "considered in connection with [defendants'] overall failure to participate in this litigation in any meaningful sense"), *adopted by,* 2011 WL 317969 (E.D.N.Y. Jan.31, 2011); *see also Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42–43 (2d Cir.1982) (in analogous posture under Rule 41(b), persistent failure to comply with court orders "may warrant dismissal after merely a matter of months") (citation omitted). Coach served its Discovery Requests on July 28, 2011 (November 15 Letter at 1) such that the Federal Rules compelled O'Brien to serve her answers and any objections by August 30, 2011. Fed.R.Civ.P. 6(d), 33(b)(2), 34(b)(2). She did not. Nor did she respond to the Court's September 16 Order directing her compliance by September 28, 2011; the telephone and e-mail messages left for her by counsel for Coach and the Court seeking to schedule a conference

in early October; or the Court's October 6 Order to Show Cause requiring a response by October 21, 2011. Accordingly, O'Brien's history of repeated failure to engage in discovery and comply with this Court's orders spans several months, warranting an entry of a default judgment. *See Kuruwa, 2011 WL 5059187, at *1* (failure to respond to order to show cause warranted finding of default just weeks after deadline passed).

#### 4. History of Warnings

O'Brien was on notice that a failure to engage in the litigation could result in the entry of a default judgment. As early as January, 2011, when Coach filed its Motion for Default Judgment, O'Brien should have been aware of the possibility that failing to defend against Coach's lawsuit could result in the entry of a default judgment. The October 6 Order to Show Cause further warned O'Brien of this result by specifically directing her to address why the Court should not find her in default pursuant to Federal Rule of Civil Procedure 37(b) (2)(A)(vi) as a result of various failures including her failure to respond to Coach's Discovery Requests, to comply with the September 16 Order, and to return the Court's telephone and e-mail messages. Despite these warnings, O'Brien has still failed to respond to the October 6 Order to Show Cause, with the October 21 deadline now weeks past. *See Kuruwa, 2011 WL 5059187, at *6 n. 2* (entry of default where "the Order to Show Cause by its terms warned Meyers that he could be sanctioned with a default"); *Robertson v. Doe*, No. 05 Civ. 7046(LAP), 2008 WL 2519894, at *7 (S.D.N.Y. June 19, 2008) ("In addition, when the Court gave Mr. Dowbenko a 'final' opportunity to show cause why sanctions should not be imposed, it explicitly mentioned the possibility of default judgment. Accordingly, Mr. Dowbenko was on notice of the possibility that his refusal to fully comply with the Court's discovery order could result in default judgment") (internal citation omitted), *aff'd,* No. 10–2820–cv (2d Cir. Nov. 3, 2011) (Summary Order). Moreover, given Coach's January, 2011 Motion for Default Judgment, O'Brien has been on notice for months of Coach's intention to proceed with this matter to default proceedings should she fail to engage in the litigation. This history of warnings, coupled with the other factors, weighs in favor of rendering a default judgment at this stage.

#### B. Liability

**\*5** Having determined that O'Brien's noncompliance warrants an entry of default judgment pursuant to Rule 37, the Court must "follow the procedure for entry of a default judgment as set forth in [Rule 55]." *Kuruwa, 2011 WL*

5059187, at *1*. "Under the case law interpreting that rule, the default establishes [O'Brien's] liability as long as the complaint has stated a valid cause of action[.]" *Id.* (citations omitted). Although a district court should assess whether "the alleged facts constitute a valid cause of action [,]" *Au Bon Pain v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir.1981), once a default has been established, the Court accepts as true all the factual allegations in a complaint except as to the amount of damages. *See generally City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir.2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'well-pleaded' factual allegations contained in the complaint.") (citation omitted); *see, e.g., Coach, Inc. v. Melendez,* No. 10 Civ. 6178(BSJ)(HBP), 2011 WL 4542971 (S.D.N.Y. Sept. 2, 2011) (Report & Recommendation), *adopted by,* 2011 WL 4542717 (S.D.N.Y. Sept.30, 2011). Accordingly, the factual allegations contained in Coach's Complaint, except as to the amount of damages claimed, must be taken as true.

#### 1. Parties and Jurisdiction

Plaintiff Coach, Inc. is a corporation duly organized and existing under the laws of the State of Maryland, with its corporate headquarters at 516 West 34th Street, New York, New York 10001. (Compl.¶ 7). Plaintiff Coach Services, Inc. is a corporation and a wholly owned subsidiary of Coach, Inc., also existing under the laws of the State of Maryland, with its corporate headquarters at 1 Coach Way, Jacksonville, Florida 32218. (Compl.¶ 8). O'Brien is a resident of the State of Illinois residing at 11616 Kildare Avenue, Alsip, Illinois 60803. (Compl.¶ 9). She is the registrant, owner, operator, and/or controlling force behind the www .covermycellphone.com website (the "Website"). (Compl.¶ 10). [4]

[4]    Coach's Complaint asserts claims against several unidentified defendants in addition to O'Brien, including "Unknown Websites 1–10, 'John Does' 1–10, and Unknown Entities 1–10[.]" (Compl.¶ 11). Coach alleges that, "upon information and belief, they are associated with [O'Brien] and contribute to [O'Brien's] infringing activity [and that] Coach [would] identify these Unknown Websites, Unknown 'John Does' and Unknown Entities upon further knowledge and investigation and [would] amend its pleadings accordingly." Given that Coach has not pursued the action against these unidentified defendants, the Court

deems Coach's claims against them abandoned. *See, e.g., MacMillan v. Roddenberry,* No. 5:08–cv–351–WTH–GRJ, 2010 WL 668281, at *1 n. 1 (M.D.Fla. Feb.19, 2010) (where plaintiff listed three "John Doe" defendants in Complaint but did not identify them or assert any arguments in support of claims against them, court deemed claims abandoned) (citations omitted).

Coach brings this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* Therefore, the Court has subject matter jurisdiction over Coach's claims pursuant to 28 U.S.C. §§ 1331, 1338(a), and 15 U.S.C. § 1121(a). The Court also has personal jurisdiction over O'Brien given that O'Brien shipped a cellular phone cover that she sold on the Website to counsel for Coach, located in New York (Affirmation of Benjamin Kwapisz in Support of Plaintiff's Motion to Strike Answer and Motion for a Default Judgment against Defendant, dated Jan. 11, 2011 ("Kwapisz Aff.") (Dkt. No. 13–5], ¶¶ 1, 4–5), and thus conducted business in New York. *See Gucci Am., Inc. v. MyReplicaHandbag.com,* No. 07 Civ. 2438(JGK), 2008 WL 512789, at *2 (S.D.N.Y. Feb.26, 2008) (shipment of goods to New York supported finding of jurisdiction in trademark action) (citing *Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.,* 923 F.Supp. 433, 436–37 (S.D.N.Y.1996)).

### 2. The Coach Registered Trademarks

**\*6** Coach is engaged, both in this District and elsewhere, in the business of manufacturing and distributing high quality merchandise including handbags, wallets, jewelry, watches, shoes, eye-glasses, and fragrances under federally registered trademarks associated with the Coach brand. (Compl.¶ 12). Coach is known throughout the United States and the world, generating global sales in the millions of dollars. (Compl.¶ 14). Coach Services, Inc. is the owner of all of Coach's United States federal registrations (the "Coach Registered Trademarks"). (Compl. ¶ 15; *see* Compl. ¶ 16 (describing the forty-six Coach Registered Trademarks)).

The Coach Registered Trademarks have been used in interstate commerce to identify and distinguish Coach's merchandise for an extended period of time. (Compl.¶ 18). The Coach Registered Trademarks are symbols of Coach's quality, reputation, and goodwill, which Coach has expended substantial time, money, and other resources to develop, advertise, and promote such that the marks are "famous" within the meaning of 15 U.S.C. § 1125(c). (Compl.¶¶ 20–22). As a result of Coach's efforts, members of the consuming public readily identify merchandise bearing any of the Coach Registered Trademarks as being high-quality merchandise sponsored and approved by Coach. (Compl.¶¶ 23–24). Accordingly, the Coach Registered Trademarks are valid, subsisting, and in full force and effect, and continue to constitute prima facie evidence of the validity of the marks. (Compl.¶ 17).

### 3. O'Brien's Operation of the Website

Subsequent to Coach's adoption, use, and registration of the Coach Registered Trademarks, O'Brien began selling, offering for sale, distributing, promoting, and advertising on the Website cellular phone covers bearing counterfeits and infringements of three of the Coach Registered Trademarks as those marks appear on Coach's products. (Compl. ¶ 25; Affirmation of Tiffany Walden In Support of Plaintiffs' Motion to Strike Defendant's Answer and for a Default Judgment, dated Jan. 12, 2011 ("Walden Aff.") (Dkt. No. 13–4), ¶ 26). After Coach discovered the Website in July, 2010, Coach's counsel conducted a "Whois" search to determine the name and contact information for the Website's registrant. (Walden Aff. ¶¶ 15–16 & Ex. 1). The search revealed that the Website was registered by "Covermycellphone, 11616 S. Kildare, Alsip, Illinois 60803, United States," and that the administrative and technical contacts were both listed as "OBRIEN, SHARON," at the same Alsip, Illinois address. (*Id.* ¶ 16 & Ex. 2).

On July 12, 2010, an employee of Coach's counsel in New York purchased from the Website a cellular phone cover bearing counterfeits and infringements of the Coach Registered Trademarks, which he received on or about July 15, 2010. (Kwapisz Aff. ¶¶ 4–5 & Ex. 2). The employee paid $19.99 for the cellular phone cover using PayPal, which then generated an e-mail indicating that the payment was sent to "sharon obrien[.]" (*Id.* at ¶ 4, Ex. 4). The return address listed on the package containing the purchase was "Covermycellphone, 11616 S Kildare Ave, Alsip IL 60803." (*Id.* ¶ 5, Ex. 2). Coach's counsel examined the cellular phone cover and determined that none of its parts was of genuine Coach origin (Walden Aff. ¶ 21), although the cover displayed the name "Coach" and contained several counterfeits and infringements of the Coach Registered Trademarks. (*Id.; see* Kwapisz Aff. Ex. 2).

**\*7** Counsel for Coach contacted O'Brien by letter dated July 19, 2010, which Coach sent both by e-mail to covermycellphone@comcast.net, and by First–Class Mail to the Alsip, Illinois address. (Walden Aff. ¶ 23 & Ex. 3).

2011 WL 6122265

The letter advised O'Brien of her infringing conduct and demanded that she cease and desist her infringing activities, and supply Coach with certain information and her supply of infringing goods. (*Id.*). It also warned her of the consequences of trademark counterfeiting and infringement. (*Id.*). By letter dated July 26, 2010, counsel for Coach again contacted O'Brien, requesting a response to its July 19, 2010 letter. (*Id.* ¶ 24 & Ex. 4). Having received no response to these letters, Coach brought this action on August 13, 2010. (*Id.* ¶ 25).

### 4. O'Brien Is Liable for Trademark Infringement

In its Motion for Default Judgment, Coach requested damages relating to its claims against O'Brien for willful trademark infringement, but not for the remaining causes of action asserted in the Complaint. (Plaintiffs' Memorandum of Law in Support of Its [sic] Motion to Strike Defendant's Answer and for a Default Judgment, dated Jan. 14, 2011 (Dkt. No. 14) ("Pls.' Mem.") at 17 n .1). Therefore, in evaluating whether Coach has established a valid cause of action, the Court considers O'Brien's liability as to the claim of trademark infringement only. *See Coach Servs., Inc. v. K Ya Int'l, Inc.,* No. 09 Civ. 4656(RMB)(JCF), 2010 WL 2771897, at *2 (S.D.N.Y. June 10, 2010) (Report & Recommendation) ("In connection with this inquest, the plaintiff has requested damages only for trademark infringements in violation of the Lanham Act, and therefore liability need only be considered with respect to that claim."), *adopted by,* 2010 WL 2771907 (S.D.N.Y. July 12, 2010).

"There are two elements necessary to establish trademark infringement under the Lanham Act: (1) the plaintiff's ownership of a valid trademark and (2) the likelihood of confusion from the defendants' use of that trademark without the plaintiff's permission ." *Id.* (citing *Chanel, Inc. v. Louis,* No. 06 Civ. 5924(ARR)(JO), 2009 WL 4639674, at *10 (E.D.N.Y. Dec. 7, 2009)). The allegations contained in the Complaint satisfy both elements, establishing a valid claim of trademark infringement. As to the first element, Coach possesses ownership of the three marks at issue, all of which are valid, subsisting, and in full force and effect. (Compl.¶¶ 16–17). Notwithstanding Coach's ownership and the validity of these trademarks, O'Brien offered for sale and sold on the Website cellular phone covers bearing counterfeits and infringements of these trademarked designs without authorization from Coach. (Compl. ¶¶ 25, 31; Kwapisz Aff. ¶¶ 4–5, Exs. 1–2). As to the second element, because of the recognition Coach has achieved as a well-known luxury brand and due to the nature of its trademarked designs, there is likely to be confusion between Coach's authentic merchandise

and the products O'Brien offered for sale on the Website that showcased the name "Coach" and other of the Coach Registered Trademarks. (Compl.¶¶ 18–24, 32). Such use of the trademarks constitutes trademark infringement.

**\*8** Furthermore, I find O'Brien's trademark infringement to be willful. As an initial matter, O'Brien's infringement and counterfeiting is deemed willful "[b]y virtue of the default[.]" *Tiffany (NJ) Inc. v. Luban,* 282 F.Supp.2d 123, 124 (S.D.N.Y.2003); *see, e.g., Chloe v. Zarafshan,* No. 06 Civ. 3140(RJH) (MHD), 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009)* ("Willfulness may be established by a party's default because an innocent party would presumably have made an effort to defend itself"). Moreover, O'Brien's willfulness is apparent from the similarity between the products she sold and genuine *Coach merchandise. See Melendez,* 2011 WL 4542971, at *5 ("Because the marks used by defendants on their products are virtually identical to the Coach Registered Trademarks, the conclusion is inescapable that defendants' infringement and counterfeiting is intentional.") (citing cases).

### C. Inquest

### 1. Damages

Having found that O'Brien is liable for trademark infringement, the Court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Secs. (USA) v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999); *see, e.g., Software Freedom Conservancy, Inc. v. Best Buy Co.,* No. 09 Civ. 10155(SAS), 2010 WL 2985320, at *2–3 (S.D.N.Y. July 27, 2010) (granting application for injunctive relief and awarding damages after entering default pursuant to Rule 37). This inquiry "involves two tasks: determining the proper rule for calculating damages on such a claim, and assessing plaintiff's evidence supporting the damages to be determined under this rule." *Credit Lvonnais,* 183 F.3d at 155. Relevant to this first task is the fact that Coach has elected to recover statutory damages under 15 U.S.C. § 1117(c), rather than damages tied to its actual losses or to O'Brien's profits. (Walden Aff. ¶ 26 (citing 15 U.S.C. § 1117(c)). Accordingly, the Court must assess Coach's entitlement to statutory damages under 15 U.S.C. § 1117(c).

As to the second task, while Rule 55(b)(2) provides that the Court, in considering a default judgment, may "conduct hearings or make referrals" to "determine the amount of damages[,]" Fed.R.Civ.P. 55(b)(C), the Second Circuit has

held that an inquest into damages may be held on the basis of documentary evidence alone, "as long as [the court has] ensured that there was a basis for the damages specified in [the] default judgment." *Fustok v. ContiCommodity Servs., Inc.,* 873 F.2d 38, 40 (2d Cir.1989); *accord Action S.A.,* 951 F.2d at 508. Coach's submissions in support of its Motion for Default Judgment include affidavits and attached documentary evidence, which provide a basis for an award of damages and thus obviate the need for a hearing. *See, e.g., Kuruwa,* 2011 WL 5059187, at *2.

Pursuant to the Lanham Act, a trademark owner may elect to recover an award of statutory damages instead of actual damages for an amount between $1,000 and $200,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just;" or, if the court finds the use of the mark to have been willful, up to $2,000,000 per counterfeit mark per type of good. 15 U.S.C. § 1117(c); *see generally All–Star Marketing Group, LLC v. Media Brands Co., Ltd.,* 775 F.Supp.2d 613, 620–21 (S.D.N.Y.2011) ("The rationale for § 1117(c) is the practical inability to determine profits or sales made by counterfeiters.") (citations omitted). This provision of the Lanham Act "does not provide guidelines for courts to use in determining an appropriate award, as it is only limited by what 'the court considers just.' " *Gucci Am., Inc. v. Duty Free Apparel, Ltd.,* 315 F.Supp.2d 511, 520 (S.D.N.Y.2004) (internal citation omitted). Despite this lack of guidelines, "courts have found some guidance in the caselaw of an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides statutory damages for willful infringement." *Id.* (citations omitted). Under the statutory-damages framework articulated by the Second Circuit in *Fitzgerald Publishing Co., Inc. v. Baylor Publishing Co.,* 807 F.2d 1110, 1117 (2d Cir.1986) ("*Fitzgerald*"), courts consider: (1) "the expenses saved and the profits reaped"; (2) "the revenues lost by the plaintiff"; (3) "the value of the copyright" or, by analogy, trademark; (4) "the deterrent effect on others besides the defendant"; (5) "whether the defendant's conduct was innocent or willful"; (6) "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced"; and (7) "the potential for discouraging the defendant." *Duty Free Apparel,* 315 F.Supp.2d at 520 (citing *Fitzgerald,* 807 F.2d at 1117); *see, e.g., All–Star Marketing Group,* 775 F.Supp.2d at 622–23 (applying test for statutory damages in trademark action subsequent to defendants' default); *Tiffany (NJ),* 282 F.Supp.2d at 125 (same); *Melendez,* 2011 WL 4542971, at *6–7 (same).

**\*9** Here, the evidence provided by Coach—including affidavits and attached documentary evidence, which, as noted, the Court may consider in lieu of an inquest proceeding—demonstrates that Coach is entitled to an award of monetary damages. Coach has established that the Coach Registered Trademarks—recognized as symbols of Coach's quality, reputation, and goodwill—generate Coach millions of dollars in sales per year. (Compl.¶¶ 14–24). Although nothing in the record demonstrates whether Coach lost any revenue from O'Brien's infringement, the goal of deterring similar conduct generally requires a significant award. *See, e.g., Louis Vuitton Malletier, S.A. v. LY USA,* No. 06 Civ. 13463(AKH), 2008 WL 5637161, at *2 (S.D.N.Y. Oct.3, 2008). In addition, this Court has already found that O'Brien's conduct was willful "[b]y virtue of [her] default," *Tiffany (NJ),* 282 F.Supp.2d at 124, and because of the similarity between genuine Coach merchandise and the cellular phone covers O'Brien offered for sale and sold on the Website. Although the record does not show any evidence of O'Brien's continued sale of cellular phone covers bearing counterfeit Coach Registered Trademarks,[5] the Complaint alleges and the Court accepts as true that, "[d]espite being put on notice by Coach of [O'Brien's] illegal activities, [she] continued to offer for sale and sell merchandise bearing counterfeits of the Coach Registered Trademarks." (Compl.¶ 27). Thus, the third, fourth, fifth, and seventh factors weigh in favor of an award of statutory damages, with the second factor remaining neutral.

[5]     Indeed, the Court notes that the Website (last visited November 28, 2011) appears to be no longer active. *See Muller–Paisner v. TIAA,* 289 F. App'x. 461, 466 n. 5 (2d Cir.2008) (taking judicial notice of publication of website) (citation omitted) (Summary Order).

Notwithstanding this analysis, Coach's demand for millions of dollars in statutory damages is excessive. Coach seeks damages only for the three marks used by O'Brien in her "advertising, distributing, offering for sale and selling of counterfeit Coach products[.]" (Walden Aff. ¶ 26 (citing Compl. Ex. 1; Kwapisz Aff. ¶ 5 & Ex. 2)). In particular, without explanation for its calculation, Coach seeks $3,000,000, or $1,000,000 per trademark infringed (Walden Aff. ¶ 27), an amount that the record does not support given the apparently modest scale of O'Brien's activities. In O'Brien's Opposition to the Motion for Default Judgment, she states that "[t]he total revenues (not profits) resulting

from [her] sales of the alleged infringing items was a mere *$5,533.76.* The profit—*if any*—would be a fraction thereof." (Def.'s Mem. at 3 (emphasis in original)). O'Brien apparently calculated that figure using documents that were contained within a voluntary production to Coach that she made during settlement negotiations last year of all "relevant sales records" for the Website, which she characterized as "documents showing literally every transaction and every dollar and penny received from the sale of the allegedly-infringing goods from the inception of [the Website] to the present." (Def.'s Mem. at 3). Coach concedes receipt of these materials but characterizes the production as "select sales records, which [O'Brien] purported fully documented her sales of infringing and counterfeit Coach products." (Reply Affirmation of Walter–Michael Lee in Further Support of Plaintiffs' Motion to Strike Defendant's Answer and for a Default Judgment and in Opposition to Defendant's Reply, dated Feb. 4, 2011 ("Reply" or "Pl.'s Reply Mem.") (Dkt. No. 19), ¶ 7 (citation omitted)). Despite the implication that this disclosure was incomplete and thus did not reflect the entirety of O'Brien's sales, Coach provides no evidence to suggest that O'Brien withheld any information reflecting additional sales, or that the revenues were higher than she proffered. Accordingly, the first and sixth factors weigh in favor of a damages award commensurate with the scale of the Website's sales. *See Duty Free Apparel,* 315 F.Supp.2d at 520 ("[S]tatutory damages 'should be woven out of the same bolt of cloth as actual damages[.]' ") (citation omitted); *see also Melendez,* 2011 WL 4542971, at *7 ("I believe it is desirable that an award of statutory [damages] be tied to some rough estimate of the actual damages that would be recoverable[.]").

**\*10** Courts frequently issue awards far below the statutory maximum on a per mark basis even where, as here, "the defendant willfully infringes on the plaintiff's mark and fails to stop such behavior after being put on notice by the plaintiff or the court, [although] there is no concrete information about the defendant's actual sales figures and profits and the estimate of plaintiff's lost revenue." *All–Star Marketing Group,* 775 F.Supp.2d at 624 (citing cases); *see, e.g., K Ya Int'l, Inc.,* 2010 WL 2771897, at *3 (deeming damages award of $20,000–$6,667 per infringement—sought by Coach "appropriate [trademark infringement] award, as it effectively serves both the punitive and deterrent purposes of 15 U.S.C. 1117(c)"); *Cartier Int'l B.V. v. Ben–Menachem,* No. 06 Civ. 3917, 2008 WL 64005, at *15 (S.D.N.Y. Jan.3, 2008) ($50,000 statutory damages for each of nineteen counterfeited marks deemed "sufficient to meet the goals of [15 U.S.C. § 1117(c) ], including compensating the Plaintiffs

and deterring future violations"); *Kenneth Jay Lane, Inc. v. Heavenly Apparel, Inc.,* No. 03 Civ. 2132(GBD)(KNF), 2006 WL 728407, at *6 (S.D.N.Y. Mar. 21, 2006) (where plaintiff did not provide court with any information about corporate defendant's business, "market in which [defendant] sold or is continuing to sell counterfeit products, or any estimate of the volume of products bearing the plaintiff's marks sold by the defendant [,]" court awarded $125,000 per infringed mark because that amount would sufficiently "impress upon [defendant] that there are consequences for its misconduct" and would "serve as a specific deterrent to [defendant] and as a general deterrent to others who might contemplate engaging in infringing behavior in the future"). This logic, and the application of the *Fitzgerald* framework, suggest that Coach's requested damage award is inappropriate.

Coach does not argue that the Website sold any infringing products—or even any non-infringing products—other than cellular phone covers. Representative samples of printouts from the Website indicate that these covers cost anywhere from $15.99 to $24.99. (Walden Aff. ¶ 15 Ex. 1). The cover purchased by counsel for Coach cost $19.99. (Kwapisz Aff. ¶ 4 & Ex. 1). These figures indicate that O'Brien would need to sell more than 50,025 cellular phone covers per year—or more than 4,169 per month, or 139 per day—to earn revenue equal to $1,000,000 a year. She would need to sell three times that amount to equal $3,000,000 in revenue per year, meaning 150,075 per year, 12,507 per month, or 417 per day. Such sales are unsupported by the allegations in the Complaint and seem rather far-fetched in light of the record. As Magistrate Judge Pitman observed in *Melendez,* another trademark case brought by Coach, "[a]lthough I have no empirical evidence concerning the issue, the notion that defendants—operators of a relatively obscure internet sales site—are selling more than 400 [hand]bags per week seems unlikely." 2011 WL 4542971, at *7 (noting that "the typical starting point for assessing statutory damages is the actual damages calculation, namely plaintiff's losses and/or defendant's profits").

**\*11** In her Opposition to the Motion for Default Judgment, O'Brien represented that the Website generated only $5,533.76 in revenue (Def.'s Mem. at 3), and, while the "back up" for that assertion was not presented to the Court, Coach has not offered any evidence to contradict that claim. Accepting the $5,533.76 figure as the entirety of O'Brien's revenue for the sake of this inquiry, without knowledge as to how much O'Brien marked up the cellular phone covers—for which there is no basis in the record— or what a typical mark-up is for a cellular phone cover,

any findings as to her profits would "simply be a guess[.]" *M.B.S. Love Unlimited, Inc. v. Park's Sportswear Corp.,* No. 90 Civ. 0311(LBS), 1990 WL 276561, at *3 (S.D.N.Y. Mar.28, 1990) (without evidence indicating "what mark-up is normal in this form of retailing [the T-shirt industry] ... [w]ere this Court to adopt some recognized form of retail pricing (*e.g.,* keystone pricing, *i.e.,* three times wholesale cost), it would simply be a guess as to the applicability of such pricing to T-shirt wholesalers."). Notwithstanding the apparent dearth of case law or documentary evidence to establish what mark-up is typical for cellular phone covers, in order to award damages that are "just," 15 U.S.C. § 1117(c)(2), I recommend the Court apply the three-hundred percent mark-up that courts have used in other trademark infringement cases involving luxury goods. *See, e.g., Melendez,* 2011 WL 4542971, at *7 (trademark action involving Coach handbags); *Malletier v. Apex Creative Int'l Corp.,* 687 F.Supp.2d 347, 358 (S.D.N.Y.2010) (trademark action involving Louis Vuitton handbags). Using this rubric, if O'Brien's revenue from the Website equaled $5,533.76, then O'Brien made approximately $4,150 in profits. Given that Coach seeks damages for infringement of three of the Coach Registered Trademarks, Coach would thus be entitled to recover $12,450 in statutory damages. Considering the willful nature of O'Brien's infringement, this amount is "an appropriate award as it effectively serves both the punitive and deterrent purposes of 15 U.S.C. § 1117(c)." *K Ya Int'l Inc.,* 2010 WL 2771897, at *3 (awarding $6,667 per infringed mark against corporate defendant that sold counterfeit handbags, and maintained offices and retail stores in Manhattan and Brooklyn).[6]

[6]    Where trademark infringement is deemed willful, the Lanham Act provides for either treble damages under 15 U.S.C. § 1117(b) (where a plaintiff seeks actual damages under 15 U.S.C. § 1117(a)) or an award of up to $2,000,000 per infringed trademark under 15 U.S.C. § 1117(c)(2) (where a plaintiff seeks statutory damages under 15 U.S.C. § 1117(c)). Because Coach seeks statutory damages under 15 U .S.C. § 1117(c), it does not seek and the Court does not award treble damages as it would if Coach sought actual damages under 15 U.S.C. § 1117(a). Nor does Coach request the enhanced $2,000,000 award permitted by 15 U.S.C. § 1117(c)(2). (Pls.' Mem. at 17–24). Although Coach has established that O'Brien's trademark infringement was willful, under these circumstances—specifically given the scale of

O'Brien's operations and the product she sold, cellular phone covers—the award of $ 12,450 "will be sufficient to meet the goals of the statute, including compensating the Plaintiffs and deterring future violations." *Cartier,* 2008 WL 64005, at *15.

**2. Costs and Fees**

Coach also requests an award of costs in the amount of $456.95, comprised of the $350.00 filing fee, a $50 investigative fee, and the cost of the "Evidential Purchase Fees," which Coach purports to be $56.95. (Affirmation of Walter–Michael Lee in Support of Plaintiffs' Motion to Strike Defendant's Answer and for a Default Judgment, dated Jan. 14, 2011 ("Lee Aff.") (Dkt. No. 13–3), ¶ 20). However, because the record indicates the cellular phone cover that counsel for Coach purchased cost only $25.94, inclusive of shipping fees (Kwapisz Aff. ¶ 4 & Ex. 1), rather than $56.95, Coach is entitled to reimbursement for fees in the amount of $425.94. Although Coach may be entitled to reasonable attorney's fees under 15 U.S.C. § 1117(a), *see Tiffany (NJ),* 282 F.Supp.2d at 125, Coach has indicated that it "does not seek recovery of its attorneys' fees." (Lee Aff. ¶ 21; Pls.' Mem. at 25 n. 3).

**3. Injunctive Relief**

**\*12**    In addition to statutory damages, Coach also seeks a permanent injunction. (Pl.'s Mem. at 26). In the Second Circuit, where a party seeks injunctive relief in an action alleging trademark infringement, courts apply the four-factor test enunciated by the Supreme Court in *eBay Inc. v. MercExchange, LLC,* 547 U.S. 388, 390, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).[7] Under that standard, injunctive relief should issue where the plaintiff has established a likelihood of success on the merits in seeking a preliminary injunction, or has actually succeeded on the merits in seeking a permanent injunction, and that: (1) plaintiff is likely to suffer irreparable injury in the absence of an injunction; (2) remedies at law, such as monetary damages, are inadequate to compensate plaintiff for that injury; (3) the balance of hardships tips in plaintiff's favor; and (4) the public interest would not be disserved by the issuance of a preliminary injunction. *See Salinger,* 607 F.3d at 80 (citing *eBay,* 547 U.S. at 391).

[7]    In *Salinger v. Colting,* 607 F.3d 68, 78 n. 7 (2d Cir.2010), the Second Circuit extended the test articulated by *eBay,* a patent action involving a permanent injunction, "to preliminary injunctions in the context of copyright cases[.]" Although the

Second Circuit did not explicitly extend the *eBay* test to trademark actions, the Court stated that it saw "no reason that *eBay* would not apply with equal force to an injunction in any type of case." *Id.* (emphasis in original) (*"eBay* strongly indicates that the traditional principles of equity it employed are the presumptive standard for injunctions in any context."). In light of *Salinger,* district courts in this Circuit have extended *eBay* to trademark actions as well. *See, e.g., U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.,* —— F.Supp.2d ——, 2011 WL 1842980, at *19–20 (S.D.N.Y. May 13, 2011)* (applying *Salinger'* s extension of *eBay* in a trademark action) (citing *Pretty Girl, Inc. v. Pretty Girl Fashions, Inc.,* 778 F.Supp.2d 261, 265 (E.D.N.Y.2011)* (same); *NYC Triathlon, LLC v. NYC Triathlon Club, Inc.,* 704 F.Supp.2d 305, 328 (S.D.N.Y.2010)* (same)).

The first *eBay* factor, irreparable harm, is "automatically satisfied by actual success on the merits, as irreparable harm is established by 'a showing of likelihood of confusion.' " *Genesee Brewing Co. v. Stroh Brewing Co.,* 124 F.3d 137, 142 (2d Cir.1997)* ("[T]he requirement of irreparable harm carries no independent weight, as we have held that a showing of likelihood of confusion (a requirement of both trademark infringement and unfair competition claims) establishes irreparable harm."). O'Brien's default constitutes an admission of liability as to the trademark infringement claim, as noted above, such that Coach has established a likelihood of confusion from which irreparable harm is presumed.

The second *eBay* factor, no adequate remedy at law, "is satisfied where the record contains no assurance against defendant's continued violation" of trademarks. *Montblanc– Simplo GmbH v. Colibri Corp.,* 692 F.Supp.2d 245, 259 (E.D.N.Y.2010)* (applying *eBay* test to trade dress claims after entry of default). Where default is entered, "[a] court may infer from a defendant's default that it is willing to, or may continue its infringement." *Pearson Educ., Inc. v. Vergara,* No. 09 Civ. 6832(JGK)(KNF), 2010 WL 3744033, at *4 (S.D.N.Y. Sept. 27, 2010)* (citations omitted), *adopted by,* Order at Dkt. No. 21 (S.D.N.Y. May 11, 2011). O'Brien's default thus weighs against her on this factor.

Finally, the third and fourth *eBay* factors, those requiring a balance of hardships and a consideration of the public interest, favor Coach. "The balance of hardships weighs in [Coach's] favor since [O'Brien] has not identified any hardships for the

Court to consider." *Hounddog Prods., LLC v. Empire Film Grp., Inc.,* No. 09 Civ. 9698(VM)(JLC), 2011 WL 4336694, at *9 (S.D.N.Y. Sept. 16, 2011) (Report & Recommendation), *adopted by,* 2011 WL 5519829 (S.D.N.Y. Nov.10, 2011); *see also Pearson Educ., Inc.,* 2010 WL 3744033, at *5 (same). Likewise, "the public has an interest in not being deceived— in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *NYC Triathlon, LLC,* 704 F.Supp.2d at 344 (granting motion to enjoin defendant from any further violations of trademark). Here, the public has an interest in being able to rely on the high quality of the products bearing the Coach Registered Trademarks so that the fourth factor, like the others, favors injunctive relief.

**\*13** Accordingly, I recommend that the Court enter the permanent injunction Coach seeks, and enjoin O'Brien and her employees, agents, servants, successors, and assigns, and all those acting in concert or participating therewith, from:

(a) using any reproduction, counterfeit, copy, or colorable imitation of the Coach Registered Trademarks to identify any goods or the rendering of any services not authorized by Coach;

(b) engaging in any course of conduct likely to cause confusion, deception or mistake, or injure Coach's business reputation or weaken the distinctive quality of the Coach Registered Trademarks, Coach's name, reputation or goodwill;

(c) using a false description or representation including words or other symbols tending to falsely describe or represent O'Brien's unauthorized goods as being those of Coach or sponsored by or associated with Coach and from offering such goods in commerce;

(d) further infringing or diluting the Coach Registered Trademarks by manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, displaying or otherwise disposing of any products not authorized by Coach bearing any simulation, reproduction, counterfeit, copy or colorable imitation of the Coach Registered Trademarks;

(e) using any simulation, reproduction, counterfeit, copy or colorable imitation of the Coach Registered Trademarks in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation or distribution of any unauthorized products in such fashion as to relate or connect, or tend to relate or connect, such

products in any way to Coach, or to any goods sold, manufactured, sponsored or approved by, or connected with Coach;

(f) making any statement or representation whatsoever, or using any false designation of origin or false description, or performing any act, which can or is likely to lead the trade or public, or individual members thereof, to believe that any services provided, products manufactured, distributed, sold or offered for sale, or rented by O'Brien are in any way associated or connected with Coach, or is provided, sold, manufactured, licensed, sponsored, approved or authorized by Coach;

(g) engaging in any conduct constituting an infringement of any of the Coach Registered Trademarks, of Coach's rights in, or to use or to exploit, said trademark, or constituting any weakening of Coach's name, reputation and goodwill;

(h) using or continuing to use the Coach Registered Trademarks or trade names in any variation thereof on the Internet (either in the text of a website, as a domain name, or as a keyword, search word, metatag, or any part of the description of the site in any submission for registration of any Internet site with a search engine or index) in connection with any goods or services not directly authorized by Coach;

(i) hosting or acting as Internet Service Provider for, or operating or engaging in the business of selling any web site or other enterprise that offers for sale any products bearing the Coach Registered Trademarks;

 **\*14**  (j) acquiring, registering, maintaining or controlling any domain names that include the COACH trademark or any of the other Coach Registered Trademarks or any marks confusingly similar thereto, activating any website under said domain names, or selling, transferring, conveying, or assigning any such domain names to any entity other than Coach;

(k) using any e-mail addresses to offer for sale any nongenuine products bearing counterfeits of the Coach Registered Trademarks;

(l) having any connection whatsoever with any websites that offer for sale any merchandise bearing counterfeits of the Coach Registered Trademarks;

(m) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulating, selling, marketing, offering for sale, advertising, promoting, or displaying of all unauthorized products which infringe the Coach Registered Trademarks; and

(n) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (m).

### III. *CONCLUSION*

For all of the foregoing reasons, I recommend that the Court enter a default judgment against O'Brien as to liability pursuant to Rule 37(b)(2)(A)(vi) and Rule 55(a). I further recommend that, pursuant to Rule 55(b), the Court award Coach statutory damages of $12,450.00 and fees in the amount of $425.94, for a total of $12,875 .94, and that a permanent injunction be entered as described above.

### *PROCEDURES FOR FILING OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections, and any responses to such objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable J. Paul Oetken and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Oetken. **FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir.2010) (citing *Cephas v. Nash,* 328 F.3d 98, 107 (2d Cir.2003) and *Mario v. P & C Food Mkts., Inc.,* 313 F.3d 758, 766 (2d Cir.2002)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72. If O'Brien does not have access to cases cited herein that are reported on LexisNexis or Westlaw, she should request copies from Coach. *See Lebron v. Sanders,* 557 F.3d 76, 79 (2d Cir.2009).

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 97 of 364

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 6122265

---

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

## Filings (100)

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1. Reply Brief for Defendant-Counter-Claimant-Appellant**<br>TIFFANY AND COMPANY, Tiffany (NJ) LLC, Plaintiffs-Counter-Defendants-Appellees, v. COSTCO WHOLESALE CORPORATION, Defendant-Counter-Claimant-Appellant.<br>2019 WL 3886778 | PDF | C.A.2 | Aug. 14, 2019 | Brief |
| **2. Brief for Plaintiffs-Counter-Defendants-Appellees**<br>TIFFANY AND COMPANY, Tiffany (NJ) LLC, Plaintiffs-Counter-Defendants-Appellees, v. COSTCO WHOLESALE CORPORATION, Defendant-Counter-Claimant-Appellant.<br>2019 WL 3409845 | PDF | C.A.2 | July 24, 2019 | Brief |
| **3. Brief and Special Appendix for Defendant-Counter-Claimant-Appellant**<br>TIFFANY AND COMPANY, Tiffany (NJ) LLC, Plaintiffs-Counter-Defendants-Appellees, v. COSTCO WHOLESALE CORPORATION, Defendant-Counter-Claimant-Appellant.<br>2019 WL 1894550 | PDF | C.A.2 | Apr. 24, 2019 | Brief |
| **4. Reply Brief for Plaintiff-Counter Defendant-Appellant**<br>LVL XIII BRANDS, INC., a New York Corporation, Plaintiff-Counter Defendant-Appellant, v. LOUIS VUITTON MALLETIER SA, Louis Vuitton North America, Inc., Defendants-Counter Claimants-Appellees, LVMH MOET HENNESSY LOUIS VUITTON SA, Defendant.<br>2017 WL 3036024 | PDF | C.A.2 | July 13, 2017 | Brief |
| **5. Brief for Defendants-Counter Claimants-Appellees**<br>LVL XIII BRANDS, INC., a New York Corporation, Plaintiff-Counter Defendant-Appellant, v. LOUIS VUITTON MALLETIER SA, Louis Vuitton North America, Inc., Defendants-Counter Claimants-Appellees, Lvmh Moet Hennessy Louis Vuitton SA, Defendant.<br>2017 WL 2377141 | PDF | C.A.2 | May 30, 2017 | Brief |
| **6. Brief for Plaintiff-Counter Defendant-Appellant**<br>LVL XIII BRANDS, INC., a New York Corporation, Plaintiff-Counter Defendant-Appellant, v. LOUIS VUITTON MALLETIER SA, Louis Vuitton North America, Inc., Defendants-Counter Claimants-Appellees, LVMH Moet Hennessy Louis Vuitton SA, Defendant.<br>2017 WL 896054 | PDF | C.A.2 | Feb. 27, 2017 | Brief |
| **7. Reply Brief for Plaintiff-Appellant**<br>THE HYMAN COMPANIES, d/b/a Landau Jewelers, Plaintiff, Feldman Law Group, P.C., as assignee of the Hyman Companies, Inc., d/b/a Landau Jewelers, Plaintiff-Appellant, v. LIBERTY MUTUAL INSURANCE COMPANY, a/k/a Liberty Mutual Group, Defendant-Appellee.<br>2012 WL 453978 | PDF | C.A.2 | Feb. 02, 2012 | Brief |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **8. Brief for Defendant-Appellee**<br>FELDMAN LAW GROUP, P.C., as assignee of The Hyman Companies, Inc., dba Landau Jewelers, Plaintiff-Appellant, The Hyman Companies, dba Landau Jewelers, Plaintiff, v. LIBERTY MUTUAL INSURANCE COMPANY, aka Liberty Mutual Group, Defendant-Appellee.<br>2012 WL 260004 | PDF | C.A.2 | Jan. 19, 2012 | Brief |
| **9. Brief for Plaintiff-Appellant and Special Appendix**<br>THE HYMAN COMPANIES, d/b/a Landau Jewelers, Plaintiff, Feldman Law Group, P.C., as assignee of the Hyman Companies, Inc., d/b/a Landau Jewelers, Plaintiff--Appellant, v. LIBERTY MUTUAL INSURANCE COMPANY, a/k/a Liberty Mutual Group, Defendant--Appellee.<br>2011 WL 6774077 | PDF | C.A.2 | Dec. 15, 2011 | Brief |
| **10. Brief Amicus Curiae of the Electronic Frontier Foundation, Public Citizen, and Public Knowledge in Support of Defendant-Appellee Ebay, Urging Affirmance**<br>TIFFANY (NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY INC., Defendant-Appellee.<br>2008 WL 8595301 | PDF | C.A.2 | Dec. 03, 2008 | Brief |
| **11. Brief of Amicus Curiae Yaroo! Inc. in Support of Defendant-Appellee and Affirmance**<br>TIFFANY (NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY INC., Defendant-Appellee.<br>2008 WL 8595303 | PDF | C.A.2 | Dec. 03, 2008 | Brief |
| **12. Brief for Amazon.com, Inc., Google Inc., Information Technology Association of America, Internet Commerce Coalition, Netcoalition, United States Internet Service Provider Association, and United States Telecom Association as Amici Curiae in Support of Defendant-Appellee Ebay, Inc.**<br>TIFFANY (NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY INC., Defendant-Appellee.<br>2008 WL 8595302 | PDF | C.A.2 | Dec. 02, 2008 | Brief |
| **13. Brief for Defendant-Appellee**<br>TIFFANY (NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY INC., Defendant-Appellee.<br>2008 WL 8430999 | PDF | C.A.2 | Nov. 21, 2008 | Brief |
| **14. Brief for Defendant-Appellee**<br>TIFFANY (NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY INC., Defendant-Appellee.<br>2008 WL 8595300 | PDF | C.A.2 | Nov. 21, 2008 | Brief |
| **15. Brief of Amicus Curiae the International Anticounterfeiting Coalition**<br>TIFFANY (NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY, INC., Defendant-Appellee.<br>2008 WL 8595305 | PDF | C.A.2 | Oct. 22, 2008 | Brief |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **16.  Brief of Amicus Curiae Coty Inc. in Support of Plaintiffs-Appellants**<br>TIFFANY (NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY INC., Defendant-Appellee.<br>2008 WL 8595306 | PDF | C.A.2 | Oct. 22, 2008 | Brief |
| **17.  Brief Amicus Curiae of the Council of Fashion Designers of America, Inc.**<br>TIFFANY(NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY INC., Defendant-Appellee.<br>2008 WL 8595307 | PDF | C.A.2 | Oct. 22, 2008 | Brief |
| **18.  Reply Brief for Plaintiffs-Appellants**<br>TIFFANY(NJ) INC. and Tiffany and Company, Plaintiffs-Appellants, v. EBAY INC., Defendant-Appellee.<br>2008 WL 8595304 | PDF | C.A.2 | Jan. 05, 2008 | Brief |
| **19.  Brief of Appellees**<br>LOUIS VUITTON MALLETIER S.A., Plaintiff- Appellant, v. Haute Diggity DOG, LLC; Victoria D.N. Dauernheim; Woofies, LLC, d/b/a Woofie's Pet Boutique, Defendants - Appellees.<br>2007 WL 894289 | PDF | C.A.4 | Mar. 19, 2007 | Brief |
| **20.  Brief of Amicus Curiae International Trademark Association in Support of Vacatur and Remand**<br>Louis Vuitton MALLETIER S.A., Plaintiff-Appellant, v. HAUTE DIGGITY DOG, LLC, Victoria D.N. Dauerniieim, and Woofies, Llc, d/b/a Woofies Pet Boutique, Defendants-Appellees.<br>2007 WL 834028 | PDF | C.A.4 | Mar. 14, 2007 | Brief |
| **21.  Brief of Appellant**<br>Louis Vuitton MALLETIER S.A., Plaintiff - Appellant, v. HAUTE DIGGITY DOG, LLC; Victoria D.N. Dauernheim; Woofies, LLC, d/b/a Woofie's Pet Boutique, Defendants - Appellees.<br>2007 WL 627089 | PDF | C.A.4 | Feb. 12, 2007 | Brief |
| **22.  Reply Brief of Appellant**<br>Louis Vuitton MALLETIER S.A., Plaintiff - Appellant, v. HAUTE DIGGITY DOG, LLC; Victoria D.N. Dauernheim; Woofies, LLC, d/b/a Woofie's Pet Boutique, Defendants - Appellees.<br>2006 WL 4473334 | PDF | C.A.4 | 2006 | Brief |
| **23.  Reply Brief of Appellant Rolex Watch U.S.A., Inc.**<br>ROLEX WATCH USA, INCORPORATED, Plaintiff-Appellant, v. BECKERTIME, L.L.C.; Matthew Becker, Defendants-Appellees.<br>2024 WL 4370550 | — | C.A.5 | Sep. 27, 2024 | Brief |
| **24.  Summary Response Brief of Defendants-Appellees**<br>ROLEX WATCH USA, INC., Plaintiff-Appellant, v. BECKERTIME, LLC; Matthew Becker, Defendants-Appellees.<br>2024 WL 4120436 | — | C.A.5 | Sep. 06, 2024 | Brief |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **25.  Brief of Appellant Rolex Watch U.S.A., Inc.** ROLEX WATCH USA, INCORPORATED, Plaintiff-Appellant, v. BECKERTIME, L.L.C.; Matthew Becker, Defendants-Appellees. 2024 WL 3697100 | — | C.A.5 | July 31, 2024 | Brief |
| **26.  Reply Brief of Defendants-Appellees / Cross-Appellants** ROLEX WATCH USA, INC., Plaintiff-Appellant / Cross-Appellee, v. BECKERTIME, LLC; Matthew Becker, Defendants-Appellees / Cross-Appellants. 2023 WL 3735889 | — | C.A.5 | May 26, 2023 | Brief |
| **27.  Response and Reply Brief of Appellant Rolex Watch U.S.A., Inc.** ROLEX WATCH USA, INC., Plaintiff-Appellant/Cross-Appellee, v. BECKERTIME, L.L.C.; Matthew Becker, Defendants-Appellees/Cross-Appellants. 2023 WL 3044942 | — | C.A.5 | Apr. 14, 2023 | Brief |
| **28.  Principal & Response Brief of Defendants-Appellees / Cross-Appellants** ROLEX WATCH USA, INC., Plaintiff-Appellant / Cross-Appellee, v. BECKERTIME, LLC; Matthew Becker, Defendants-Appellees / Cross-Appellants. 2023 WL 2264212 | PDF | C.A.5 | Feb. 22, 2023 | Brief |
| **29.  Brief of Appellant Rolex Watch U.S.A., Inc.** ROLEX WATCH USA, INC., Plaintiff-Appellant/Cross-Appellee, v. BECKERTIME, L.L.C.; Matthew Becker, Defendants-Appellees/Cross-Appellants. 2022 WL 17992270 | — | C.A.5 | Dec. 23, 2022 | Brief |
| **30.  Appellants Source II, Inc. and Cerhue Andre Walker d/b/a Source II Reply to Appellees' Response to Appellants' Appeal Brief** COACH SERVICES, INC.; Coach, Inc., Plaintiffs-Appellees, v. SOURCE II, INC.; Cerhue Andre Walker d/b/a Source II, Defendants-Appellants. 2018 WL 621168 | PDF | C.A.6 | Jan. 23, 2018 | Brief |
| **31.  Brief of Appellees Coach Services, Inc. and Coach, Inc.** COACH SERVICES, INC.; Coach, Inc., Plaintiffs-Appellees, v. SOURCE II, INC.; Cerhue Andre Walker, Individually, d/b/a Source II, Inc., Defendants-Appellants. 2017 WL 4351189 | PDF | C.A.6 | Sep. 29, 2017 | Brief |
| **32.  Brief of Appellants Source II, Inc. and Cerhue Andre Walker d/b/a Source II** COACH SERVICES, INC.; Coach, Inc., Plaintiffs-Appellees, v. SOURCE II, INC.; Cerhue Andre Walker d/b/a Source II, Defendants-Appellants. 2017 WL 3026223 | PDF | C.A.6 | July 13, 2017 | Brief |
| **33.  Appellant's Reply Brief** Joseph MOSSERI, Defendant-Appellant, v. Louis Vuitton MALLETIER, S.A., Plaintiff-Appellee. 2013 WL 170016 | PDF | C.A.11 | Jan. 12, 2013 | Brief |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **34. Answer Brief of Appellee**<br>Joseph MOSSERI, Appellant, v. Louis Vuitton MALLETIER, S.A., Appellee.<br>2012 WL 6055656 | PDF | C.A.11 | Nov. 28, 2012 | Brief |
| **35. Appellant's Brief**<br>Joseph MOSSERI, Defendant-Appellant, v. Louis Vuitton MALLETIER, S.A., Plaintiff-Appellee.<br>2012 WL 3776602 | PDF | C.A.11 | Aug. 28, 2012 | Brief |
| **36. Reply Brief for Petitioner**<br>Malletier v. My Other Bag, Inc.<br>2017 WL 3725922 | PDF | U.S. | Aug. 29, 2017 | Petition |
| **37. Brief in Opposition**<br>Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.<br>2017 WL 3531091 | PDF | U.S. | Aug. 14, 2017 | Petition |
| **38. Petition for a Writ of Certiorari**<br>Malletier v. My Other Bag, Inc.<br>2017 WL 3034216 | PDF | U.S. | July 13, 2017 | Petition |
| **39. Reply Brief for Petitioners**<br>Tiffany (NJ) Inc. v. eBay, Inc.<br>2010 WL 4339898 | PDF | U.S. | Nov. 02, 2010 | Petition |
| **40. Supplemental Brief for Respondent**<br>Tiffany (NJ) Inc. v. eBay Inc.<br>2010 WL 4278718 | PDF | U.S. | Oct. 29, 2010 | Petition |
| **41. Brief of Amicus Curiae the International Trademark Association in Support of a Petition for a Writ of Certiorari to the Second Circuit Court of Appeals**<br>Tiffany (NJ) Inc. v. eBay, Inc.<br>2010 WL 4163755 | PDF | U.S. | Oct. 20, 2010 | Petition |
| **42. Brief Amicus Curiae of Coty Inc. in Support of Petitioners**<br>Tiffany (NJ) Inc. v. eBay Inc.<br>2010 WL 4220521 | — | U.S. | Oct. 20, 2010 | Petition |
| **43. Brief for Respondent in Opposition**<br>Tiffany (NJ) Inc. v. eBay Inc.<br>2010 WL 4220522 | PDF | U.S. | Oct. 20, 2010 | Petition |
| **44. Brief Amicus Curiae of the International Anticounterfeiting Coalition in Support of Petitioners**<br>Tiffany (NJ) Inc. v. eBay, Inc.<br>2010 WL 4163756 | PDF | U.S. | Oct. 19, 2010 | Petition |
| **45. Petition for a Writ of Certiorari**<br>Tiffany (NJ) Inc. v. eBay Inc.<br>2010 WL 3442072 | PDF | U.S. | Aug. 27, 2010 | Petition |
| **46. Petition for A Writ of Certiorari**<br>Robert MEECE d/b/a American Wholesale Jewelry, Petitioner, v. ROLEX WATCH U.S.A., INC., Respondent.<br>1999 WL 33641191 | PDF | U.S. | Apr. 17, 1999 | Petition |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **47. Complaint for Federal Trademark Counterfeiting; Federal Trademark Infringement; Federal False Designation of Origin, False Description and Unfair Competition**<br>ROLEX WATCH U.S.A., INC., Plaintiff, v. LSM WATCH, INC. d/b/a Luxury Swiss Made Watches; Time Piece Collections, Inc.; A Luxury Watch Brand, Inc.; and Ali Paravar, Defendants.<br>2021 WL 6199194 | — | C.D.Cal. | Feb. 22, 2021 | Pleading |
| **48. Complaint for Federal Trademark Counterfeiting; Federal Trademark Infringement; and Federal False Designation of Origin, False Description and Unfair Competition**<br>ROLEX WATCH U.S.A., INC., Plaintiff, v. WATCH EMPIRE LLC d/b/a Time and Gems, www.timeandgems.com, www.timeandgems.info, and www.watchempiredesigns.com; Horological Appraisal Group d/b/a www.horologicalappraisers.com; and individuals Michael Davidi and Ilana Cohanim, Defendants.<br>2013 WL 6859924 | PDF | C.D.Cal. | Dec. 16, 2013 | Pleading |
| **49. Complaint for: (1) Trademark Counterfeiting and Infringement (15 U.S.C. § 1114); and (2) False Designation of Origin (15 U.S.C. § 1125(a))**<br>CHANEL, INC., a New York corporation, Plaintiff, v. MODE SALON, INC., a California corporation, Sharon Huynh-Na Vu a/k/a Sharon Huynh-Nga Vu a/k/a Sharon Nga T. Vu a/k/a Huynh Nga Vu a/k/a Huynh Nga T. Vu a/k/a Sharon N. Vu, an individual, individually and jointly d/b/a Spa By Mode and does 1-10, inclusive, Defendants.<br>2012 WL 4341342 | PDF | C.D.Cal. | Sep. 13, 2012 | Pleading |
| **50. Complaint for Damages: 1. Federal Trademark Infringement 2. Trade Dress Infringement 3. False Designations of Origin and False Descriptions 4. Federal Trademark Dilution 5. Trademark Dilution Under California Law 6. Copyright Infringement 7. Common L aw Unfair Competition**<br>COACH SERVICES, INC., a Maryland Corporation, Plaintiff, v. YNM, INC. a California Corporation dba Y&M; Young Goon Yoo, an individual; Does 1-10, inclusive, Defendants.<br>2010 WL 1321343 | PDF | C.D.Cal. | Mar. 30, 2010 | Pleading |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **51. First Amended Complaint for Damages: 1. Trademark Infringement (15 U.S.C. \| 1114); 2. False Designations of Origin and False Descriptions (15 U.S.C. \| 1125(a)) 3. Trademark Dilution (15 U.S.C. \| 1125(c)); Common Law Unfair Competition; 5. Injury to B usiness Reputation; Dilution (Cal. Bus. & Prof.code \| 14330);** COACH, INC., a Maryland Corporation, Plaintiff, v. Abner's FASHION, an unknown business entity; Anabel Collections, Inc., a California Corporation aka Anabel Inc.; Bellagio U.S.A., an unknown business entity; Bhag's of New York dba Line Handbags, an unknown business entity; Bnb Handbags, an unknown business entity; Byeong & Baeg, an individual; Bolsa Bolsa Mezon, Inc., a California Corporation; Bonita Trading Co., an unknown business entity; Max Purse, LLC, a 2009 WL 5225687 | PDF | C.D.Cal. | Nov. 09, 2009 | Pleading |
| **52. Answer of Zeotec Diamonds, Inc. and Ali Paravar** ROLEX WATCH U.S.A., INC., Plaintiff, v. ZEOTEC DIAMONDS, INC., and Ali Paravar, Defendants. 2002 WL 32997314 | PDF | C.D.Cal. | Mar. 13, 2002 | Pleading |
| **53. Complaint for Trademark Counterfeiting, Trademark Infringement, False Designations of Origin and False Description, Unfair Competition and Dilution** ROLEX WATCH U.S.A., INC., Plaintiff, v. ZEOTEC DIAMONDS, INC., and Ali Paravar, Defendants. 2002 WL 32997315 | PDF | C.D.Cal. | Feb. 05, 2002 | Pleading |
| **54. Complaint for Damages: 1. Trademark Counterfeiting; 2. Federal Trademark Infringement; 3. False Designations of Origin and False Advertising; 4. Federal Trademark Dilution; 5. Trademark Dilution Under California Law; 6. Common Law Unfair Competition** COACH, INC., a Maryland Corporation; Coach Services, Inc., a Maryland Corporation, Plaintiffs, v. Sac A MAIN, an unknown business entity; Dana Lanthier, an individual; and Does 1-10, inclusive, Defendants. 2012 WL 1859271 | PDF | E.D.Cal. | May 22, 2012 | Pleading |
| **55. First Amended Complaint for Damages and Injunctive Relief** CHANEL, INC., a New York corporation, Plaintiff, v. JESSICA GAUL, an individual, Gaul Innovations, LLC, a limited liability company, d/b/a Kayden Grace Designs a/k/a Kaydengracedesigns.Com, Karen K. Gupton a/k/a Karen Kearney Gupton, an individual, d/b/a the Trendy Baby a/k/a Thetrendybaby.Com, Margaret Malto, an individual, d/b/a Lunabelle Boutique a/k/a Lunabelleboutique.Com, and Does 1-10, Defendants. 2014 WL 9912615 | — | N.D.Cal. | July 16, 2014 | Pleading |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **56.** **Complaint for Damages and Injunctive Relief** CHANEL, INC., a New York corporation, Plaintiff, v. Jessica GAUL, an individual, Gaul Innovations, LLC, a limited liability company, d/b/a Kayden Grace Designs a/k/a Kaydengracedesigns.com, Karen K. Gupton a/k/a Karen Kearney Gupton, an individual, d/b/a The Trendy Baby a/k/a Thetrendybaby.com, Margaret Malto, an individual, d/b/a Lunabelle Boutique a/k/a Lunabelleboutique.com, and Does 1-10, Defendants. 2014 WL 4720433 | [PDF] | N.D.Cal. | July 09, 2014 | Pleading |
| **57.** **Complaint for Damages and Injunctive Relief** CHANEL, INC., a New York corporation, Plaintiff, v. THE PARTNERSHIPS or Unincorporated Associations Identified on Schedule "A" and Does 1-100, Defendants. 2013 WL 2951468 | [PDF] | N.D.Cal. | June 10, 2013 | Pleading |
| **58.** **Complaint for Injunctive Relief and Damages** CHANEL, INC., a New York corporation, Plaintiff, v. ZHANG YANG DOING BUSINESS AS THE DOMAIN NAMES IDENTIFIED ON SCHEDULE "A" and Does 1-10, Defendants. 2012 WL 3623868 | [PDF] | N.D.Cal. | Aug. 23, 2012 | Pleading |
| **59.** **Complaint for Injunctive Relief and Damages** CHANEL, INC., a New York corporation, Plaintiff, v. ZHANG YANG DOING BUSINESS AS THE DOMAIN NAMES IDENTIFIED ON SCHEDULE "A" and Does 1-10, Defendants. 2012 WL 3730208 | [PDF] | N.D.Cal. | Aug. 23, 2012 | Pleading |
| **60.** **Complaint for Injunctive Relief and Damages** CHANEL, INC., a New York Corporation, Plaintiff, v. ZHANG YANG DOING BUSINESS AS THE DOMAIN NAMES IDENTIFIED ON SCHEDULE "A" and Does 1-10, Defendants. 2012 WL 3812044 | [PDF] | N.D.Cal. | Aug. 23, 2012 | Pleading |
| **61.** **Complaint** CHANEL, INC., a New York corporation, Plaintiff, v. Sandra S. DUDUM a/k/a Sandra Sayegh Dudum, an individual, d/b/a Glam Bomb Queen d/b/a Glam Bomb Queen, Inc., and Does 1-10, Defendants. 2012 WL 1376068 | [PDF] | N.D.Cal. | Apr. 12, 2012 | Pleading |
| **62.** **Complaint for Damages: 1. Trademark Counterfeiting; 2. Federal Trademark Infringement; 3. False Designations of Origin and False Advertising; 4. Federal Trademark Dilution; 5. Trademark Dilution Under California Law; 6. Common Law Unfair Competition; 7. Copyright Infringement** COACH, INC., a Maryland Corporation; Coach Services, Inc., a Maryland Corporation, Plaintiffs, v. Zhou Hui YIN an individual doing business as New Gift Shop; and Does 1-10, inclusive, Defendants. 2011 WL 2563144 | [PDF] | N.D.Cal. | June 17, 2011 | Pleading |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **63. Complaint for Damages: 1. Trademark Counterfeiting; 2. Federal Trademark Infringement; 3. False Designations of Origin and False Advertising; 4. Federal Trademark Dilution; 5. Trademark Dilution Under California Law; 6. Common Law Unfair Competition; 7. Copyright Infringement**<br>COACH, INC., a Maryland Corporation; Coach Services, Inc., a Maryland Corporation, Plaintiffs, v. Diana FASHION, an unknown business entity; Diane Dao, an individual; and Does 1-10, inclusive, Defendants.<br>2011 WL 2352968 | PDF | N.D.Cal. | May 10, 2011 | Pleading |
| **64. Complaint for Damages: 1. Trademark Counterfeiting; 2. Federal Trademark Infringement; 3. False Designations of Origin and False Advertising; 4. Federal Trademark Dilution; 5. Trademark Dilution Under California Law; 6. Common Law Unfair Competition; 7. Copyright Infringement**<br>COACH, INC., a Maryland Corporation; Coach Services, Inc., a Maryland Corporation, Plaintiffs, v. Diana FASHION, an unknown business entity; Diane Dao, an individual; and Does 1-10, inclusive, Defendants.<br>2011 WL 2353236 | PDF | N.D.Cal. | May 10, 2011 | Pleading |
| **65. Complaint for Trademark Counterfeiting and Infringement, False Designation of Origin, and Cyberpiracy**<br>CHANEL, INC., a New York corporation, Plaintiff, v. Huangteng WENG a/k/a Huang Fei Fei a/k/a Bai Fiefie, Dapao Wen, and Does 1-10, Defendants.<br>2010 WL 3300898 | PDF | N.D.Cal. | Aug. 17, 2010 | Pleading |
| **66. Complaint for Trademark Counterfeiting and Infringment and False Designation of Origin**<br>CHANEL, INC., a New York corporation, Plaintiff, v. Xiuyin LIN, Shiguan Wang, and Zhongxioubin, individually and jointly a/k/a Joey Van a/k/a Kevin Nakamura a/k/a Kevin Northrop and Does 1-10, Defendants.<br>2009 WL 6697925 | PDF | N.D.Cal. | Oct. 20, 2009 | Pleading |
| **67. Complaint for Damages for Contributory Infringement of Trademarks and for Injunctive Relief for Contributory Infringement of Trademarks**<br>Louis Vuitton MALLETIER, Plaintiff, v. THE FLEA MARKET, INC. d/b/a the San Jose Flea Market, Bumb & Associates, Brian Bumb, Timothy Bumb, George Bumb, Jr., Jeffrey Bumb and Patrick DE Tar, Defendants.<br>2009 WL 1417902 | PDF | N.D.Cal. | Mar. 11, 2009 | Pleading |
| **68. Complaint for Damages for Contributory Infringement of Trademarks and for Injunctive Relief for Contributory Infringement of Trademarks**<br>Louis Vuitton MALLETIER, Plaintiff, v. THE FLEA MARKET, INC. d/b/a the San Jose Flea Market, Bumb & Associates, Brian Bumb, Timothy Bumb, George Bumb, Jr., Jeffrey Bumb and Patrick DE Tar, Defendants.<br>2009 WL 1417903 | PDF | N.D.Cal. | Mar. 11, 2009 | Pleading |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **69.** **Complaint for Damages for Contributory Infringement of Trademarks and for Injunctive Relief for Contributory Infringement of Trademarks** <br> Louis Vuitton MALLETIER, Plaintiff, v. THE FLEA MARKET, INC. d/b/a the San Jose Flea Market, Bumb & Associates, Brian Bumb, Timothy Bumb, George Bumb, Jr., Jeffrey Bumb and Patrick De Tar, Defendants. <br> 2009 WL 958100 | [PDF] | N.D.Cal. | Mar. 10, 2009 | Pleading |
| **70.** **Complaint for Damages and Injunctive Relief** <br> CHANEL, INC., a New York corporation, Plaintiff, v. Brandon DOAN, Eddie Doan, and Hau Nguyen, individually and jointly, d/b/a Cizi's Handbags d/b/a Cizicollection.Com d/b/a Cizinguyen, and does 1-10, Defendants. <br> 2005 WL 3822882 | [PDF] | N.D.Cal. | Aug. 26, 2005 | Pleading |
| **71.** **Complaint** <br> ROLEX WATCH U.S.A., INC., Plaintiff, v. James Michael LYNCH; Unknown Websites 1-10; "John Does" 1-10; and Unknown Entities 1-10, Defendants. <br> 2012 WL 4757176 | [PDF] | M.D.Fla. | Oct. 01, 2012 | Pleading |
| **72.** **Complaint** <br> COACH, INC., a Maryland corporation, and Coach Services, Inc., a Maryland corporation, Plaintiffs, v. JUST A BOUN, LLC, a Florida limited liability company d/b/a JC Cellular, and Justin Bounauito, individually, Christina Bounauito, individually, and Ralph Bounauito, individually, Defendants. <br> 2011 WL 2352676 | [PDF] | M.D.Fla. | May 12, 2011 | Pleading |
| **73.** **Complaint for Damages and Injunctive Relief** <br> CHANEL, INC., a New York Corporation, Plaintiff, v. Douglas MESADIEU, an individual, d/b/a Replicagalaxy.com d/b/a Leathermoon.com; Replica Galaxy, LLC, a Florida Limited Liability Company, d/b/a Replicagalaxy.com d/b/a Leathermoon.com; Finerbags, Inc., a Florida Corporation, d/b/a Replicagalaxy.com d/ b/a Leathermoon.com and D&H Dynasty Trade Corp., a Florida Corporation, d/b/a Replicagalaxy.com d/b/a Leathermoon.com and Does 1-10, <br> 2008 WL 5363278 | [PDF] | M.D.Fla. | Sep. 09, 2008 | Pleading |
| **74.** **Complaint for Damages and Injunctive Relief** <br> CHANEL, INC., a New York Corporation, Plaintiff, v. ROUTE' LIMITED, LLC, a Florida corporation, and Robert Baker Routt d/b/a Getinfashion.com d/b/a Route' Limited, and Does 1 - 10, Defendants. <br> 2006 WL 3035528 | [PDF] | M.D.Fla. | Aug. 30, 2006 | Pleading |
| **75.** **Complaint** <br> OAKLEY, INC., Plaintiffs, v. JJS CHEVRON, INC., and John Joseph Defendants. <br> 2005 WL 1500659 | [PDF] | M.D.Fla. | May 19, 2005 | Pleading |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **76. Amended Complaint for Damages and Injunctive Relief**<br>Tissot SA, Plaintiff, v. ROTWATCHES.COM and Salestoretoday.com, Each an Individual, Business Entity, or Unincorporated Association," Defendants.<br>2025 WL 1006656 | — | S.D.Fla. | Jan. 15, 2025 | Pleading |
| **77. Amended Complaint for Damages and Injunctive Relief**<br>TIFFANY (NJ) LLC, Plaintiff, v. DISCOUTNAC.SHOP; Discoutnfb.shop; Discoutnll.vip; Foutdoocc.top; Outdoorser.vip; Outdoorsmm.shop; Outdoorsnn.shop; Promotionuk.com; Stashss.vip; and Warehousesuk.com, Each an Individual, Business Entity, or Unincorporated Association, Defendants.<br>2024 WL 5455237 | — | S.D.Fla. | Dec. 12, 2024 | Pleading |
| **78. Amended Complaint for Damages and Injunctive Relief**<br>TIFFANY (NJ) LLC, Plaintiff, v. ADORBETH.COM; Alisa Li; Allbrandstyle.cn; Annahparker.com a/k/a Vtyew.top a/k/a Finepaymtt.com a/k/a Brookslindsey.com; Beluxe.vn a/k/a Beriche.com.vn; Bestjennyisme; Cartisphere.com; Charlionoht a/k/a Fendisunshinebag; Chinashoesfactory a/k/a China Shoes; Cia's Jewelry; Cicoart1.com; Demarca PH; Designer Jewelry; Erin Minyond; Getjewelrys.com; Gl_cocosneakers a/k/a Cocokickofficial.com a/k/a Cocokickcc.ru a/k/a Cocokick.best; Hypeunique.online; Inluxeking.com a/k/a My18kjewelry; Insdrip.com; Josiejewelry.com; Lanstia.com; Leixluxury a/k/a Leixluxury.com; Lovebagfans.com.co; Lovejewellry.com a/k/a Lovejewlery.com; Lovemjy.com; Luxury Goods Factory Direct Sales a/k/a Kim a/k/a 2916172105c; Luxurylin001 a/k/a Luxurylin; Luxuryonsale.co.uk; Monogramluxe.co; Monogramluxe.net; Nynluxury.com; Ohotbag.shop a/k/a Oqsybag.shop a/k/a Osrrbag.shop a/k/a Ossrbag.shop a/k/a Oxuhbag.shop a/k/a Pacubag.shop a/k/a Pgslbag.shop a/k/a Pwzbag.shop a/k/a Pxtzbag.shop a/k/a Pymbag.shop a/k/a Qdbbag.shop a/k/a Qxubag.shop a/k/a Ruyubag.shop a/k/a Uwtrbag.shop a/k/a Vxixbag.shop a/k/a Wntbag.shop a/k/a Wsvslbag.shop; Peakhook.is; Popshoeofficial.com; Projewelrys.com; Repskiller.org a/k/a Repskiller.co; Rivaayat.co; Sneakerheadfashions.com; Sneakerswhere_com a/k/a Sneakerswhere Official a/k/a Sneakerswhere.com; Stockxkicks.com; Supstagemy.com a/k/a Supstage.official a/k/a Supstage.jason; Topqualityproductseller; Werep.ru a/k/a Werep.is; Wholesale Luxury Boutique; Wonderwooden.com; Wosstoretogo.myshopify.com a/k/a Worldofshoesstore.com; 365buysneakers.com; 86 171 7794 2698 a/k/a High End Luxury a/k/a A201811192306550310156320 a/k/a 86 152 0597 9595; and Lijunyang, Each an Individual, Business Entity, or Unincorporated Association, Defendants.<br>2024 WL 5505141 | — | S.D.Fla. | July 23, 2024 | Pleading |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **79. Complaint for Injunctive Relief and Damages** <br> TIFFANY (NJ) LLC, Plaintiff, v. REPLICATIFFANY.TO; Aaabagtrade.Ru; Auvbdl.com a/k/a Csgqilin.com; Charmsfit.com; Gbjiil.com a/k/a Lovelyssm.com a/k/a Mythssting.com; Jewelrysup.com; Licjm.com; Paybanks.Cf; Tfrings.Cn; Tiffanyandcosales.com.Cn a/k/a Tiffanycos.Cn a/k/a Tiffanynecklace. com.Cn; Tiffany-Discount.Co; Tiffanyonsale.Co; and Uu-99.Xyz, Each an Individual, Business Entity, or Unincorporated Association, Defendants. <br> 2021 WL 6279351 | — | S.D.Fla. | June 16, 2021 | Pleading |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **80. Complaint for Injunctive Relief and Damages**<br>LOUIS VUITTON MALLETIER, Plaintiff,<br>v. AAALVSALE.COM, Bestlvbag.com,<br>Fakeslouisvuitton.com, Gotlouisvuitton.com,<br>louis-sa.com, Louistore.RU, Louisvuitton24.com,<br>Louisvuittonbagmall.com, Louisvuittonboutique.vip,<br>Louisvuittoncity.com, Louisvuittondeal.vip,<br>Louisvuittonfemme.com, Louisvuittonhk. com,<br>Louisvuittonid.com, Louisvuitton-Id.com, Louisvuittonid.<br>Shop, Louisvuitton-Id. Shop, Louisvuittonmalaysia.<br>Shop, Louisvuittonmode.com, Louisvuittonn.Online,<br>Louisvuittonn.Vip, Louisvuitton-Ph.com,<br>Louisvuittonph. Shop a/k/a Louisvuitton-Ph. Store a/<br>k/a Louisvuittons.Today a/k/a Louisvuittonsg.Live a/k/<br>a Louisvuittonsg.World a/k/a Louisvuittonshop.Today,<br>Louisvuittonphpp.com, Louisvuittonppi.com,<br>Louisvuittonpro.Com, Louisvuittonpurse.Net,<br>Louisvuittonreplicabags.Org, Louisvuittons. Shop,<br>Louisvuitton-Sg.com, Louisvuitton-Sgp.Com,<br>Louisvuittonshop.Live, Louisvuittonshopping.Live,<br>Louisvuittonsolde.com, Louisvuittonsuperdiscount. Shop,<br>Louisvuittonter.com, Louisvuittonv.Vip, Louisvuittonvillage.<br>com, Lvecv. com, Lvluxurybags.XYZ, Replicalvsell.com,<br>Replicaslouisvuitton.Com, Luxoii.com a/k/a Bage.icu<br>a/k/a Bag-Shop.Online a/k/a Bagsshop.icu a/k/<br>a Batt. Shop a/k/a Bbfl.icu a/k/a Blvck.icu a/k/a<br>Finnmilesluxuryhomes.icu a/k/a Funko.icu a/k/a Geox.icu<br>a/k/a Gopro.icu a/k/a Grih.icu a/k/a Jabra.icu a/k/a<br>Jjre.icu a/k/a Kmart.icu a/k/a Leasetoownluxuryhomes.icu<br>a/k/a Lopo.Club a/k/a Louisvuittons-milano.icu a/k/<br>a Louisvuittonsoutletonline.icu a/k/a Luxurybag.ICU<br>a/k/a Luxurybrandshop.icu a/k/a Luxury-Shop.XYZ<br>a/k/a Luxury-shops.icu a/k/a Luxuryskinshop.icu a/<br>k/a Luxury-style.icu a/k/a Lv-online-shop.icu a/k/a<br>Maloneluxurymarketing.icu a/k/a Martinluxuryhomes.icu<br>a/k/a Mavi.ICU a/k/a Mcmhi.icu a/k/a Mmmz.icu a/k/a<br>Mmxl.icu a/k/a Myluxury.Club a/k/a Mytheresa.XYZ a/k/<br>a Newseasonbag.icu a/k/a Omio.icu a/k/a Qlly.icu a/k/a<br>Qlvse.icu a/k/a Shophandbag.top a/k/a Shoppingbags.icu<br>a/k/a Tradesy.top a/k/a Wkkj.icu a/k/a Xmasgift.icu<br>a/k/a Yycx.icu, 2020cokn.com, 2020Copy.com,<br>Acaxro.com, Aeozv.com, Ahandbags.Com, Aik-Shop.com,<br>Alexcn.Shop, Alimorluxury.NL, Angelbags.info a/k/a<br>Angelbags.pro, Asibags.club, Bagreplica.ru, Bags-bag.net,<br>Bagsho.com, Becomebag.com, Brand-Kingdom.com,<br>Brandsindustry.Net, Brendof-Club.com, Buildtote.com,<br>Byluxuryshopping.com, Chinaluxurybag.com,<br>Closebags.com, Collectbrand.com, Copy432.com,<br>Copymm666.com, Costbags.com, Cozaka.com,<br>Crisandcoco.Co, Criticbags.com, Cwen333.com,<br>Deathtote.com, Dependbag.com, Desgnrbrands.NL,<br>Discountretailbag.com, Doubtbags.com, Dresstote.com,<br>Ehinoh.com, Ejfsbag.com, Ekabags.Club, Elsebags.com,<br>Equaltote.com, Exceptbags.com, Exclusivekicks.Co.UK,<br>Famebags.com, Fasbags.com, Fc888Luxury.com, | — | S.D.Fla. | Apr. 12, 2021 | Pleading |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| Giybags.club, Hacopy.com, Handbagsonlinesales.com, Happenbag.com, Hebags.CLUB, Honbags.club, Hubags.club, Humanbags.com, Idisad.com, Igiwoc.com, Ilebags.Club, Instockbags.com, Istanbulbags.com, Jwellis.Ru, Kjvips.com, Labags.club, Latterbag.com, Lawobag.com a/k/a Periclone.com, Leibag.shop, Lg4e62.vip a/k/a Outaubags.com a/k/a QG5S63.vip, Likelybag.com, Likelybags.com, Luiscanta.com, Luxbag.Ru, Luxeborse.com, Luxehandbageu.com, Luxehandbagseu.com, Lux-Jp.com, Luxmallac.com, Luxurybagsi.com, Luxurydrippers. Online, Luxury-Dupes.com, Mebbags.Club, Nasbags.Club, Ninki-111.com, Noticebag.com, Ogebags.club, Onbags.Club, Otihop.com, Outusbags.com, Perfectfakehandbags.com, Perfectkits.club, Personbag.com, Polbags.club, Provebags.com, Raisebags.com, Replicabagselling. Com, Replicapurses Shop. Com, Replicasbagsale.com, Replicasbagshop.com, Replybags.com, Resbags.Club, Rwlbag.com, Salecabag.com, Saobag.com, Sulbags.CLUB, Tihbags.CLUB, TOKE333.com, Top-Qual.NET a/k/a Topqualm.com a/k/a XN--5-Xzogou.com a/k/a XN--6-Xzogou.com a/k/a XN--Original-QK40BT8C.com, Tracob.Online a/k/a Tracob.RU, Tutbags.club, Typebags.com, Ulebags.club, Underbags.com, Usalbags.com, Usaubags.com a/k/a Usfsbags.com a/k/a Xmwshjw.com, Uscabags.com, Usftbags.com, Ushotbag.com, Vogueaccent.com, Voguebrands.Net, Vsnc333.com, Wabagjp.Net, Wantmybags.com, Weekbags.Com, Yayakopi.Net, and Yourfashionoutlet.US, each an Individual, Partnership, or Unincorporated Association, Defendants.  2021 WL 6279309 | | | | |

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **81.** **Amended Complaint for Damages and Injunctive Relief**<br>TIFFANY (NJ) LLC, Plaintiff, v. CHENY NO.2 STORE; Cheny No.3 Store; Shine Ng Store a/k/a Shine Peng Store a/k/a Shine Tung Store; Shop5607030 Store; Yishi 925 Silverr Store; Shop5585039 Store; Houbl; A201811; A201899; A88968; Appletree_; Brand_LOGO_BB; Bruxe; Cherryjewel; Crystalab; Cuteteddybeartoy; Dema2019; Discountstore2015; Dream1124; Dy_STORE; Fashion_JEWELRY1; Kenma; Kinnier; Ks_DRUZY; Liuqing1314; LSJ8888; Mayijewelry; Mymk; New_JEWELLERY; Olindapandora; Ottaw; PZL123654; QPYKJ01; Shihao42; Sofia_li; Suzoro; Top_rated_china; Versace2020; W0044; WZHSTAR1688; Xiaoxue11; Yachne16168; Ydkjziping; ZP2388; ZP552366; A8902; Accessories_supplie; Buyb8889; Clever_kid; Designer_chic; Dhgatebrand2018; Everyroad; Fairypalace; Fanghao118; GXFC888; Hotstone88; Jewelryboutique666; Junfar; Lijunling15084802473; Lovejewelry11; Luxurything2; Novodo1; Novodo2; Shoes_nba; Sunshinespace; Superjewelrys; Top_seller2; Uspecial; W0048; Wangsai1993; WWF660265; Zoppos; Cute Cat; Easy go a/k/a New Time; Fashionapple; Jewelry Store1999; Super Store; and Top1, Each an Individual, Partnership, or Unincorporated Association, Defendants.<br>2020 WL 6205445 | — | S.D.Fla. | Aug. 24, 2020 | Pleading |
| **82.** **Amended Complaint for Damages and Injunctive Relief**<br>Louis Vuitton MALLETIER, Plaintiff, v. JESSICA DIGITAL STORE; Levei Store; Luxurybrand Dropshipping Store; LVIP Store; Routinehours Store; Shop4654079 Store; Shop5377127 Store; Shop5437287 Store; Shop5506001 Store; Shop5525010 Store; Shuaishuai Store; ZFF Bag Store; ZZ999 Store; Brono2019; Buygoodstore; Chunzh_69; Demera-22; Diy_Store99; Hurry-up-Tng; Life_Stores; Michael-William-7; NWP671289; ZH Oupanhong8; 155DSAXX; 2020Fashiontop; Abbottwilbur45; Abeytacaleb5; Acey47; Aonkewalin02; ASDSSSSSSSS; Bestnifyr; CNVJFFHXCBJ678; Cuilangyayue; Dhbnxgjkxgh678; Dollssmile1; Donerkamrul; Dongxiurong; Fdthet Ehhe; Fen Dai Jia Ren; Goodealonshopping; IVPFBG; Jenniferf; Karen8karen8; Kelleycrowell8; Komin2522; KS745; Liaohuaxiu333; Life Style GT; Lokjhhg; Majinxian; Maoyunyue; MKKWG SSOG Man Clothing; Qiufufu; Queen-Bee-Dresses; REJSGDTAHDU45; Rui Yi Chao Style Public Clothing; Saiyudiaoyi; Show-Ruomei; Tai Shop; Watkinsss; Wuyuanfeng111; Wuzewen; Yuanminmin860716; Yuanxiuying; Zhanhong, Each An Individual, Partnership OR Unincorporated Association, Defendants.<br>2020 WL 4747367 | — | S.D.Fla. | June 23, 2020 | Pleading |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **83. Amended Complaint for Damages and Injunctive Relief**<br>CHANEL, INC., Plaintiff, v. FENDONA; Mr Cube; 8-016FF; Bingshanhong888-6; Brendweinstei_0; Cocotion; Darquth; Genbir0; Holyland.Items; liutam-0; Josephehutto-4; Latonysaxto-0; Lostgal2007; Maritzajlowrance_2; Number5Accessories; Royalty-Deals; SPPO168; Stewleti; Wangyunxia1114_5; Wmmeidl18; Xeniashop; Yesidin98; Yingpengstore; Yitengkejei444; Onebegstore9X; Acofashion; Openheartfinds; Reliefcases; Tina_Fashion_Clothing; Ahui33358; Matelorz; Sitempocorner; Fashion Mall PYB; Sunjolly; Xingduo DIY Phone Case; Brandbags1990; Weekbeads.com; Bagslouisvuitton.Store aka Louisvuittonebag.Store, Louisvuittonline.Store, Louisvuittonpurses.Top, Louisvuittonuhandbags.Top, and Lvbagoutlet.Store; Cpoor.com; and Runwayreplica.COM, Each an Individual, Partnership, or Unincorporated Association, Defendants.<br>2019 WL 5847443 | — | S.D.Fla. | Mar. 26, 2019 | Pleading |
| **84. Amended Complaint for Damages and Injunctive Relief**<br>GUCCI AMERICA, INC., Plaintiff, v. Belt HUT; Daqing Jinglian Economic and Trade Co., Ltd; Fedtral; GUANAIYING; Gudg Bag; Health Convenience; Hgee; INXIANGCHAIS; Ivy Nell; Knight Belt; Longfly; Morningg; Myspeed; SHISHIJIEKENFUSHIYOUXIANGONGSI; Toygergift; TQ-IP3W; Westdeer; 1DealDeal; 9527Store a/k/a CHINATOPAAA; Amraine_6; Attenzione-Astaper; CHUANGGAO853 a/k/a WANSHIPINGAN37; CRNASTRELA01; CSF5655D_SF; Davy-Ross; DIPENH314_5; FXIANGLIA0; GENBIR0; GLALC-65; Gotshirt; GUANGCHANGFENG52 a/k/a HUNANGONGLU297; GUGULUFK-0; HECKLE-N_JECKLE; HEHEZHH332; Jay-Lightstore; JINXI-3446; John.Malkom12; Koloenterprises a/k/a Exenterprises; Lia_Bryan; Lifestyletrendzone; LXIUYIN0; Nextgenproductions; OCY193; Prismlabels; QINGSHAN5872 a/k/a XIAOM86; Rumeng9623; Scotvittle_64; SHIZUKA176SUK_0; TALAWONG_MIKE; TIANTIANXIAO88 a/k/a SHIKUMEN6-99; TOAU490; WESLEFRANK_0; XIAOBINGAI86; XIAOCHO5; XINNIANDAOLAI2471 a/k/a MEIMEIDA47; XINXINDIANPU325; XINXINFANGLI561 a/k/a XUEKEKE10_7; YASJAN_0; YATALAKATE; ZHA_90PP; ZHUWENYAN988; and DAIYONGJUAN, each an Individual, Partnership, or Unincorporated Association, Defendants.<br>2019 WL 5847375 | — | S.D.Fla. | Mar. 18, 2019 | Pleading |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **85.** **First Amended Complaint for Damages and Injunctive Relief**<br>CARTIER INTERNATIONAL A.G., Plaintiff, v. 77MODELS.NET; AHEADWATCHES.COM a/k/a OTHERWATCHES.COM a/k/a THENWATCHES.COM; ANYREPLICAWATCHES.CO; BESTLEVERING.CN; DL4U.CO; ECOPYWATCHES.CO a/k/a YWATCHESFACTORY.CO; EWISH.CO; FAKEWATCHESPRO.CO; FINEWATCH.EU a/k/a FINEWATCH.ME; INOVXINC.COM a/k/a NEELYDS.COM; JOINWATCHES.ME; MONTREDELUXEREPLIQUE.CN; REPLICAWATCHESUK.CO; THEREPLICAHAUS.FR a/k/a THEREPLICAHAUSE.FR; and WATCHESUSAUK.CO; each an Individual, Partnership, or Unincorporated Associations, Defendants.<br>2017 WL 10241389 | — | S.D.Fla. | Dec. 22, 2017 | Pleading |
| **86.** **Complaint for Injunctive Relief and Damages**<br>LOUIS VUITTON MALLETIER, S.A., Plaintiff, v. THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", Defendants.<br>2017 WL 1361927 | — | S.D.Fla. | Apr. 13, 2017 | Pleading |
| **87.** **Amended Complaint for Damages and Injunctive Relief**<br>AUDEMARS PIGUET HOLDING SA, Chanel, Inc., Gucci America, Inc., Hublot SA, Compagnie des Montres Longines, Francillon S.A., Omega SA, Rado Uhren AG, and Turlen Holding SA, Plaintiffs, v. KKKWATCH.COM, Defendants.<br>2017 WL 3700214 | — | S.D.Fla. | Mar. 17, 2017 | Pleading |
| **88.** **Complaint for Injunctive Relief and Damages**<br>CHANEL, INC., Plaintiff, v. THE INDIVIDUALS, Partnerships and Unincorporated Associations Identified on Schedule "A" and Does 1-10, Defendants.<br>2015 WL 10944487 | PDF | S.D.Fla. | Sep. 21, 2015 | Pleading |
| **89.** **Complaint**<br>LUXOTTICA GROUP, S.p.A., Plaintiff, v. CASA LOS MARTINEZ CORP., a Florida corporation; Jose A. Martinez; and Frank A. Alonso, individually, Defendants.<br>2014 WL 4743873 | PDF | S.D.Fla. | Aug. 04, 2014 | Pleading |
| **90.** **Complaint for Injunctive Relief**<br>LOUIS VUITTON MALLETIER, S.A., Plaintiff, v. THE PARTNERSHIPS and Unincorporated Associations Identified on Schedule "A" and Does 1-10, Defendants.<br>2014 WL 4743929 | PDF | S.D.Fla. | July 24, 2014 | Pleading |

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **91.** **First Amended Complaint for Damages and Injunctive Relief**<br>CHANEL, INC., a New York corporation, Plaintiff, v. THE PARTNERSHIP OR UNINCORPORATED ASSOCIATION DOING BUSINESS AS LUXURYCATCH.COM; ELI IDY a/k/a Elie IDY, an individual, and Joseph Mosseri, an individual, and Does 3-10, Defendants.<br>2014 WL 4425226 | PDF | S.D.Fla. | Mar. 12, 2014 | Pleading |
| **92.** **Complaint for Damages and Injunctive Relief**<br>CHANEL, INC., a New York corporation, Plaintiff, v. THE PARTNERSHIP OR UNINCORPORATED ASSOCIATION DOING BUSINESS AS LUXURYCATCH.COM and Does 1-10, Defendants.<br>2013 WL 6687671 | PDF | S.D.Fla. | Nov. 27, 2013 | Pleading |
| **93.** **Complaint for Damages and Injunctive Relief**<br>Audemars PIGUET Holding Sa, Lvmh Swiss Manufactures, S.A., Hermes International, and Omega, SA, Plaintiffs, v. The PARTNERSHIPS and Unincorporated Associations Identified on Schedule "A" and Does 1-100, Defendants.<br>2013 WL 5352906 | PDF | S.D.Fla. | Sep. 16, 2013 | Pleading |
| **94.** **Complaint for Injunctive Relief**<br>AUDEMARS PIGUET HOLDING SA, Breitling U.S.A., Inc., Chopard (USA), Ltd, Henri Stern Watch Agency, Inc., Hermes International, Lvmh Swiss Manufactures, S.A., Omega SA, and Oris Holding AG, Plaintiffs, v. THE PARTNERSHIPS and Unincorporated Associations Identified on Schedule "A" and Does 1-1,000, Defendants.<br>2013 WL 4787597 | PDF | S.D.Fla. | Aug. 30, 2013 | Pleading |
| **95.** **Complaint for Injunctive Relief**<br>Louis Vuitton MALLETIER, S.A., Plaintiff, v. THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A" and Does 1-1,000, Defendants.<br>2013 WL 861637 | PDF | S.D.Fla. | Mar. 08, 2013 | Pleading |
| **96.** **Complaint**<br>ROLEX WATCH U.S.A., INC., Plaintiff, v. Jesus Eloy HERNANDEZ, Defendant.<br>2013 WL 650087 | PDF | S.D.Fla. | Feb. 22, 2013 | Pleading |
| **97.** **Fourth Amended Complaint for Damages and Injunctive Relief**<br>CHANEL, INC., Plaintiff, v. 7PERFECTHANDBAGS.COM, et al, Defendants.<br>2013 WL 1336263 | PDF | S.D.Fla. | Feb. 08, 2013 | Pleading |
| **98.** **Second Amended Complaint for Damages and Injunctive Relief**<br>CHANEL, INC., Plaintiff, v. 7PERFECTHANDBAGS.COM, et al, Defendants.<br>2012 WL 6917606 | PDF | S.D.Fla. | Oct. 30, 2012 | Pleading |

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **99.  Complaint for Damages and Injunctive Relief**<br>LOUIS VUITTON MALLETIER, S.A., Plaintiff, v.<br>THE PARTNERSHIPS OR UNINCORPORATED<br>ASSOCIATIONS IDENTIFIED ON SCHEDULE "A" and<br>Does 1-100, Defendants.<br>2012 WL 5362454 |  | S.D.Fla. | Oct. 24, 2012 | Pleading |
| **100.  First Amended Complaint for Damages and Injunctive Relief**<br>CHANEL, INC., Plaintiff, v. 7PERFECTHANDBAGS.COM,<br>et al, Defendants.<br>2012 WL 4504105 |  | S.D.Fla. | Aug. 28, 2012 | Pleading |

**History (1,711)**

**Direct History (1,114)**

🚩 1. TIFFANY & CO.
FEDTM 70023572 , U.S. Federal Trademark , July 29, 1893

*Ruled Not Infringed and Not Diluted by*

🚩 2. Tiffany (NJ) Inc. v. eBay, Inc.
576 F.Supp.2d 463 , S.D.N.Y. , July 14, 2008

*Judgment Affirmed in Part, Reversed in Part by*

🚩 3. Tiffany (NJ) Inc. v. eBay Inc.
600 F.3d 93 , 2nd Cir.(N.Y.) , Apr. 01, 2010

*On Remand to*

🚩 4. Tiffany (NJ) Inc. v. eBay, Inc.
2010 WL 3733894 , S.D.N.Y. , Sep. 13, 2010

*AND Certiorari Denied by*

5. Tiffany (NJ) Inc. v. eBay Inc.
562 U.S. 1082 , U.S. , Nov. 29, 2010

🚩 6. TIFFANY & CO.
FEDTM 70023572 , U.S. Federal Trademark , July 29, 1893

*Ruled Infringed and Violation of Unfair Competition by*

7. Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 5165258 , S.D.Fla. , Dec. 19, 2024

*AND Ruled Infringed and Violation of Unfair Competition by*

8. Tiffany (NJ) LLC v. Individuals Business Entities
2025 WL 1433729 , S.D.Fla. , Jan. 29, 2025

9. TIFFANY & CO.
FEDTM 70023573 , U.S. Federal Trademark , July 29, 1893


*Ruled Infringed and Violation of Unfair Competition by*


10. Tiffany and Co. v. Verrett
656 F.Supp. 706 , S.D.Tex. , July 09, 1986


*AND Ruled Infringed by*


⚑ 11. Tiffany (NJ) LLC v. Dong
2013 WL 4046380 , S.D.N.Y. , Aug. 09, 2013


*AND Ruled Infringed by*


12. Chanel, Inc. v. Jermaine Wrice
2015 WL 521144 , N.D.Ohio , Feb. 09, 2015


*AND Ruled Infringed and Violation of Unfair Competition by*


13. Tiffany (NJ) LLC v. tiffanyjewelleryshop.com
2017 WL 6949238 , S.D.Fla. , Mar. 23, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*


14. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018


*AND Ruled Infringed by*


15. Tiffany (NJ) LLC v. Individual, Unincorporated Association or Business Entity of Unknown Makeup
2018 WL 7145002 , S.D.Fla. , Nov. 19, 2018


*AND Ruled Infringed and Violation of Unfair Competition by*


16. Tiffany (NJ) LLC v. discountiffany.com
2019 WL 7987441 , S.D.Fla. , Jan. 24, 2019

*AND Ruled Infringed and Violation of Unfair Competition by*

17. Tiffany (NJ) LLC v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"
2020 WL 4501770 , S.D.Fla. , June 26, 2020

*AND Ruled Infringed by*

18. Tiffany (NJ) LLC v. replicatiffany.to
2021 WL 10429712 , S.D.Fla. , June 21, 2021

*AND Ruled Infringed and Violation of Unfair Competition by*

19. Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2023 WL 8307592 , S.D.Fla. , Feb. 06, 2023

*AND Ruled Infringed and Violation of Unfair Competition by*

20. Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2023 WL 3600267 , S.D.Fla. , Feb. 08, 2023

*AND Ruled Infringed and Violation of Unfair Competition by*

21. Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2025 WL 636686 , S.D.Fla. , Jan. 17, 2025

22. OMEGA
FEDTM 70025036 , U.S. Federal Trademark , May 23, 1894

*Ruled Infringed and Violation of Unfair Competition by*

23. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

*AND Ruled Infringed and Violation of Unfair Competition by*

24. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

*AND Ruled Infringed and Violation of Unfair Competition by*

25. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

26. LONGINES
FEDTM 71027584 , U.S. Federal Trademark , May 23, 1907

*Ruled Infriged and Violation of Unfair Competition by*

27. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

28. VACHERON & CONSTANTIN
FEDTM 71065524 , U.S. Federal Trademark , Aug. 31, 1912

*Ruled Infriged and Violation of Unfair Competition by*

29. Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

🚩 30. ROLEX
FEDTM 71078904 , U.S. Federal Trademark , June 08, 1914

*Ruled Infriged and Violation of Unfair Competition by*

31. Rolex Watch U.S.A., Inc. v. Dauley
1986 WL 12432 , N.D.Cal. , Feb. 04, 1986

*AND Ruled Infriged and Violation of Unfair Competition by*

32. Rolex Watch U.S.A., Inc. v. Canner
645 F.Supp. 484 , S.D.Fla. , Aug. 29, 1986

*AND Ruled Infriged and Violation of Unfair Competition by*

33.  Rolex Watch U.S.A., Inc. v. Forrester
1986 WL 15668 , S.D.Fla. , Dec. 09, 1986


*AND Ruled Infringed by*


34.  Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999


*AND Ruled Infringed and Violation of Unfair Competition by*


35.  Rolex Watch U.S.A., Inc. v. Meece
2000 WL 33582648 , N.D.Tex. , Jan. 25, 2000


*AND Ruled Infringed by*


🚩 36.  Rolex Watch U.S.A., Inc. v. Brown
2002 WL 1226863 , S.D.N.Y. , June 05, 2002


*AND Ruled Infringed and Diluted by*


37.  Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.
2002 WL 35656950 , C.D.Cal. , Nov. 08, 2002


*AND Ruled Infringed by*


38.  Rolex Watch, U.S.A., Inc. v. Pharel
2011 WL 1130457 , E.D.N.Y. , Mar. 28, 2011


*AND Ruled Infringed by*


39.  Rolex Watch U.S.A., Inc. v. Lizaso-Rodriguez
2012 WL 1189768 , S.D.Fla. , Apr. 09, 2012


*AND Ruled Infringed by*


40.  Rolex Watch U.S.A., Inc. v. Colon
2012 WL 13014675 , S.D.Fla. , May 07, 2012

*AND Ruled Not Infringed and Diluted by*

🚩 ⚠ 41.  Rolex Watch U.S.A., Inc. v. Rolex Deli Corp.
2012 WL 5177517 , S.D.N.Y. , Oct. 18, 2012

*AND Ruled Infringed by*

42.  Rolex Watch U.S.A., Inc. v. Mills
2012 WL 5903782 , N.D.Tex. , Nov. 26, 2012

*AND Ruled Infringed by*

43.  Rolex Watch U.S.A., Inc. v. Lynch
2013 WL 2897939 , M.D.Fla. , June 12, 2013

*AND Ruled Infringed by*

44.  Rolex Watch U.S.A., Inc. v. Hernandez
2013 WL 12093807 , S.D.Fla. , Aug. 12, 2013

*Report and Recommendation Adopted by*

45.  Rolex Watch U.S.A.., Inc. v. Hernandez
2013 WL 12106185 , S.D.Fla. , Aug. 20, 2013

🚩 46.  ROLEX
FEDTM 71078904 , U.S. Federal Trademark , June 08, 1914

*Ruled Infringed by*

47.  Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 9690322 , C.D.Cal. , Sep. 29, 2015

*Motion for Relief from Judgment Denied by*

48.  Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 13806770 , C.D.Cal. , Dec. 02, 2015

49. ROLEX
FEDTM 71078904 , U.S. Federal Trademark , June 08, 1914

*Ruled Infringed by*

50. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

*AND Ruled Infringed by*

51. Rolex Watch U.S.A., Inc. v. BeckerTime, LLC
2022 WL 286184 , N.D.Tex. , Jan. 31, 2022

*Affirmed in Part, Modified in Part and Remanded by*

52. Rolex Watch USA, Incorporated v. BeckerTime, L.L.C.
91 F.4th 776 , 5th Cir.(Tex.) , Jan. 26, 2024

*Withdrawn and Superseded on Rehearing in Part by*

53. Rolex Watch USA, Incorporated v. BeckerTime, L.L.C.
96 F.4th 715 , 5th Cir.(Tex.) , Mar. 21, 2024

*Appeal After Remand*

54. Rolex Watch USA, Incorporated v. BeckerTime, L.L.C.
121 F.4th 1084 , 5th Cir.(Tex.) , Nov. 20, 2024

55. Rolex Watch U.S.A., Inc. v. BeckerTime, LLC
2022 WL 286184 , N.D.Tex. , Jan. 31, 2022

*Affirmed in Part, Modified in Part and Remanded by*

56. Rolex Watch USA, Incorporated v. BeckerTime, L.L.C.
96 F.4th 715 , 5th Cir.(Tex.) , Mar. 21, 2024

*Appeal After Remand*

57. Rolex Watch USA, Incorporated v. BeckerTime, L.L.C.
121 F.4th 1084 , 5th Cir.(Tex.) , Nov. 20, 2024

🚩 58. ROLEX
FEDTM 71078904 , U.S. Federal Trademark , June 08, 1914

*Ruled Infringed and Violation of Unfair Competition by*

59. Rolex Watch U.S.A., Inc. v. LSM Watch, Inc.
2022 WL 3575771 , C.D.Cal. , June 07, 2022

*AND Ruled Infringed by*

60. Rolex Watch U.S.A., Inc. v. Jewelry Unlimited, Inc.
757 F.Supp.3d 1342 , N.D.Ga. , Nov. 13, 2024

61. TIFFANY
FEDTM 71126976 , U.S. Federal Trademark , Jan. 09, 1920

*Ruled Infringed and Violation of Unfair Competition by*

62. Tiffany and Co. v. Verrett
656 F.Supp. 706 , S.D.Tex. , July 09, 1986

🚩 63. TIFFANY
FEDTM 71126975 , U.S. Federal Trademark , Jan. 09, 1920

*Ruled Not Infringed and Not Diluted by*

🚩 64. Tiffany (NJ) Inc. v. eBay, Inc.
576 F.Supp.2d 463 , S.D.N.Y. , July 14, 2008

*Judgment Affirmed in Part, Reversed in Part by*

🚩 65. Tiffany (NJ) Inc. v. eBay Inc.
600 F.3d 93 , 2nd Cir.(N.Y.) , Apr. 01, 2010

*On Remand to*

🚩 66.  Tiffany (NJ) Inc. v. eBay, Inc.
2010 WL 3733894 , S.D.N.Y. , Sep. 13, 2010

*AND Certiorari Denied by*

67.  Tiffany (NJ) Inc. v. eBay Inc.
562 U.S. 1082 , U.S. , Nov. 29, 2010

🚩 68.  TIFFANY
FEDTM 71126975 , U.S. Federal Trademark , Jan. 09, 1920

*Cited by*

69.  Gaffigan v. Does 1-10
2010 WL 2893344 , S.D.Fla. , Apr. 28, 2010

*Report and Recommendation Adopted by*

70.  Gaffigan v. Does 1-10
2010 WL 2925091 , S.D.Fla. , July 22, 2010

🚩 71.  TIFFANY
FEDTM 71126975 , U.S. Federal Trademark , Jan. 09, 1920

*Ruled Infringed by*

72.  Tiffany (NJ), LLC v. Dongping
2010 WL 4450451 , S.D.Fla. , Oct. 29, 2010

*AND Cited by*

73.  Chanel Inc. v. Yang
2013 WL 5755217 , N.D.Cal. , Oct. 21, 2013

*AND Ruled Infringed by*

🚩 74.  Tiffany and Co. v. Costco Wholesale Corp.
127 F.Supp.3d 241 , S.D.N.Y. , Sep. 08, 2015 , appeal dismissed (2nd Circ. 15-2916) ( Nov 10, 2015 )

*Motion to Amend Denied by*

75.  Tiffany and Company v. Costco Wholesale Corp.
2019 WL 120765 , S.D.N.Y. , Jan. 07, 2019

*AND Vacated and Remanded by*

🚩 76.  Tiffany and Company v. Costco Wholesale Corporation
971 F.3d 74 , 2nd Cir.(N.Y.) , Aug. 17, 2020

🚩 77.  TIFFANY
FEDTM 71126975 , U.S. Federal Trademark , Jan. 09, 1920

*Ruled Infringed and Violation of Unfair Competition by*

78.  Tiffany (NJ) LLC v. discounttiffany.com
2019 WL 7987441 , S.D.Fla. , Jan. 24, 2019

*AND Ruled Infringed by*

79.  Tiffany (NJ) LLC v. tiffanycorp.cn
2020 WL 9065864 , S.D.Fla. , Dec. 02, 2020

*AND Ruled Infringed and Violation of Unfair Competition by*

80.  Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2025 WL 636686 , S.D.Fla. , Jan. 17, 2025

81.  CC
FEDTM 71205469 , U.S. Federal Trademark , Nov. 18, 1924

*Ruled Infringed and Violation of Unfair Competition by*

82.  Chanel, Inc. v. Charles
2016 WL 4474583 , N.D.Cal. , Aug. 25, 2016


83.  CHANEL
FEDTM 71205468 , U.S. Federal Trademark , Nov. 18, 1924


*Ruled Infringed by*


84.  Chanel, Inc. v. Schwartz
2007 WL 4180615 , E.D.N.Y. , Nov. 19, 2007


*AND Ruled Infringed by*


85.  Chanel, Inc. v. Kouzniakova
2008 WL 2741133 , E.D.N.Y. , July 10, 2008


*AND Ruled Infringed by*


86.  Chanel, Inc. v. Doubinine
2008 WL 4449631 , E.D.N.Y. , Oct. 02, 2008


*AND Ruled Infringed and Diluted by*


87.  Chanel, Inc. v. Powell
2009 WL 1117695 , D.S.C. , Apr. 24, 2009


*AND Ruled Infringed by*


88.  Bebe Studio, Inc. v. Grand Stores
2009 WL 2195320 , D.Puerto Rico , July 17, 2009


*AND Ruled Infringed by*


89.  Chanel, Inc. v. Mesadieu
2009 WL 2496586 , M.D.Fla. , Aug. 12, 2009


*AND Ruled Infringed and Violation of Unfair Competition by*

90.  Chanel, Inc. v. Lin
2010 WL 2557561 , N.D.Cal. , June 21, 2010

*AND Ruled Infringed by*

91.  Chanel, Inc. v. Cui
2010 WL 2835749 , S.D.N.Y. , July 07, 2010

*AND Ruled Infringed by*

92.  Chanel Inc. v. Krispin
2010 WL 4825489 , S.D.Fla. , Nov. 22, 2010

*AND Ruled Infringed by*

⚑ 93.  Chanel, Inc. v. Gardner
2011 WL 204911 , S.D.N.Y. , Jan. 21, 2011

*AND Ruled Infringed and Violation of Unfair Competition by*

94.  Chanel, Inc. v. Charles
2016 WL 4474583 , N.D.Cal. , Aug. 25, 2016

95.  MIDO
FEDTM 71234491 , U.S. Federal Trademark , July 13, 1926

*Ruled Infringed and Violation of Unfair Competition by*

96.  Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

97.  OYSTER
FEDTM 71255783 , U.S. Federal Trademark , Oct. 07, 1927

*Ruled Infringed by*

98.  Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

🚩 99. LV
FEDTM 71313983 , U.S. Federal Trademark , Apr. 29, 1931

*Ruled Invalid by*

🚩 100. Vuitton et Fils, S.A v. J. Young Enterprises, Inc.
1980 WL 30280 , C.D.Cal. , June 10, 1980

*Judgment Entered by*

101. Vuitton Et Fils, S.A. v. J. Young Enterprises, Inc.
1980 WL 581379 , C.D.Cal. , June 10, 1980

*AND Reversed by*

🟨 102. Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.
644 F.2d 769 , 9th Cir.(Cal.) , May 04, 1981

*Also Published at*

103. Vuitton et Fils S.A. v. J. Young Enterprises, Inc.
1981 WL 481427 , 9th Cir. , May 04, 1981

🚩 104. LV
FEDTM 71313983 , U.S. Federal Trademark , Apr. 29, 1931

*Ruled Infringed by*

105. Louis Vuitton S.A., Gucci Shops, Inc. v. Bag Center
1986 WL 2611 , N.D.Ill. , Feb. 21, 1986

*Amendment Denied by*

106. Louis Vuitton S.A. v. Bag Center
1986 WL 5638 , N.D.Ill. , May 07, 1986

107. LV
FEDTM 71313983 , U.S. Federal Trademark , Apr. 29, 1931

*Ruled Infringed and Violation of Unfair Competition by*

108. Louis Vuitton, S.A. v. After Dark Boutique
680 F.Supp. 1507 , N.D.Fla. , Jan. 29, 1988

*AND Ruled Infringed and Diluted by*

109. Louis Vuitton, S.A. v. EEJ Discount
1988 WL 74443 , N.D.Ill. , July 12, 1988

*AND Ruled Infringed by*

110. Louis Vuitton S.A. v. Downtown Luggage Center
706 F.Supp. 839 , S.D.Fla. , Dec. 28, 1988

*AND Ruled Not Infringed and Not Violation of Unfair Competition by*

111. Malletier v. Dooney & Bourke, Inc.
561 F.Supp.2d 368 , S.D.N.Y. , May 30, 2008

*AND Ruled Infringed by*

112. Malletier v. Artex Creative Intern. Corp.
687 F.Supp.2d 347 , S.D.N.Y. , Jan. 05, 2010

*AND Ruled Not Invalid, Infringed by*

113. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 16: INITIAL DETERMINATION GRANTING COMPLAINANTS MOTION FOR SUMMARY DETERMINATION OF VIOLATION AND RECOMMENDED DETERMINATION ON REMEDY AND BONDING
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 05, 2012

*AND Ruled Infringed and Diluted by*

🚩 114. Louis Vuitton Malletier, S.A. v. Hyundai Motor America
2012 WL 1022247 , S.D.N.Y. , Mar. 22, 2012

*AND Ruled Infringed by*

115. Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

*AND Ruled Infringed by*

116. Malletier v. aaaimitationbags.com
2018 WL 6448750 , S.D.Fla. , Oct. 19, 2018

*AND Ruled Infringed and Violation of Unfair Competition by*

117. Louis Vuitton Malletier v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule
"A"
2019 WL 7708497 , S.D.Fla. , Dec. 12, 2019

*AND Ruled Infringed and Violation of Unfair Competition by*

118. Louis Vuitton Malletier v. aaalvsale.com
2021 WL 2186226 , S.D.Fla. , May 28, 2021

*AND Ruled Infringed by*

119. Malletier v. Bestlouisvuittonoutlet.com
2024 WL 3103685 , S.D.Fla. , May 15, 2024

*AND Ruled Infringed and Violation of Unfair Competition by*

120. Louis Vuitton Malletier v. 21646644
2024 WL 5326981 , S.D.Fla. , Dec. 19, 2024

*Report and Recommendation Adopted by*

121. Louis Vuitton Malletier v. 21646644
2025 WL 101696 , S.D.Fla. , Jan. 15, 2025

122. HERMES
FEDTM 71416559 , U.S. Federal Trademark , Mar. 01, 1939

*Ruled Infringed by*

123. Audemars Piguet Holding SA v. Amatory-Store.net
2013 WL 11981916 , S.D.Fla. , Oct. 11, 2013

124. CERTINA
FEDTM 71456349 , U.S. Federal Trademark , Oct. 22, 1942

*Ruled Infringed and Violation of Unfair Competition by*

125. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

126. CARTIER
FEDTM 71471851 , U.S. Federal Trademark , July 01, 1944

*Ruled Infringed by*

127. Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.
1983 WL 425 , S.D.Fla. , Nov. 07, 1983

*AND Ruled Infringed and Diluted by*

128. Cartier International A.G. v. Daniel Markus, Inc.
2013 WL 5567150 , D.N.J. , Oct. 08, 2013

*AND Ruled Infringed and Violation of Unfair Competition by*

129. Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

130. CARTIER
FEDTM 71471852 , U.S. Federal Trademark , July 01, 1944

*Ruled Infringed by*

131. Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.
1983 WL 425 , S.D.Fla. , Nov. 07, 1983

*AND Ruled Infringed and Violation of Unfair Competition by*

132. Cartier International A.G. v. 77models.net
2018 WL 2688770 , S.D.Fla. , Mar. 19, 2018

*AND Ruled Infringed and Violation of Unfair Competition by*

133. Cartier International A.G. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 7761757 , S.D.Fla. , Sep. 17, 2019

134. CARTIER
FEDTM 71471859 , U.S. Federal Trademark , July 01, 1944

*Ruled Infringed by*

135. Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.
1983 WL 425 , S.D.Fla. , Nov. 07, 1983

*AND Ruled Infringed and Violation of Unfair Competition by*

136. Cartier, Inc. v. Deziner Wholesale, L.L.C.
2000 WL 347171 , S.D.N.Y. , Apr. 03, 2000

*AND Ruled Infringed by*

137. Cartier, a Div. of Richemont North America, Inc. v. Symbolix, Inc.
454 F.Supp.2d 175 , S.D.N.Y. , Sep. 29, 2006

*AND Ruled Infringed by*

138. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

139.  PATEK PHILIPPE
FEDTM 71573062 , U.S. Federal Trademark , Jan. 29, 1949

*Ruled Infringed by*

140.  Audemars Piguet Holding SA v. 2replicawatch.com
2013 WL 11977453 , S.D.Fla. , Oct. 01, 2013

141.  PRESIDENT
FEDTM 71573640 , U.S. Federal Trademark , Feb. 10, 1949

*Ruled Infringed by*

142.  Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

143.  SEAMASTER
FEDTM 71596436 , U.S. Federal Trademark , Apr. 27, 1950

*Ruled Infringed and Violation of Unfair Competition by*

144.  Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

145.  INTERNATIONAL WATCH CO. SCHAFFHAUSEN
FEDTM 71615290 , U.S. Federal Trademark , June 16, 1951

*Ruled Infringed and Violation of Unfair Competition by*

146.  Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

147.  OMEGA
FEDTM 71622275 , U.S. Federal Trademark , Dec. 08, 1951

*Ruled Infringed and Violation of Unfair Competition by*

148.  Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985


*AND Ruled Infringed by*


149.  Audemars Piguet Holding SA v. Amatory-Store.net
2013 WL 11981916 , S.D.Fla. , Oct. 11, 2013


150.  OMEGA
FEDTM 71637074 , U.S. Federal Trademark , Oct. 23, 1952


*Ruled Infringed and Violation of Unfair Competition by*


151.  Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985


152.  WAYFARER
FEDTM 71655230 , U.S. Federal Trademark , Oct. 23, 1953


*Ruled Infringed by*


153.  Luxottica Group S.p.A v. President Optical Inc.
2021 WL 776419 , S.D.Fla. , Mar. 01, 2021


154.  CHANEL
FEDTM 71678436 , U.S. Federal Trademark , Dec. 16, 1954


*Ruled Infringed by*


⚑ 155.  Chanel, Inc. v. Italian Activewear of Florida, Inc.
931 F.2d 1472 , 11th Cir.(Fla.) , May 24, 1991


*AND Ruled Infringed and Diluted by*


156.  Chanel, Inc. v. Mason
2006 WL 8432246 , S.D.Fla. , Dec. 01, 2006

*AND Ruled Infringed by*

157.  Chanel, Inc. v. Route' Ltd., LLC
2006 WL 3842208 , M.D.Fla. , Dec. 08, 2006

*AND Ruled Infringed by*

158.  Chanel, Inc. v. Gordashevsky
2007 WL 316433 , D.N.J. , Jan. 29, 2007

*AND Ruled Infringed by*

159.  Chanel, Inc. v. Doan
2007 WL 781976 , N.D.Cal. , Mar. 13, 2007

*AND Ruled Infringed and Violation of Unfair Competition by*

160.  Chanel, Inc. v. Rothermel
2008 WL 11417415 , S.D.Fla. , Mar. 20, 2008

*AND Ruled Infringed by*

161.  Chanel, Inc. v. UNMI Song
2008 WL 11342696 , C.D.Cal. , May 29, 2008

*AND Ruled Infringed and Violation of Unfair Competition by*

162.  Chanel, Inc. v. Hunter
2008 WL 11338688 , C.D.Cal. , Aug. 18, 2008

*AND Ruled Infringed and Violation of Unfair Competition by*

163.  Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009

*AND Ruled Infringed by*

164.  Chanel, Inc. v. Harrington
2009 WL 10670657 , N.D.Ga. , May 08, 2009


  *AND Ruled Infringed by*


165.  Chanel, Inc. v. Guetae
2009 WL 1653137 , D.N.J. , June 08, 2009


  *AND Ruled Infringed by*


166.  Chanel, Inc. v. Weng
2011 WL 13244209 , N.D.Cal. , May 03, 2011


  *AND Cited by*


167.  Chanel, Inc. v. eukuk.com
2011 WL 4829402 , D.Nev. , Oct. 11, 2011


  *AND Ruled Infringed by*


168.  Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012


  *AND Ruled Infringed by*


169.  Chanel, Inc. v. Xiangneng Li
2012 WL 13014680 , S.D.Fla. , Apr. 10, 2012


  *AND Cited by*


170.  Chanel, Inc. v. acheterchanel.com
2012 WL 3544844 , S.D.Fla. , Aug. 16, 2012


  *AND Ruled Infringed by*


171.  Chanel, Inc. v. Chanel255.org
2012 WL 13014707 , S.D.Fla. , Sep. 11, 2012

*AND Ruled Infringed and Violation of Unfair Competition by*

172.  Chanel, Inc. v. 2012chanelbagsoutletstore.com
2012 WL 12918301 , S.D.Fla. , Oct. 29, 2012


*AND Ruled Infringed by*

173.  Chanel, Inc. v. Palant
2013 WL 12065876 , S.D.Fla. , Jan. 14, 2013


*AND Cited by*

174.  Chanel, Inc. v. The Partnerships or Unincorporated Associations Identified on Schedule "A"
2013 WL 3439912 , N.D.Cal. , July 01, 2013


*AND Ruled Infringed and Violation of Unfair Competition by*

175.  Chanel, Inc. v. Partnerships and Unincorporated Associations Identified in Schedule A
2013 WL 5425252 , S.D.Tex. , Sep. 26, 2013


*AND Cited by*

176.  Chanel, Inc. v. Luxurycatch.com
2014 WL 713553 , S.D.Fla. , Feb. 24, 2014


*AND Cited by*

177.  Chanel, Inc. v. Aestheticase.com
2015 WL 11199528 , S.D.Fla. , Apr. 24, 2015


*AND Cited by*

178.  Chanel, Inc. v. 2012leboyhandbag.com
2015 WL 10818550 , S.D.Fla. , Oct. 13, 2015


*AND Ruled Infringed and Violation of Unfair Competition by*

179.  Chanel, Inc. v. Imitation-Handbags.ru
2016 WL 9461767 , S.D.Fla. , Nov. 14, 2016

*AND Ruled Infringed and Diluted by*

180. Chanel, Inc. v. Doren
2016 WL 7468068 , N.D.Tex. , Dec. 27, 2016


*AND Ruled Infringed and Violation of Unfair Competition by*

181. Chanel, Inc. v. Salehandbags.ru
2017 WL 6947723 , S.D.Fla. , Feb. 16, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

182. Chanel, Inc. v. E8bag.ru
2017 WL 6947460 , S.D.Fla. , June 12, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

183. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

184. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017


*AND Ruled Infringed by*

185. Chanel, Inc. v. getreplicachanel.com
2018 WL 6448757 , S.D.Fla. , Jan. 12, 2018


*AND Ruled Infringed and Violation of Unfair Competition by*

186. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2018 WL 1795762 , S.D.Fla. , Feb. 06, 2018


*AND Ruled Infringed and Violation of Unfair Competition by*

187.  Chanel, Inc. v. feiwu1
2018 WL 2688779 , S.D.Fla. , May 22, 2018


*AND Ruled Infringed by*


188.  Chanel, Inc. v. chanel.mcm
2018 WL 6448752 , S.D.Fla. , Nov. 13, 2018


*AND Ruled Infringed and Violation of Unfair Competition by*


189.  Chanel, Inc. v. bestaaachanel.com
2019 WL 451174 , S.D.Fla. , Feb. 05, 2019


*AND Ruled Infringed and Violation of Unfair Competition by*


190.  Chanel, Inc. v. 100chanel.com.ua
2019 WL 1468526 , S.D.Fla. , Mar. 19, 2019


*AND Ruled Infringed and Violation of Unfair Competition by*


191.  Chanel, Inc. v. fashionbestchanel.com
2019 WL 3890285 , S.D.Fla. , June 29, 2019


*AND Ruled Infringed by*


192.  Chanel, Inc. v. 7creplicachanel.com
2020 WL 5798403 , S.D.Fla. , Apr. 06, 2020


*AND Ruled Infringed and Violation of Unfair Competition by*


193.  Chanel, Inc. v. Individual, Partnership or Unincorporated Association
2020 WL 6392923 , S.D.Fla. , Nov. 02, 2020


*AND Ruled Infringed and Violation of Unfair Competition by*


194.  Chanel, Inc. v. Replicsachanel.com
2022 WL 2805018 , S.D.Fla. , Feb. 22, 2022

*AND Ruled Infringed and Violation of Unfair Competition by*

195. Chanel, Inc. v. wantreplicachanel.com
2022 WL 4594118 , S.D.Fla. , Aug. 03, 2022


*AND Ruled Infringed by*

196. Chanel, Inc. v. replicachanelproduct.com
2023 WL 2388449 , S.D.Fla. , Jan. 10, 2023


*AND Ruled Infringed by*

197. Chanel, Inc. v. 21806031
2023 WL 11796978 , S.D.Fla. , Oct. 04, 2023


*AND Ruled Infringed and Not Violation of Unfair Competition by*

198. Chanel, Inc. v. replicachanelpurses.com
2023 WL 9792711 , S.D.Fla. , Oct. 26, 2023


*AND Ruled Infringed by*

199. Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 4471998 , S.D.Fla. , Feb. 06, 2024


*AND Ruled Infringed and Violation of Unfair Competition by*

200. Chanel, Inc. v. 24/7 Go Live
2024 WL 4336561 , S.D.Fla. , Mar. 13, 2024


*AND Ruled Infringed and Violation of Unfair Competition by*

201. Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations
2024 WL 4336482 , S.D.Fla. , Apr. 11, 2024


*AND Ruled Infringed and Violation of Unfair Competition by*

202. Chanel, Inc. v. 21442995, an Individual, Business Entity, or Unincorporated Association
2024 WL 5508123 , S.D.Fla. , Dec. 06, 2024

*AND Ruled Infringed and Violation of Unfair Competition by*

203.  CHANEL, INC., Plaintiff, v. THE INDIVIDUALS, BUSINESS ENTITIES, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," Defendants.
2025 WL 1754746 , S.D.Fla. , Apr. 21, 2025

204.  FIFTY FATHOMS
FEDTM 71697364 , U.S. Federal Trademark , Oct. 31, 1955

*Ruled Infringed and Violation of Unfair Competition by*

205.  Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

206.  BAUME & MERCIER GENEVE
FEDTM 72000298 , U.S. Federal Trademark , Jan. 09, 1956

*Ruled Infringed and Violation of Unfair Competition by*

207.  Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

208.  RAY.BAN
FEDTM 72018292 , U.S. Federal Trademark , Oct. 29, 1956

*Cited by*

209.  Bausch & Lomb Inc. v. Nevitt Sales Corp.
810 F.Supp. 466 , W.D.N.Y. , Jan. 25, 1993

*AND Ruled Infringed and Violation of Unfair Competition by*

210.  Luxottica Group, S.p.A. v. Shore Enuff
2019 WL 4027547 , D.N.J. , Aug. 27, 2019

*AND Ruled Infringed by*

211. Luxottica Group S.p.A v. President Optical Inc.
2021 WL 776419 , S.D.Fla. , Mar. 01, 2021


*AND Ruled Infringed and Not Violation of Unfair Competition by*


⚑ 212. Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021


*Vacated by*


213. Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023


214. [DESIGN ONLY]
FEDTM 72027385 , U.S. Federal Trademark , Apr. 02, 1957


*Ruled Infringed and Violation of Unfair Competition by*


215. Rolex Watch U.S.A., Inc. v. Dauley
1986 WL 12432 , N.D.Cal. , Feb. 04, 1986


*AND Ruled Infringed by*


216. Rolex Watch U.S.A., Inc. v. Hernandez
2013 WL 12093807 , S.D.Fla. , Aug. 12, 2013


*Report and Recommendation Adopted by*


217. Rolex Watch U.S.A.., Inc. v. Hernandez
2013 WL 12106185 , S.D.Fla. , Aug. 20, 2013


218. [DESIGN ONLY]
FEDTM 72027385 , U.S. Federal Trademark , Apr. 02, 1957


*Ruled Infringed by*


219. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

220. LONGINES
FEDTM 72036858 , U.S. Federal Trademark , Sep. 09, 1957

*Ruled Infringed and Violation of Unfair Competition by*

221. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

222. SPEEDMASTER
FEDTM 72047594 , U.S. Federal Trademark , Mar. 12, 1958

*Ruled Infringed and Violation of Unfair Competition by*

223. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

224. DATEJUST
FEDTM 72053420 , U.S. Federal Trademark , June 12, 1958

*Ruled Infringed by*

225. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 9690322 , C.D.Cal. , Sep. 29, 2015

*Motion for Relief from Judgment Denied by*

226. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 13806770 , C.D.Cal. , Dec. 02, 2015

227. DATEJUST
FEDTM 72053420 , U.S. Federal Trademark , June 12, 1958

*Ruled Infringed by*

228. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

229. PIAGET
FEDTM 72057501 , U.S. Federal Trademark , Aug. 19, 1958

*Ruled Infringed and Violation of Unfair Competition by*

230. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

*AND Ruled Infringed and Violation of Unfair Competition by*

231. Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

232. LONGINES
FEDTM 72062378 , U.S. Federal Trademark , Nov. 13, 1958

*Ruled Infringed and Violation of Unfair Competition by*

233. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

234. GMT-MASTER
FEDTM 72063731 , U.S. Federal Trademark , Dec. 05, 1958

*Ruled Infringed by*

235. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

236. OMEGA
FEDTM 72098127 , U.S. Federal Trademark , May 31, 1960

*Ruled Not Infringed and Not Diluted by*

237. Omega S.A. v. Omega Engineering, Inc.
396 F.Supp.2d 166 , D.Conn. , Sep. 30, 2005

*Opinion Adhered to on Reconsideration by*

🚩 238. Omega S.A. v. Omega Engineering, Inc.
2005 WL 3307277 , D.Conn. , Dec. 06, 2005

*AND Motion to Amend Denied by*

239. Omega S.A. v. Omega Engineering, Inc.
2008 WL 160589 , D.Conn. , Jan. 15, 2008

240. [DESIGN ONLY]
FEDTM 72127631 , U.S. Federal Trademark , Sep. 11, 1961

*Ruled Infringed and Violation of Unfair Competition by*

241. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

242. COACH
FEDTM 72134804 , U.S. Federal Trademark , Dec. 28, 1961

*Cited by*

🚩 243. Sara Lee Corp. v. Bags of New York, Inc.
36 F.Supp.2d 161 , S.D.N.Y. , Jan. 28, 1999

*AND Ruled Infringed by*

244. Bebe Studio, Inc. v. Grand Stores
2009 WL 2195320 , D.Puerto Rico , July 17, 2009

*AND Ruled Infringed by*

245. Coach, Inc. v. Abner's Fashion
2009 WL 4810179 , C.D.Cal. , Dec. 07, 2009

*AND Cited by*

246. Coach Services, Inc. v. 777 Lucky Accessories, Inc.
752 F.Supp.2d 1271 , S.D.Fla. , May 05, 2010


*AND Ruled Infringed and Diluted by*


247. Coach, Inc. v. Ocean Point Gifts
2010 WL 2521444 , D.N.J. , June 14, 2010


*AND Ruled Infringed by*


248. Coach Services, Inc. v. K Ya Intern., Inc.
2010 WL 2771907 , S.D.N.Y. , July 12, 2010


*AND Cited by*


249. Coach, Inc. v. Reggae Hot Spot, Inc.
2010 WL 5536521 , S.D.N.Y. , Dec. 07, 2010


*Report and Recommendation Adopted by*


250. Coach, Inc. v. Reggae Hot Spot, Inc.
2011 WL 43462 , S.D.N.Y. , Jan. 05, 2011


251. COACH
FEDTM 72134804 , U.S. Federal Trademark , Dec. 28, 1961


*Ruled Infringed by*


252. Coach Services, Inc. v. YNM, Inc.
2011 WL 1752091 , C.D.Cal. , May 06, 2011


*AND Ruled Infringed and Diluted by*


253. Coach, Inc. v. Bags & Accessories
2011 WL 1882403 , D.N.J. , May 17, 2011


*AND Ruled Infringed and Diluted by*

254.  Coach, Inc. v. Linda's Accesorios Y Cellulares
2011 WL 2601525 , N.D.Tex. , June 30, 2011


*AND Ruled Infringed by*


⚑ 255.  Coach, Inc. v. D & N Clothing, Inc.
2011 WL 2682969 , E.D.Mich. , July 11, 2011


*AND Cited by*


256.  Coach, Inc. v. Just One Dollar Store Plus
2011 WL 3566445 , E.D.Mich. , Aug. 12, 2011


*AND Ruled Infringed and Diluted by*


257.  Coach, Inc. v. Melendez
2011 WL 4542717 , S.D.N.Y. , Sep. 30, 2011


*AND Ruled Infringed by*


258.  Coach, Inc. v. Sunfastic Tanning Resort
2011 WL 5446478 , E.D.Pa. , Nov. 10, 2011


*AND Cited by*


⚑ 259.  Coach, Inc. v.1941 Coachoutletstore.com
2011 WL 6965818 , E.D.Va. , Nov. 25, 2011


*Report and Recommendation Adopted in Part, Rejected in Part by*


260.  Coach, Inc. v. 1941 Coachoutletstore.com
2012 WL 27918 , E.D.Va. , Jan. 05, 2012


261.  COACH
FEDTM 72134804 , U.S. Federal Trademark , Dec. 28, 1961


*Ruled Infringed and Diluted by*

262.  Coach, Inc. v. Handbag Haven
2011 WL 13254512 , W.D.Tex. , Dec. 05, 2011


  *AND Ruled Infringed by*


263.  Coach, Inc. v. Diana Fashion
2011 WL 6182332 , N.D.Cal. , Dec. 13, 2011


  *AND Ruled Infringed by*


264.  Coach, Inc. v. Just A Boun, LLC
2011 WL 6328696 , M.D.Fla. , Dec. 15, 2011


  *AND Cited by*


265.  Coach, Inc. v. Brightside Boutique
2012 WL 32941 , W.D.Tex. , Jan. 06, 2012


  *Report and Recommendation Adopted by*


266.  Coach, Inc. v. Brightside Boutique
2012 WL 13149026 , W.D.Tex. , Mar. 16, 2012


267.  COACH
FEDTM 72134804 , U.S. Federal Trademark , Dec. 28, 1961


  *Ruled Infringed and Diluted by*


  268.  Coach, Inc. v. Fashion Paradise, LLC
2012 WL 194092 , D.N.J. , Jan. 20, 2012


  *AND Ruled Infringed by*


269.  Coach, Inc. v. Zhou Hui Yin
2012 WL 423625 , N.D.Cal. , Feb. 09, 2012


  *AND Ruled Infringed and Violation of Unfair Competition by*

270. Coach, Inc. v. McMeins
2012 WL 1080487 , S.D.N.Y. , Mar. 30, 2012

*AND Cited by*

271. Coach Inc. v. Uniform Place
2012 WL 1598095 , N.D.Ohio , Apr. 04, 2012

*Report and Recommendation Adopted by*

272. Coach, Inc. v. Uniform Place
2012 WL 1598091 , N.D.Ohio , May 07, 2012

273. COACH
FEDTM 72134804 , U.S. Federal Trademark , Dec. 28, 1961

*Cited by*

274. Coach Inc. v. Hayes & Co. LLC
2012 WL 1221873 , E.D.Ky. , Apr. 10, 2012

*AND Ruled Infringed and Diluted by*

275. Coach, Inc. v. O'Brien
2012 WL 1255276 , S.D.N.Y. , Apr. 13, 2012

*AND Ruled Infringed by*

276. Coach, Inc. v. Allen
2012 WL 2952890 , S.D.N.Y. , July 19, 2012

*AND Cited by*

277. Coach, Inc. v. Swap Shop, Inc.
916 F.Supp.2d 1271 , S.D.Fla. , Sep. 21, 2012

*AND Cited by*

278.  Coach, Inc. v. Dequindre Plaza, L.L.C.
2012 WL 6200305 , E.D.Mich. , Oct. 11, 2012


*Affirmed by*


279.  Coach, Inc. v. Dequindre Plaza, L.L.C.
2012 WL 6201355 , E.D.Mich. , Dec. 12, 2012


280.  COACH
FEDTM 72134804 , U.S. Federal Trademark , Dec. 28, 1961


*Ruled Infringed and Violation of Unfair Competition by*


281.  Coach, Inc. v. Diva's House of Style
2012 WL 6049722 , N.D.Ind. , Dec. 05, 2012


*AND Ruled Infringed and Diluted by*


282.  Coach, Inc. v. Sac A Main
2012 WL 6213308 , E.D.Cal. , Dec. 13, 2012


*AND Ruled Infringed and Violation of Unfair Competition by*


283.  Coach, Inc. v. Chouman's Ass'n, inc.
2012 WL 6705412 , E.D.Mich. , Dec. 26, 2012


*AND Ruled Infringed by*


284.  Coach, Inc. v. Island Rayz
2013 WL 1499610 , S.D.Ohio , Apr. 11, 2013


*AND Ruled Infringed by*


285.  Coach, Inc. v. Pro Nail & Beauty Supply
2016 WL 9450609 , W.D.Tex. , Aug. 26, 2016


*Judgment Vacated by*

286.  Coach, Inc. v. Pro Nail & Beauty Supply
2016 WL 9450446 , W.D.Tex. , Dec. 27, 2016

287.  COACH
FEDTM 72134804 , U.S. Federal Trademark , Dec. 28, 1961

*Ruled Infringed by*

288.  Coach Inc. v. Source II, Inc.
2016 WL 4761779 , E.D.Mich. , Sep. 13, 2016

*Affirmed in Part by*

289.  Coach Services, Inc. v. Source II, Inc.
728 Fed.Appx. 416 , 6th Cir.(Mich.) , Mar. 15, 2018

290.  PIAGET
FEDTM 72140861 , U.S. Federal Trademark , Mar. 27, 1962

*Ruled Infringed and Violation of Unfair Competition by*

291.  Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

292.  CARTIER
FEDTM 72146164 , U.S. Federal Trademark , June 05, 1962

*Ruled Infringed and Violation of Unfair Competition by*

293.  Cartier Intern. AG v. Daniel Markus, Inc.
2011 WL 3881498 , D.N.J. , Sep. 02, 2011

*AND Ruled Infringed and Violation of Unfair Competition by*

294.  Cartier International A.G. v. Daniel Markus, Inc.
2013 WL 5567150 , D.N.J. , Oct. 08, 2013

295.  CARTIER
FEDTM 72146163 , U.S. Federal Trademark , June 08, 1962


*Ruled Infringed by*


296.  Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.
1983 WL 425 , S.D.Fla. , Nov. 07, 1983


297.  MONTBLANC
FEDTM 72183616 , U.S. Federal Trademark , Dec. 24, 1963


*Ruled Infringed by*


298.  Montblanc-Simplo GmbH v. CheapMontblancPens.com
2012 WL 2704249 , E.D.Va. , July 05, 2012


*AND Ruled Infringed by*


299.  Montblanc-Simplo GmbH v. AChatStyloMontblanc.com
2014 WL 107395 , E.D.Va. , Jan. 03, 2014


*AND Ruled Infringed by*


300.  Montblanc-Simplo GmbH v. Buymontblancpensca.net
2014 WL 198669 , E.D.Va. , Jan. 14, 2014


*AND Ruled Violation of Unfair Competition by*


301.  Montblanc-Simplo Gmbh v. Montblancpensale.org
297 F.R.D. 242 , E.D.Va. , Jan. 24, 2014


*AND Ruled Infringed by*


302.  Montblanc-Simplo GmbH v. Montblancmagasin.com
2014 WL 3101923 , E.D.Va. , July 07, 2014


*AND Ruled Infringed and Violation of Unfair Competition by*

303. Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014


*AND Ruled Infringed by*


304. Montblanc-Simplo GmbH v. Ilnitsky
2018 WL 844401 , E.D.Va. , Feb. 13, 2018


*AND Ruled Infringed and Violation of Unfair Competition by*


305. Cartier International A.G. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 7761757 , S.D.Fla. , Sep. 17, 2019


306. RADO
FEDTM 72195450 , U.S. Federal Trademark , June 11, 1964


*Cited by*


307. Rado Watch Co., Ltd.v. ABC Co.
1992 WL 142747 , S.D.N.Y. , June 08, 1992


*AND Ruled Infringed and Violation of Unfair Competition by*


308. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022


309. CC
FEDTM 72212646 , U.S. Federal Trademark , Feb. 24, 1965


*Ruled Infringed by*


310. Chanel, Inc. v. Mesadieu
2009 WL 2496586 , M.D.Fla. , Aug. 12, 2009


311. DAY-DATE
FEDTM 72228831 , U.S. Federal Trademark , Sep. 28, 1965

*Ruled Infringed by*

312.  Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

313.  [DESIGN ONLY]
FEDTM 72268268 , U.S. Federal Trademark , Apr. 04, 1967

*Ruled Infringed by*

314.  Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

315.  SEA-DWELLER
FEDTM 72289907 , U.S. Federal Trademark , Jan. 30, 1968

*Ruled Infringed by*

316.  Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

317.  OMEGA TIME RECORDER
FEDTM 72297433 , U.S. Federal Trademark , May 06, 1968

*Ruled Infringed and Violation of Unfair Competition by*

318.  Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

🚩 319.  GUCCI
FEDTM 72300192 , U.S. Federal Trademark , June 11, 1968

*Ruled Not Infringed by*

320.  Gucci v. Gucci Shops, Inc.
1988 WL 75263 , S.D.N.Y. , July 13, 1988

*AND Ruled Infringed by*

321. Gucci America, Inc. v. Duty Free Apparel, Ltd.
286 F.Supp.2d 284 , S.D.N.Y. , Oct. 06, 2003

*AND Ruled Infringed and Violation of Unfair Competition by*

322. Gucci America, Inc. v. Tyrrell-Miller
678 F.Supp.2d 117 , S.D.N.Y. , Nov. 19, 2008

*AND Ruled Infringed by*

323. Gucci America, Inc. v. Lee
2008 WL 11411154 , S.D.Fla. , Dec. 01, 2008

*AND Ruled Infringed by*

324. Bebe Studio, Inc. v. Grand Stores
2009 WL 2195320 , D.Puerto Rico , July 17, 2009

*AND Ruled Infringed and Diluted by*

325. Gucci America, Inc. v. Gucci
2009 WL 8531026 , S.D.N.Y. , Aug. 05, 2009

*AND Ruled Infringed and Diluted by*

326. Gucci America, Inc. v. Curveal Fashion
2010 WL 308303 , S.D.N.Y. , Jan. 20, 2010

*AND Cited by*

327. Gucci America, Inc. v. Frontline Processing Corp.
721 F.Supp.2d 228 , S.D.N.Y. , June 23, 2010

*AND Ruled Infringed by*

328.  Gucci America, Inc. v. Huali Fan
2010 WL 11550030 , S.D.Fla. , Nov. 30, 2010


   *AND Cited by*


329.  Gucci America, Inc. v. Guodong Zhou
2011 WL 3651030 , S.D.Fla. , Aug. 18, 2011


   *AND Cited by*


330.  Gucci America, Inc. v. Bagsmerchant, LLC
2012 WL 4468192 , S.D.N.Y. , Sep. 27, 2012


   *AND Ruled Infringed by*


331.  Gucci America, Inc. v. Chaussuresguccis.com
2015 WL 11202639 , S.D.Fla. , Feb. 27, 2015


   *AND Ruled Infringed and Violation of Unfair Competition by*


332.  Gucci America, Inc. v. 2015gucci-Outlet.com
2015 WL 12551053 , S.D.Fla. , Aug. 21, 2015


   *AND Ruled Infringed and Violation of Unfair Competition by*


333.  Gucci America, Inc. v. aaabagswear.com
2017 WL 6949256 , S.D.Fla. , Sep. 21, 2017


   *AND Ruled Infringed and Violation of Unfair Competition by*


🚩 334.  Gucci America, Inc. v. Idolbags.ru
2017 WL 6949253 , S.D.Fla. , Dec. 28, 2017


   *Amended and Superseded by*


335.  Gucci America, Inc. v. idolbags.ru
2018 WL 3412853 , S.D.Fla. , May 09, 2018

⚑ 336. GUCCI
FEDTM 72300192 , U.S. Federal Trademark , June 11, 1968

*Ruled Infringed and Violation of Unfair Competition by*

337. Gucci America, Inc. v. idolbags.ru
2018 WL 3412853 , S.D.Fla. , May 09, 2018

*AND Ruled Infringed and Violation of Unfair Competition by*

338. Gucci America, Inc. v. 1a-dignass.de
2018 WL 3882491 , S.D.Fla. , July 12, 2018

*AND Ruled Infringed by*

339. Gucci America, Inc. v. aaaimitationbags.com
2018 WL 11233922 , S.D.Fla. , Dec. 10, 2018

*AND Ruled Infringed by*

340. Gucci America, Inc. v. Belt Hut
2019 WL 7666543 , S.D.Fla. , May 22, 2019

*AND Ruled Infringed and Violation of Unfair Competition by*

341. Gucci America, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2023 WL 9472044 , S.D.Fla. , Mar. 15, 2023

342. CHANEL
FEDTM 72339492 , U.S. Federal Trademark , May 28, 1969

*Ruled Infringed by*

343. Chanel, Inc. v. Weng
2011 WL 13244209 , N.D.Cal. , May 03, 2011

*AND Ruled Infringed by*

344.  Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012


 *AND Ruled Infringed by*


345.  Chanel, Inc. v. Palant
2013 WL 12065876 , S.D.Fla. , Jan. 14, 2013


 *AND Ruled Infringed by*


346.  Chanel, Inc. v. Mode Salon, Inc.
2013 WL 12138729 , C.D.Cal. , June 10, 2013


 *AND Ruled Infringed by*


347.  Chanel, Inc. v. besumart.com
240 F.Supp.3d 1283 , S.D.Fla. , Sep. 07, 2016


 *AND Ruled Infringed and Violation of Unfair Competition by*


348.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017


349.  PIAGET THE MOST EXPENSIVE WATCH IN THE WORLD
FEDTM 72345368 , U.S. Federal Trademark , Dec. 04, 1969


 *Ruled Infringed and Violation of Unfair Competition by*


350.  Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985


351.  CHANEL
FEDTM 72373473 , U.S. Federal Trademark , Oct. 16, 1970


 *Ruled Infringed by*


352.  Chanel, Inc. v. Weng
2011 WL 13244209 , N.D.Cal. , May 03, 2011

*AND Ruled Infringed by*

353. Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

354. CC
FEDTM 72388832 , U.S. Federal Trademark , Apr. 12, 1971

*Ruled Infringed by*

355. Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.
1983 WL 425 , S.D.Fla. , Nov. 07, 1983

356. CHLOE
FEDTM 72392040 , U.S. Federal Trademark , May 14, 1971

*Ruled Infringed and Violation of Unfair Competition by*

357. Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

358. PIAGET
FEDTM 72406405 , U.S. Federal Trademark , Oct. 29, 1971

*Ruled Infringed and Violation of Unfair Competition by*

359. Richemont International SA v. montblancpenseshop.co
2018 WL 10374597 , S.D.Fla. , Dec. 12, 2018

360. CHANEL
FEDTM 72414550 , U.S. Federal Trademark , Feb. 04, 1972

*Ruled Infringed by*

361. Chanel, Inc. v. Weng
2011 WL 13244209 , N.D.Cal. , May 03, 2011

*AND Ruled Infringed by*

362. Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed by*

363. Chanel, Inc. v. Palant
2013 WL 12065876 , S.D.Fla. , Jan. 14, 2013

*AND Ruled Infringed by*

364. Chanel, Inc. v. Hsiao Yin Fu
2017 WL 1079544 , N.D.Cal. , Mar. 22, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

365. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

366. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017

367. RADO DIASTAR
FEDTM 72445891 , U.S. Federal Trademark , Jan. 15, 1973

*Ruled Infringed and Violation of Unfair Competition by*

368. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

369. CC
FEDTM 73056306 , U.S. Federal Trademark , June 27, 1975

*Ruled Infringed by*

370.  Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.
1983 WL 425 , S.D.Fla. , Nov. 07, 1983

371.  CHANEL
FEDTM 73057157 , U.S. Federal Trademark , July 08, 1975

*Ruled Infringed and Diluted by*

372.  Chanel, Inc. v. Doren
2016 WL 7468068 , N.D.Tex. , Dec. 27, 2016

373.  LOUIS VUITTON
FEDTM 73060441 , U.S. Federal Trademark , Aug. 13, 1975

*Cited by*

374.  Vuitton v. White
945 F.2d 569 , 3rd Cir.(Pa.) , Sep. 18, 1991

*AND Ruled Infringed and Violation of Unfair Competition by*

375.  Louis Vuitton Malletier and Oakley, Inc. v. Veit
211 F.Supp.2d 567 , E.D.Pa. , June 26, 2002

*Judgment Amended (Jun 28, 2002)*

376.  LOUIS VUITTON
FEDTM 73060441 , U.S. Federal Trademark , Aug. 13, 1975

*Ruled Infringed by*

377.  Chanel, Inc. v. Craddock
2006 WL 469952 , D.N.J. , Feb. 27, 2006

*AND Cited by*

378.  Malletier v. Lincoln Fantasy
2006 WL 2129025 , D.Puerto Rico , July 27, 2006

*Order Enforced by*

🚩 379. Malletier v. Lincoln Fantasy
2007 WL 2221384 , D.Puerto Rico , July 24, 2007

🚩 380. LOUIS VUITTON
FEDTM 73060441 , U.S. Federal Trademark , Aug. 13, 1975

*Ruled Not Infringed and Not Diluted by*

381. Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC
464 F.Supp.2d 495 , E.D.Va. , Nov. 03, 2006

*Affirmed on Other Grounds by*

🚩 382. Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC
507 F.3d 252 , 4th Cir.(Va.) , Nov. 13, 2007

🚩 383. LOUIS VUITTON
FEDTM 73060441 , U.S. Federal Trademark , Aug. 13, 1975

*Cited by*

🚩 384. Malletier v. The Flea Market, Inc.
2009 WL 1625946 , N.D.Cal. , June 10, 2009

*AND Ruled Infringed and Diluted by*

🚩 385. Louis Vuitton Malletier, S.A. v. Mosseri
2009 WL 3633882 , D.N.J. , Oct. 28, 2009

*AND Cited by*

386. Louis Vuitton Malletier, S.A. v. Key Lin
2011 WL 1584195 , S.D.Fla. , Mar. 17, 2011

*Report and Recommendation Adopted by*

387. Louis Vuitton Malletier, S.A. v. Lin
2011 WL 1584331 , S.D.Fla. , Apr. 26, 2011

⚑ 388. LOUIS VUITTON
FEDTM 73060441 , U.S. Federal Trademark , Aug. 13, 1975

*Ruled Infringed and Violation of Unfair Competition by*

389. Louis Vuitton Malletier, S.A. v. Partnerships, Unincorporated Associations Identified on Schedule A
2012 WL 574013 , D.Nev. , Feb. 03, 2012

*AND Ruled Not Infringed and Not Violation of Unfair Competition by*

⚑ 390. Louis Vuitton Malletier S.A. v. Warner Bros. Entertainment Inc.
868 F.Supp.2d 172 , S.D.N.Y. , June 15, 2012 , appeal withdrawn (2nd Circ. 12-2885) ( Oct 03, 2012 )

*AND Cited by*

391. Louis Vuitton Malletier, S.A. v. Bags-Watch-Replicas.org
2012 WL 5398634 , S.D.Fla. , Nov. 02, 2012

*AND Ruled Infringed by*

392. Malletier v. 2012louisvuittonhandbag.com
2013 WL 12094863 , S.D.Fla. , May 28, 2013

*AND Ruled Infringed by*

⚑ 393. Louis Vuitton Malletier, S.A. v. Mosseri
736 F.3d 1339 , 11th Cir.(Fla.) , Dec. 02, 2013

*AND Cited by*

394. Louis Vuitton Malletier, S.A. v.2013lvshop.com
2014 WL 3735942 , S.D.Fla. , July 29, 2014

*Subsequent Determination*

395. Louis Vuitton Malletier, S.A. v.2013lvshop.com
2014 WL 3855058 , S.D.Fla. , Aug. 05, 2014

⚑ 396. LOUIS VUITTON
FEDTM 73060441 , U.S. Federal Trademark , Aug. 13, 1975

*Cited by*

397. Louis Vuitton Malletier, S.A. v. 2016bagsilouisvuitton.com
2016 WL 3626782 , S.D.Fla. , July 07, 2016

*AND Ruled Infringed by*

398. Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

*AND Ruled Infringed by*

399. Louis Vuitton Malletier, S.A. v. 2015chinasale.com
2017 WL 6948722 , S.D.Fla. , Apr. 19, 2017

*Subsequent Determination*

400. Louis Vuitton Malletier, S.A. v. 2015chinasale.com
2017 WL 6948723 , S.D.Fla. , May 10, 2017

⚑ 401. LOUIS VUITTON
FEDTM 73060441 , U.S. Federal Trademark , Aug. 13, 1975

*Ruled Infringed by*

402. Louis Vuitton Malletier v. aaaimitationbags.com
2019 WL 2008910 , S.D.Fla. , Mar. 29, 2019

*AND Ruled Infringed and Violation of Unfair Competition by*

403.  Louis Vuitton Malletier v. Individuals, Business Entities , and Unincorporated Associations Identified on
Schedule "A"
2022 WL 898645 , S.D.Fla. , Mar. 28, 2022


*AND Ruled Infringed and Violation of Unfair Competition by*


404.  Louis Vuitton Malletier v. ablvmall.shop
2023 WL 6310231 , S.D.Fla. , June 28, 2023


405.  RAY-BAN
FEDTM 73125695 , U.S. Federal Trademark , May 09, 1977


*Cited by*


406.  Bausch & Lomb Inc. v. Nevitt Sales Corp.
810 F.Supp. 466 , W.D.N.Y. , Jan. 25, 1993


*AND Cited by*


⚑  407.  Luxottica Group S.p.A. v. Bausch & Lomb Inc.
160 F.Supp.2d 545 , S.D.N.Y. , Mar. 30, 2001


*AND Ruled Infringed and Violation of Unfair Competition by*


408.  Luxottica Group S.p.A. v. Casa Los Martinez Corp.
2014 WL 4948632 , S.D.Fla. , Oct. 02, 2014


*AND Ruled Infringed and Violation of Unfair Competition by*


409.  Luxottica Group, S.p.A. v. Shore Enuff
2019 WL 4027547 , D.N.J. , Aug. 27, 2019


*AND Ruled Infringed and Violation of Unfair Competition by*


410.  Luxottica Group S.p.A. v. Accessory Consultants LLC
2020 WL 1910378 , D.N.J. , Apr. 20, 2020


*AND Ruled Infringed by*

411. Luxottica Group S.p.A v. President Optical Inc.
2021 WL 776419 , S.D.Fla. , Mar. 01, 2021


*AND Ruled Infringed and Not Violation of Unfair Competition by*


⚑ 412. Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021


*Vacated by*


413. Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023


414. BAUME & MERCIER GENEVE
FEDTM 73130096 , U.S. Federal Trademark , June 13, 1977


*Ruled Infringed by*


415. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017


416. PIAGET QUARTZ
FEDTM 73134493 , U.S. Federal Trademark , July 19, 1977


*Ruled Infringed and Violation of Unfair Competition by*


417. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985


418. PIAGET QUARTZ
FEDTM 73139933 , U.S. Federal Trademark , Sep. 01, 1977


*Ruled Infringed and Violation of Unfair Competition by*


419. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

420. GG
FEDTM 73146457 , U.S. Federal Trademark , Oct. 28, 1977

*Ruled Infringed by*

421. Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.
1983 WL 425 , S.D.Fla. , Nov. 07, 1983

*AND Ruled Infringed by*

422. Louis Vuitton S.A., Gucci Shops, Inc. v. Bag Center
1986 WL 2611 , N.D.Ill. , Feb. 21, 1986

*Amendment Denied by*

423. Louis Vuitton S.A. v. Bag Center
1986 WL 5638 , N.D.Ill. , May 07, 1986

424. OYSTER PERPETUAL
FEDTM 73165727 , U.S. Federal Trademark , Apr. 10, 1978

*Ruled Infringed by*

425. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 9690322 , C.D.Cal. , Sep. 29, 2015

*Motion for Relief from Judgment Denied by*

426. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 13806770 , C.D.Cal. , Dec. 02, 2015

427. OYSTER PERPETUAL
FEDTM 73165727 , U.S. Federal Trademark , Apr. 10, 1978

*Ruled Infringed by*

428. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

429. POLO RALPH LAUREN
FEDTM 73172600 , U.S. Federal Trademark , June 01, 1978

*Cited by*

430. Rolex Watch U.S.A., Inc. v. Jones.
2002 WL 596354 , S.D.N.Y. , Apr. 17, 2002

*AND Ruled Infringed by*

431. Bebe Studio, Inc. v. Grand Stores
2009 WL 2195320 , D.Puerto Rico , July 17, 2009

432. GG
FEDTM 73181941 , U.S. Federal Trademark , Aug. 14, 1978

*Ruled Infringed by*

433. Gucci Shops, Inc. v. Dreyfoos & Associates, Inc.
1983 WL 425 , S.D.Fla. , Nov. 07, 1983

434. PIAGET EMPERADOR
FEDTM 73189940 , U.S. Federal Trademark , Oct. 19, 1978

*Ruled Infringed and Violation of Unfair Competition by*

435. Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

436. KHAKI
FEDTM 73217409 , U.S. Federal Trademark , May 29, 1979

*Ruled Infringed and Violation of Unfair Competition by*

437. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

438. Vuitton et Fils, S.A. v. J. Young Enterprises, Inc.
609 F.2d 1335 , 9th Cir.(Cal.) , Dec. 26, 1979

*On Remand to*

🚩 439. Vuitton et Fils, S.A v. J. Young Enterprises, Inc.
1980 WL 30280 , C.D.Cal. , June 10, 1980

*Judgment Entered by*

440. Vuitton Et Fils, S.A. v. J. Young Enterprises, Inc.
1980 WL 581379 , C.D.Cal. , June 10, 1980

*AND Reversed by*

🚩 441. Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.
644 F.2d 769 , 9th Cir.(Cal.) , May 04, 1981

*Also Published at*

442. Vuitton et Fils S.A. v. J. Young Enterprises, Inc.
1981 WL 481427 , 9th Cir. , May 04, 1981

443. Vuitton et Fils, S.A. v. J. Young Enterprises, Inc.
609 F.2d 1335 , 9th Cir.(Cal.) , Dec. 26, 1979

*Appeal After Remand*

🚩 444. Vuitton Et Fils S.A. v. J. Young Enterprises, Inc.
644 F.2d 769 , 9th Cir.(Cal.) , May 04, 1981

*Also Published at*

445. Vuitton et Fils S.A. v. J. Young Enterprises, Inc.
1981 WL 481427 , 9th Cir. , May 04, 1981

446. GG
FEDTM 73244466 , U.S. Federal Trademark , Dec. 31, 1979

*Ruled Not Infringed by*

447. Gucci v. Gucci Shops, Inc.
1988 WL 75263 , S.D.N.Y. , July 13, 1988

448. CHANEL
FEDTM 73265029 , U.S. Federal Trademark , June 05, 1980

*Ruled Infringed by*

449. Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed and Violation of Unfair Competition by*

450. Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A,"
2023 WL 8310362 , S.D.Fla. , Sep. 19, 2023

451. PAOLO GUCCI
FEDTM 73298647 , U.S. Federal Trademark , Feb. 26, 1981

*Cited by*

452. Gucci v. Gucci Shops, Inc.
1988 WL 75263 , S.D.N.Y. , July 13, 1988

*AND Cited by*

453. In re Gucci; Trackwise Sales Corp. v. Gucci
1995 WL 505646 , S.D.N.Y. , Aug. 24, 1995

*Appeal Decided by*

454. In re Trackwise
71 F.3d 404 , 2nd Cir.(N.Y.) , Oct. 03, 1995

455. PAOLO GUCCI
FEDTM 73298647 , U.S. Federal Trademark , Feb. 26, 1981

*Cited by*

456. Trackwise Sales Corp. v. Crown Corp.
1996 WL 304413 , S.D.N.Y. , June 06, 1996

457. TIFFANY & CO.
FEDTM 73304929 , U.S. Federal Trademark , Apr. 09, 1981

*Ruled Infringed by*

458. Tiffany (NJ) LLC v. Individual, Unincorporated Association or Business Entity of Unknown Makeup
2018 WL 7145002 , S.D.Fla. , Nov. 19, 2018

*AND Ruled Infringed and Violation of Unfair Competition by*

459. Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2025 WL 636686 , S.D.Fla. , Jan. 17, 2025

460. TIFFANY
FEDTM 73304915 , U.S. Federal Trademark , Apr. 09, 1981

*Ruled Infringed by*

461. Tiffany (NJ), LLC v. Liu Zheng
2011 WL 13217253 , S.D.Fla. , Apr. 28, 2011

*AND Cited by*

462. Chanel Inc. v. Yang
2013 WL 5755217 , N.D.Cal. , Oct. 21, 2013

*AND Ruled Infringed by*

🚩 463.  Tiffany and Co. v. Costco Wholesale Corp.
127 F.Supp.3d 241 , S.D.N.Y. , Sep. 08, 2015 , appeal dismissed (2nd Circ. 15-2916) ( Nov 10, 2015 )


*Motion to Amend Denied by*


464.  Tiffany and Company v. Costco Wholesale Corp.
2019 WL 120765 , S.D.N.Y. , Jan. 07, 2019


*AND Vacated and Remanded by*


🏳 465.  Tiffany and Company v. Costco Wholesale Corporation
971 F.3d 74 , 2nd Cir.(N.Y.) , Aug. 17, 2020


466.  TIFFANY
FEDTM 73304915 , U.S. Federal Trademark , Apr. 09, 1981


*Ruled Infringed and Violation of Unfair Competition by*


467.  Tiffany (NJ) LLC v. Cheny No.2 Store
2020 WL 6828602 , S.D.Fla. , Oct. 21, 2020


*AND Ruled Infringed and Violation of Unfair Competition by*


468.  Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2025 WL 636686 , S.D.Fla. , Jan. 17, 2025


469.  IWC
FEDTM 73310312 , U.S. Federal Trademark , May 14, 1981


*Ruled Infringed by*


470.  Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

471.  Richemont International SA v. montblanchot.com
2020 WL 6701932 , S.D.Fla. , Nov. 13, 2020

 472.  GG
FEDTM 73318096 , U.S. Federal Trademark , July 08, 1981

*Ruled Not Infringed by*

473.  Gucci v. Gucci Shops, Inc.
1988 WL 75263 , S.D.N.Y. , July 13, 1988

 474.  GG
FEDTM 73318095 , U.S. Federal Trademark , July 08, 1981

*Ruled Not Infringed by*

475.  Gucci v. Gucci Shops, Inc.
1988 WL 75263 , S.D.N.Y. , July 13, 1988

 476.  GG
FEDTM 73318728 , U.S. Federal Trademark , July 13, 1981

*Ruled Not Infringed by*

477.  Gucci v. Gucci Shops, Inc.
1988 WL 75263 , S.D.N.Y. , July 13, 1988

478.  HUBLOT
FEDTM 73330071 , U.S. Federal Trademark , Sep. 28, 1981

*Ruled Infringed and Violation of Unfair Competition by*

479.  Audemars Piguet Holding SA v. Kkkwatch.com
2017 WL 6947427 , S.D.Fla. , May 19, 2017

480. CONSTELLATION
FEDTM 73331540 , U.S. Federal Trademark , Oct. 07, 1981

*Ruled Infringed and Violation of Unfair Competition by*

481. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

482. MEISTERSTUCK
FEDTM 73352355 , U.S. Federal Trademark , Mar. 01, 1982

*Ruled Infringed and Violation of Unfair Competition by*

483. Richemont International SA v. montblancpenseshop.co
2018 WL 10374597 , S.D.Fla. , Dec. 12, 2018

484. CC
FEDTM 73356733 , U.S. Federal Trademark , Mar. 26, 1982

*Cited by*

485. Chanel, Inc. v. Tshimanga
2008 WL 912930 , N.D.Cal. , Apr. 03, 2008

*Subsequent Determination*

486. Chanel, Inc. v. Tshimanga
2008 WL 1897686 , N.D.Cal. , Apr. 28, 2008

487. CC
FEDTM 73356733 , U.S. Federal Trademark , Mar. 26, 1982

*Ruled Infringed by*

488. Chanel, Inc. v. Kouzniakova
2008 WL 2741133 , E.D.N.Y. , July 10, 2008

*AND Ruled Infringed by*

489.  Chanel, Inc. v. Tshimanga
2008 WL 11388118 , N.D.Cal. , Aug. 01, 2008


*AND Ruled Infringed and Violation of Unfair Competition by*

490.  Chanel, Inc. v. Hunter
2008 WL 11338688 , C.D.Cal. , Aug. 18, 2008


*AND Ruled Infringed and Violation of Unfair Competition by*

⚑ 491.  Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009


*AND Ruled Infringed by*

492.  Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012


*AND Ruled Infringed by*

493.  Chanel, Inc. v. Xiangneng Li
2012 WL 13014680 , S.D.Fla. , Apr. 10, 2012


*AND Ruled Infringed by*

494.  Chanel, Inc. v. Chanel255.org
2012 WL 13014707 , S.D.Fla. , Sep. 11, 2012


*AND Ruled Infringed and Violation of Unfair Competition by*

495.  Chanel, Inc. v. 2012chanelbagsoutletstore.com
2012 WL 12918301 , S.D.Fla. , Oct. 29, 2012


*AND Ruled Infringed and Violation of Unfair Competition by*

496.  Chanel, Inc. v. Imitation-Handbags.ru
2016 WL 9461767 , S.D.Fla. , Nov. 14, 2016

*AND Ruled Infringed by*

497.  Chanel, Inc. v. ald Gall LNH
2017 WL 6947423 , S.D.Fla. , Feb. 06, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

498.  Chanel, Inc. v. Salehandbags.ru
2017 WL 6947723 , S.D.Fla. , Feb. 16, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

499.  Chanel, Inc. v. E8bag.ru
2017 WL 6947460 , S.D.Fla. , June 12, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

500.  Chanel, Inc. v. 726usjsIS
2017 WL 10845130 , S.D.Fla. , June 21, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

501.  Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

502.  Chanel, Inc. v. Efank
2017 WL 6947440 , S.D.Fla. , Oct. 18, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*

503.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2018 WL 1795762 , S.D.Fla. , Feb. 06, 2018


504.  CHANEL
FEDTM 73356734 , U.S. Federal Trademark , Mar. 26, 1982

*Ruled Infringed by*

505. Chanel, Inc. v. Craddock
2006 WL 469952 , D.N.J. , Feb. 27, 2006

*AND Ruled Infringed and Diluted by*

🔺 506. Chanel, Inc. v. Xiao Feng Ye
2007 WL 2693850 , E.D.N.Y. , Sep. 12, 2007

*Judgment Entered by*

507. Chanel, Inc. v. Xiao Feng Ye
2007 WL 2932773 , E.D.N.Y. , Oct. 05, 2007

508. CHANEL
FEDTM 73356734 , U.S. Federal Trademark , Mar. 26, 1982

*Cited by*

509. Chanel, Inc. v. Tshimanga
2008 WL 912930 , N.D.Cal. , Apr. 03, 2008

*Subsequent Determination*

510. Chanel, Inc. v. Tshimanga
2008 WL 1897686 , N.D.Cal. , Apr. 28, 2008

511. CHANEL
FEDTM 73356734 , U.S. Federal Trademark , Mar. 26, 1982

*Ruled Infringed and Violation of Unfair Competition by*

512. Chanel, Inc. v. Hunter
2008 WL 11338688 , C.D.Cal. , Aug. 18, 2008

*AND Ruled Infringed and Violation of Unfair Competition by*

⚑ 513. Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009

*AND Ruled Infringed by*

514. Chanel, Inc. v. Weng
2011 WL 13244209 , N.D.Cal. , May 03, 2011

*AND Ruled Infringed by*

515. Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed by*

516. Chanel, Inc. v. Cong Huang
2012 WL 13014687 , S.D.Fla. , Mar. 29, 2012

*AND Ruled Infringed by*

517. Chanel, Inc. v. Xiangneng Li
2012 WL 13014680 , S.D.Fla. , Apr. 10, 2012

*AND Ruled Infringed by*

518. Chanel, Inc. v. Chanel255.org
2012 WL 13014707 , S.D.Fla. , Sep. 11, 2012

*AND Ruled Infringed and Violation of Unfair Competition by*

519. Chanel, Inc. v. Imitation-Handbags.ru
2016 WL 9461767 , S.D.Fla. , Nov. 14, 2016

*AND Ruled Infringed and Violation of Unfair Competition by*

520. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

521. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017

522. CC
FEDTM 73359660 , U.S. Federal Trademark , Apr. 14, 1982

*Ruled Infringed by*

523. Chanel, Inc. v. Gupton
2015 WL 1094849 , N.D.Cal. , Mar. 02, 2015

*AND Ruled Infringed by*

524. Chanel, Inc. v. Matos
133 F.Supp.3d 678 , D.N.J. , Aug. 13, 2015

*AND Ruled Infringed and Violation of Unfair Competition by*

525. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017

526. CHANEL
FEDTM 73359661 , U.S. Federal Trademark , Apr. 14, 1982

*Ruled Infringed by*

527. Chanel, Inc. v. Weng
2011 WL 13244209 , N.D.Cal. , May 03, 2011

*AND Ruled Infringed and Violation of Unfair Competition by*

528. Chanel, Inc. v. Chanelbagsforsale-US.com
2012 WL 5364300 , S.D.Fla. , Oct. 31, 2012

*AND Ruled Infringed by*

529. Chanel Inc. v. Dudum
2012 WL 5835694 , N.D.Cal. , Nov. 15, 2012


*AND Ruled Infringed by*


530. Chanel, Inc. v. Gupton
2015 WL 1094849 , N.D.Cal. , Mar. 02, 2015


*AND Ruled Infringed by*


531. Chanel, Inc. v. Matos
133 F.Supp.3d 678 , D.N.J. , Aug. 13, 2015


*AND Ruled Infringed and Violation of Unfair Competition by*


532. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*


533. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017


534. GUESS ?
FEDTM 73369608 , U.S. Federal Trademark , June 14, 1982


*Ruled Infringed and Violation of Unfair Competition by*


535. Guess ?, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9253 , D.D.C. , Mar. 23, 1987


*AND Ruled Infringed and Diluted by*


536. Guess ?, Inc. v. Jung
1987 WL 4881 , D.D.C. , May 07, 1987


*AND Ruled Infringed and Violation of Unfair Competition by*

537.  Guess ?, Inc. v. Mai-Tai Boutique
1988 WL 31878 , S.D.N.Y. , Mar. 30, 1988

538.  OMEGA
FEDTM 73370198 , U.S. Federal Trademark , June 17, 1982

*Ruled Infringed and Violation of Unfair Competition by*

539.  Piaget Watch Corporation v. Star Mart
1985 WL 1144 , N.D.Ill. , Apr. 30, 1985

*AND Ruled Not Infringed and Not Diluted by*

540.  Omega S.A. v. Omega Engineering, Inc.
396 F.Supp.2d 166 , D.Conn. , Sep. 30, 2005

*Opinion Adhered to on Reconsideration by*

541.  Omega S.A. v. Omega Engineering, Inc.
2005 WL 3307277 , D.Conn. , Dec. 06, 2005

*AND Motion to Amend Denied by*

542.  Omega S.A. v. Omega Engineering, Inc.
2008 WL 160589 , D.Conn. , Jan. 15, 2008

543.  OMEGA
FEDTM 73370198 , U.S. Federal Trademark , June 17, 1982

*Ruled Infringed and Violation of Unfair Competition by*

544.  Omega S.A. v. Giftland Co.
2009 WL 1288576 , D.N.J. , May 07, 2009

545.  JAEGER-LECOULTRE
FEDTM 73371999 , U.S. Federal Trademark , June 28, 1982

*Ruled Infringed and Violation of Unfair Competition by*

546. Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

*AND Ruled Infringed and Violation of Unfair Competition by*

547. Richemont International SA v. montblancpenseshop.co
2018 WL 10374597 , S.D.Fla. , Dec. 12, 2018

548. GUESS?
FEDTM 73396208 , U.S. Federal Trademark , Sep. 30, 1982

*Ruled Infringed and Violation of Unfair Competition by*

549. Guess ?, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9253 , D.D.C. , Mar. 23, 1987

*AND Ruled Infringed and Diluted by*

550. Guess ?, Inc. v. Jung
1987 WL 4881 , D.D.C. , May 07, 1987

*AND Ruled Infringed and Violation of Unfair Competition by*

551. Guess ?, Inc. v. Mai-Tai Boutique
1988 WL 31878 , S.D.N.Y. , Mar. 30, 1988

552. TIFFANY & CO.
FEDTM 73416496 , U.S. Federal Trademark , Mar. 09, 1983

*Ruled Infringed and Violation of Unfair Competition by*

553. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018

554. DE VILLE
FEDTM 73418969 , U.S. Federal Trademark , Mar. 28, 1983

*Ruled Infringed and Violation of Unfair Competition by*

555. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

556. T&CO
FEDTM 73444862 , U.S. Federal Trademark , Sep. 22, 1983

*Ruled Not Infringed and Not Diluted by*

557. Tiffany (NJ) Inc. v. eBay, Inc.
576 F.Supp.2d 463 , S.D.N.Y. , July 14, 2008

*Judgment Affirmed in Part, Reversed in Part by*

558. Tiffany (NJ) Inc. v. eBay Inc.
600 F.3d 93 , 2nd Cir.(N.Y.) , Apr. 01, 2010

*On Remand to*

559. Tiffany (NJ) Inc. v. eBay, Inc.
2010 WL 3733894 , S.D.N.Y. , Sep. 13, 2010

*AND Certiorari Denied by*

560. Tiffany (NJ) Inc. v. eBay Inc.
562 U.S. 1082 , U.S. , Nov. 29, 2010

561. OAKLEY
FEDTM 73454303 , U.S. Federal Trademark , Nov. 25, 1983

*Ruled Infringed and Violation of Unfair Competition by*

562. Louis Vuitton Malletier and Oakley, Inc. v. Veit
211 F.Supp.2d 567 , E.D.Pa. , June 26, 2002

*Judgment Amended (Jun 28, 2002)*

563. [DESIGN ONLY]
FEDTM 73461704 , U.S. Federal Trademark , Jan. 20, 1984

*Ruled Infringed and Violation of Unfair Competition by*

564. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

565. RAY.BAN
FEDTM 73468836 , U.S. Federal Trademark , Mar. 05, 1984

*Ruled Infringed and Violation of Unfair Competition by*

566. Luxottica Group, S.p.A. v. Shore Enuff
2019 WL 4027547 , D.N.J. , Aug. 27, 2019

*AND Ruled Infringed and Violation of Unfair Competition by*

567. Luxottica Group S.p.A. v. Accessory Consultants LLC
2020 WL 1910378 , D.N.J. , Apr. 20, 2020

*AND Ruled Infringed by*

568. Luxottica Group S.p.A v. President Optical Inc.
2021 WL 776419 , S.D.Fla. , Mar. 01, 2021

*AND Ruled Infringed and Not Violation of Unfair Competition by*

569. Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021

*Vacated by*

570. Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023

571. [DESIGN ONLY]
FEDTM 73468835 , U.S. Federal Trademark , Mar. 05, 1984

*Cited by*

572. Bausch & Lomb Inc. v. Nevitt Sales Corp.
810 F.Supp. 466 , W.D.N.Y. , Jan. 25, 1993


573. ?
FEDTM 73516503 , U.S. Federal Trademark , Jan. 07, 1985


*Ruled Infringed and Violation of Unfair Competition by*

574. Guess ?, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9253 , D.D.C. , Mar. 23, 1987


575. LONGINES
FEDTM 73540863 , U.S. Federal Trademark , June 03, 1985


*Ruled Infringed and Violation of Unfair Competition by*

576. Audemars Piguet Holding SA v. Kkkwatch.com
2017 WL 6947427 , S.D.Fla. , May 19, 2017


577. [DESIGN ONLY]
FEDTM 73562496 , U.S. Federal Trademark , Oct. 10, 1985


*Ruled Infringed and Diluted by*

578. Gucci America, Inc. v. Gucci
2009 WL 8531026 , S.D.N.Y. , Aug. 05, 2009


*AND Ruled Infringed and Diluted by*

579. Gucci America, Inc. v. Guess?, Inc.
868 F.Supp.2d 207 , S.D.N.Y. , June 18, 2012


580. TOMMY HILFIGER
FEDTM 73566804 , U.S. Federal Trademark , Nov. 04, 1985

*Ruled Not Infringed and Not Diluted by*

⚑ 581. Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC
221 F.Supp.2d 410 , S.D.N.Y. , Aug. 13, 2002


*AND Ruled Infringed and Not Diluted by*

582. Tommy Hilfiger Licensing, Inc., Plaintiff, v. Goody's Family Clothing, Inc., Defendant.
2003 WL 22331254 , N.D.Ga. , May 09, 2003


*AND Ruled Infringed by*

583. Tommy Hilfiger Licensing, LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776937 , S.D.Fla. , Mar. 27, 2014


584. [DESIGN ONLY]
FEDTM 73566805 , U.S. Federal Trademark , Nov. 04, 1985


*Ruled Infringed and Not Diluted by*

585. Tommy Hilfiger Licensing, Inc., Plaintiff, v. Goody's Family Clothing, Inc., Defendant.
2003 WL 22331254 , N.D.Ga. , May 09, 2003


*AND Ruled Infringed by*

586. Tommy Hilfiger Licensing, LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776937 , S.D.Fla. , Mar. 27, 2014


587. TAG HEUER
FEDTM 73583969 , U.S. Federal Trademark , Feb. 19, 1986


*Ruled Infringed by*

588. LVMH Swiss Manufactures, SA v. aaareplicaonline.com
2018 WL 6448755 , S.D.Fla. , Nov. 16, 2018

589. VAN CLEEF & ARPELS
FEDTM 73587444 , U.S. Federal Trademark , Mar. 10, 1986

*Ruled Infringed and Diluted by*

590. Cartier International A.G. v. Daniel Markus, Inc.
2013 WL 5567150 , D.N.J. , Oct. 08, 2013

*AND Ruled Infringed and Violation of Unfair Competition by*

591. Cartier International A.G. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 7761757 , S.D.Fla. , Sep. 17, 2019

592. GUESS
FEDTM 73606665 , U.S. Federal Trademark , June 27, 1986

*Ruled Infringed and Diluted by*

593. Guess ?, Inc. v. Jung
1987 WL 4881 , D.D.C. , May 07, 1987

*AND Ruled Infringed and Violation of Unfair Competition by*

594. Guess ?, Inc. v. Mai-Tai Boutique
1988 WL 31878 , S.D.N.Y. , Mar. 30, 1988

*AND Ruled Infringed by*

595. Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999

596. GG
FEDTM 73635535 , U.S. Federal Trademark , Dec. 15, 1986

*Ruled Infringed and Diluted by*

597. Gucci America, Inc. v. Gucci
2009 WL 8531026 , S.D.N.Y. , Aug. 05, 2009

598. BAUSCH & LOMB
FEDTM 73637134 , U.S. Federal Trademark , Dec. 24, 1986

*Cited by*

599. Luxottica Group S.p.A. v. Bausch & Lomb Inc.
160 F.Supp.2d 545 , S.D.N.Y. , Mar. 30, 2001

600. CC
FEDTM 73644065 , U.S. Federal Trademark , Feb. 09, 1987

*Ruled Infringed and Violation of Unfair Competition by*

601. Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009

*AND Ruled Infringed by*

602. Chanel, Inc. v. Veronique Idea Corp.
795 F.Supp.2d 262 , S.D.N.Y. , June 28, 2011

*AND Ruled Infringed by*

603. Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed by*

604. Chanel, Inc. v. Jermaine Wrice
2015 WL 521144 , N.D.Ohio , Feb. 09, 2015

*AND Ruled Infringed by*

605. Chanel, Inc. v. Gupton
2015 WL 1094849 , N.D.Cal. , Mar. 02, 2015

*AND Ruled Infringed by*

606. Chanel, Inc. v. Puka Creations, LLC
2015 WL 3649016 , C.D.Cal. , June 11, 2015

*AND Ruled Infringed by*

607. Chanel, Inc. v. chaneloutlets-sale.com
2016 WL 8710785 , S.D.Fla. , Feb. 03, 2016

*AND Ruled Infringed and Violation of Unfair Competition by*

608. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

609. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017

610. CHLOE
FEDTM 73648744 , U.S. Federal Trademark , Mar. 10, 1987

*Ruled Infringed and Violation of Unfair Competition by*

611. Chloe v. DesignersImports.com USA, Inc.
2009 WL 1227927 , S.D.N.Y. , Apr. 30, 2009

*AND Ruled Infringed by*

612. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

613. OAKLEY
FEDTM 73685035 , U.S. Federal Trademark , Sep. 18, 1987

*Ruled Infringed by*

614.  Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999

*AND Ruled Infringed and Diluted by*

615.  Oakley, Inc. v. JJS Chevron, Inc.
2005 WL 5921158 , M.D.Fla. , July 29, 2005

*AND Ruled Infringed and Not Violation of Unfair Competition by*

⚑ 616.  Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021

*Vacated by*

617.  Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023

618.  RAY-BAN
FEDTM 73688119 , U.S. Federal Trademark , Oct. 05, 1987

*Ruled Infringed and Violation of Unfair Competition by*

619.  Luxottica Group, S.p.A. v. Shore Enuff
2019 WL 4027547 , D.N.J. , Aug. 27, 2019

620.  CHANEL
FEDTM 73687947 , U.S. Federal Trademark , Oct. 29, 1987

*Ruled Infringed by*

621.  Chanel, Inc. v. Weng
2011 WL 13244209 , N.D.Cal. , May 03, 2011

*AND Ruled Infringed by*

622. Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012


*AND Ruled Infringed by*


623. Chanel, Inc. v. Palant
2013 WL 12065876 , S.D.Fla. , Jan. 14, 2013


*AND Ruled Infringed and Violation of Unfair Competition by*


624. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*


625. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017


626. LUXOTTICA
FEDTM 73712067 , U.S. Federal Trademark , Feb. 19, 1988


*Ruled Infringed by*


627. Luxottica Group S.p.A v. President Optical Inc.
2021 WL 776419 , S.D.Fla. , Mar. 01, 2021


628. LV
FEDTM 73726741 , U.S. Federal Trademark , May 06, 1988


*Ruled Not Invalid, Infringed by*


629. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING
THEREOF ORDER NO. 16: INITIAL DETERMINATION GRANTING COMPLAINANTS MOTION FOR
SUMMARY DETERMINATION OF VIOLATION AND RECOMMENDED DETERMINATION ON REMEDY AND
BONDING
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 05, 2012


*AND Ruled Infringed by*

630.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

631.  NAUTICA
FEDTM 73753227 , U.S. Federal Trademark , Sep. 21, 1988

*Ruled Infringed by*

632.  Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999

633.  TIMBERLAND
FEDTM 73778473 , U.S. Federal Trademark , Feb. 01, 1989

*Ruled Infringed by*

634.  Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999

635.  AUDEMARS PIGUET
FEDTM 73826700 , U.S. Federal Trademark , Sep. 21, 1989

*Ruled Infringed by*

636.  Audemars Piguet Holding SA v. 2replicawatch.com
2013 WL 11977453 , S.D.Fla. , Oct. 01, 2013

*AND Ruled Infringed by*

637.  Audemars Piguet Holding SA v. Amatory-Store.net
2013 WL 11981916 , S.D.Fla. , Oct. 11, 2013

*AND Ruled Infringed and Violation of Unfair Competition by*

638.  Audemars Piguet Holding SA v. Kkkwatch.com
2017 WL 6947427 , S.D.Fla. , May 19, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

639. Audemars Piguet Holding SA v. 1forclock.ru
2018 WL 2006895 , S.D.Fla. , Apr. 23, 2018

640. ATLAS
FEDTM 74008076 , U.S. Federal Trademark , Dec. 05, 1989

*Ruled Infringed and Violation of Unfair Competition by*

641. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018

*AND Ruled Infringed and Violation of Unfair Competition by*

642. Tiffany (NJ) LLC v. discountiffany.com
2019 WL 7987441 , S.D.Fla. , Jan. 24, 2019

643. LV
FEDTM 74022168 , U.S. Federal Trademark , Jan. 24, 1990

*Ruled Not Invalid, Infringed by*

644. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 16: INITIAL DETERMINATION GRANTING COMPLAINANTS MOTION FOR SUMMARY DETERMINATION OF VIOLATION AND RECOMMENDED DETERMINATION ON REMEDY AND BONDING
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 05, 2012

645. [DESIGN ONLY]
FEDTM 74022600 , U.S. Federal Trademark , Jan. 25, 1990

*Ruled Infringed and Violation of Unfair Competition by*

646. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

647. I II IIII V VI VII VIII X XI XII
FEDTM 74022595 , U.S. Federal Trademark , Jan. 25, 1990

*Ruled Infringed and Violation of Unfair Competition by*

648.  Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

649.  TISSOT
FEDTM 74028361 , U.S. Federal Trademark , Feb. 12, 1990

*Ruled Infringed and Violation of Unfair Competition by*

650.  Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

*AND Ruled Infringed and Violation of Unfair Competition by*

651.  Omega SA v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A,"
2023 WL 5625506 , S.D.Fla. , May 01, 2023

*AND Ruled Infringed and Violation of Unfair Competition by*

652.  Tissot SA v. Rotwatches.com
2025 WL 1128931 , S.D.Fla. , Apr. 17, 2025

653.  [DESIGN ONLY]
FEDTM 74042919 , U.S. Federal Trademark , Mar. 22, 1990

*Ruled Not Invalid, Infringed by*

654.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING
THEREOF ORDER NO. 16: INITIAL DETERMINATION GRANTING COMPLAINANTS MOTION FOR
SUMMARY DETERMINATION OF VIOLATION AND RECOMMENDED DETERMINATION ON REMEDY AND
BONDING
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 05, 2012

655.  BLANCPAIN
FEDTM 74043251 , U.S. Federal Trademark , Mar. 26, 1990

*Ruled Infringed and Violation of Unfair Competition by*

656. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

657. KILLER LOOP
FEDTM 74071975 , U.S. Federal Trademark , June 22, 1990

*Cited by*

658. Luxottica Group S.p.A. v. Bausch & Lomb Inc.
160 F.Supp.2d 545 , S.D.N.Y. , Mar. 30, 2001

659. CC
FEDTM 74097621 , U.S. Federal Trademark , Sep. 17, 1990

*Cited by*

660. Chanel, Inc. v. Aestheticase.com
2015 WL 11199528 , S.D.Fla. , Apr. 24, 2015

*AND Ruled Infringed and Violation of Unfair Competition by*

661. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017

662. T & CO
FEDTM 74104857 , U.S. Federal Trademark , Oct. 11, 1990

*Ruled Infringed and Violation of Unfair Competition by*

663. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018

*AND Ruled Infringed and Violation of Unfair Competition by*

664. Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2025 WL 636686 , S.D.Fla. , Jan. 17, 2025

665. CC
FEDTM 74111678 , U.S. Federal Trademark , Nov. 02, 1990

*Ruled Infringed by*

666. Chanel, Inc. v. Harrington
2009 WL 10670657 , N.D.Ga. , May 08, 2009

667. TOMMY JEANS
FEDTM 74137316 , U.S. Federal Trademark , Feb. 07, 1991

*Ruled Infringed and Not Diluted by*

668. Tommy Hilfiger Licensing, Inc., Plaintiff, v. Goody's Family Clothing, Inc., Defendant.
2003 WL 22331254 , N.D.Ga. , May 09, 2003

669. RAYEX
FEDTM 74138115 , U.S. Federal Trademark , Feb. 11, 1991

*Cited by*

670. Bausch & Lomb Inc. v. Nevitt Sales Corp.
810 F.Supp. 466 , W.D.N.Y. , Jan. 25, 1993

671. LV
FEDTM 74147107 , U.S. Federal Trademark , Mar. 12, 1991

*Ruled Infringed by*

672. Malletier v. aaaimitationbags.com
2018 WL 6448750 , S.D.Fla. , Oct. 19, 2018

673. RAY-BAN
FEDTM 74173643 , U.S. Federal Trademark , June 06, 1991

*Ruled Infringed and Violation of Unfair Competition by*

674. Luxottica Group, S.p.A. v. Shore Enuff
2019 WL 4027547 , D.N.J. , Aug. 27, 2019

675. YACHT-MASTER
FEDTM 74219826 , U.S. Federal Trademark , Nov. 07, 1991

*Ruled Infringed by*

676. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

677. CHANEL
FEDTM 74242426 , U.S. Federal Trademark , Jan. 31, 1992

*Ruled Infringed and Violation of Unfair Competition by*

678. Chanel, Inc. v. French
2006 WL 3826780 , S.D.Fla. , Dec. 27, 2006

*AND Ruled Infringed and Violation of Unfair Competition by*

679. Chanel, Inc. v. Hunter
2008 WL 11338688 , C.D.Cal. , Aug. 18, 2008

*AND Ruled Infringed and Violation of Unfair Competition by*

680. Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009

*AND Ruled Infringed by*

681. Chanel, Inc. v. Lili Lui
2011 WL 13217259 , S.D.Fla. , Apr. 12, 2011

*AND Ruled Infringed by*

682.  Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed by*

683.  Chanel, Inc. v. Xiangneng Li
2012 WL 13014680 , S.D.Fla. , Apr. 10, 2012

*AND Ruled Infringed by*

684.  Chanel, Inc. v. Chanel255.org
2012 WL 13014707 , S.D.Fla. , Sep. 11, 2012

*AND Cited by*

685.  Chanel, Inc. v. Amazing4scarf.com
2013 WL 12052244 , S.D.Fla. , Aug. 28, 2013

*AND Ruled Infringed and Violation of Unfair Competition by*

686.  Chanel, Inc. v. 7perfecthandbags.com
2014 WL 352197 , S.D.Fla. , Jan. 31, 2014

*AND Ruled Infringed by*

687.  Chanel, Inc. v. Partnership or Unincorporated Ass'n
2014 WL 352208 , S.D.Fla. , Jan. 31, 2014

*AND Ruled Infringed and Violation of Unfair Competition by*

688.  Chanel, Inc. v. Imitation-Handbags.ru
2016 WL 9461767 , S.D.Fla. , Nov. 14, 2016

*AND Ruled Infringed and Violation of Unfair Competition by*

689. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*


690. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*


691. Chanel, Inc. v. Jianghong Wang
2017 WL 10086076 , S.D.Fla. , Dec. 18, 2017


*Order Amended by*


692. Chanel, Inc. v. Jianghong Wang
2018 WL 7048130 , S.D.Fla. , Sep. 27, 2018


693. CHANEL
FEDTM 74242426 , U.S. Federal Trademark , Jan. 31, 1992


*Ruled Infringed and Violation of Unfair Competition by*


694. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2018 WL 1795762 , S.D.Fla. , Feb. 06, 2018


*AND Ruled Infringed and Violation of Unfair Competition by*


695. Chanel, Inc. v. Replicachanelbag
362 F.Supp.3d 1256 , S.D.Fla. , Jan. 17, 2019


696. CC
FEDTM 74242471 , U.S. Federal Trademark , Jan. 31, 1992


*Ruled Infringed by*


697. Chanel, Inc. v. Route' Ltd., LLC
2006 WL 3842208 , M.D.Fla. , Dec. 08, 2006

*AND Ruled Infringed and Violation of Unfair Competition by*

698.   Chanel, Inc. v. French
2006 WL 3826780 , S.D.Fla. , Dec. 27, 2006

*AND Ruled Infringed by*

699.   Chanel, Inc. v. Gordashevsky
2007 WL 316433 , D.N.J. , Jan. 29, 2007

*AND Ruled Infringed and Violation of Unfair Competition by*

700.   Chanel, Inc. v. Hunter
2008 WL 11338688 , C.D.Cal. , Aug. 18, 2008

*AND Ruled Infringed and Violation of Unfair Competition by*

701.   Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009

*AND Ruled Infringed by*

702.   Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed by*

703.   Chanel, Inc. v. Xiangneng Li
2012 WL 13014680 , S.D.Fla. , Apr. 10, 2012

*AND Ruled Infringed by*

704.   Chanel, Inc. v. Chanel255.org
2012 WL 13014707 , S.D.Fla. , Sep. 11, 2012

*AND Ruled Infringed and Violation of Unfair Competition by*

705. Chanel, Inc. v. Imitation-Handbags.ru
2016 WL 9461767 , S.D.Fla. , Nov. 14, 2016


*AND Ruled Infringed and Violation of Unfair Competition by*


706. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*


707. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017


*AND Ruled Infringed and Violation of Unfair Competition by*


708. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2018 WL 1795762 , S.D.Fla. , Feb. 06, 2018


*AND Ruled Infringed and Violation of Unfair Competition by*


709. Chanel, Inc. v. 21913657
2024 WL 4542406 , S.D.Fla. , Oct. 22, 2024


*AND Ruled Infringed by*


710. Chanel, Inc. v. Individuals
2025 WL 1042140 , S.D.Fla. , Feb. 19, 2025


711. RADO
FEDTM 74250769 , U.S. Federal Trademark , Feb. 28, 1992


*Ruled Infringed and Violation of Unfair Competition by*


712. Audemars Piguet Holding SA v. Kkkwatch.com
2017 WL 6947427 , S.D.Fla. , May 19, 2017


713. SUBMARINER
FEDTM 74336069 , U.S. Federal Trademark , Dec. 02, 1992

*Ruled Infringed by*

714. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 9690322 , C.D.Cal. , Sep. 29, 2015


*Motion for Relief from Judgment Denied by*

715. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 13806770 , C.D.Cal. , Dec. 02, 2015


716. SUBMARINER
FEDTM 74336069 , U.S. Federal Trademark , Dec. 02, 1992


*Ruled Infringed by*

717. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016


718. DONNA KARAN
FEDTM 74343516 , U.S. Federal Trademark , Dec. 28, 1992


*Ruled Infringed by*

719. Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999


720. PORTOFINO
FEDTM 74441775 , U.S. Federal Trademark , Sep. 30, 1993


*Ruled Infringed by*

721. Richemont International SA v. chloedanmark.org
2021 WL 6135149 , S.D.Fla. , Oct. 21, 2021


*AND Ruled Infringed and Violation of Unfair Competition by*

722.  Richemont International SA v. cartierclone.com
2023 WL 5625539 , S.D.Fla. , Apr. 27, 2023

723.  ROLEX DAYTONA
FEDTM 74453503 , U.S. Federal Trademark , Oct. 27, 1993

*Ruled Infringed by*

724.  Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

725.  CHOPARD
FEDTM 74456217 , U.S. Federal Trademark , Nov. 04, 1993

*Ruled Infringed by*

726.  Audemars Piguet Holding SA v. 2replicawatch.com
2013 WL 11977453 , S.D.Fla. , Oct. 01, 2013

727.  MONTBLANC
FEDTM 74481009 , U.S. Federal Trademark , Jan. 21, 1994

*Ruled Infringed by*

728.  Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

729.  [DESIGN ONLY]
FEDTM 74482307 , U.S. Federal Trademark , Jan. 24, 1994

*Ruled Infringed by*

730.  Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

731.  OAKLEY
FEDTM 74485652 , U.S. Federal Trademark , Feb. 02, 1994

*Ruled Infringed and Not Violation of Unfair Competition by*

🚩 732. Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021

*Vacated by*

733. Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023

734. O
FEDTM 74485534 , U.S. Federal Trademark , Feb. 02, 1994

*Ruled Infringed and Not Violation of Unfair Competition by*

🚩 735. Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021

*Vacated by*

736. Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023

737. OAKLEY O
FEDTM 74485536 , U.S. Federal Trademark , Feb. 02, 1994

*Ruled Infringed and Not Violation of Unfair Competition by*

🚩 738. Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021

*Vacated by*

739. Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023

740.  [DESIGN ONLY]
FEDTM 74488319 , U.S. Federal Trademark , Feb. 09, 1994


*Ruled Infringed and Not Violation of Unfair Competition by*


741.  Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021


*Vacated by*


742.  Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023


743.  EXPLORER II
FEDTM 74506238 , U.S. Federal Trademark , Mar. 22, 1994


*Ruled Infringed by*


744.  Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016


745.  EXPLORER
FEDTM 74506239 , U.S. Federal Trademark , Mar. 22, 1994


*Ruled Infringed by*


746.  Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016


747.  TOMMY HILFIGER
FEDTM 74544261 , U.S. Federal Trademark , June 29, 1994


*Ruled Infringed by*


748.  Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999

*AND Ruled Infringed and Not Diluted by*

749. Tommy Hilfiger Licensing, Inc., Plaintiff, v. Goody's Family Clothing, Inc., Defendant.
2003 WL 22331254 , N.D.Ga. , May 09, 2003

750. LOUIS VUITTON
FEDTM 74604074 , U.S. Federal Trademark , Nov. 29, 1994

*Ruled Infringed by*

751. Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999

*AND Ruled Infringed by*

⚑ 752. Louis Vuitton Malletier, S.A. v. LY USA
2008 WL 5637161 , S.D.N.Y. , Oct. 03, 2008

*Affirmed by*

⚑ 🔺 753. Louis Vuitton Malletier S.A. v. LY USA, Inc.
676 F.3d 83 , 2nd Cir.(N.Y.) , Mar. 29, 2012

*For Additional Opinion, see*

754. Louis Vuitton Malletier S.A. v. LY USA, Inc.
472 Fed.Appx. 19 , 2nd Cir.(N.Y.) , Mar. 29, 2012

⚑ 755. Louis Vuitton Malletier, S.A. v. LY USA
2008 WL 5637161 , S.D.N.Y. , Oct. 03, 2008

*Affirmed by*

756. Louis Vuitton Malletier S.A. v. LY USA, Inc.
472 Fed.Appx. 19 , 2nd Cir.(N.Y.) , Mar. 29, 2012

757. LOUIS VUITTON
FEDTM 74604074 , U.S. Federal Trademark , Nov. 29, 1994

*Ruled Infringed and Violation of Unfair Competition by*

758. Louis Vuitton Malletier, S.A. v. 100wholesale.com
2013 WL 1296283 , S.D.Fla. , Mar. 28, 2013

*AND Ruled Infringed by*

759. Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

*AND Ruled Infringed by*

760. Louis Vuitton Malletier v. aaalvshop.com
2019 WL 7371818 , S.D.Fla. , Nov. 21, 2019

*AND Ruled Infringed and Violation of Unfair Competition by*

761. Louis Vuitton Malletier v. Jessica Digital Store
2020 WL 5534259 , S.D.Fla. , Aug. 12, 2020

*AND Ruled Infringed and Violation of Unfair Competition by*

762. Malletier v. Individuals, Business Entities, or Unincorporated Associations
2024 WL 4372102 , S.D.Fla. , Jan. 26, 2024

763. POLO RALPH LAUREN
FEDTM 74618180 , U.S. Federal Trademark , Jan. 05, 1995

*Ruled Infringed by*

764. Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999

765. TOMMY
FEDTM 74626649 , U.S. Federal Trademark , Jan. 27, 1995

*Ruled Infringed by*

766. Tommy Hilfiger Licensing, LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776937 , S.D.Fla. , Mar. 27, 2014

767. TIFFANY & CO.
FEDTM 74688573 , U.S. Federal Trademark , June 14, 1995

*Ruled Infringed and Violation of Unfair Competition by*

768. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018

769. G
FEDTM 74709786 , U.S. Federal Trademark , Aug. 01, 1995

*Ruled Not Diluted by*

770. Gucci America, Inc. v. Guess?, Inc.
843 F.Supp.2d 412 , S.D.N.Y. , Feb. 14, 2012 , clarified ( Feb 21, 2012 )

*AND Ruled Infringed and Not Diluted by*

771. Gucci America, Inc. v. Guess?, Inc.
868 F.Supp.2d 207 , S.D.N.Y. , June 18, 2012

772. TOMMY GIRL
FEDTM 75979741 , U.S. Federal Trademark , Mar. 27, 1996

*Ruled Infringed by*

773. Tommy Hilfiger Licensing, LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776937 , S.D.Fla. , Mar. 27, 2014

774. [DESIGN ONLY]
FEDTM 75143799 , U.S. Federal Trademark , Aug. 01, 1996

*Ruled Infringed by*

🚩 775.  Malletier v. Artex Creative Intern. Corp.
687 F.Supp.2d 347 , S.D.N.Y. , Jan. 05, 2010

*AND Ruled Not Invalid, Infringed by*

🚩 776.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING
THEREOF ORDER NO. 16: INITIAL DETERMINATION GRANTING COMPLAINANTS MOTION FOR
SUMMARY DETERMINATION OF VIOLATION AND RECOMMENDED DETERMINATION ON REMEDY AND
BONDING
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 05, 2012

*AND Ruled Infringed by*

777.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

778.  [DESIGN ONLY]
FEDTM 75143789 , U.S. Federal Trademark , Aug. 01, 1996

*Ruled Infringed by*

🚩 779.  Malletier v. Artex Creative Intern. Corp.
687 F.Supp.2d 347 , S.D.N.Y. , Jan. 05, 2010

*AND Ruled Not Invalid, Infringed by*

🚩 780.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING
THEREOF ORDER NO. 16: INITIAL DETERMINATION GRANTING COMPLAINANTS MOTION FOR
SUMMARY DETERMINATION OF VIOLATION AND RECOMMENDED DETERMINATION ON REMEDY AND
BONDING
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 05, 2012

*AND Ruled Infringed by*

781.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

782. [DESIGN ONLY]
FEDTM 75319619 , U.S. Federal Trademark , July 07, 1997

*Ruled Infringed by*

783. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

784. Rolex Watch U.S.A., Inc. v. Meece
1997 WL 33284144 , N.D.Tex. , Aug. 11, 1997

*Judgment Affirmed in Part, Vacated in Part by*

785. Rolex Watch USA, Inc. v. Meece
158 F.3d 816 , 5th Cir.(Tex.) , Oct. 21, 1998 , rehearing denied ( Nov 19, 1998 )

*Certiorari Denied by*

786. Meece v. Rolex Watch, U.S.A., Inc.
526 U.S. 1133 , U.S. , May 24, 1999

*AND On Remand to*

787. Rolex Watch U.S.A., Inc. v. Meece
2000 WL 33582648 , N.D.Tex. , Jan. 25, 2000

788. LOUIS VUITTON PARIS
FEDTM 75366585 , U.S. Federal Trademark , Oct. 01, 1997

*Ruled Infringed by*

789. Malletier v. aaaimitationbags.com
2018 WL 6448750 , S.D.Fla. , Oct. 19, 2018

*AND Ruled Infringed by*

790. Louis Vuitton Malletier, S.A. v. lvonlineoutlet.com
2018 WL 6448526 , S.D.Fla. , Nov. 29, 2018

791. LUMINOR
FEDTM 75385120 , U.S. Federal Trademark , Nov. 05, 1997

*Ruled Infringed by*

792. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

793. DAYTONA
FEDTM 75518406 , U.S. Federal Trademark , July 13, 1998

*Ruled Infringed by*

794. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

795. TAG HEUER
FEDTM 75530962 , U.S. Federal Trademark , Aug. 04, 1998

*Ruled Infringed by*

796. Audemars Piguet Holding SA v. Amatory-Store.net
2013 WL 11981916 , S.D.Fla. , Oct. 11, 2013

*AND Ruled Infringed by*

797. LVMH Swiss Manufactures, SA v. aaareplicaonline.com
2018 WL 6448755 , S.D.Fla. , Nov. 16, 2018

798. [DESIGN ONLY]
FEDTM 75544375 , U.S. Federal Trademark , Aug. 24, 1998

*Ruled Infringed and Violation of Unfair Competition by*

799. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018

800.  [DESIGN ONLY]
FEDTM 75541599 , U.S. Federal Trademark , Aug. 24, 1998

*Ruled Infringed and Violation of Unfair Competition by*

801.  Tiffany (NJ) LLC v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"
2020 WL 4501770 , S.D.Fla. , June 26, 2020

802.  DKNY
FEDTM 75554675 , U.S. Federal Trademark , Sep. 17, 1998

*Ruled Infringed by*

803.  Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.
1999 WL 33740332 , S.D.N.Y. , Apr. 19, 1999

804.  PANERAI
FEDTM 75569391 , U.S. Federal Trademark , Oct. 13, 1998

*Ruled Infringed and Violation of Unfair Competition by*

805.  Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

*AND Ruled Infringed and Violation of Unfair Competition by*

806.  Cartier International A.G. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 7761757 , S.D.Fla. , Sep. 17, 2019

807.  LV
FEDTM 75620753 , U.S. Federal Trademark , Jan. 13, 1999

*Ruled Not Infringed by*

808.  LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.
209 F.Supp.3d 612 , S.D.N.Y. , Sep. 13, 2016

*Affirmed by*

809.  LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA
720 Fed.Appx. 24 , 2nd Cir.(N.Y.) , Dec. 20, 2017

⚑ 810.  LV
FEDTM 75620753 , U.S. Federal Trademark , Jan. 13, 1999

*Ruled Infringed by*

811.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

812.  A. LANGE & SOHNE
FEDTM 75716148 , U.S. Federal Trademark , May 24, 1999

*Ruled Infringed and Violation of Unfair Competition by*

813.  Richemont International SA v. montblancpenseshop.co
2018 WL 10374597 , S.D.Fla. , Dec. 12, 2018

814.  RADIOMIR
FEDTM 75738170 , U.S. Federal Trademark , June 28, 1999

*Ruled Infringed by*

815.  Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

816.  POWERMATIC
FEDTM 75786631 , U.S. Federal Trademark , Aug. 27, 1999

*Ruled Infringed and Violation of Unfair Competition by*

817.  Tissot SA v. Rotwatches.com
2025 WL 1128931 , S.D.Fla. , Apr. 17, 2025

818. G G GLASHUTTE ORIGINAL
FEDTM 75822435 , U.S. Federal Trademark , Oct. 14, 1999

*Ruled Infringed and Violation of Unfair Competition by*

819. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

820. J12
FEDTM 75889682 , U.S. Federal Trademark , Jan. 06, 2000

*Ruled Infringed by*

821. Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed by*

822. Chanel, Inc. v. Palant
2013 WL 12065876 , S.D.Fla. , Jan. 14, 2013

*AND Ruled Infringed and Violation of Unfair Competition by*

823. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

824. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017

825. RB
FEDTM 76134176 , U.S. Federal Trademark , Sep. 22, 2000

*Ruled Infringed by*

826. Luxottica Group S.p.A v. President Optical Inc.
2021 WL 776419 , S.D.Fla. , Mar. 01, 2021

827.  RAY-BAN
FEDTM 76167065 , U.S. Federal Trademark , Nov. 17, 2000


Ruled Infringed and Violation of Unfair Competition by


828.  Luxottica Group, S.p.A. v. Shore Enuff
2019 WL 4027547 , D.N.J. , Aug. 27, 2019


829.  SEE BY CHLOE
FEDTM 76228096 , U.S. Federal Trademark , Mar. 20, 2001


Ruled Infringed and Violation of Unfair Competition by


830.  Richemont International SA v. montblanchot.com
2020 WL 6701932 , S.D.Fla. , Nov. 13, 2020


831.  ALHAMBRA
FEDTM 76298807 , U.S. Federal Trademark , Aug. 10, 2001


Ruled Infringed and Violation of Unfair Competition by


832.  Richemont International SA v. montblancpenseshop.co
2018 WL 10374597 , S.D.Fla. , Dec. 12, 2018


833.  TH
FEDTM 76300860 , U.S. Federal Trademark , Aug. 15, 2001


Ruled Infringed by


834.  Tommy Hilfiger Licensing, LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776937 , S.D.Fla. , Mar. 27, 2014


835.  LV
FEDTM 76347341 , U.S. Federal Trademark , Dec. 12, 2001


Ruled Infringed by

836.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

837.  [DESIGN ONLY]
FEDTM 76364597 , U.S. Federal Trademark , Jan. 31, 2002

*Ruled Infringed by*

⚑ 838.  Malletier v. Artex Creative Intern. Corp.
687 F.Supp.2d 347 , S.D.N.Y. , Jan. 05, 2010

*AND Ruled Not Invalid, Infringed by*

⚑ 839.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING
THEREOF ORDER NO. 16: INITIAL DETERMINATION GRANTING COMPLAINANTS MOTION FOR
SUMMARY DETERMINATION OF VIOLATION AND RECOMMENDED DETERMINATION ON REMEDY AND
BONDING
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 05, 2012

*AND Ruled Infringed by*

840.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

841.  VC A
FEDTM 76368105 , U.S. Federal Trademark , Feb. 07, 2002

*Ruled Infringed and Violation of Unfair Competition by*

842.  Richemont International SA v. cartierclone.com
2023 WL 5625539 , S.D.Fla. , Apr. 27, 2023

843.  TIFFANY
FEDTM 76388031 , U.S. Federal Trademark , Mar. 25, 2002

*Ruled Infringed and Violation of Unfair Competition by*

844.   Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018

845.   BREITLING
FEDTM 76423323 , U.S. Federal Trademark , June 18, 2002

*Ruled Infringed by*

846.   Audemars Piguet Holding SA v. 2replicawatch.com
2013 WL 11977453 , S.D.Fla. , Oct. 01, 2013

847.   TIMEWALKER
FEDTM 78174588 , U.S. Federal Trademark , Oct. 15, 2002

*Ruled Infringed and Violation of Unfair Competition by*

848.   Richemont International SA v. cartierclone.com
2023 WL 5625539 , S.D.Fla. , Apr. 27, 2023

849.   CC
FEDTM 76474317 , U.S. Federal Trademark , Dec. 02, 2002

*Ruled Infringed and Violation of Unfair Competition by*

850.   Chanel, Inc. v. Hunter
2008 WL 11338688 , C.D.Cal. , Aug. 18, 2008

851.   BREGUET
FEDTM 78190363 , U.S. Federal Trademark , Dec. 02, 2002

*Ruled Infringed and Violation of Unfair Competition by*

852.   Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

853.   AP AUDEMARS PIGUET
FEDTM 76508347 , U.S. Federal Trademark , Apr. 18, 2003

*Ruled Infringed and Violation of Unfair Competition by*

854. Audemars Piguet Holding SA v. 1forclock.ru
2018 WL 2006895 , S.D.Fla. , Apr. 23, 2018

855. TURN-O-GRAPH
FEDTM 78252196 , U.S. Federal Trademark , May 20, 2003

*Ruled Infringed by*

856. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

857. [DESIGN ONLY]
FEDTM 78278182 , U.S. Federal Trademark , July 24, 2003

*Ruled Infringed and Violation of Unfair Competition by*

858. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

*AND Ruled Infringed and Violation of Unfair Competition by*

859. Omega SA v. Individual, Business Entity, or Unincorporated Association
2024 WL 5159795 , S.D.Fla. , Oct. 16, 2024

860. HILFIGER DENIM
FEDTM 76545300 , U.S. Federal Trademark , Sep. 08, 2003

*Ruled Infringed by*

861. Tommy Hilfiger Licensing, LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776937 , S.D.Fla. , Mar. 27, 2014

862. HILFIGER
FEDTM 76545165 , U.S. Federal Trademark , Sep. 15, 2003

*Ruled Infringed by*

863. Tommy Hilfiger Licensing, LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776937 , S.D.Fla. , Mar. 27, 2014

864. ATLAS
FEDTM 78304973 , U.S. Federal Trademark , Sep. 24, 2003

*Ruled Infringed and Violation of Unfair Competition by*

865. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018

866. OP
FEDTM 79000298 , U.S. Federal Trademark , Nov. 04, 2003

*Ruled Infringed and Violation of Unfair Competition by*

867. Richemont International SA v. cartierclone.com
2023 WL 5625539 , S.D.Fla. , Apr. 27, 2023

868. THE LONGINES MASTER COLLECTION
FEDTM 79000630 , U.S. Federal Trademark , Dec. 18, 2003

*Ruled Infringed and Violation of Unfair Competition by*

869. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

870. VAN CLEEF & ARPELS
FEDTM 78367577 , U.S. Federal Trademark , Feb. 13, 2004

*Ruled Infringed and Violation of Unfair Competition by*

871. Cartier Intern. AG v. Daniel Markus, Inc.
2011 WL 3881498 , D.N.J. , Sep. 02, 2011

*AND Ruled Infringed and Violation of Unfair Competition by*

872. Cartier International A.G. v. Daniel Markus, Inc.
2013 WL 5567150 , D.N.J. , Oct. 08, 2013

🚩 873. GGGG
FEDTM 78381112 , U.S. Federal Trademark , Mar. 09, 2004

*Ruled Cancelled by*

🚩 874. Gucci America, Inc. v. Guess?, Inc.
868 F.Supp.2d 207 , S.D.N.Y. , June 18, 2012

875. GMT-MASTER II
FEDTM 78422009 , U.S. Federal Trademark , May 20, 2004

*Ruled Infringed by*

876. Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

877. RUE CAMBON
FEDTM 76594247 , U.S. Federal Trademark , May 21, 2004

*Ruled Infringed and Violation of Unfair Competition by*

🚩 878. Chanel, Inc. v. Jianghong Wang
2017 WL 10086076 , S.D.Fla. , Dec. 18, 2017

*Order Amended by*

879. Chanel, Inc. v. Jianghong Wang
2018 WL 7048130 , S.D.Fla. , Sep. 27, 2018

880. AP
FEDTM 79006638 , U.S. Federal Trademark , July 13, 2004

*Ruled Infringed and Violation of Unfair Competition by*

881. Audemars Piguet Holding SA v. 1forclock.ru
2018 WL 2006895 , S.D.Fla. , Apr. 23, 2018

882. GG
FEDTM 76611519 , U.S. Federal Trademark , Sep. 15, 2004

*Ruled Not Diluted by*

883. Gucci America, Inc. v. Guess?, Inc.
843 F.Supp.2d 412 , S.D.N.Y. , Feb. 14, 2012 , clarified ( Feb 21, 2012 )

*AND Ruled Infringed by*

884. Gucci America, Inc. v. Guess?, Inc.
868 F.Supp.2d 207 , S.D.N.Y. , June 18, 2012

885. PLANET OCEAN
FEDTM 79009839 , U.S. Federal Trademark , Sep. 17, 2004

*Ruled Infringed and Violation of Unfair Competition by*

886. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

887. VACHERON CONSTANTIN
FEDTM 79005937 , U.S. Federal Trademark , Oct. 06, 2004

*Ruled Infringed by*

888. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

889. CC
FEDTM 76615088 , U.S. Federal Trademark , Oct. 08, 2004

*Ruled Infringed and Violation of Unfair Competition by*

⚑ 890. Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009

*AND Ruled Infringed by*

891. Chanel, Inc. v. WGACA, LLC
2022 WL 902931 , S.D.N.Y. , Mar. 28, 2022

892. CC
FEDTM 76615089 , U.S. Federal Trademark , Oct. 08, 2004

*Ruled Infringed and Violation of Unfair Competition by*

893. Chanel, Inc. v. Hunter
2008 WL 11338688 , C.D.Cal. , Aug. 18, 2008

*AND Ruled Infringed and Violation of Unfair Competition by*

⚑ 894. Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009

*AND Ruled Infringed by*

895. Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed and Violation of Unfair Competition by*

896. Chanel, Inc. v. Imitation-Handbags.ru
2016 WL 9461767 , S.D.Fla. , Nov. 14, 2016

*AND Ruled Infringed and Violation of Unfair Competition by*

897. Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017

898.  CC
FEDTM 76615091 , U.S. Federal Trademark , Oct. 08, 2004


*Ruled Infringed and Violation of Unfair Competition by*


899.  Chanel, Inc. v. Pu
2009 WL 722050 , D.Kan. , Mar. 18, 2009


*AND Ruled Infringed and Violation of Unfair Competition by*


900.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017


901.  [DESIGN ONLY]
FEDTM 79009979 , U.S. Federal Trademark , Nov. 19, 2004


*Ruled Infringed by*


902.  Malletier v. aaaimitationbags.com
2018 WL 6448750 , S.D.Fla. , Oct. 19, 2018


903.  GUCCI
FEDTM 76629211 , U.S. Federal Trademark , Jan. 28, 2005


*Ruled Not Infringed and Not Diluted by*


904.  Gucci America, Inc. v. Guess?, Inc.
868 F.Supp.2d 207 , S.D.N.Y. , June 18, 2012


905.  RICHARD MILLE
FEDTM 79012121 , U.S. Federal Trademark , May 31, 2005


*Ruled Infringed and Violation of Unfair Competition by*


906.  Audemars Piguet Holding SA v. Kkkwatch.com
2017 WL 6947427 , S.D.Fla. , May 19, 2017

907.  [DESIGN ONLY]
FEDTM 78649252 , U.S. Federal Trademark , June 13, 2005

*Ruled Infringed and Not Violation of Unfair Competition by*

🚩 908.  Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021

*Vacated by*

909.  Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023

910.  ROLEX DEEPSEA
FEDTM 78707858 , U.S. Federal Trademark , Sep. 07, 2005

*Ruled Infringed by*

911.  Rolex Watch U.S.A., Inc. v. Zolotukhin
2016 WL 1258479 , N.D.Tex. , Mar. 31, 2016

912.  CHEWY VUITON
FEDTM 78724751 , U.S. Federal Trademark , Oct. 01, 2005

*Cited by*

913.  Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC
464 F.Supp.2d 495 , E.D.Va. , Nov. 03, 2006

*Affirmed on Other Grounds by*

🏳 914.  Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC
507 F.3d 252 , 4th Cir.(Va.) , Nov. 13, 2007

915.  CHANEL
FEDTM 78725496 , U.S. Federal Trademark , Oct. 03, 2005

*Ruled Infringed by*

916.  Chanel, Inc. v. Ke Lei
2012 WL 13014674 , S.D.Fla. , Jan. 20, 2012

*AND Ruled Infringed by*

917.  Chanel, Inc. v. Palant
2013 WL 12065876 , S.D.Fla. , Jan. 14, 2013

*AND Ruled Infringed and Violation of Unfair Competition by*

918.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017

919.  OAKLEY
FEDTM 78750706 , U.S. Federal Trademark , Nov. 09, 2005

*Ruled Infringed and Not Violation of Unfair Competition by*

🚩 920.  Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021

*Vacated by*

921.  Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023

922.  CHLOE
FEDTM 78761371 , U.S. Federal Trademark , Nov. 28, 2005

*Ruled Infringed and Violation of Unfair Competition by*

923.  Richemont International SA v. cartierclone.com
2023 WL 5625539 , S.D.Fla. , Apr. 27, 2023

924.  BREGUET
FEDTM 79021004 , U.S. Federal Trademark , Jan. 31, 2006

*Ruled Infringed and Violation of Unfair Competition by*

925. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

926. CERTINA-DS
FEDTM 79022825 , U.S. Federal Trademark , Mar. 10, 2006

*Ruled Infringed and Violation of Unfair Competition by*

927. Omega SA v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A,"
2023 WL 5625506 , S.D.Fla. , May 01, 2023

928. RAY-BAN
FEDTM 78843120 , U.S. Federal Trademark , Mar. 22, 2006

*Ruled Infringed and Violation of Unfair Competition by*

929. Luxottica Group, S.p.A. v. Shore Enuff
2019 WL 4027547 , D.N.J. , Aug. 27, 2019

*AND Ruled Infringed by*

930. Luxottica Group S.p.A v. President Optical Inc.
2021 WL 776419 , S.D.Fla. , Mar. 01, 2021

*AND Ruled Infringed and Not Violation of Unfair Competition by*

⚑ 931. Luxottica Group S.p.A. v. Wafa Ali, Inc.
2021 WL 2525098 , W.D.N.Y. , June 21, 2021

*Vacated by*

932. Luxottica Group S.p.A. v. Wafa Ali Inc.
2023 WL 6377332 , W.D.N.Y. , Sep. 29, 2023

933. [DESIGN ONLY]
FEDTM 78853203 , U.S. Federal Trademark , Apr. 04, 2006

*Ruled Infringed by*

934. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

935. TIFFANY & CO.
FEDTM 78893794 , U.S. Federal Trademark , May 26, 2006

*Ruled Infringed and Violation of Unfair Competition by*

936. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018

937. GG
FEDTM 77000202 , U.S. Federal Trademark , Sep. 15, 2006

*Ruled Infringed and Violation of Unfair Competition by*

938. Audemars Piguet Holding SA v. Kkkwatch.com
2017 WL 6947427 , S.D.Fla. , May 19, 2017

939. BAUME & MERCIER GENEVE
FEDTM 77008855 , U.S. Federal Trademark , Sep. 27, 2006

*Ruled Infringed by*

940. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

941. COACH
FEDTM 77039846 , U.S. Federal Trademark , Nov. 08, 2006

*Ruled Infringed by*

942. Coach Inc. v. Source II, Inc.
2016 WL 4761779 , E.D.Mich. , Sep. 13, 2016


*Affirmed in Part by*


943. Coach Services, Inc. v. Source II, Inc.
728 Fed.Appx. 416 , 6th Cir.(Mich.) , Mar. 15, 2018


944. SEAMASTER
FEDTM 77048887 , U.S. Federal Trademark , Nov. 21, 2006


*Ruled Infringed and Violation of Unfair Competition by*


945. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024


946. [DESIGN ONLY]
FEDTM 77108646 , U.S. Federal Trademark , Feb. 15, 2007


*Ruled Infringed and Violation of Unfair Competition by*


947. Omega SA v. Individual, Business Entity, or Unincorporated Association
2024 WL 5159795 , S.D.Fla. , Oct. 16, 2024


948. ALHAMBRA
FEDTM 79044830 , U.S. Federal Trademark , July 30, 2007


*Cited by*


949. Feldman Law Group P.C. v. Liberty Mut. Ins. Co.
819 F.Supp.2d 247 , S.D.N.Y. , June 30, 2011 , reconsideration denied ( Aug 10, 2011 )


*Affirmed by*


950. Feldman Law Group, P.C. v. Liberty Mut. Ins. Co.
476 Fed.Appx. 913 , 2nd Cir.(N.Y.) , Apr. 18, 2012

951. ALHAMBRA
FEDTM 79044830 , U.S. Federal Trademark , July 30, 2007

*Ruled Infringed and Violation of Unfair Competition by*

952. Richemont International SA v. cartierclone.com
2023 WL 5625539 , S.D.Fla. , Apr. 27, 2023

953. ORIS
FEDTM 79043973 , U.S. Federal Trademark , Sep. 04, 2007

*Ruled Infringed by*

954. Audemars Piguet Holding SA v. 2replicawatch.com
2013 WL 11977453 , S.D.Fla. , Oct. 01, 2013

955. AQUA TERRA
FEDTM 77273706 , U.S. Federal Trademark , Sep. 07, 2007

*Ruled Infringed and Violation of Unfair Competition by*

956. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

957. Chanel, Inc. v. Tshimanga
2008 WL 11388119 , N.D.Cal. , July 15, 2008

*Report and Recommendation Adopted by*

958. Chanel, Inc. v. Tshimanga
2008 WL 11388118 , N.D.Cal. , Aug. 01, 2008

959. TIFFANY & CO.
FEDTM 77557869 , U.S. Federal Trademark , Aug. 28, 2008

*Ruled Infringed and Violation of Unfair Competition by*

960.  Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 5165258 , S.D.Fla. , Dec. 19, 2024

961.  Chanel, Inc. v. Gardner
2010 WL 11713301 , S.D.N.Y. , Apr. 06, 2010

*Report and Recommendation Adopted by*

⚑  962.  Chanel, Inc. v. Gardner
2011 WL 204911 , S.D.N.Y. , Jan. 21, 2011

963.  CHANEL
FEDTM 85026466 , U.S. Federal Trademark , Apr. 29, 2010

*Cited by*

964.  Chanel, Inc. v. Aestheticase.com
2015 WL 11199528 , S.D.Fla. , Apr. 24, 2015

*AND Ruled Infringed by*

965.  Chanel, Inc. v. 2012merry2013
2016 WL 10789789 , S.D.Fla. , Oct. 11, 2016

*AND Ruled Infringed by*

966.  Chanel, Inc. v. ald Gall LNH
2017 WL 6947423 , S.D.Fla. , Feb. 06, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

967.  Chanel, Inc. v. Efank
2017 WL 6947440 , S.D.Fla. , Oct. 18, 2017

*AND Ruled Infringed by*

968.   Chanel, Inc. v. Fendona
2019 WL 7666544 , S.D.Fla. , May 23, 2019


969.   Chanel, Inc. v. Lin
2010 WL 2557503 , N.D.Cal. , May 07, 2010


*Report and Recommendation Adopted by*

970.   Chanel, Inc. v. Lin
2010 WL 2557561 , N.D.Cal. , June 21, 2010


971.   Coach Services, Inc. v. K Ya Intern., Inc.
2010 WL 2771897 , S.D.N.Y. , June 10, 2010


*Report and Recommendation Adopted by*

972.   Coach Services, Inc. v. K Ya Intern., Inc.
2010 WL 2771907 , S.D.N.Y. , July 12, 2010


973.   Chanel, Inc. v. Krispin
2010 WL 4822737 , S.D.Fla. , Oct. 18, 2010


*Report and Recommendation Adopted by*

974.   Chanel Inc. v. Krispin
2010 WL 4825489 , S.D.Fla. , Nov. 22, 2010


975.   OFFICINE PANERAI
FEDTM 85200684 , U.S. Federal Trademark , Dec. 17, 2010


*Ruled Infringed by*

976.   Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017


977.   Rolex Watch, U.S.A., Inc. v. Pharel
2011 WL 1131401 , E.D.N.Y. , Mar. 11, 2011

*Report and Recommendation Adopted by*

978. Rolex Watch, U.S.A., Inc. v. Pharel
2011 WL 1130457 , E.D.N.Y. , Mar. 28, 2011

979. Chanel, Inc. v. Huangteng Weng
2011 WL 13244271 , N.D.Cal. , Apr. 18, 2011

*Report and Recommendation Adopted by*

980. Chanel, Inc. v. Weng
2011 WL 13244209 , N.D.Cal. , May 03, 2011

981. CC
FEDTM 85341276 , U.S. Federal Trademark , June 08, 2011

*Cited by*

982. Chanel, Inc. v. Aestheticase.com
2015 WL 11199528 , S.D.Fla. , Apr. 24, 2015

*AND Ruled Infringed and Violation of Unfair Competition by*

983. Chanel, Inc. v. Imitation-Handbags.ru
2016 WL 9461767 , S.D.Fla. , Nov. 14, 2016

*AND Ruled Infringed by*

984. Chanel, Inc. v. ald Gall LNH
2017 WL 6947423 , S.D.Fla. , Feb. 06, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

985. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

986. Chanel, Inc. v. Efank
2017 WL 6947440 , S.D.Fla. , Oct. 18, 2017

987. CARTIER
FEDTM 85345798 , U.S. Federal Trademark , June 14, 2011

*Ruled Infringed by*

988. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

989. Richemont International SA v. cartierclone.com
2023 WL 5625539 , S.D.Fla. , Apr. 27, 2023

*AND Ruled Infringed and Violation of Unfair Competition by*

990. Amazon.com, Inc. v. Li Xinjuan
2024 WL 4201975 , W.D.Wash. , Sep. 16, 2024

991. C C C C
FEDTM 85382884 , U.S. Federal Trademark , July 27, 2011

*Ruled Infringed by*

992. Coach Inc. v. Source II, Inc.
2016 WL 4761779 , E.D.Mich. , Sep. 13, 2016

*Affirmed in Part by*

993. Coach Services, Inc. v. Source II, Inc.
728 Fed.Appx. 416 , 6th Cir.(Mich.) , Mar. 15, 2018

994. Coach, Inc. v. Melendez
2011 WL 4542971 , S.D.N.Y. , Sep. 02, 2011

*Report and Recommendation Adopted by*

995. Coach, Inc. v. Melendez
2011 WL 4542717 , S.D.N.Y. , Sep. 30, 2011

⚑ 996. LV
FEDTM 79104538 , U.S. Federal Trademark , Sep. 19, 2011

*Ruled Not Infringed and Not Diluted by*

⚑ 997. Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.
156 F.Supp.3d 425 , S.D.N.Y. , Jan. 06, 2016

*Affirmed by*

998. Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.
674 Fed.Appx. 16 , 2nd Cir.(N.Y.) , Dec. 22, 2016 , rehearing and rehearing en banc denied ( Feb 13, 2017 )

*Certiorari Denied by*

999. Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.
583 U.S. 870 , U.S. , Oct. 02, 2017

⚑ 1000. LV
FEDTM 79104538 , U.S. Federal Trademark , Sep. 19, 2011

*Ruled Infringed by*

1001. Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

1002. 1837
FEDTM 85444796 , U.S. Federal Trademark , Oct. 11, 2011

*Ruled Infringed and Violation of Unfair Competition by*

1003.  Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080032 , S.D.Fla. , Mar. 05, 2018


*AND Ruled Infringed and Violation of Unfair Competition by*


1004.  Tiffany (NJ) LLC v. discountiffany.com
2019 WL 7987441 , S.D.Fla. , Jan. 24, 2019


*AND Ruled Infringed and Violation of Unfair Competition by*


1005.  Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2025 WL 636686 , S.D.Fla. , Jan. 17, 2025


1006.  Coach, Inc. v. Diana Fashion
2011 WL 4853360 , N.D.Cal. , Oct. 13, 2011


*Order Vacated by*


1007.  Coach, Inc. v. Diana Fashion
2011 WL 6182332 , N.D.Cal. , Dec. 13, 2011


1008.  Coach Inc. v. Just A Boun, LLC
2011 WL 6318966 , M.D.Fla. , Nov. 08, 2011


*Report and Recommendation Adopted by*


1009.  Coach, Inc. v. Just A Boun, LLC
2011 WL 6328696 , M.D.Fla. , Dec. 15, 2011


1010.  Coach, Inc. v. Sunfastic Tanning Resort
2011 WL 5447972 , E.D.Pa. , Nov. 10, 2011


*Order Entered by*


1011.  Coach, Inc. v. Sunfastic Tanning Resort
2011 WL 5446478 , E.D.Pa. , Nov. 10, 2011

1012.  IWC
FEDTM 79111745 , U.S. Federal Trademark , Nov. 11, 2011

*Ruled Infringed by*

1013.  Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

⚑ 1014.  Coach, Inc. v. O'Brien
2011 WL 6122265 , S.D.N.Y. , Nov. 28, 2011

*Report and Recommendation Adopted as Modified by*

⚑ 1015.  Coach, Inc. v. O'Brien
2012 WL 1255276 , S.D.N.Y. , Apr. 13, 2012

⚑ 1016.  Coach, Inc. v. Zhou Hui Yin
2011 WL 7268428 , N.D.Cal. , Dec. 09, 2011

*Report and Recommendation Adopted in Part, Rejected in Part by*

1017.  Coach, Inc. v. Zhou Hui Yin
2012 WL 423625 , N.D.Cal. , Feb. 09, 2012

1018.  JUSTE UN CLOU
FEDTM 79111126 , U.S. Federal Trademark , Jan. 26, 2012

*Ruled Infringed and Violation of Unfair Competition by*

1019.  Richemont International SA v. montblancpenseshop.co
2018 WL 10374597 , S.D.Fla. , Dec. 12, 2018

1020.  Coach, Inc. v. McMeins
2012 WL 1071269 , S.D.N.Y. , Mar. 09, 2012

*Report and Recommendation Adopted by*

1021.  Coach, Inc. v. McMeins
2012 WL 1080487 , S.D.N.Y. , Mar. 30, 2012


1022.  CO-AXIAL
FEDTM 85567398 , U.S. Federal Trademark , Mar. 12, 2012


*Ruled Infringed and Violation of Unfair Competition by*


1023.  Omega SA v. Individual, Business Entity, or Unincorporated Association
2024 WL 5159795 , S.D.Fla. , Oct. 16, 2024


1024.  IWC SCHAFFHAUSEN
FEDTM 79112328 , U.S. Federal Trademark , Mar. 21, 2012


*Ruled Infringed by*


1025.  Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017


1026.  CC
FEDTM 85587843 , U.S. Federal Trademark , Apr. 03, 2012


*Ruled Infringed and Diluted by*


1027.  Chanel, Inc. v. Doren
2016 WL 7468068 , N.D.Tex. , Dec. 27, 2016


1028.  CC
FEDTM 85587416 , U.S. Federal Trademark , Apr. 03, 2012


*Ruled Infringed by*


1029.  Chanel, Inc. v. Matos
133 F.Supp.3d 678 , D.N.J. , Aug. 13, 2015


*AND Ruled Infringed by*

1030.  Chanel, Inc. v. ald Gall LNH
2017 WL 6947423 , S.D.Fla. , Feb. 06, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

1031.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947804 , S.D.Fla. , Aug. 22, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

1032.  Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947439 , S.D.Fla. , Sep. 19, 2017

*AND Ruled Infringed and Violation of Unfair Competition by*

1033.  Chanel, Inc. v. Efank
2017 WL 6947440 , S.D.Fla. , Oct. 18, 2017

1034.  LOUIS VUITTON
FEDTM 85981550 , U.S. Federal Trademark , May 11, 2012

*Ruled Infringed by*

1035.  Malletier v. aaaimitationbags.com
2018 WL 6448750 , S.D.Fla. , Oct. 19, 2018

1036.  LV
FEDTM 85981551 , U.S. Federal Trademark , May 14, 2012

*Ruled Infringed by*

1037.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

1038.  Gucci America, Inc. v. Guess?, Inc.
2012 WL 1847646 , S.D.N.Y. , May 21, 2012

*Opinion Amended and Superseded by*

🚩 1039.  Gucci America, Inc. v. Guess?, Inc.
868 F.Supp.2d 207 , S.D.N.Y. , June 18, 2012

1040.  Montblanc-Simplo GmbH v. Cheapmontblancpens.com
2012 WL 2681463 , E.D.Va. , June 06, 2012

*Report and Recommendation Adopted by*

1041.  Montblanc-Simplo GmbH v. CheapMontblancPens.com
2012 WL 2704249 , E.D.Va. , July 05, 2012

1042.  JB 1735
FEDTM 85684736 , U.S. Federal Trademark , July 23, 2012

*Ruled Infringed and Violation of Unfair Competition by*

1043.  Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

1044.  MONTBLANC-MEISTERSTUCK
FEDTM 79121454 , U.S. Federal Trademark , Sep. 25, 2012

*Ruled Infringed and Violation of Unfair Competition by*

1045.  Richemont International SA v. montblanchot.com
2020 WL 6701932 , S.D.Fla. , Nov. 13, 2020

1046.  Chanel, Inc. v. Dudum
2012 WL 5833562 , N.D.Cal. , Oct. 29, 2012

*Report and Recommendation Adopted by*

1047.  Chanel Inc. v. Dudum
2012 WL 5835694 , N.D.Cal. , Nov. 15, 2012

1048. Coach, Inc. v. Sac a Main
2012 WL 5464347 , E.D.Cal. , Nov. 07, 2012


*Report and Recommendation Adopted by*


1049. Coach, Inc. v. Sac A Main
2012 WL 6213308 , E.D.Cal. , Dec. 13, 2012


1050. CARTIER
FEDTM 85788489 , U.S. Federal Trademark , Nov. 27, 2012


*Ruled Infringed by*


1051. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017


1052. MONT BLANC
FEDTM 79138632 , U.S. Federal Trademark , May 22, 2013


*Ruled Infringed by*


1053. Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017


1054. KHAKI PILOT
FEDTM 79137397 , U.S. Federal Trademark , Aug. 26, 2013


*Ruled Infringed and Violation of Unfair Competition by*


1055. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022


1056. MOONWATCH
FEDTM 86050542 , U.S. Federal Trademark , Aug. 28, 2013


*Ruled Infringed and Violation of Unfair Competition by*

1057.  Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

🚩 1058.  Montblanc-Simplo GmbH v. Montblancmagasin.com
2014 WL 504887 , E.D.Va. , Feb. 05, 2014

*Amended and Superseded by*

1059.  Montblanc-Simplo GmbH v. Montblancmagasin.com
2014 WL 3101923 , E.D.Va. , July 07, 2014

1060.  [DESIGN ONLY]
FEDTM 86186825 , U.S. Federal Trademark , Feb. 06, 2014

*Ruled Infringed by*

1061.  Richemont International SA v. Replicawatchesman.com
2017 WL 3610597 , S.D.Fla. , Feb. 17, 2017

1062.  Tommy Hilfiger Licensing LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776875 , S.D.Fla. , Mar. 11, 2014

*Report and Recommendation Adopted by*

1063.  Tommy Hilfiger Licensing, LLC v. Canadatommyhilfigeroutlet.com
2014 WL 11776937 , S.D.Fla. , Mar. 27, 2014

🚩 1064.  Richemont Intern. S.A. v. Montesol OU
2014 WL 3732887 , S.D.N.Y. , May 13, 2014

*Report and Recommendation Adopted as Modified by*

1065.  Richemont Intern. S.A. v. Montesol OU
2014 WL 3732919 , S.D.N.Y. , July 29, 2014

1066.  T
FEDTM 86431775 , U.S. Federal Trademark , Oct. 22, 2014

*Ruled Infringed and Violation of Unfair Competition by*

1067. Tissot SA v. Rotwatches.com
2025 WL 1128931 , S.D.Fla. , Apr. 17, 2025

1068. HAMILTON
FEDTM 86981679 , U.S. Federal Trademark , Nov. 24, 2014

*Ruled Infringed and Violation of Unfair Competition by*

1069. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

1070. T
FEDTM 86542327 , U.S. Federal Trademark , Feb. 23, 2015

*Ruled Infringed and Violation of Unfair Competition by*

1071. Tissot SA v. Rotwatches.com
2025 WL 1128931 , S.D.Fla. , Apr. 17, 2025

1072. OMEGA
FEDTM 86978393 , U.S. Federal Trademark , Apr. 24, 2015

*Ruled Infringed and Violation of Unfair Competition by*

1073. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 845218 , S.D.Fla. , Mar. 22, 2022

*AND Ruled Infringed and Violation of Unfair Competition by*

1074. Omega SA v. Individual, Business Entity, or Unincorporated Association
2024 WL 5159795 , S.D.Fla. , Oct. 16, 2024

1075. [DESIGN ONLY]
FEDTM 86611369 , U.S. Federal Trademark , Apr. 27, 2015

*Ruled Infringed and Violation of Unfair Competition by*

1076. Richemont International SA v. montblanchot.com
2020 WL 6701932 , S.D.Fla. , Nov. 13, 2020

1077. CO-AXIAL MASTER CHRONOMETER
FEDTM 86742813 , U.S. Federal Trademark , Aug. 31, 2015

*Ruled Infringed and Violation of Unfair Competition by*

1078. Omega SA v. Individuals
2024 WL 5508133 , S.D.Fla. , Aug. 29, 2024

1079. TAG HEUER
FEDTM 79189348 , U.S. Federal Trademark , Mar. 21, 2016

*Ruled Infringed by*

1080. LVMH Swiss Manufactures, SA v. aaareplicaonline.com
2018 WL 6448755 , S.D.Fla. , Nov. 16, 2018

1081. TAG HEUER
FEDTM 79189947 , U.S. Federal Trademark , Mar. 21, 2016

*Ruled Infringed by*

1082. LVMH Swiss Manufactures, SA v. aaareplicaonline.com
2018 WL 6448755 , S.D.Fla. , Nov. 16, 2018

1083. Chanel, Inc. v. Charles
2016 WL 4491871 , N.D.Cal. , June 09, 2016

*Report and Recommendation Adopted by*

1084. Chanel, Inc. v. Charles
2016 WL 4474583 , N.D.Cal. , Aug. 25, 2016

1085.  [DESIGN ONLY]
FEDTM 87196285 , U.S. Federal Trademark , Oct. 07, 2016

*Ruled Infringed and Violation of Unfair Competition by*

1086.  Tiffany (NJ) LLC v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"
2020 WL 4501770 , S.D.Fla. , June 26, 2020

1087.  Chanel, Inc. v. Doren
2016 WL 7444995 , N.D.Tex. , Nov. 28, 2016

*Report and Recommendation Adopted by*

1088.  Chanel, Inc. v. Doren
2016 WL 7468068 , N.D.Tex. , Dec. 27, 2016

1089.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6949240 , S.D.Fla. , Mar. 14, 2017

*Subsequent Determination*

1090.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6948719 , S.D.Fla. , Mar. 27, 2017

🚩 1091.  Tiffany and Company v. Costco Wholesale Corp.
274 F.Supp.3d 216 , S.D.N.Y. , Aug. 14, 2017

*Vacated and Remanded by*

🚩 1092.  Tiffany and Company v. Costco Wholesale Corporation
971 F.3d 74 , 2nd Cir.(N.Y.) , Aug. 17, 2020

1093.  [DESIGN ONLY]
FEDTM 87623167 , U.S. Federal Trademark , Sep. 26, 2017

*Ruled Infringed and Violation of Unfair Competition by*

1094.  Richemont International SA v. montblanchot.com
2020 WL 6701932 , S.D.Fla. , Nov. 13, 2020

1095.  Gmbh v. Ilnitskiy
2018 WL 1882823 , E.D.Va. , Jan. 25, 2018

*Report and Recommendation Adopted by*

1096.  Montblanc-Simplo GmbH v. Ilnitsky
2018 WL 844401 , E.D.Va. , Feb. 13, 2018

⚑ 1097.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2018 WL 4869012 , S.D.Fla. , Feb. 03, 2018

*Order Amended and Superseded by*

1098.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2018 WL 1795762 , S.D.Fla. , Feb. 06, 2018

1099.  VACHERON CONSTANTIN
FEDTM 79234049 , U.S. Federal Trademark , Mar. 27, 2018

*Ruled Infringed and Violation of Unfair Competition by*

1100.  Richemont International SA v. montblanchot.com
2020 WL 6701932 , S.D.Fla. , Nov. 13, 2020

1101.  CC
FEDTM 88171502 , U.S. Federal Trademark , Oct. 26, 2018

*Ruled Infringed and Violation of Unfair Competition by*

1102.  Chanel, Inc. v. replicachanelpurses.com
2023 WL 9792711 , S.D.Fla. , Oct. 26, 2023

⚑ 1103.  Chanel, Inc. v. 7creplicachanel.com
2020 WL 5798381 , S.D.Fla. , Feb. 17, 2020

*On Rehearing*

1104.  Chanel, Inc. v. 7creplicachanel.com
2020 WL 5798403 , S.D.Fla. , Apr. 06, 2020

1105.  Luxottica Group S.p.A. v. President Optical Inc.
2020 WL 6115100 , S.D.Fla. , May 20, 2020

*Report and Recommendation Adopted in Part by*

1106.  Luxottica Group S.p.A v. President Optical Inc.
2021 WL 776419 , S.D.Fla. , Mar. 01, 2021

1107.  Tiffany (NJ) LLC v. Tiffanycorp.cn
2020 WL 9065886 , S.D.Fla. , Nov. 18, 2020

*Subsequent Determination*

1108.  Tiffany (NJ) LLC v. tiffanycorp.cn
2020 WL 9065864 , S.D.Fla. , Dec. 02, 2020

1109.  [DESIGN ONLY]
FEDTM 97182402 , U.S. Federal Trademark , Dec. 21, 2021

*Ruled Infringed and Violation of Unfair Competition by*

1110.  Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 5165258 , S.D.Fla. , Dec. 19, 2024

1111.  [DESIGN ONLY]
FEDTM 97182471 , U.S. Federal Trademark , Dec. 21, 2021

*Ruled Infringed and Violation of Unfair Competition by*

1112.  Tiffany (NJ) LLC v. Individuals Business Entities
2025 WL 1433729 , S.D.Fla. , Jan. 29, 2025

1113.  Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 5284738 , S.D.Fla. , Dec. 04, 2024

*Report and Recommendation Adopted by*

1114.  Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 5165258 , S.D.Fla. , Dec. 19, 2024

**Related References (597)**
1115.  MARCO POLO
FEDTM 71389340 , U.S. Federal Trademark , Feb. 24, 1937

*Cited by*

⚑ 1116.  Polo Fashions, Inc v. Extra Special Products, Inc. Et Al
1980 WL 30287 , S.D.N.Y. , Mar. 05, 1980

1117.  POLO BY RALPH LAUREN
FEDTM 72406019 , U.S. Federal Trademark , Oct. 26, 1971

*Ruled Infringed and Violation of Unfair Competition by*

⚑ 1118.  Polo Fashions, Inc v. Extra Special Products, Inc. Et Al
1980 WL 30287 , S.D.N.Y. , Mar. 05, 1980

*AND Ruled Infringed by*

1119.  Polo Fashions Inc. v. Gentlemen's Corner Wholesale, Inc.
1983 WL 51923 , D.S.C. , Apr. 12, 1983

*AND Ruled Infringed and Violation of Unfair Competition by*

1120.  Polo Fashions, Inc. v. Magic Trimmings, Inc.
603 F.Supp. 13 , S.D.Fla. , Apr. 24, 1984

*AND Ruled Infringed and Violation of Unfair Competition by*

⚑ 1121.  Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.
592 F.Supp. 648 , D.Mass. , Sep. 12, 1984

*AND Ruled Infringed and Violation of Unfair Competition by*

⚑ 1122.  Polo Fashions, Inc. v. Ontario Printers, Inc.
601 F.Supp. 402 , N.D.Ohio , Dec. 18, 1984

*AND Ruled Infringed and Violation of Unfair Competition by*

1123.  Polo Fashions, Inc. v. Hy's Men's Wear, Inc.
1985 WL 684 , N.D.Ill. , Apr. 23, 1985

*AND Ruled Infringed and Violation of Unfair Competition by*

1124.  Polo Fashions, Inc. v. Clothes Encounters
1985 WL 96 , N.D.Ill. , July 17, 1985

*AND Cited by*

1125.  Polo Fashions, Inc. v. B. Boman & Co., Inc.
1986 WL 4073 , S.D.N.Y. , Apr. 01, 1986

*AND Ruled Infringed and Violation of Unfair Competition by*

1126.  Polo Fashions, Inc. v. Diebolt, Inc.
634 F.Supp. 786 , D.Kan. , May 02, 1986

*AND Ruled Infringed and Violation of Unfair Competition by*

1127.  Polo Fashions, Inc. v. Rabanne
661 F.Supp. 89 , S.D.Fla. , Sep. 09, 1986

*AND Cited by*

1128.  Polo Fashions, Inc. v. 1st American Sportswear
1987 WL 6937 , D.Mass. , Jan. 07, 1987

*AND Ruled Infringed and Violation of Unfair Competition by*

1129.  Polo Fashions, Inc. v. Fernandez
655 F.Supp. 664 , D.Puerto Rico , Jan. 21, 1987

*AND Ruled Infringed and Violation of Unfair Competition by*

1130.  Polo Fashions, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9250 , D.D.C. , Mar. 23, 1987

1131.  GUCCI
FEDTM 72420356 , U.S. Federal Trademark , Apr. 04, 1972

*Cited by*

1132.  Gucci America, Inc. v. Costco Companies
2000 WL 60209 , S.D.N.Y. , Jan. 24, 2000

*AND Ruled Infringed and Violation of Unfair Competition by*

1133.  Gucci America, Inc. v. Exclusive Imports Intern.
2007 WL 2892668 , S.D.N.Y. , Oct. 02, 2007

*AND Ruled Infringed and Violation of Unfair Competition by*

1134.  Gucci America, Inc. v. 6abag.net
2016 WL 2731982 , S.D.Fla. , Jan. 12, 2016

*AND Ruled Infringed by*

1135.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1136.  POLO BY RALPH LAUREN
FEDTM 72439201 , U.S. Federal Trademark , Oct. 24, 1972

*Ruled Infringed and Violation of Unfair Competition by*

1137.  Polo Fashions, Inc. v. Rabanne
661 F.Supp. 89 , S.D.Fla. , Sep. 09, 1986


*AND Ruled Infringed and Violation of Unfair Competition by*


1138.  Polo Fashions, Inc. v. Fernandez
655 F.Supp. 664 , D.Puerto Rico , Jan. 21, 1987


1139.  RALPH LAUREN
FEDTM 72449577 , U.S. Federal Trademark , Feb. 23, 1973


*Cited by*


1140.  Polo Fashions, Inc. v. Get Off Your High Horse, Inc.
1984 WL 957 , S.D.N.Y. , Oct. 04, 1984


*AND Ruled Infringed and Violation of Unfair Competition by*


⚑ 1141.  Polo Fashions, Inc. v. Ontario Printers, Inc.
601 F.Supp. 402 , N.D.Ohio , Dec. 18, 1984


*AND Ruled Infringed and Violation of Unfair Competition by*


1142.  Polo Fashions, Inc. v. Hy's Men's Wear, Inc.
1985 WL 684 , N.D.Ill. , Apr. 23, 1985


*AND Ruled Infringed by*


1143.  Polo Fashions, Inc. v. Gordon Group
627 F.Supp. 878 , M.D.N.C. , May 14, 1985


*AND Cited by*


1144.  Polo Fashions, Inc. v. B. Boman & Co., Inc.
1986 WL 4073 , S.D.N.Y. , Apr. 01, 1986


*AND Ruled Infringed and Violation of Unfair Competition by*

1145.  Polo Fashions, Inc. v. Rabanne
661 F.Supp. 89 , S.D.Fla. , Sep. 09, 1986


*AND Ruled Infringed and Violation of Unfair Competition by*


1146.  Polo Fashions, Inc. v. Fernandez
655 F.Supp. 664 , D.Puerto Rico , Jan. 21, 1987


*AND Ruled Infringed and Violation of Unfair Competition by*


1147.  Polo Fashions, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9250 , D.D.C. , Mar. 23, 1987


*AND Ruled Infringed and Violation of Unfair Competition by*


⚑ 1148.  Gucci America, Inc. v. Action Activewear, Inc.
759 F.Supp. 1060 , S.D.N.Y. , Mar. 28, 1991


1149.  RALPH LAUREN
FEDTM 73066492 , U.S. Federal Trademark , Oct. 20, 1975


*Ruled Infringed by*


1150.  Polo Fashions Inc. v. Gentlemen's Corner Wholesale, Inc.
1983 WL 51923 , D.S.C. , Apr. 12, 1983


*AND Ruled Infringed and Violation of Unfair Competition by*


1151.  Polo Fashions, Inc. v. Magic Trimmings, Inc.
603 F.Supp. 13 , S.D.Fla. , Apr. 24, 1984


*AND Ruled Infringed and Violation of Unfair Competition by*


⚑ 1152.  Polo Fashions, Inc. v. Ontario Printers, Inc.
601 F.Supp. 402 , N.D.Ohio , Dec. 18, 1984


*AND Ruled Infringed and Violation of Unfair Competition by*

1153.  Polo Fashions, Inc. v. Hy's Men's Wear, Inc.
1985 WL 684 , N.D.Ill. , Apr. 23, 1985

*AND Ruled Infringed by*

1154.  Polo Fashions, Inc. v. Gordon Group
627 F.Supp. 878 , M.D.N.C. , May 14, 1985

*AND Cited by*

1155.  Polo Fashions, Inc. v. B. Boman & Co., Inc.
1986 WL 4073 , S.D.N.Y. , Apr. 01, 1986

*AND Ruled Infringed and Violation of Unfair Competition by*

1156.  Polo Fashions, Inc. v. Rabanne
661 F.Supp. 89 , S.D.Fla. , Sep. 09, 1986

*AND Ruled Infringed and Violation of Unfair Competition by*

1157.  Polo Fashions, Inc. v. Fernandez
655 F.Supp. 664 , D.Puerto Rico , Jan. 21, 1987

*AND Ruled Infringed and Violation of Unfair Competition by*

1158.  Polo Fashions, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9250 , D.D.C. , Mar. 23, 1987

1159.  GUCCI
FEDTM 73133838 , U.S. Federal Trademark , July 13, 1977

*Ruled Infringed and Not Violation of Unfair Competition by*

1160.  Gucci America, Inc. v. 2012fashionstore7
2018 WL 2688767 , S.D.Fla. , Feb. 06, 2018

*AND Ruled Infringed by*

1161.  Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018

1162.  GG
FEDTM 73146455 , U.S. Federal Trademark , Oct. 28, 1977

*Ruled Infringed by*

1163.  Gucci America, Inc. v. Pieta
2006 WL 4725706 , C.D.Cal. , Jan. 23, 2006

*AND Ruled Infringed by*

1164.  Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018

1165.  [DESIGN ONLY]
FEDTM 73150482 , U.S. Federal Trademark , Dec. 01, 1977

*Cited by*

⚑ 1166.  Haddad Mfg. Co., Inc. v. Gucci, Inc.
651 F.Supp. 1277 , D.N.J. , Jan. 21, 1987

*AND Ruled Infringed and Violation of Unfair Competition by*

1167.  Gucci America, Inc. v. 6abag.net
2016 WL 2731982 , S.D.Fla. , Jan. 12, 2016

*AND Ruled Infringed by*

1168.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1169.  [DESIGN ONLY]
FEDTM 73150483 , U.S. Federal Trademark , Dec. 01, 1977

*Ruled Infringed and Violation of Unfair Competition by*

1170. Gucci America, Inc. v. Dart, Inc.
715 F.Supp. 566 , S.D.N.Y. , June 12, 1989

*AND Ruled Infringed by*

1171. Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1172. [DESIGN ONLY]
FEDTM 73172604 , U.S. Federal Trademark , June 01, 1978

*Ruled Infringed and Violation of Unfair Competition by*

1173. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
800 F.Supp.2d 515 , S.D.N.Y. , May 13, 2011

*Affirmed by*

1174. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
511 Fed.Appx. 81 , 2nd Cir.(N.Y.) , Feb. 11, 2013

1175. [DESIGN ONLY]
FEDTM 73172604 , U.S. Federal Trademark , June 01, 1978

*Cited by*

1176. PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.
2015 WL 1442487 , S.D.N.Y. , Mar. 27, 2015

*Stay Denied by*

1177. PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.
2015 WL 3756849 , S.D.N.Y. , May 29, 2015

1178.  GG
FEDTM 73182270 , U.S. Federal Trademark , Aug. 16, 1978

*Ruled Infringed and Violation of Unfair Competition by*

1179.  Gucci America, Inc. v. Action Activewear, Inc.
759 F.Supp. 1060 , S.D.N.Y. , Mar. 28, 1991

*AND Ruled Infringed by*

1180.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1181.  GUCCI
FEDTM 73219348 , U.S. Federal Trademark , June 12, 1979

*Ruled Infringed by*

1182.  Gucci America, Inc. v. Pieta
2006 WL 4725706 , C.D.Cal. , Jan. 23, 2006

*AND Cited by*

1183.  Gucci America, Inc. v. MyReplicaHandbag.com
2008 WL 512789 , S.D.N.Y. , Feb. 26, 2008

*AND Ruled Infringed and Violation of Unfair Competition by*

1184.  Gucci America, Inc. v. 6abag.net
2016 WL 2731982 , S.D.Fla. , Jan. 12, 2016

*AND Ruled Infringed by*

1185.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1186. POLO
FEDTM 73333206 , U.S. Federal Trademark , Oct. 19, 1981

*Ruled Infringed by*

1187. Polo Fashions Inc. v. Gentlemen's Corner Wholesale, Inc.
1983 WL 51923 , D.S.C. , Apr. 12, 1983

*AND Ruled Infringed and Violation of Unfair Competition by*

1188. Polo Fashions, Inc. v. Magic Trimmings, Inc.
603 F.Supp. 13 , S.D.Fla. , Apr. 24, 1984

*AND Cited by*

1189. Polo Fashions, Inc. v. B. Boman & Co., Inc.
1986 WL 4073 , S.D.N.Y. , Apr. 01, 1986

*AND Ruled Infringed and Diluted by*

1190. Polo Ralph Lauren L.P. v. Schuman
1998 WL 110059 , S.D.Tex. , Feb. 09, 1998

*AND Ruled Infringed and Diluted by*

1191. Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
103 F.Supp.2d 935 , S.D.Tex. , Aug. 04, 1999

*Judgment Affirmed in Part, Vacated in Part by*

1192. Westchester Media v. PRL USA Holdings, Inc.
214 F.3d 658 , 5th Cir.(Tex.) , June 27, 2000

*On Remand to*

1193. Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
2001 WL 34109374 , S.D.Tex. , Oct. 23, 2001

*Affirmed by*

1194.  Westchester Media Co. LP v. PRL USA Holdings Inc.
48 Fed.Appx. 917 , 5th Cir.(Tex.) , Sep. 17, 2002

⚑ 1195.  POLO
FEDTM 73333206 , U.S. Federal Trademark , Oct. 19, 1981

*Ruled Not Diluted by*

⚑ 1196.  Westchester Media v. PRL USA Holdings, Inc.
214 F.3d 658 , 5th Cir.(Tex.) , June 27, 2000

*On Remand to*

1197.  Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
2001 WL 34109374 , S.D.Tex. , Oct. 23, 2001

*Affirmed by*

1198.  Westchester Media Co. LP v. PRL USA Holdings Inc.
48 Fed.Appx. 917 , 5th Cir.(Tex.) , Sep. 17, 2002

⚑ 1199.  POLO
FEDTM 73333206 , U.S. Federal Trademark , Oct. 19, 1981

*Ruled Infringed and Violation of Unfair Competition by*

⚑ 1200.  U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
800 F.Supp.2d 515 , S.D.N.Y. , May 13, 2011

*Affirmed by*

1201.  U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
511 Fed.Appx. 81 , 2nd Cir.(N.Y.) , Feb. 11, 2013

⚑ 1202.  POLO
FEDTM 73333206 , U.S. Federal Trademark , Oct. 19, 1981

*Ruled Infringed and Violation of Unfair Competition by*

1203.  PRL USA Holdings, Inc. v. Designerbrandsforless, Inc.
2020 WL 6694348 , C.D.Cal. , Oct. 29, 2020

1204.  [DESIGN ONLY]
FEDTM 73334146 , U.S. Federal Trademark , Oct. 26, 1981

*Cited by*

⚑ 1205.  Polo Fashions, Inc. v. Dick Bruhn, Inc.
793 F.2d 1132 , 9th Cir.(Cal.) , July 10, 1986

*AND Ruled Infringed and Violation of Unfair Competition by*

1206.  Polo Fashions, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9250 , D.D.C. , Mar. 23, 1987

*AND Cited by*

⚑ 1207.  Polo Fashions, Inc. v. Craftex, Inc.
816 F.2d 145 , 4th Cir.(N.C.) , Apr. 09, 1987

1208.  THE POLO CLUB
FEDTM 73411376 , U.S. Federal Trademark , Jan. 28, 1983

*Ruled Infringed and Diluted by*

1209.  Polo Ralph Lauren L.P. v. Schuman
1998 WL 110059 , S.D.Tex. , Feb. 09, 1998

1210.  RALPH LAUREN
FEDTM 73630298 , U.S. Federal Trademark , Nov. 14, 1986

*Ruled Infringed and Violation of Unfair Competition by*

1211. PRL USA Holdings, Inc. v. Designerbrandsforless, Inc.
2020 WL 6694348 , C.D.Cal. , Oct. 29, 2020

1212. [DESIGN ONLY]
FEDTM 73636129 , U.S. Federal Trademark , Dec. 19, 1986

*Ruled Infringed by*

1213. Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018

1214. [DESIGN ONLY]
FEDTM 73636128 , U.S. Federal Trademark , Dec. 19, 1986

*Ruled Infringed by*

1215. Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018

*AND Ruled Infringed by*

1216. Gucci America, Inc. v. BGAADB
2018 WL 6448747 , S.D.Fla. , Oct. 23, 2018

1217. [DESIGN ONLY]
FEDTM 73676457 , U.S. Federal Trademark , Aug. 03, 1987

*Ruled Infringed and Violation of Unfair Competition by*

1218. PRL USA Holdings, Inc. v. Designerbrandsforless, Inc.
2020 WL 6694348 , C.D.Cal. , Oct. 29, 2020

1219. [DESIGN ONLY]
FEDTM 74045547 , U.S. Federal Trademark , Apr. 03, 1990

*Cited by*

🚩 1220. Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
103 F.Supp.2d 935 , S.D.Tex. , Aug. 04, 1999

*Judgment Affirmed in Part, Vacated in Part by*

🚩 1221. Westchester Media v. PRL USA Holdings, Inc.
214 F.3d 658 , 5th Cir.(Tex.) , June 27, 2000

*On Remand to*

1222. Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
2001 WL 34109374 , S.D.Tex. , Oct. 23, 2001

*Affirmed by*

1223. Westchester Media Co. LP v. PRL USA Holdings Inc.
48 Fed.Appx. 917 , 5th Cir.(Tex.) , Sep. 17, 2002

1224. POLO
FEDTM 74050063 , U.S. Federal Trademark , Apr. 17, 1990

*Cited by*

🚩 1225. Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
103 F.Supp.2d 935 , S.D.Tex. , Aug. 04, 1999

*Judgment Affirmed in Part, Vacated in Part by*

🚩 1226. Westchester Media v. PRL USA Holdings, Inc.
214 F.3d 658 , 5th Cir.(Tex.) , June 27, 2000

*On Remand to*

1227. Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
2001 WL 34109374 , S.D.Tex. , Oct. 23, 2001

*Affirmed by*

1228.  Westchester Media Co. LP v. PRL USA Holdings Inc.
48 Fed.Appx. 917 , 5th Cir.(Tex.) , Sep. 17, 2002

1229.  POLO LIFE
FEDTM 74049951 , U.S. Federal Trademark , Apr. 17, 1990

*Cited by*

1230.  Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
103 F.Supp.2d 935 , S.D.Tex. , Aug. 04, 1999

*Judgment Affirmed in Part, Vacated in Part by*

1231.  Westchester Media v. PRL USA Holdings, Inc.
214 F.3d 658 , 5th Cir.(Tex.) , June 27, 2000

*On Remand to*

1232.  Westchester Media Co. L.P. v. PRL USA Holdings, Inc.
2001 WL 34109374 , S.D.Tex. , Oct. 23, 2001

*Affirmed by*

1233.  Westchester Media Co. LP v. PRL USA Holdings Inc.
48 Fed.Appx. 917 , 5th Cir.(Tex.) , Sep. 17, 2002

1234.  [DESIGN ONLY]
FEDTM 75977531 , U.S. Federal Trademark , May 28, 1996

*Cited by*

1235.  PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.
2015 WL 1442487 , S.D.N.Y. , Mar. 27, 2015

*Stay Denied by*

1236. PRL USA Holdings, Inc. v. United States Polo Ass'n, Inc.
2015 WL 3756849 , S.D.N.Y. , May 29, 2015

1237. [DESIGN ONLY]
FEDTM 75646825 , U.S. Federal Trademark , Feb. 23, 1999

*Cited by*

1238. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
800 F.Supp.2d 515 , S.D.N.Y. , May 13, 2011

*Affirmed by*

1239. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
511 Fed.Appx. 81 , 2nd Cir.(N.Y.) , Feb. 11, 2013

1240. U.S. POLO ASSN.
FEDTM 78265305 , U.S. Federal Trademark , June 20, 2003

*Cited by*

1241. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
800 F.Supp.2d 515 , S.D.N.Y. , May 13, 2011

*Affirmed by*

1242. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
511 Fed.Appx. 81 , 2nd Cir.(N.Y.) , Feb. 11, 2013

1243. GG GG GG GG GG
FEDTM 76611399 , U.S. Federal Trademark , Sep. 15, 2004

*Ruled Infringed and Violation of Unfair Competition by*

1244. Gucci America, Inc. v. 6abag.net
2016 WL 2731982 , S.D.Fla. , Jan. 12, 2016

*AND Ruled Infringed by*

1245.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1246.  GG
FEDTM 76621229 , U.S. Federal Trademark , Nov. 17, 2004

*Ruled Infringed and Violation of Unfair Competition by*

1247.  Gucci America, Inc. v. 6abag.net
2016 WL 2731982 , S.D.Fla. , Jan. 12, 2016

*AND Ruled Infringed by*

1248.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1249.  GG
FEDTM 76621230 , U.S. Federal Trademark , Nov. 17, 2004

*Ruled Infringed and Violation of Unfair Competition by*

1250.  Gucci America, Inc. v. 6abag.net
2016 WL 2731982 , S.D.Fla. , Jan. 12, 2016

*AND Ruled Infringed by*

1251.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1252.  RL67
FEDTM 78689020 , U.S. Federal Trademark , Aug. 09, 2005

*Ruled Infringed and Violation of Unfair Competition by*

1253.  PRL USA Holdings, Inc. v. Designerbrandsforless, Inc.
2020 WL 6694348 , C.D.Cal. , Oct. 29, 2020

1254.  GG
FEDTM 78973795 , U.S. Federal Trademark , Sep. 13, 2006


   *Ruled Infringed by*

1255.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016


1256.  GG
FEDTM 78973737 , U.S. Federal Trademark , Sep. 13, 2006


   *Ruled Infringed by*

1257.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016


1258.  Gucci America, Inc. v. Exclusive Imports Intern.
2007 WL 840128 , S.D.N.Y. , Mar. 19, 2007


   *Order Vacated by*

1259.  Gucci America, Inc. v. Exclusive Imports Intern.
2007 WL 2892668 , S.D.N.Y. , Oct. 02, 2007


1260.  GG
FEDTM 85499930 , U.S. Federal Trademark , Dec. 20, 2011


   *Ruled Infringed by*

1261.  Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018


1262.  GG
FEDTM 85499850 , U.S. Federal Trademark , Dec. 20, 2011


   *Ruled Infringed by*

1263.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016


  *AND Ruled Infringed and Diluted by*


1264.  Gucci America, Inc. v. Davis
2017 WL 10745598 , S.D.Fla. , Nov. 22, 2017


1265.  GG
FEDTM 85755461 , U.S. Federal Trademark , Oct. 16, 2012


  *Ruled Infringed by*


1266.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016


1267.  [DESIGN ONLY]
FEDTM 85763914 , U.S. Federal Trademark , Oct. 25, 2012


  *Ruled Infringed by*


1268.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016


1269.  GG GG GG GG GG
FEDTM 86103036 , U.S. Federal Trademark , Oct. 28, 2013


  *Ruled Infringed and Violation of Unfair Competition by*


1270.  Gucci America, Inc. v. 6abag.net
2016 WL 2731982 , S.D.Fla. , Jan. 12, 2016


  *AND Ruled Infringed by*


1271.  Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1272. GUCCI
FEDTM 86104663 , U.S. Federal Trademark , Oct. 29, 2013

*Ruled Infringed by*

1273. Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1274. GUCCI
FEDTM 86104604 , U.S. Federal Trademark , Oct. 29, 2013

*Ruled Infringed by*

1275. Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1276. GG
FEDTM 86104587 , U.S. Federal Trademark , Oct. 29, 2013

*Ruled Infringed by*

1277. Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018

1278. [DESIGN ONLY]
FEDTM 86105701 , U.S. Federal Trademark , Oct. 30, 2013

*Ruled Infringed by*

1279. Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

1280. GUCCI
FEDTM 86106818 , U.S. Federal Trademark , Oct. 31, 2013

*Ruled Infringed and Violation of Unfair Competition by*

1281. Gucci America, Inc. v. 6abag.net
2016 WL 2731982 , S.D.Fla. , Jan. 12, 2016

*AND Ruled Infringed by*

1282. Gucci America, Inc. v. BerryArt
2016 WL 8710477 , S.D.Fla. , May 13, 2016

*AND Ruled Infringed and Violation of Unfair Competition by*

1283. Gucci America, Inc. v. 1sthublot.com
2018 WL 7150391 , S.D.Fla. , Aug. 29, 2018

1284. BLIND FOR LOVE
FEDTM 87036401 , U.S. Federal Trademark , May 13, 2016

*Ruled Infringed by*

1285. Gucci America, Inc. v. BGAADB
2018 WL 6448747 , S.D.Fla. , Oct. 23, 2018

1286. [DESIGN ONLY]
FEDTM 87118340 , U.S. Federal Trademark , July 27, 2016

*Ruled Infringed by*

1287. Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018

1288. [DESIGN ONLY]
FEDTM 87120005 , U.S. Federal Trademark , July 28, 2016

*Ruled Infringed by*

1289. Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018

1290.  [DESIGN ONLY]
FEDTM 87120045 , U.S. Federal Trademark , July 28, 2016


*Ruled Infringed by*


1291.  Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018


1292.  [DESIGN ONLY]
FEDTM 87127608 , U.S. Federal Trademark , Aug. 04, 2016


*Ruled Infringed by*


1293.  Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018


1294.  Gucci America, Inc. v. a.m.m.mall
2018 WL 6261518 , S.D.Fla. , Oct. 04, 2018


*Report and Recommendation Adopted by*


1295.  Gucci America, Inc. v. a.m.m.mall
2018 WL 6261550 , S.D.Fla. , Oct. 22, 2018


1296.  Gucci America, Inc. v. BGAADB
2018 WL 6448388 , S.D.Fla. , Oct. 04, 2018


*Report and Recommendation Adopted by*


1297.  Gucci America, Inc. v. BGAADB
2018 WL 6448747 , S.D.Fla. , Oct. 23, 2018


1298.  CHANEL
FEDTM 71677202 , U.S. Federal Trademark , Nov. 24, 1954


*Ruled Infringed by*

1299. Chanel, Inc. v. Back
2010 WL 11505500 , S.D.Fla. , Mar. 25, 2010


*AND Ruled Infringed by*


1300. Chanel, Inc. v. Huang Cong
2011 WL 6180029 , W.D.Tenn. , Dec. 08, 2011


*AND Ruled Infringed and Violation of Unfair Competition by*


1301. Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A,"
2024 WL 4881082 , S.D.Fla. , Aug. 15, 2024


1302. Polo Fashions Inc. v. B. Bowman & Co.
102 F.R.D. 905 , S.D.N.Y. , Aug. 22, 1984


1303. Polo Fashions, Inc. v. Fashion Associates, Inc.
1986 WL 1176 , S.D.N.Y. , Jan. 22, 1986


1304. Polo Fashions, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9251 , D.D.C. , Mar. 23, 1987


1305. Polo Fashions, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9252 , D.D.C. , Mar. 23, 1987


1306. Guess ?, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9254 , D.D.C. , Mar. 23, 1987


1307. Guess ?, Inc. v. Capitol Wholesale, Imports, Inc.
1987 WL 9255 , D.D.C. , Mar. 23, 1987


1308. Polo Fashions, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9530 , D.D.C. , Apr. 03, 1987


1309. Guess ?, Inc. v. Capitol Wholesale Imports, Inc.
1987 WL 9532 , D.D.C. , Apr. 03, 1987

1310.  Polo Fashion, Inc. v. B. Bowman & Co., Inc.
1987 WL 12088 , S.D.N.Y. , May 29, 1987

⚑ 1311.  Gucci v. Gucci Shops, Inc.
688 F.Supp. 916 , S.D.N.Y. , June 17, 1988

1312.  Polo Fashions, Inc. v. 1st American Sportswear
1991 WL 128581 , D.Mass. , July 10, 1991

1313.  Trackwise Sales Corp. v. Gucci
1995 WL 358635 , S.D.N.Y. , June 15, 1995

1314.  Gucci America, Inc. v. Exclusive Imports Int'l
2000 WL 1357787 , S.D.N.Y. , Sep. 14, 2000

1315.  Rolex Watch U.S.A., Inc. v. Jones
2000 WL 1528263 , S.D.N.Y. , Oct. 13, 2000

1316.  Gucci America, Inc. v. Exclusive Imports Intern.
2001 WL 21253 , S.D.N.Y. , Jan. 09, 2001

1317.  Gucci America, Inc. v. Exclusive Imports Intern.
2001 WL 246387 , S.D.N.Y. , Mar. 13, 2001

1318.  Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC
2001 WL 277295 , S.D.N.Y. , Mar. 21, 2001

⚑ 1319.  Gucci America, Inc. v. Exclusive Imports Intern.
2002 WL 1870293 , S.D.N.Y. , Aug. 13, 2002

1320.  Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.
2003 WL 23705746 , C.D.Cal. , Mar. 07, 2003

*Subsequent Determination*

1321. Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.
2003 WL 23705747 , C.D.Cal. , Mar. 20, 2003

*Subsequent Determination*

1322. Rolex Watch U.S.A., Inc. v. Zeotec Diamonds, Inc.
2003 WL 23705748 , C.D.Cal. , May 02, 2003

⚑ 1323. Louis Vuitton Malletier v. Dooney & Bourke, Inc.
340 F.Supp.2d 415 , S.D.N.Y. , Aug. 27, 2004

*Order Affirmed in Part, Vacated in Part by*

⚐ 1324. Louis Vuitton Malletier v. Dooney & Bourke, Inc.
454 F.3d 108 , 2nd Cir.(N.Y.) , June 30, 2006

*On Remand to*

1325. Malletier v. Dooney & Bourke, Inc.
500 F.Supp.2d 276 , S.D.N.Y. , Apr. 24, 2007

*Motion to Amend Denied by*

1326. Malletier v. Dooney & Bourke, Inc.
2007 WL 1498323 , S.D.N.Y. , May 22, 2007

1327. COACH
FEDTM 78535642 , U.S. Federal Trademark , Dec. 20, 2004

*Opposition Dismissed by*

⚑ 1328. Coach Services, Inc. v. Triumph Learning LLC
2010 WL 3798519 , Trademark Tr. & App. Bd. , Sep. 17, 2010

*Affirmed in Part, Vacated in Part, Remanded by*

⚑ 1329. Coach Services, Inc. v. Triumph Learning LLC
668 F.3d 1356 , Fed.Cir. , Feb. 21, 2012


*On Remand to*

1330. COACH SERVICES, INC. v. TRIUMPH LEARNING LLC
2012 WL 2588573 , Trademark Tr. & App. Bd. , June 18, 2012


1331. COACH
FEDTM 78535642 , U.S. Federal Trademark , Dec. 20, 2004


*Opposition Dismissed by*

1332. COACH SERVICES, INC. v. TRIUMPH LEARNING LLC
2012 WL 2588573 , Trademark Tr. & App. Bd. , June 18, 2012


1333. COACH
FEDTM 78536065 , U.S. Federal Trademark , Dec. 21, 2004


*Opposition Dismissed by*

⚑ 1334. Coach Services, Inc. v. Triumph Learning LLC
2010 WL 3798519 , Trademark Tr. & App. Bd. , Sep. 17, 2010


*Affirmed in Part, Vacated in Part, Remanded by*

⚑ 1335. Coach Services, Inc. v. Triumph Learning LLC
668 F.3d 1356 , Fed.Cir. , Feb. 21, 2012


*On Remand to*

1336. COACH SERVICES, INC. v. TRIUMPH LEARNING LLC
2012 WL 2588573 , Trademark Tr. & App. Bd. , June 18, 2012


1337. COACH
FEDTM 78536065 , U.S. Federal Trademark , Dec. 21, 2004

*Opposition Dismissed by*

1338.  COACH SERVICES, INC. v. TRIUMPH LEARNING LLC
2012 WL 2588573 , Trademark Tr. & App. Bd. , June 18, 2012

1339.  COACH AMERICA'S BEST FOR STUDENT SUCCESS
FEDTM 78536143 , U.S. Federal Trademark , Dec. 21, 2004

*Opposition Dismissed by*

1340.  Coach Services, Inc. v. Triumph Learning LLC
2010 WL 3798519 , Trademark Tr. & App. Bd. , Sep. 17, 2010

*Affirmed in Part, Vacated in Part, Remanded by*

1341.  Coach Services, Inc. v. Triumph Learning LLC
668 F.3d 1356 , Fed.Cir. , Feb. 21, 2012

*On Remand to*

1342.  COACH SERVICES, INC. v. TRIUMPH LEARNING LLC
2012 WL 2588573 , Trademark Tr. & App. Bd. , June 18, 2012

1343.  COACH AMERICA'S BEST FOR STUDENT SUCCESS
FEDTM 78536143 , U.S. Federal Trademark , Dec. 21, 2004

*Opposition Dismissed by*

1344.  COACH SERVICES, INC. v. TRIUMPH LEARNING LLC
2012 WL 2588573 , Trademark Tr. & App. Bd. , June 18, 2012

1345.  Cartier, a division of Richemont North America, Inc. v. Symbolix, Inc.
386 F.Supp.2d 354 , S.D.N.Y. , June 02, 2005

1346.  Omega, S.A. v. Giftland Co.
2005 WL 1925791 , D.N.J. , Aug. 11, 2005

1347.  Vuitton Malletier v. Forty
2005 WL 8167941 , D.Puerto Rico , Sep. 08, 2005


*Report and Recommendation Adopted by*

1348.  Louis Vuitton Malletier v. Lincoln Fantasy
2005 WL 8167907 , D.Puerto Rico , Oct. 31, 2005


1349.  Louis Vuitton Malletier v. Lincoln Fantasy
2005 WL 8167962 , D.Puerto Rico , Nov. 17, 2005


1350.  Louis Vuitton Malletier v. Forty
2005 WL 8167900 , D.Puerto Rico , Nov. 22, 2005


*Report and Recommendation Adopted by*

1351.  Louis Vuitton Malletier v. Forty
2006 WL 8449041 , D.Puerto Rico , Jan. 05, 2006


1352.  Chanel, Inc. v. Mason
2006 WL 8432328 , S.D.Fla. , Feb. 16, 2006


1353.  Tiffany (NJ) Inc. v. eBay Inc.
2006 WL 8461405 , S.D.N.Y. , Mar. 31, 2006


1354.  Malletier v. Lincoln Fantasy
2006 WL 897966 , D.Puerto Rico , Mar. 31, 2006


1355.  Chanel, Inc. v. Craddock
2006 WL 1128733 , D.N.J. , Apr. 27, 2006


1356.  Gucci America, Inc. v. Pieta
2006 WL 4725707 , C.D.Cal. , July 17, 2006


1357.  Chanel, Inc. v. Gordashevsky
2006 WL 8457203 , D.N.J. , Oct. 11, 2006

1358.  Malletier v. Haute Diggity Dog, LLC
2007 WL 676222 , E.D.Va. , Feb. 28, 2007

1359.  Chanel, Inc. v. Gordashevsky
2007 WL 9782700 , D.N.J. , Apr. 24, 2007

⚑ 1360.  Tiffany (NJ) Inc. v. eBay, Inc.
576 F.Supp.2d 460 , S.D.N.Y. , Nov. 09, 2007

1361.  Tiffany (NJ) Inc. v. eBay, Inc.
576 F.Supp.2d 457 , S.D.N.Y. , Nov. 09, 2007

⚑ 1362.  Malletier v. Dooney & Bourke, Inc.
525 F.Supp.2d 558 , S.D.N.Y. , Dec. 13, 2007

⚐ 1363.  Cartier v. Symbolix Inc.
544 F.Supp.2d 316 , S.D.N.Y. , Mar. 31, 2008

⚑ 1364.  Chanel, Inc. v. Gordashevsky
558 F.Supp.2d 532 , D.N.J. , Apr. 07, 2008

1365.  Gucci America, Inc. v. Gucci
2008 WL 5251989 , S.D.N.Y. , Dec. 15, 2008

1366.  Chanel, Inc. v. Guetae
2009 WL 348501 , D.N.J. , Feb. 11, 2009

1367.  Gucci America, Inc. v. Gucci
2009 WL 440463 , S.D.N.Y. , Feb. 20, 2009

1368.  Chanel, Inc. v. Krispin
2009 WL 10667789 , S.D.Fla. , July 31, 2009

*Report and Recommendation Adopted by*

1369.  Chanel, Inc. v. Krispin
2009 WL 10668629 , S.D.Fla. , Aug. 31, 2009

1370.  Chanel, Inc. v. Gardner
2009 WL 3073916 , S.D.N.Y. , Sep. 22, 2009

1371.  Bebe Studio, Inc. v. Grand Stores
2009 WL 10681038 , D.Puerto Rico , Oct. 23, 2009

1372.  Gaffigan v. Does 1-10
689 F.Supp.2d 1332 , S.D.Fla. , Jan. 08, 2010

1373.  Gucci America, Inc. v. Curveal Fashion
2010 WL 808639 , S.D.N.Y. , Mar. 08, 2010

1374.  Gucci America, Inc. v. Guess?, Inc.
2010 WL 1416896 , S.D.N.Y. , Apr. 08, 2010

1375.  Gucci America, Inc. v. Curveal Fashion
2010 WL 11506401 , S.D.N.Y. , May 13, 2010

1376.  Coach Services, Inc. v. 777 Lucky Accessories, Inc.
2010 WL 2266023 , S.D.Fla. , June 04, 2010

1377.  Coach Services, Inc. v. 777 Lucky Accessories, Inc.
2010 WL 2427432 , S.D.Fla. , June 16, 2010

1378.  Gucci America, Inc. v. Guess?, Inc.
2010 WL 2720079 , S.D.N.Y. , June 29, 2010

*Order Set Aside by*

🚩 1379.  Gucci America, Inc. v. Guess?, Inc.
2011 WL 9375 , S.D.N.Y. , Jan. 03, 2011

1380.  Gucci America, Inc. v. Guess?, Inc.
2010 WL 2720015 , S.D.N.Y. , June 29, 2010

1381.  Gucci America, Inc. v. Frontline Processing Corp.
2010 WL 11655446 , S.D.N.Y. , July 02, 2010

1382.  Tiffany (NJ), LLC v. Liu Dongping
2010 WL 11484300 , S.D.Fla. , July 20, 2010

1383.  Tiffany (NJ), LLC v. Liu Dongping
2010 WL 11506676 , S.D.Fla. , July 20, 2010

1384.  Gucci America, Inc. v. Guess?, Inc.
2010 WL 3034244 , S.D.N.Y. , July 28, 2010

*Subsequent Determination*

🚩 1385.  Gucci America, Inc. v. Guess?, Inc.
271 F.R.D. 58 , S.D.N.Y. , Sep. 23, 2010

1386.  Tiffany (NJ), LLC v. Liu Dongping
2010 WL 11484299 , S.D.Fla. , Aug. 02, 2010

1387.  Gucci America, Inc. v. Huali Fan
2010 WL 11552867 , S.D.Fla. , Sep. 28, 2010

1388.  Gucci America, Inc. v. Gucci
2010 WL 5463860 , S.D.N.Y. , Nov. 05, 2010

*Report and Recommendation Adopted by*

1389.  Gucci America, Inc. v. Gucci
2010 WL 5490905 , S.D.N.Y. , Dec. 30, 2010

1390.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF NOTICE OF INVESTIGATION
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Dec. 29, 2010

1391.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 1: PROTECTIVE ORDER
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Jan. 03, 2011

🚩 1392.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 2: NOTICE OF GROUND RULES, SETTING 2/4/11 DATE FOR DISCOVERY STATEMENTS, AND 3/17/11 DATE FOR PRELIMINARY CONFERENCE
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Jan. 10, 2011

*Order Amended by*

1393.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF NOTICE TO THE PARTIES REGARDING AMENDED GROUND RULES
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Nov. 09, 2011

1394.  Coach Services, Inc. v. YNM, Inc.
2011 WL 759876 , C.D.Cal. , Jan. 18, 2011

*Report and Recommendation Adopted by*

1395.  Coach Services, Inc. v. YNM, Inc.
2011 WL 765745 , C.D.Cal. , Feb. 17, 2011

1396.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF NOTICE TO THE PARTIES
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Jan. 26, 2011

1397.  Tiffany (NJ), LLC v. Liu Zheng
2011 WL 13217251 , S.D.Fla. , Feb. 01, 2011

1398.  Tiffany (NJ), LLC v. Liu Zheng
2011 WL 13217299 , S.D.Fla. , Feb. 01, 2011

1399. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 3: SETTING TARGET DATE OF 3/5/12
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Feb. 08, 2011

*Order Corrected by*

1400. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF NOTICE TO THE PARTIES
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Feb. 10, 2011

1401. Tiffany (NJ), LLC v. Liu Zheng
2011 WL 13217252 , S.D.Fla. , Feb. 15, 2011

1402. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 4: REGARDING PROCEDURAL SCHEDULE
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 30, 2011

*Order Amended by*

1403. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 8: AMENDING PROCEDURAL SCHEDULE
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , July 05, 2011

*AND Order Amended by*

1404. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 9: GRANTING COMPLAINANTS MOTION TO AMEND PROCEDURAL SCHEDULE
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , July 21, 2011

1405. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 5: GRANTING COMPLAINANTS MOTION NO. 754-2 TO COMPEL
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 30, 2011

1406. IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 6: INITIAL DETERMINATION GRANTING COMPLAINANTS MOTION NO. 754-3 TO AMEND THE COMPLAINT
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Apr. 11, 2011

*Review Denied by*

1407.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF NOTICE OF COMMISSION DETERMINATION NOT TO REVIEW AN INITIAL DETERMINATION GRANTING COMPLAINANTS' MOTION TO AMEND THE COMPLAINT AND NOTICE OF INVESTIGATION TO SUBSTITUTE RESPONDENTS AND TO ADD RESPONDENTS
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Apr. 27, 2011

1408.  Louis Vuitton Malletier, S.A. v. Partnerships and Unincorporated Associations Identified on Schedule "A"
2011 WL 7394510 , D.Nev. , May 13, 2011

⚑ 1409.  Gucci America, Inc. v. Guess?, Inc.
790 F.Supp.2d 136 , S.D.N.Y. , May 25, 2011

1410.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 7: INITIAL DETERMINATION FINDING THAT COMPLAINANT HAS SATISFIED THE DOMESTIC INDUSTRY REQUIREMENT
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , June 10, 2011

    *Review Denied by*

1411.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF NOTICE OF COMMISSION DETERMINATION NOT TO REVIEW AN INITIAL DETERMINATION FINDING THAT COMPLAINANTS HAVE SATISFIED THE DOMESTIC INDUSTRY REQUIREMENT
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , June 28, 2011

1412.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 10: ORDERING EACH OF RESPONDENTS T&T AND BAGGER TO SHOW CAUSE BY 8/5/11 WHY EACH SHOULD NOT BE FOUND IN DEFAULT
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , July 21, 2011

1413.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 11: INITIAL DETERMINATION FINDING CERTAIN RESPONDENTS IN DEFAULT
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , July 21, 2011

    *Review Denied by*

1414.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF NOTICE OF COMMISSION DETERMINATION NOT TO REVIEW AN INITIAL DETERMINATION FINDING CERTAIN RESPONDENTS IN DEFAULT
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Aug. 17, 2011

⚑ 1415.  Coach, Inc. v. O'Brien
2011 WL 3462317 , S.D.N.Y. , July 27, 2011

*Report and Recommendation Adopted by*

1416.  Coach, Inc. v. O'Brien
2011 WL 4001002 , S.D.N.Y. , Sep. 01, 2011

1417.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF
ORDER NO. 12: INITIAL DETERMINATION TERMINATING THE INVESTIGATION AS TO CERTAIN
RESPONDENTS
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Aug. 03, 2011

*Review Denied by*

1418.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF
NOTICE OF COMMISSION DETERMINATION NOT TO REVIEW AN INITIAL DETERMINATION TERMINATING
THE INVESTIGATION AS TO CERTAIN RESPONDENTS BASED ON SETTLEMENT AND CONSENT
ORDERS; ISSUANCE OF CONSENT ORDERS
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Aug. 26, 2011

1419.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF
NOTICE TO THE PARTIES
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Aug. 04, 2011

1420.  Gucci America, Inc. v. Guodong Zhou
2011 WL 3843952 , S.D.Fla. , Aug. 26, 2011

⚑ 1421.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING
THEREOF ORDER NO. 14: INITIAL DETERMINATION FINDING RESPONDENTS T&T HANDBAG
INDUSTRIAL CO. LTD. AND THE INSPIRED BAGGER IN DEFAULT AND TERMINATING THE
INVESTIGATION
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Sep. 01, 2011

*Review Granted in Part by*

1422.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING
THEREOF NOTICE OF COMMISSION DETERMINATION TO REVIEW-IN-PART THE ALJ'S FINAL INITIAL
DETERMINATION FINDING RESPONDENTS T&T HANDBAG INDUSTRIAL CO. LTD. AND THE INSPIRED
BAGGER IN DEFAULT AND TERMINATING THE INVESTIGATION
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Nov. 02, 2011

1423.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 13: DENYING MOTION OF COMPLAINANTS LOUIS VUITTON MALLETIER S.A.S AND LOUIS VUITTON U.S. MANUFACTURING, INC.S FOR LEAVE TO FILE MOTION FOR SUMMARY DETERMINATION OF VIOLATION AND FOR ENTRY OF A GENERAL EXCLUSION ORDER OUT OF TIME
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Sep. 01, 2011


*Reconsideration Denied by*


1424.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF NOTICE TO THE PARTIES REGARDING REQUEST FOR RECONSIDERATION
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Sep. 08, 2011


1425.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF NOTICE OF COMMISSION DETERMINATION THAT ORDER NO. 14 IS A FINAL ID PURSUANT TO COMMISSION RULE 210.42(A)
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Sep. 16, 2011


1426.  Chanel, Inc. v. Ke Lei
2011 WL 13224897 , S.D.Fla. , Nov. 04, 2011


1427.  Gucci America, Inc. v. Guess?, Inc.
831 F.Supp.2d 723 , S.D.N.Y. , Nov. 16, 2011


*On Reconsideration in Part*

1428.  Gucci America, Inc. v. Guess?, Inc.
2011 WL 6326032 , S.D.N.Y. , Dec. 16, 2011


1429.  Chanel, Inc. v. eukuk.com
2011 WL 6955734 , D.Nev. , Dec. 28, 2011


1430.  Gucci America, Inc. v. Guodong Zhou
2012 WL 13013150 , S.D.Fla. , Jan. 04, 2012


1431.  Chanel, Inc. v. Cong Huang
2012 WL 13014686 , S.D.Fla. , Jan. 04, 2012

1432.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF NOTICE OF TARGET DATE
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Jan. 20, 2012

1433.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES AND PACKAGING THEREOF ORDER NO. 15: INITIAL DETERMINATION EXTENDING THE TARGET DATE BY THREE MONTHS
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Feb. 13, 2012

*Review Denied by*

1434.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF NOTICE OF COMMISSION DETERMINATION NOT TO REVIEW AN INITIAL DETERMINATION EXTENDING THE TARGET DATE BY THREE MONTHS TO JUNE 5, 2012
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 07, 2012

1435.  Chanel, Inc. v. Eukuk.com
2012 WL 506218 , D.Nev. , Feb. 14, 2012

1436.  U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
2012 WL 697137 , S.D.N.Y. , Mar. 05, 2012

1437.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF NOTICE OF REQUEST FOR STATEMENTS ON THE PUBLIC INTEREST
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Mar. 12, 2012

1438.  Gucci America, Inc. v. Guess?, Inc.
858 F.Supp.2d 250 , S.D.N.Y. , Mar. 13, 2012

1439.  Louis Vuitton Malletier, S.A. v. Hyundai Motor America
2012 WL 1022258 , S.D.N.Y. , Mar. 22, 2012

1440.  Chanel, Inc. v. Eukuk.com
2012 WL 1119228 , D.Nev. , Apr. 03, 2012

1441.  Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com
2012 WL 1142908 , D.Nev. , Apr. 04, 2012

1442.  Louis Vuitton Malletier, S.A. v. Hyundai Motor America
2012 WL 1481510 , S.D.N.Y. , Apr. 27, 2012


1443.  Chanel, Inc. v. chanel255.org
2012 WL 12845630 , S.D.Fla. , May 17, 2012


1444.  Louis Vuitton Malletier, S.A. v. 100wholesale.com
2012 WL 12873482 , S.D.Fla. , May 29, 2012


1445.  Chanel, Inc. v. chanel255.org
2012 WL 1941598 , S.D.Fla. , May 29, 2012


1446.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING NOTICE OF COMMISSION FINAL DETERMINATION OF VIOLATION OF SECTION 337; TERMINATION OF INVESTIGATION; ISSUANCE OF GENERAL EXCLUSION ORDER
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , May 30, 2012


   *Order Issued by*

1447.  IN THE MATTER OF CERTAIN HANDBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF COMMISSION OPINION
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , June 13, 2012


1448.  Chanel, Inc. v. 2012chanelbagsoutletstore.com
2012 WL 12845632 , S.D.Fla. , June 13, 2012


1449.  Chanel, Inc. v. Chanelbagsforsale-us.com
2012 WL 12845873 , S.D.Fla. , June 13, 2012


1450.  Louis Vuitton Malletier, S.A. v. 1854LouisVuitton.com
2012 WL 2357402 , D.Nev. , June 20, 2012


1451.  Chanel, Inc. v. 2012chanelbagsoutletstore.com
2012 WL 12845631 , S.D.Fla. , June 22, 2012


1452.  Chanel, Inc. v. chanelbagsforsale-us.com
2012 WL 12845633 , S.D.Fla. , June 25, 2012

*Report and Recommendation Adopted by*

1453.  Chanel, Inc. v. chanelbagsforsale-us.com
2012 WL 12846075 , S.D.Fla. , July 02, 2012


1454.  Chanel, Inc. v. Chanel255.org
2012 WL 13014706 , S.D.Fla. , June 29, 2012


1455.  Louis Vuitton Malletier, S.A. v. 1854louisvuitton.com
2012 WL 2576216 , D.Nev. , July 03, 2012


1456.  Chanel, Inc. v. 7perfecthandbags.com
2012 WL 12877731 , S.D.Fla. , July 06, 2012


1457.  Coach, Inc. v. Swap Shop, Inc.
2012 WL 12887009 , S.D.Fla. , July 09, 2012


1458.  Coach, Inc. v. Allen
2012 WL 5359579 , S.D.N.Y. , July 20, 2012 , appeal dismissed (2nd Circ. 12-3390) ( Sep 10, 2012 )


1459.  Louis Vuitton Malletier, S.A. v. 100wholesale.com
2012 WL 3260354 , S.D.Fla. , Aug. 08, 2012


*Referred to*

1460.  Louis Vuitton Malletier, S.A. v. 100wholesale.com
2012 WL 12872737 , S.D.Fla. , Aug. 16, 2012


*Report and Recommendation Adopted by*

1461.  Louis Vuitton Malletier, S.A. v. 100Wholesale.com
2012 WL 12873548 , S.D.Fla. , Aug. 22, 2012


1462.  Chanel, Inc. v. Partnership & Unincorporated Ass'n Identified in Schedule A
2012 WL 3527147 , S.D.Tex. , Aug. 14, 2012

*Subsequent Determination*

1463.   Chanel, Inc. v. Partnerships & Unincorporated Ass'n Identified in Schedule A
2012 WL 3756287 , S.D.Tex. , Aug. 28, 2012


1464.   Chanel, Inc. v. Partnership or Unincorporated Association Doing Business as Purse Valley
2012 WL 12845599 , S.D.Fla. , Aug. 16, 2012


1465.   Chanel, Inc. v. Partnership or Unincorporated Association Doing Business as Purse Valley
2012 WL 12845869 , S.D.Fla. , Aug. 21, 2012


1466.   Chanel, Inc. v. 7perfecthandbags.com
2012 WL 12877728 , S.D.Fla. , Sep. 04, 2012


1467.   Chanel, Inc. v. 7perfecthandbags.com
2012 WL 12877735 , S.D.Fla. , Sep. 18, 2012


1468.   Coach, Inc. v. Swap Shop, Inc.
2012 WL 12887010 , S.D.Fla. , Sep. 21, 2012


1469.   Chanel, Inc. v. Partnerships & Unincorporated Associations
2012 WL 12894807 , S.D.Tex. , Oct. 10, 2012


1470.   Louis Vuitton Malletier, S.A. v. Bags-watch-replicas.org
2012 WL 12864337 , S.D.Fla. , Oct. 24, 2012


1471.   Chanel, Inc. v. 7perfecthandbags.com
2012 WL 12877815 , S.D.Fla. , Nov. 01, 2012


1472.   Chanel, Inc. v. 7perfecthandbags.com
2012 WL 12877391 , S.D.Fla. , Nov. 15, 2012


*Report and Recommendation Adopted by*

1473.   Chanel, Inc. v. 7perfecthandbags.com
2012 WL 12877750 , S.D.Fla. , Nov. 21, 2012

1474. Louis Vuitton Malletier, S.A. v. 100wholesale.com
2012 WL 12873509 , S.D.Fla. , Nov. 30, 2012

1475. Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12113186 , S.D.Fla. , Jan. 03, 2013

1476. Louis Vuitton Malletier, S.A. v. 100wholesale.com
2013 WL 12106063 , S.D.Fla. , Jan. 04, 2013

1477. Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12113065 , S.D.Fla. , Jan. 15, 2013

1478. Coach, Inc. v. Dequindre Plaza, L.L.C.
2013 WL 12181721 , E.D.Mich. , Jan. 16, 2013

1479. Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12113188 , S.D.Fla. , Jan. 23, 2013

1480. Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12113187 , S.D.Fla. , Feb. 07, 2013

1481. Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12113474 , S.D.Fla. , Feb. 19, 2013

1482. Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12065881 , S.D.Fla. , Feb. 21, 2013

🚩 1483. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
2013 WL 837565 , S.D.N.Y. , Mar. 06, 2013

*Vacated and Remanded by*

1484. U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.
789 F.3d 29 , 2nd Cir.(N.Y.) , May 13, 2015

*On Remand to*

1485.   United States Polo Association, Inc. v. PRL USA Holdings, Inc.
2016 WL 270867 , S.D.N.Y. , Jan. 21, 2016

1486.   Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12113189 , S.D.Fla. , Mar. 08, 2013

1487.   Louis Vuitton Malletier, S.A. v. 2012louisvuittonhandbag.com
2013 WL 12094894 , S.D.Fla. , Mar. 15, 2013

1488.   Louis Vuitton Malletier, S.A. v. 2012louisvuittonhandbag.com
2013 WL 12094862 , S.D.Fla. , Mar. 22, 2013

1489.   Chanel, Inc. v. 7perfecthandbags.com
2013 WL 1857137 , S.D.Fla. , May 02, 2013

1490.   Coach, Inc. v. Dequindre Plaza, L.L.C.
2013 WL 2152038 , E.D.Mich. , May 16, 2013

1491.   Coach, Inc. v. Swap Shop Inc.
2013 WL 12129440 , S.D.Fla. , May 31, 2013

1492.   Coach, Inc. v. Swap Shop, Inc.
2013 WL 11316973 , S.D.Fla. , June 06, 2013

*Subsequent Determination*

1493.   Coach, Inc. v. Swap Shop, Inc.
2013 WL 12188484 , S.D.Fla. , July 17, 2013

*AND Order Affirmed by*

1494.   Coach, Inc. v. Swap Shop, Inc.
2013 WL 4407064 , S.D.Fla. , Aug. 13, 2013

1495. Chanel, Inc. v. Partnerships or Unincorporated Associations Identified on Schedule "A"
2013 WL 12120213 , N.D.Cal. , June 14, 2013

1496. Coach, Inc. v. Swap Shop, Inc.
2013 WL 12091618 , S.D.Fla. , July 02, 2013

1497. Coach, Inc. v. Island Rayz
2013 WL 4008747 , S.D.Ohio , Aug. 05, 2013

1498. Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12065882 , S.D.Fla. , Aug. 08, 2013

*Subsequent Determination*

1499. Chanel, Inc. v. 7perfecthandbags.com
2013 WL 12065883 , S.D.Fla. , Aug. 19, 2013

1500. Coach Inc. Swap Shop, Inc.
2013 WL 12091619 , S.D.Fla. , Aug. 22, 2013

1501. Chanel, Inc. v. Amazing4scarf.com
2013 WL 12053039 , S.D.Fla. , Sep. 10, 2013

1502. Audemars Piguet Holding SA v. 2replicawatch.com
2013 WL 11977149 , S.D.Fla. , Sep. 16, 2013

⚑ 1503. Chanel, Inc. v. Amazing4scarf.com
2013 WL 12051025 , S.D.Fla. , Sep. 23, 2013

*Order Amended and Superseded by*

1504. Chanel, Inc. v. Amazing4scarf.com
2013 WL 12066089 , S.D.Fla. , Sep. 30, 2013

1505. Holding v. Amatory-Store.net
2013 WL 11981915 , S.D.Fla. , Sep. 27, 2013

1506.  Coach, Inc. v. Swap Shop
2013 WL 12091656 , S.D.Fla. , Oct. 01, 2013

1507.  Coach, Inc. v. Swap Shop Inc.
2013 WL 12091157 , S.D.Fla. , Oct. 03, 2013

⚑ 1508.  Tiffany and Co. v. Costco Wholesale Corp.
2013 WL 5677020 , S.D.N.Y. , Oct. 18, 2013

1509.  Chanel, Inc. v. Partnership or Unincorporated Association Doing Business as Luxurycatch.com
2013 WL 12064867 , S.D.Fla. , Dec. 10, 2013

1510.  Tiffany and Co. v. Costco Wholesale Corp.
994 F.Supp.2d 474 , S.D.N.Y. , Jan. 17, 2014

1511.  Chanel, Inc. v. Partnership or Unincorporated Association Doing Business as Luxurycatch.com
2014 WL 11881003 , S.D.Fla. , Jan. 23, 2014

1512.  Tommy Hilfiger Licensing LLC v. Canadatommyhilfigeroutlet.com
2014 WL 12536963 , S.D.Fla. , Feb. 25, 2014

1513.  Gucci America, Inc. v. Chaussuresguccis.com
2014 WL 11946878 , S.D.Fla. , Apr. 07, 2014

*Report and Recommendation Adopted by*

1514.  Gucci America, Inc. v. Chaussuresguccis.com
2014 WL 11906606 , S.D.Fla. , Aug. 25, 2014

1515.  Rolex Watch USA, Inc. v. Watch Empire LLC
2014 WL 12607691 , C.D.Cal. , June 16, 2014

1516.  Gucci America, Inc. v. Chaussuresguccis.com
2014 WL 11906607 , S.D.Fla. , Sep. 12, 2014

1517. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2014 WL 12607692 , C.D.Cal. , Sep. 24, 2014

1518. Luxottica Group, S.p.A. v. Casa Los Martinez Corp.
2015 WL 13776171 , S.D.Fla. , Jan. 30, 2015

1519. Rolex Watch USA Inc. v. Watch Empire LLC
2015 WL 12828054 , C.D.Cal. , Feb. 05, 2015

1520. Rolex Watch USA v. Watch Empire LLC
2015 WL 12776593 , C.D.Cal. , Apr. 28, 2015

1521. Chanel, Inc. v. Aestheticase.com
2015 WL 11201198 , S.D.Fla. , May 06, 2015

1522. Gucci America, Inc. v. 2015gucci-outlet.com
2015 WL 12551054 , S.D.Fla. , May 18, 2015

1523. Gucci America, Inc. v. 6abag.net
2015 WL 12551052 , S.D.Fla. , May 20, 2015

1524. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 12791750 , C.D.Cal. , June 23, 2015

1525. Rolex Watch U.S.A., Inc. v. Watch Empire LLC
2015 WL 13807255 , C.D.Cal. , July 22, 2015

1526. Gucci America, Inc. v. 6ABAG.NET
2015 WL 10818663 , S.D.Fla. , Aug. 31, 2015

1527. Chanel, Inc. v. 2012leboyhandbag.com
2015 WL 10818551 , S.D.Fla. , Nov. 16, 2015

1528. Allstate Insurance Company v. Airport Mini Mall, LLC
2015 WL 13333577 , N.D.Ga. , Nov. 23, 2015

*Subsequent Determination*

1529.  Luxottica Group, S.p.A. v. Airport Mini Mall, LLC
2016 WL 9047105 , N.D.Ga. , Jan. 08, 2016


1530.  Chanel, Inc. v. chaneloutlets-sale.com
2016 WL 8677918 , S.D.Fla. , Jan. 21, 2016


1531.  Luxottica Group v. Airport Mini Mall, LLC
169 F.Supp.3d 1343 , N.D.Ga. , Mar. 04, 2016


1532.  Gucci America, Inc. v. BerryArt
2016 WL 8678538 , S.D.Fla. , Apr. 22, 2016


1533.  Tiffany and Company v. Costco Wholesale Corp.
2016 WL 11826351 , S.D.N.Y. , Apr. 25, 2016


1534.  Sealed v. Sealed
2016 WL 9226442 , N.D.Cal. , May 03, 2016


1535.  Luxottica Group, S.p.A. v. Airport Mini Mall, LLC
186 F.Supp.3d 1370 , N.D.Ga. , May 16, 2016


1536.  Chanel, Inc. v. Besumart.com
2016 WL 8678057 , S.D.Fla. , June 06, 2016


1537.  Louis Vuitton Malletier, S.A. 2016bagsilouisvuitton.com
2016 WL 3878460 , S.D.Fla. , July 18, 2016


1538.  Tiffany and Company v. Costco Wholesale Corp.
2016 WL 11826352 , S.D.N.Y. , Aug. 17, 2016


1539.  Chanel, Inc. v. Imitation-handbags.ru
2016 WL 9461330 , S.D.Fla. , Oct. 12, 2016

1540.  Chanel, Inc. v. 2012merry2013
2016 WL 10789790 , S.D.Fla. , Nov. 29, 2016


1541.  Chanel, Inc. v. Salehandbags.ru
2016 WL 10789877 , S.D.Fla. , Dec. 20, 2016


⚑ 1542.  Richemont International SA v. replicawatchesman.com
2016 WL 9461329 , S.D.Fla. , Dec. 28, 2016


*Amended Opinion to be Issued*

1543.  Richemont International SA v. Replicawatchesman.com
2017 WL 3601356 , S.D.Fla. , Jan. 12, 2017


1544.  Louis Vuitton Malletier, S.A. v. 1688handbags.com
2017 WL 6949239 , S.D.Fla. , Jan. 05, 2017


1545.  Chanel, Inc. v. ald Gall LNH
2017 WL 6947801 , S.D.Fla. , Jan. 06, 2017


1546.  Luxottica Group, S.p.A. v. Airport Mini Mall, LLC
2017 WL 1806384 , N.D.Ga. , Feb. 01, 2017


1547.  Coach, Inc. v. Source II, Inc.
2017 WL 427701 , E.D.Mich. , Feb. 01, 2017


1548.  Luxottica Group, S.p.A. v. Airport Mini Mall, LLC
2017 WL 928574 , N.D.Ga. , Feb. 10, 2017


1549.  Luxottica Group S.P.A. v. Enuff
2017 WL 11766611 , D.N.J. , Apr. 07, 2017


1550.  Chanel, Inc. v. E8bag.ru
2017 WL 6947429 , S.D.Fla. , Apr. 13, 2017

1551.  Chanel, Inc. v. 726usjsIS
2017 WL 10845127 , S.D.Fla. , May 01, 2017

1552.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 10742634 , S.D.Fla. , June 16, 2017

1553.  Gucci America, Inc. v. idolbags.ru
2017 WL 6949252 , S.D.Fla. , June 21, 2017

1554.  Gucci America, Inc. v. Aaabagswear.com
2017 WL 6949255 , S.D.Fla. , June 21, 2017

1555.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 6947433 , S.D.Fla. , June 28, 2017

1556.  Gucci America, Inc. v. idolbags.ru
2017 WL 4875921 , S.D.Fla. , June 30, 2017

*Report and Recommendation Adopted by*

1557.  Gucci America, Inc. v. idolbags.ru
2017 WL 4867030 , S.D.Fla. , July 05, 2017

1558.  Chanel, Inc. v. chanelgraffitibackpack.net
2017 WL 6947438 , S.D.Fla. , July 31, 2017

1559.  Luxottica Group S.P.A. v. Enuff
2017 WL 11766612 , D.N.J. , Aug. 10, 2017

⚑ 1560.  Allstate Insurance Company v. Airport Mini Mall, LLC
265 F.Supp.3d 1356 , N.D.Ga. , Sep. 26, 2017

*Appeal Dismissed by*

1561.  Allstate Insurance Company v. Airport Mini Mall, LLC
2017 WL 7058347 , 11th Cir.(Ga.) , Dec. 11, 2017

1562. Gucci America, Inc. v. Davis
2017 WL 10751229 , S.D.Fla. , Sep. 26, 2017


1563. Chanel, Inc. v. Individual, Partnership, or Unincorporated Association
2017 WL 6947434 , S.D.Fla. , Oct. 06, 2017


1564. Gucci America, Inc. v. Davis
2017 WL 10745284 , S.D.Fla. , Oct. 13, 2017


1565. Chanel, Inc. v. Jianghong Wang
2017 WL 11094339 , S.D.Fla. , Nov. 03, 2017


1566. Chanel, Inc. v. Jianghong Wang
2017 WL 10086074 , S.D.Fla. , Nov. 14, 2017


1567. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 8794733 , S.D.Fla. , Dec. 13, 2017


1568. Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2017 WL 8794734 , S.D.Fla. , Dec. 14, 2017


1569. Gucci America, Inc. v. 2012fashionstore7
2017 WL 9510590 , S.D.Fla. , Dec. 19, 2017


1570. Cartier International A.G. v. 77models.net
2017 WL 10753062 , S.D.Fla. , Dec. 28, 2017


1571. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2017 WL 10753094 , S.D.Fla. , Dec. 29, 2017


1572. Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.
2018 WL 317850 , S.D.N.Y. , Jan. 08, 2018


*Order Affirmed by*

1573. Louis Vuitton Malletier, S.A. v. My Other Bag, Inc.
764 Fed.Appx. 39 , 2nd Cir.(N.Y.) , Mar. 15, 2019

1574. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7079988 , S.D.Fla. , Jan. 10, 2018

1575. Cartier International A.G. v. 77models.net
2018 WL 7079991 , S.D.Fla. , Jan. 10, 2018

1576. Cartier International A.G. v. 77models.net
2018 WL 7080127 , S.D.Fla. , Jan. 10, 2018

1577. Tiffany (NJ) LLC v. tiffanyco-schmucks.biz
2018 WL 7080128 , S.D.Fla. , Jan. 11, 2018

1578. Louis Vuitton Malletier, S.A. v. lvonlineoutlet.com
2018 WL 4778192 , S.D.Fla. , Feb. 12, 2018

1579. Louis Vuitton Malletier, S.A. v. lvonlineoutlet.com
2018 WL 4778195 , S.D.Fla. , Feb. 12, 2018

*Subsequent Determination*

1580. Louis Vuitton Malletier, S.A. v. lvonlineoutlet.com
2018 WL 1863753 , S.D.Fla. , Feb. 20, 2018

*Report and Recommendation Adopted by*

1581. Malletier v. Lvonlineoutlet.com
2018 WL 2021299 , S.D.Fla. , Mar. 16, 2018

1582. Audemars Piguet Holding SA v. 1forclock.ru
2018 WL 7082665 , S.D.Fla. , Feb. 22, 2018

1583. Audemars Piguet Holding SA v. 1forclock.ru
2018 WL 7082667 , S.D.Fla. , Feb. 22, 2018

*Subsequent Determination*

1584.  Audemars Piguet Holding SA v. 1forclock.ru
2018 WL 2006894 , S.D.Fla. , Mar. 07, 2018

1585.  Chanel, Inc. v. feiwu1
2018 WL 7080028 , S.D.Fla. , Mar. 27, 2018

1586.  Chanel, Inc. v. feiwu1
2018 WL 7132786 , S.D.Fla. , Mar. 27, 2018

1587.  Chanel, Inc. v. Feiwul
2018 WL 2688777 , S.D.Fla. , Apr. 10, 2018

1588.  Gucci America, Inc. v. 1a-dignass.de
2018 WL 7150758 , S.D.Fla. , May 07, 2018

1589.  Gucci America, Inc. v. 1a-dignass.de
2018 WL 2688787 , S.D.Fla. , May 15, 2018

1590.  Chanel, Inc. v. Individual, Partnership , or Unincorporated Association
2018 WL 4864834 , S.D.Fla. , May 20, 2018

1591.  Gucci America, Inc. v. 1sthublot.com
2018 WL 7150390 , S.D.Fla. , June 29, 2018

1592.  Gucci America, Inc. v. 1sthublot.com
2018 WL 7185428 , S.D.Fla. , July 02, 2018

*Opinion Amended and Superseded by*

1593.  Gucci America, Inc. v. 1sthublot.com
2018 WL 3882721 , S.D.Fla. , July 24, 2018

⚑ 1594. Chanel, Inc. v. WGACA, LLC
2018 WL 4440507 , S.D.N.Y. , Sep. 14, 2018

1595. Luxottica Group S.P.A. v. Shore Enuff
2018 WL 5286171 , D.N.J. , Sep. 21, 2018

*Report and Recommendation Adopted by*

1596. Luxottica Group S.P.A. v. Enuff
2018 WL 5281422 , D.N.J. , Oct. 24, 2018

1597. Richemont International SA v. montblancpenseshop.co
2018 WL 10374616 , S.D.Fla. , Oct. 26, 2018

1598. Chanel, Inc. v. Jianghong Wang
2018 WL 7048131 , S.D.Fla. , Oct. 30, 2018

1599. Gucci America, Inc. v. aaaimitationbags.com
2018 WL 6493627 , S.D.Fla. , Nov. 19, 2018

1600. Tiffany (NJ) LLC v. discountiffany.com
2018 WL 10446917 , S.D.Fla. , Nov. 26, 2018

1601. Chanel, Inc. v. replicachanelbag
2018 WL 7144486 , S.D.Fla. , Dec. 11, 2018

1602. Chanel, Inc. v. 100chanel.com.ua
2019 WL 7754593 , S.D.Fla. , Jan. 28, 2019

1603. Chanel, Inc. v. 100chanel.com.ua
2019 WL 4723787 , S.D.Fla. , Feb. 07, 2019

1604. Cartier International A.G. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 1989209 , S.D.Fla. , Feb. 26, 2019

1605. Gucci America, Inc. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 1989212 , S.D.Fla. , Mar. 08, 2019

1606. Cartier International A.G. v. Buying
2019 WL 1989627 , S.D.Fla. , Mar. 13, 2019

1607. Gucci America, Inc. v. Hut
2019 WL 1989202 , S.D.Fla. , Mar. 20, 2019

1608. Chanel, Inc. v. 100chanel.com.ua
2019 WL 13143559 , S.D.Fla. , Apr. 04, 2019

1609. Rolex Watch USA v. Watch Empire LLC
2019 WL 13243999 , C.D.Cal. , Apr. 26, 2019

1610. Malletier v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 4731938 , S.D.Fla. , Apr. 26, 2019

*Ordered Unsealed by*

1611. Louis Vuitton Malletier v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 4794449 , S.D.Fla. , Apr. 26, 2019

1612. Chanel, Inc. v. fashionbestchanel.com
2019 WL 7708495 , S.D.Fla. , Apr. 26, 2019

1613. Chanel, Inc. v. fashionbestchanel.com
2019 WL 7708868 , S.D.Fla. , Apr. 26, 2019

1614. Chanel, Inc. v. fashionbestchanel.com
2019 WL 3890869 , S.D.Fla. , May 09, 2019

*Report and Recommendation Adopted by*

1615.  Chanel, Inc. v. fashionbestchanel.com
2019 WL 3890297 , S.D.Fla. , May 30, 2019

1616.  Louis Vuitton Malletier v. Caromy&LV
2019 WL 3890872 , S.D.Fla. , May 14, 2019

*Report and Recommendation Adopted by*

1617.  Louis Vuitton Malletier v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"
2019 WL 3890298 , S.D.Fla. , May 29, 2019

1618.  Cartier International A.G. v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2019 WL 3409687 , S.D.Fla. , May 31, 2019

1619.  Louis Vuitton Malletier v. aaalvshop.com
2019 WL 7911372 , S.D.Fla. , Aug. 13, 2019

1620.  Louis Vuitton Malletier v. aaalvshop.com
2019 WL 7938517 , S.D.Fla. , Aug. 13, 2019

*Subsequent Determination*

1621.  Louis Vuitton Malletier v. aaalvshop.com
2019 WL 4731953 , S.D.Fla. , Aug. 28, 2019

1622.  Tiffany (NJ) LLC v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"
2020 WL 6748785 , S.D.Fla. , Apr. 15, 2020

1623.  Tiffany (NJ) LLC v. GUOGUOSHENGYI BEANS Store
2020 WL 3316048 , S.D.Fla. , Apr. 30, 2020

*Report and Recommendation Adopted by*

1624.  Tiffany (NJ) LLC v. Individuals, Partnerships, and Unincorporated Associations Identified on Schedule "A"
2020 WL 4501786 , S.D.Fla. , May 18, 2020

1625.  Louis Vuitton Malletier v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2020 WL 4501765 , S.D.Fla. , June 09, 2020

1626.  Louis Vuitton Malletier v. Individuals, Partnerships and Unincorporated Associations Identified on Schedule "A"
2020 WL 4514660 , S.D.Fla. , June 10, 2020

1627.  Chanel, Inc. v. What Comes Around Goes Around LLC
2020 WL 5522889 , S.D.N.Y. , June 16, 2020

1628.  Louis Vuitton Malletier v. Jessica Digital Store
2020 WL 4501774 , S.D.Fla. , June 25, 2020

1629.  Tiffany (NJ) LLC v. Cheny No.2 Store
2020 WL 6828548 , S.D.Fla. , Sep. 16, 2020

1630.  Richemont International SA v. montblanchot.com
2020 WL 5763931 , S.D.Fla. , Sep. 28, 2020

1631.  Richemont International SA v. montblanchot.com
2020 WL 5775329 , S.D.Fla. , Sep. 28, 2020

*Subsequent Determination*

1632.  Richemont International SA v. montblanchot.com
2020 WL 5884743 , S.D.Fla. , Oct. 02, 2020

1633.  Richemont International SA v. Montblanchot.com
2020 WL 9210741 , S.D.Fla. , Nov. 02, 2020

1634.  Tiffany (NJ) LLC v. tiffanycorp.cn
2020 WL 9065885 , S.D.Fla. , Nov. 04, 2020

1635.  Malletier v. aaalvsale.com
2021 WL 1428374 , S.D.Fla. , Apr. 15, 2021

1636.  Louis Vuitton Malletier v. aaalvsale.com
2021 WL 10382830 , S.D.Fla. , Apr. 28, 2021

1637.  Tiffany and Company v. Costco Wholesale Corp.
2021 WL 1687324 , S.D.N.Y. , Apr. 29, 2021

1638.  Tiffany (NJ) LLC v. replicatiffany.to
2021 WL 10429689 , S.D.Fla. , June 21, 2021

1639.  Tiffany (NJ) LLC v. replicatiffany.to
2021 WL 4990684 , S.D.Fla. , July 07, 2021

1640.  Chanel, Inc. v. WGACA, LLC
2021 WL 4777660 , S.D.N.Y. , Aug. 11, 2021

1641.  ROLEX WATCH U.S.A., INC. Plaintiff, v. BECKERTIME, LLC and MATTHEW BECKER Defendants.
2021 WL 4311450 , N.D.Tex. , Sep. 21, 2021

1642.  Richemont International SA v. chloedanmark.org
2021 WL 6134793 , S.D.Fla. , Nov. 18, 2021

1643.  Chanel, Inc. v. replicsachanel.com
2021 WL 9098088 , S.D.Fla. , Dec. 16, 2021

1644.  Chanel, Inc. v. replicsachanel.com
2022 WL 2805021 , S.D.Fla. , Jan. 06, 2022

1645.  Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 1664088 , S.D.Fla. , Feb. 11, 2022

1646. Louis Vuitton Malletier v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 1664097 , S.D.Fla. , Feb. 17, 2022

1647. Amazon.com, Inc. v. Phmn9y3v
2022 WL 22896232 , W.D.Wash. , July 07, 2022

1648. Chanel, Inc. v. wantreplicachanel.com
2022 WL 4594114 , S.D.Fla. , July 08, 2022

1649. Amazon.com, Inc. v. Phmn9y3v
2022 WL 16856951 , W.D.Wash. , Oct. 21, 2022

1650. Chanel, Inc. v. replicachanelproduct.com
2022 WL 19919651 , S.D.Fla. , Oct. 28, 2022

1651. Chanel, Inc. v. replicachanelproduct.com
2022 WL 17987223 , S.D.Fla. , Nov. 10, 2022

1652. Gucci America, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2022 WL 18956174 , S.D.Fla. , Dec. 21, 2022

1653. Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A,"
2023 WL 8307597 , S.D.Fla. , Jan. 10, 2023

1654. Amazon.com, Inc. v. Phmn9y3v
2023 WL 1869291 , W.D.Wash. , Jan. 11, 2023

1655. Richemont International SA v. cartierclone.com
2023 WL 5625540 , S.D.Fla. , Mar. 23, 2023

*Subsequent Determination*

1656. Richemont International SA v. cartierclone.com
2023 WL 5625509 , S.D.Fla. , Apr. 07, 2023

1657. Richemont International SA v. Cartierclone.com
2023 WL 5658885 , S.D.Fla. , Mar. 23, 2023

1658. Amazon.com Inc. v. Phmn9y3v
2023 WL 2663217 , W.D.Wash. , Mar. 28, 2023

1659. Rolex Watch USA Inc. v. Beckertime LLC.
2023 WL 4155430 , N.D.Tex. , Mar. 28, 2023

*Report and Recommendation Adopted by*

1660. Rolex Watch U.S.A., Inc. v. Beckertime, LLC
2023 WL 4106223 , N.D.Tex. , June 21, 2023

1661. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2023 WL 3600414 , S.D.Fla. , Mar. 28, 2023

1662. Louis Vuitton Malletier v. ablvmall.shop
2023 WL 6308714 , S.D.Fla. , May 09, 2023

1663. Louis Vuitton Malletier v. ablvmall.shop
2023 WL 4363864 , S.D.Fla. , May 24, 2023

1664. Chanel, Inc. v. replicachanelpurses.com
2023 WL 5625547 , S.D.Fla. , June 26, 2023

1665. Chanel, Inc. v. replicachanelpurses.com
2023 WL 5658877 , S.D.Fla. , June 26, 2023

1666. Chanel, Inc. v. replicachanelpurses.com
2023 WL 5625546 , S.D.Fla. , July 14, 2023

1667. Amazon.com Inc. v. Phmn9y3v
2023 WL 4581812 , W.D.Wash. , July 18, 2023

1668.  Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2023 WL 6310548 , S.D.Fla. , Aug. 11, 2023

1669.  Malletier v. Individual, Business Entity, or Unincorporated Association
2023 WL 11946471 , S.D.Fla. , Aug. 22, 2023

1670.  Chanel, Inc. v. 24/7 Go Live
2023 WL 9472048 , S.D.Fla. , Nov. 17, 2023

*Subsequent Determination*

1671.  Chanel, Inc. v. 24/7 Go Live
2023 WL 8370441 , S.D.Fla. , Dec. 03, 2023

1672.  Chanel, Inc. v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2023 WL 11955978 , S.D.Fla. , Nov. 28, 2023

1673.  Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2023 WL 11955980 , S.D.Fla. , Nov. 28, 2023

1674.  Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2023 WL 8720124 , S.D.Fla. , Dec. 18, 2023

1675.  OMEGA SA, Plaintiff, v. THE INDIVIDUAL, BUSINESS ENTITY, OR UNINCORPORATED ASSOCIATION d/b/a GSJXZR.com, Defendant.
2024 WL 5159796 , S.D.Fla. , Jan. 24, 2024

1676.  Chanel, Inc. v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 1178983 , S.D.Fla. , Jan. 31, 2024

1677.  Chanel, Inc. v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 1188251 , S.D.Fla. , Jan. 31, 2024

1678.  Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 1178211 , S.D.Fla. , Feb. 22, 2024

1679.  IN THE MATTER OF CERTAIN HANGBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF SEIZURE AND FORFEITURE ORDER
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Feb. 27, 2024

1680.  IN THE MATTER OF CERTAIN HANGBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF SEIZURE AND FORFEITURE ORDER
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Feb. 27, 2024

1681.  IN THE MATTER OF CERTAIN HANGBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF SEIZURE AND FORFEITURE ORDER
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Feb. 27, 2024

1682.  IN THE MATTER OF CERTAIN HANGBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF SEIZURE AND FORFEITURE ORDER
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , Feb. 27, 2024

1683.  Amazon.com Inc. v. Phmn9y3v
2024 WL 2087320 , W.D.Wash. , May 07, 2024

1684.  IN THE MATTER OF CERTAIN HANGBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF SEIZURE AND FORFEITURE ORDER
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , June 10, 2024

1685.  IN THE MATTER OF CERTAIN HANGBAGS, LUGGAGE, ACCESSORIES, AND PACKAGING THEREOF SEIZURE AND FORFEITURE ORDER
USITC Inv. No. 337-TA-754 , U.S.Intern.Trade Com'n , June 10, 2024

1686.  Chanel, Inc. v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 4009536 , S.D.Fla. , June 24, 2024

1687.  Chanel, Inc. v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 4009602 , S.D.Fla. , June 24, 2024

1688.  Omega SA v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 4009219 , S.D.Fla. , June 25, 2024

1689. Omega SA v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 4009555 , S.D.Fla. , June 25, 2024

1690. Chanel, Inc. v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 3537917 , S.D.Fla. , July 09, 2024

1691. Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 4009436 , S.D.Fla. , July 11, 2024

1692. Omega SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 4003703 , S.D.Fla. , July 12, 2024

1693. Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 4009600 , S.D.Fla. , July 17, 2024

1694. Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 4003732 , S.D.Fla. , Aug. 07, 2024

*Report and Recommendation Adopted by*

1695. Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A,"
2024 WL 3912675 , S.D.Fla. , Aug. 23, 2024

1696. CHANEL, INC., Plaintiff, v. 21442995, AN INDIVIDUAL, BUSINESS ENTITY, OR UNINCORPORATED ASSOCIATION, Defendant.
2024 WL 5508124 , S.D.Fla. , Sep. 27, 2024

1697. Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 5433923 , S.D.Fla. , Nov. 08, 2024

1698. Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 5433924 , S.D.Fla. , Nov. 08, 2024

1699.  Tiffany (NJ) LLC v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2024 WL 5433928 , S.D.Fla. , Nov. 12, 2024

1700.  Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 5434030 , S.D.Fla. , Nov. 12, 2024

1701.  Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 5433116 , S.D.Fla. , Nov. 22, 2024

1702.  Tiffany (NJ) LLC v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2024 WL 5433109 , S.D.Fla. , Dec. 03, 2024

1703.  Chanel, Inc. v. Individuals, Business Entities
2024 WL 5508189 , S.D.Fla. , Dec. 13, 2024

1704.  TISSOT SA, Plaintiff, v. THE INDIVIDUALS, BUSINESS ENTITIES, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," Defendants.
2025 WL 1433739 , S.D.Fla. , Jan. 08, 2025

1705.  Tissot SA v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2025 WL 1442372 , S.D.Fla. , Jan. 09, 2025

1706.  Tissot SA v. Rotwatches.com
2025 WL 1433735 , S.D.Fla. , Jan. 21, 2025

1707.  Chanel, Inc. v. Individuals, Business Entities , and Unincorporated Associations Identified on Schedule "A"
2025 WL 1759428 , S.D.Fla. , Feb. 12, 2025

1708.  Chanel, Inc. v. Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A"
2025 WL 1764557 , S.D.Fla. , Feb. 12, 2025

1709. Rolex Watch U.S.A., Inc. v. Jewelry Unlimited, Inc.
2025 WL 635758 , N.D.Ga. , Feb. 21, 2025

1710. CHANEL, INC., Plaintiff, v. THE INDIVIDUALS, BUSINESS ENTITIES, AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," Defendants.
2025 WL 1754772 , S.D.Fla. , Mar. 17, 2025

1711. CHANEL, INC., Plaintiff, v. WGACA, LLC; WHAT COMES AROUND GOES AROUND LLC d/b/a WHAT
GOES AROUND COMES AROUND; MHW PROPERTIES, INC.; WGACA WEB, LLC; PINES VINTAGE, INC.;
VINTAGE DESIGNS LTD.; and WCAGA LA, LLC, Defendants.
2025 WL 1765857 , S.D.N.Y. , June 26, 2025

WESTLAW     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 1958361
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

JSC FOREIGN ECONOMIC ASSOCIATION
TECHNOSTROYEXPORT, Plaintiff,
v.
INTERNATIONAL DEVELOPMENT AND
TRADE SERVICES, INC., et al., Defendants.

No. 03Civ.5562JGKAJP.
|
Aug. 16, 2005.

*OPINION AND ORDER*

PECK, Chief Magistrate J.

**\*1** Plaintiff JSC Foreign Economic Association Technostroyexport ("JSC") submitted Proposed Findings of Fact and Conclusions of Law to further support this Court's prior award from the bench of attorneys' fees against defendant Brigette R. Jossem ("Jossem") for failing to produce relevant documents in response to JSC's discovery requests. Defendant Jossem filed an Opposition to Plaintiff's Proposed Findings of Fact and Conclusions of Law. (Dkt. No. 427.)

For the reasons set forth below, the Court awards plaintiff JSC attorneys' fees of $108,946 against Jossem pursuant to Fed.R.Civ.P. 37 and, to the extent necessary, the Court's inherent power.

*FINDINGS OF FACT*

JSC seeks sanctions against Jossem for failing to produce documents concerning, *inter alia,* Jossem's involvement with Christie's, the famed auction house.

Jossem has been a regular customer of Christie's since approximately 1993, when she began to make auction purchases with money that JSC alleges was looted by Jossem's mother, defendant Edith Reich, from defendant IDTS. (*See* JSC Findings of Fact ["FOF"] ¶ 1.) [1] In July 1996, four months after the arbitration awards in the underlying case

between JSC and defendant IDTS became final, Jossem, who until that time maintained a Christie's account in her own name, directed Christie's to use the name Burnett Trading Ltd. for all future transactions. (JSC FOF ¶ 2; Tiska Aff. Ex. 2: Dep. Ex. Christie's 19.) Jossem told Christie's that the name change was an "extremely urgent matter" and directed that the name Jossem "should not be associated with any stock number whatsoever" in Christie's computerized files. (Tiska Aff. Ex. 2: 7/11/96 Christie's Message.) From 1996 until the end of 2003, Jossem, using the name Burnett Trading, sold items at Christie's for more than $9.1 million and made purchases of about $1.7 million. (JSC FOF ¶ 3 n. 2; Tiska Aff. Ex. 4: Christie's Sale Summaries.)

[1]    The Court notes that although defendant Jossem was directed to submit counter-proposed Findings and Conclusions (*see* Dkt. No. 423: 12/6/04 Peck Order), Jossem did not submit any proposed Findings of Fact, but merely argued that plaintiff JSC was not entitled to sanctions as a matter of law. (*See* Dkt. No. 427: Jossem Opposition.)

On October 16, 2003, JSC served its first request for production of documents in this action. (JSC FOF ¶ 4; Tiska Aff. Ex. 7: JSC First Request for Production of Documents.) Among other things, JSC requested the following:

58. All documents concerning any purchase or sale by Reich, Jossem or Barnett Trading through Christie's or Sotheby's.

....

92. Documents sufficient to identify all artwork, jewelry or other items purchased or sold by Reich, Jossem or B[u]rnett Trading through Christie's or Sotheby's.

....

94. Documents sufficient to show the disposition of funds received by Reich, Jossem or B[u]rnett Trading for any sale of artwork, jewelry or other item through Christie's or Sotheby's.

(*Id.*)

On November 12, 2003, a little over a month after the first discovery request, Jossem stopped using the name Burnett in her dealings with Christie's and entered into a new consignment agreement under the name Hackney Group Limited ("Hackney"). (JSC FOF ¶¶ 5-6; Tiska Aff. Ex.

9: Hackney Consignment Agreement.) In December 2003, Jossem attempted to consign belongings from her East 72nd Street residence to Christie's under the Hackney name, with the help of one of her foreign attorneys, Michael Shine. (JSC FOF ¶ 7; Tiska Aff. Ex. 3: McGorry Dep. at 71-73.) In light of this lawsuit, however, Christie's declined to enter into the agreement with Hackney, and Jossem was forced to use her own name in the transaction. (*Id.* at 71-73, 75-76; Triska Aff. Ex. 12: 1/15/2004 Jossem Consignment Agreement.) In January 2004, Jossem met with Edward McGorry and Simon Teakle, executives at Christie's, and informed them that "she was going to be consigning property to Christie's over the course of the next few months, and would like an advance against those funds." (JSC FOF ¶ 9; Tiska Aff. Ex. 3: McGorry Dep. at 54, 66.) A few days after the meeting with McGorry and Teakle, Jossem met with Melissa Gagen, a Christie's representative, to show her the furniture that she wished to consign, as well as the receipts for the many pieces she had purchased at Sotheby's auctions in England in 1993. (JSC FOF ¶ 10; Tiska Aff. Ex. 3: McGorry Dep. at 104-05; Tiska Aff. Ex. 13: Gagen Aff. ¶ 4.) Gagen told Jossem in a January 24, 2004 letter that Christie's would include most of Jossem's items in furniture auctions scheduled for April 8 and May 19, 2004. (Tiska Aff. Ex. 14: Gagen Letter.) [2]

[2]    Jossem never produced any of the documents relating to any of her 2003-2004 dealings with Christie's or Sotheby's. (JSC FOF ¶ 11 .)

*2  Despite an Order to Show Cause for an attachment order signed by Judge Koeltl on February 3, 2004 and sent to counsel for Jossem that day, on February 4, 2004, Jossem arranged for another Christie's advance for $275,000 against twenty-one pieces of furniture. (JSC FOF ¶ 12; Tiska Aff. Ex. 15: 2/4/2004 Advance.) On February 10, 2004, Jossem's counsel Shine sent Christie's McGorry an e-mail providing him with "the bank co-ordinates for remitting the advance proceeds from time to time in the current situation," and directed Christie's to wire the funds to an account in the name of "Herzog, Fox Neeman" at the United Mizrahi Bank in London. (JSC FOF ¶ 13; Tiska Aff. Ex. 16: 2/10/2004 Shine e-mail; Tiska Aff. Ex. 3: McGorry Aff. at 158-60.) On February 12, 2004, Christie's wired $275,000 to the Herzog, Fox Neeman's London account. (JSC FOF P13; Tiska Aff. Ex. 17.) No documents concerning these transactions were produced to JSC by Jossem. (JSC FOF ¶ 13.) Herzog, Fox Neeman is defendants' Israeli law firm, which acted more as a banker than as counsel.

Over the next month, Jossem continued to dispose of her property through Christie's, receiving another advance of $165,000 which Christie's wired to the Herzog, Fox Neeman account. (JSC FOF ¶ 14; Tiska Aff. Ex. 17.) On March 13, Judge Koeltl issued the Attachment Order and notified counsel for Jossem. (JSC FOF ¶ 15; Tiska Aff. Ex. 21: 3/13/04 Attachment Order.) However, on March 17, 2004, Jossem ignored the order and consigned jewelry and art to Christie's and arranged for yet another advance of $180,000 from Christie's into the Herzog, Fox Neeman account. (JSC FOF ¶ 15; Tiska Aff. Ex. 3: McGorry Dep. at 139-40, 141-43; Tiska Aff. Ex. 22: 3/17/2004 Advance.) All told, Christie's paid Jossem $970,000 in advances under the January 15, 2004 Consignment Agreement, all of which Christie's wired overseas at Jossem's direction to accounts not in Jossem's name. (JSC FOF ¶ 15; Tiska Aff. Ex. 22.)

On April 2, 2004, the United States Marshal Service served Jossem with the Attachment Order. (JSC FOF ¶ 16; Tiska Aff. Ex. 23: 4/2/2004 Attachment Order.) On April 8, Jossem allowed Christie's auction of her furniture to go forward and two of her items were sold, although the funds remain at Christie's pursuant to an agreement among Christie's, JSC and defendants in connection with this suit. (JSC FOF ¶ 16; Tiska Aff. Ex. 26: 2d Am. Garnishee's Statement; Tiska Aff. Ex. 27, Ex. A: 4/16/2004 Christie's Agreement.)

After JSC had learned that Jossem had consigned property to Christie's, supplemental discovery requests were served on Christie's, which led to the production of approximately 3,000 documents relating to Christie's dealings with Jossem, Burnett, and Hackney. (JSC FOF ¶ 17.) On April 20, 2004, JSC served its second request for production of documents on Jossem. (JSC FOF ¶ 17; Tiska Aff. Ex. 28.)

JSC also filed an ex parte motion for a supplemental order in aid of the attachment order, which Judge Koeltl granted, authorizing JSC and the U.S. Marshal to seize Jossem's personal property at her East 72nd Street Manhattan apartment and her home in Amagansett. (JSC FOF ¶ 18.) During the seizure, JSC's counsel found "hundreds of documents relating to transactions between Ms. Jossem and various auctions houses, including Christie's and Sotheby's. Some of those documents involved or related to Burnett Trading.... Ms. Jossem has never produced any documents in this action regarding her transaction with Christie's, Sotheby's or any other auction house. No documents concerning Ms. Jossem's dealings or involvement with Christie's, Sotheby's or Burnett were produced to [JSC] in this action before Christie's

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 314 of 364

April 2004 production." (Tiska Aff. Ex. 29: Dunn Aff. ¶ 19.) Defense counsel, however, prevented JSC's counsel from taking the documents found in the apartment.

**\*3**  On May 14, 2004, JSC moved for an order holding Jossem in contempt based on her violations of the attachment order and seeking sanctions for her failure to produce documents; Judge Koeltl referred that motion to this Court. (Tiska Aff. Ex. 1: 5/14/2004 Koeltl Conf. at 15-18.) At the May 21, 2004 conference before this Court, JSC raised Jossem and Reich's failure to produce the responsive documents found in defendants' Manhattan apartment-in essence, seeking to compel the production of the Apartment Documents. (Dkt. No. 197:5/21/2004 Peck Conf. Tr.; *see* JSC FOF ¶ 20.) During the conference, this Court ordered that (1) any assertion of the Fifth Amendment by defendants "needs to be a sufficiently asserted Fifth Amendment privilege that the court can rule on, not just a blanket, I assert the Fifth now, find me 6 weeks later ..."; and (2) to the extent any of the documents in the apartment were covered by JSC's first document request, all objections were "waived ... no new objections so to speak." (*Id.* at 11-12, 21; *see* JSC FOF ¶ 20.)

On June 14, 2004, however, Jossem's counsel (David Newman of the firm Sonnenschein Nath & Rosenthal) submitted a letter to the Court on behalf of Jossem and Reich, stating simply:

> My clients object to the requests to the extent that they seek documents or information that might tend to incriminate them and whose required production would violate their constitutional rights pursuant to the Fifth Amendment of the United States Constitution.

In light of the foregoing, my clients will not be producing any documents at this time. (Tiska Aff. Ex. 31: 6/14/2004 Newman Letter; *see* JSC FOF ¶ 21.) The letter, obviously, did not comply with the Court's directive.

The issue was next raised at the June 28, 2004 conference with the Court. (*See* 6/28/04 Peck Conf. Tr.; *see also* Dkt. No. 378: Kawatra Aff. Ex. A: 6/24/04 Tiska Letter to Court.) Because JSC asserted that Jossem's predecessor counsel waived any Fifth Amendment privilege, the Court required Jossem to

submit an affidavit from predecessor counsel as to whether the Fifth Amendment privilege was asserted or waived in conversations with JSC's counsel in response to the first document requests. (Dkt. No. 292: Delfin Aff. Ex. B: 6/28/04 Peck Conf. Tr. at 6-8.) Jossem's counsel also was directed to personally review the thousands of withheld Apartment Documents and put in further submissions supporting the Fifth Amendment assertion. (Delfin Aff. Ex. B: 6/28/04 Peck Conf. Tr. at 10-12, 16-18.) The Court also specifically warned Jossem's counsel that if the Court had to review many documents to see if the privilege claim was valid and if Jossem lost on this issue, Rule 37 cost sanctions would be imposed. (*Id.* at 18.) After that conference, JSC submitted additional information which the Court required Jossem's counsel to respond to. (Delfin Aff. Ex. C: 7/2/04 Memo Endorsed Order.) The Court also directed Jossem to provide a formal privilege log and to provide the withheld Apartment Documents to the Court for *in camera* review. (Delfin Aff. Ex. D: 7/12/04 Memo Endorsed Order.)

**\*4**  At the next conference, on July 15, 2004, this Court again took up the issue of the four boxes of Apartment Documents that defendant Jossem was declining to produce on Fifth Amendment grounds. (*See generally* Delfin Aff. Ex. E: 7/15/04 Peck Conf. Tr. at 17-28.) The Court noted that based on its review of one box of withheld documents, many of the documents appeared to be corporate documents, and corporations have no Fifth Amendment privilege. (*Id.* at 17-18.) The Court noted that Jossem's "privilege log" was not sufficient to support her Fifth Amendment claim. (*Id.* at 19.) When Jossem's counsel responded that while a "lot of these documents, as you are aware, appear to be corporate documents because of the letterhead.... But the fact of the matter is is that this is an alter ego case and possession-" (*id.* at 22-23), the Court responded that "[w]hat you are basically saying is if I [order you to] produce any of these documents I may help prove the plaintiff's [alter ego] case," but that is not a basis to assert the Fifth Amendment. (*Id.* at 23.) Because Jossem's prior counsel, Williams & Connolly, had represented in response to the first document request that no documents were withheld on the basis of the Fifth Amendment privilege, the Court ruled that it needed an affidavit as to when Jossem obtained the Apartment Documents, and whether the subjects of the Apartment Documents were the same as any documents that Williams & Connolly actually provided:

> THE COURT: Give me an affidavit from Ms. Reich or Ms. Jossem or anybody else with direct, personal knowledge as to when these documents came into their custody, as compared to the date that Williams and Connolly made

their representation that they were not withholding any documents on the basis of the Fifth Amendment.

In addition, I want an affidavit from counsel stating that you have reviewed the prior document production and whether these documents are on any of the same subject matters or the same issues of fear of criminal prosecution. Because if so, then [the Fifth Amendment privilege is] waived.

(*Id.* at 25-26; *see also id.* at 27-28.)

On July 26, 2004, Jossem's counsel submitted an affidavit concluding "that of the 8,474 pages of documents that they initially claimed were privileged, close to 6,000 were, in fact, not privileged." (JSC FOF ¶ 27; *see* Delfin Aff. Ex. H: Akbar 7/26/04 Aff. ¶¶ 15-16; Kawatra Aff. Ex. C: Newman 7/26/04 Letter to Court.) Jossem, however, now claimed that some of the documents that were not protected by the Fifth Amendment were covered by the attorney-client privilege. (Akbar 7/26/04 Aff. ¶ 17; Newman 7/26/04 Letter to Court at 1.) Jossem's counsel also informed the Court that Jossem would not be providing an affidavit as to when she obtained possession of the Apartment Documents, but instead would be filing objections with Judge Koeltl. (JSC FOF ¶ 27; Newman 7/26/04 Letter to Court at 2.) In light of Jossem's objections, the Court issued a written order further explaining its reasoning, as follows:

**\*5** While Reich's and Jossem's prior counsel did not withdraw the general objection of Fifth Amendment privilege, he did represent to plaintiff's counsel that no responsive documents were being withheld on that basis. If defendants obtained possession of these documents at a later time, that withdrawal of the general objection, in fairness, should not apply to those documents. If, on the other hand, defendants possessed the documents now in issue, at that time, their counsel's representation that no documents were being withheld on Fifth Amendment grounds should apply to those documents and thus the documents would need to be produced. Counsel represents and speaks for the client, and if defendants withheld these documents from their counsel,[1] causing counsel to not assert the privilege, defendants should not obtain an advantage.

The Court notes moreover, that defendants and their current counsel were quite prepared to assert a blanket privilege as to all four boxes of documents, on an *ipse dixit* basis; only after the more careful review ordered by the Court were

defendants forced to withdraw their privilege assertion as to 90% of the withheld documents. That, and other conduct by defendants, supports the Court's concern of "gamesmanship" by defendants Reich and Jossem.

The Court reiterates that absent some showing that defendants Reich and Jossem did not possess the withheld documents at the time their prior counsel represented to plaintiffs that no responsive documents were being withheld on Fifth Amendment privilege grounds, the documents need to be produced.[2]

[1] The "assuming *arguendo"* suggestion in defendants' objections that the earlier non-production was through "inadvertence" is totally unsupported by the record. It is as likely, if not more so, that defendants intentionally did not provide these documents to their counsel for review and production because the documents may be proof of plaintiff's alter ego claims.

[2] The affidavit need not come from Reich and Jossem. If, hypothetically, Professor Moriarty was holding these documents and turned them over to defendants after the document production by prior counsel, Professor Moriarty can provide an affidavit. Thus, the Court's requirement of an affidavit from someone with personal knowledge does not require defendants, who have generally asserted their Fifth Amendment rights, to provide an affidavit.

(Kawatra Aff. Ex. D: 7/27/04 Peck Order.)

Jossem (and Reich) declined to produce an affidavit as to when they obtained the Apartment Documents (Kawatra Aff. Ex. G: 8/2/04 Akbar Letter to Court), and the Court therefore found that any Fifth Amendment privilege in the remaining Apartment Documents was waived:

> The Court finds waiver of the privilege as to these documents because prior counsel waived (or did not assert) the privilege for the original document production. In the absence of information to the contrary, the Court finds that defendants Reich & Jossem had "possession, custody or control" of the documents at that time and thus they should have been

provided, or the privilege asserted, at that time.... (Since defense counsel knew defendants would/could not provide an affidavit, one wonders why counsel wasted my and Judge Koeltl's time with extensions and stays.)

**\*6** (Kawatra Aff. Ex. G: 8/3/04 Peck Memo Endorsed Order.) The Court now explicitly finds that Jossem and her counsel (the Sonnenschein firm) acted in bad faith in seeking stays of the time to provide an affidavit that they knew they would not provide. The Court finds that Jossem and her counsel engaged in a strategy of delay.

Jossem again sought a stay and filed objections with Judge Koeltl. (*See* JSC FOF ¶¶ 33-34.) After both sides briefed the issue, Jossem did an about face-she withdrew her objections and provided all of the documents formerly withheld on Fifth Amendment privilege grounds, only withholding from production documents she claimed were subject to the attorney-client privilege. (Kawatra Aff. Ex. K: Akbar 8/12/04 Letter to Judge Koeltl at 1; *see* JSC FOF ¶ 36.) The ostensible basis for Jossem's change of position was counsel's analysis of JSC's papers opposing Jossem's objections "and conferring with [Jossem's] prior counsel" (*id.*), the former of which merely repeated assertions previously made before this Court and the latter of which had allegedly occurred before.

In short, the Court finds that Jossem (and her counsel, the law firm of Sonnenschein Nath & Rosenthal) had interposed the Fifth Amendment claim purely for purposes of delay and acted in bad faith, resulting in considerable legal expenses for JSC.

On August 16, 2004, defendants produced a privilege log identifying 39 of the Apartment Documents as allegedly subject to the attorney-client privilege. (JSC FOF ¶ 37; Kawatra Aff. Ex. L: Newman 8/16/04 Aff. ¶ 5.) The Court rejected the privilege log at the August 16, 2004 conference, because "what this doesn't indicate is who is asserting the privilege, which is one of the things we had talked about before; in other words, some of these may be individual documents of Ms. Jossem [or] Reich, others appear to be corporate documents of corporations, who you do not represent and who are in default in the litigation." (Kawatra Aff. Ex. M: 8/16/04 Peck Conf. Tr. at 3.) On August 18, 2004, Jossem produced a revised privilege log, now claiming privilege as to only 23 documents. (JSC FOF ¶ 38; Kawatra

Aff. Ex. N: Amended Privilege Log.) After further discussion among the parties, Jossem withdrew the claim of attorney-client privilege to all but six documents (which JSC did not challenge). (JSC FOF ¶ 39 & n. 16; Kawatra Aff. Ex. O: Tiska 8/26/04 Letter to Court.)

In short, of the more than 8,400 documents found in the apartment, after months of litigation, at great expense to JSC (and extensive involvement by this Court and Judge Koeltl), Jossem was required to produce all but six documents. [3]

[3]    As JSC points out, in addition to the documents finally produced, Jossem neither produced, nor explained why she did not previously produce or currently have, certain documents about Patricia, Inc., and documents about her dealings with Christie's in 2003-2004. (*See* JSC FOF ¶¶ 42-44.)

Not surprisingly, JSC moved for attorneys' fees in connection with the discovery disputes concerning the Apartment Documents. (Dkt. Nos. 364-65; *see also* JSC FOF ¶ 40.)

At a hearing on September 21, 2004, the Court heard oral argument on the attorneys' fees motion. (9/21/04 Peck Conf. Tr. at 21-42.) Jossem's counsel's only argument as to why the Court should not require Jossem to pay JSC's legal fees in connection with the applications to the Court that lead to production of the Apartment Documents is that JSC did not show "prejudice":

**\*7** THE COURT: ... Why shouldn't the court order attorney's fees of the nature that I have just described under the *Residential Funding* ruling, and then we'll go on to the more serious issue of why the court should not also order repatriation.

MR. AKBAR [Jossem's counsel]: Our argument as set forth in our papers, our primary argument is that you have to have a showing of prejudice in order to-

THE COURT: The prejudice is it costs them X thousands of dollars of attorney's fees to get documents that your clients under the rules were required to produce merely because they had a discovery request. So, focusing on the attorney's fees, are you really telling me that's not a showing of prejudice sufficient under your view of the law, whether that view of needing to show prejudice is correct or not?

MR. AKBAR: It's not a showing of prejudice because assuming hypothetically that these documents had been discovered in February and the same objections had been made, the same motion practice could have been made about it, they still would have had to go through the same-

THE COURT: *And under Rule 37 the loser pays if the court wishes to go that route on any discovery motion. Agreed?*

MR. AKBAR: *Agreed.*

THE COURT: OK. So you lost.

They made motions, the court ruled. The court held your feet to the fire. You went to Judge Koeltl and got stays. After all of that was said and done, you sat down and read the documents and said, Oh, half the documents are the same genre of what we previously produced. Here they are. And then in a subsequent wave, after further litigation, Oh, we are withdrawing the claims of privilege. And there was another wave in there.

So why on all of that isn't that a no-brainer that they get their attorney's fees on everything having to do with the document production of the documents that were discovered only through a combination of learning from Christie's that certain things exist and then tripping across documents when they were otherwise in the apartment for the asset seizure.

MR. AKBAR: I think what this comes back to is, the point we make in our papers was simply that when they moved for their order of attachment in early February there was no representation to them that all documents have been produced at that point.

THE COURT: Was such a representation made?

MR. AKBAR: Subsequently, I believe in February, Mr. Oldham from Williams & Connolly said that they had finished producing documents.

THE COURT: And yet these documents, some of which existed at that time, were not produced, existed in the sense of they came out of Christie's or other sources, and we don't know why your clients either didn't have them then or didn't produce them.

MR. AKBAR: That's correct. We don't know, and when they-

THE COURT: Whose burden is that?

MR. AKBAR: Well, I don't know what Mr. Zymelman and Mr. Oldman [predecessor counsel] did. I've spoken with them about this issue.

**\*8** THE COURT: You and they are the same person. I don't mean that in it's metaphysical sense. You are both counsel for Reich and Jossem.

MR. AKBAR: That is right.

THE COURT: If you don't know what they did, that's your problem. If the question is, as it appears, that either your clients didn't have these documents or they had them and didn't give them to their lawyer-and, because of the lack of information from your clients the court is and does assume the latter. Call that using an inference in a discovery, but that's what the court assumes, that your clients had these documents and for whatever reason, I think we can assume the reason has to do with their unwillingness to let the plaintiff know their assets, didn't give them to Williams & Connolly. So, again, coming back to all of this, whether-repatriation and the timing as such is a separate issue, and prejudice, and we'll come to that in a minute-is there anything that you can tell me that can prevent me from finalizing my tentative ruling, at least to the extent of ordering reimbursement of reasonable attorney's fees with that amount to be determined hopefully by a negotiation among the parties, but then, barring that-and I suggest it won't work just because that seems to be the nature of this case-a court order.

If the answer is you have nothing to add to what you have already said in your papers, I'm not trying to torture you personally.

MR. AKBAR: I appreciate that, your Honor.

I would simply add that the record on this motion and before the court doesn't have any indication as to when those documents did come into their possession.

THE COURT: The court believes that you have that burden and the court is prepared, even if the plaintiffs have that burden, to believe that since there has been no information from your clients and-by "you" I mean your clients, who are the only ones who have possession of that information, that whether it's an inference from the Fifth Amendment assertion or just an inference from the lack

*of information from the person who has access to it, the court assumes and rules that it is assuming that your clients had these documents and failed to give them to counsel. I can probably add willfully failed to give them to counsel.*

MR. AKBAR: Your Honor, on that I would simply say that we have our position laid out in our papers, and our primary argument rests on their lack of prejudice.

(9/21/04 Peck Conf. Tr. at 36-40, emphasis added.) At the conclusion of the oral argument on the attorneys' fee issue, the Court ruled that pursuant to Rule 37 and the *Residential Funding* case, JSC as the prevailing party on the discovery issues was entitled to its attorneys' fees, in an amount to be determined by submission of its contemporaneous time records. (*Id.* at 41-42.) The Court ruled:

THE COURT: The court rules that pursuant to Rule 37 and the court's inherent power under the *Residential Funding* case that *it is clear that the documents were produced to plaintiffs only as the result of at least three, if not more, motions or applications to this court in lieu of formal motions asking the court to handle discovery, that Rule 37 allows the winning party to be given attorney's fees in the court's discretion,* and that to the extent that any of this were to go beyond the literal wording of Rule 37, *Residential Funding* certainly gives the court, as I've already read into the record, broad discretion in fashioning an appropriate sanction, *certainly an appropriate sanction here is that Ms. Jossem pay reasonable attorney's fees incurred by plaintiff's counsel in all motions to get these documents produced,* including but not limited to this motion for sanctions and the costs of any subsequent briefing on atorney's fees applications, costs on costs as the saying goes....

**\*9** The only issue remaining is a determination of what is the exact dollar amount, and that is to be determined subsequently....

(*Id.* at 41, emphasis added.)

Based on the parties' submissions and agreement as to the amount of the fees (based on a 25% reduction of the fees initially sought by JSC) but not the imposition of fees, the Court awarded JSC $69,453 in reimbursement of attorneys' fees (and costs) for the Apartment Documents discovery applications. (Kawatra Aff. Ex. T: 10/21/04 Order; *accord,* Dkt. No. 393: 10/21/04 Order.)

Jossem filed objections with Judge Koeltl to my award of attorneys' fees to JSC. After briefing and argument, Judge Koeltl remanded the matter to me for further findings. (Dkt. No. 422: 12/4/04 Koeltl Order.) As a result of the remand, this Court directed JSC to submit proposed findings of fact and conclusions of law in support of the award of attorneys' fees sanctions, and directed Jossem "to provide counter-proposed findings ... indicating where it agrees and where it disagrees" with JSC's findings. (Dkt. No. 423: Peck 12/6/04 Order.) JSC submitted proposed Findings of Fact and Conclusions of Law, while Jossem's Opposition papers only dealt with the legal issues and, despite this Court's Order, did not address Findings of Fact. (*See* Jossem's Opp. to Plaintiff's Proposed Findings of Fact & Conclusions of Law.)

Finally, in a supplemental affidavit after submission of JSC's Findings of Fact, counsel for JSC documented an additional $35,262 in legal fees spent in connection with the Apartment Documents discovery and sanction motions (including preparation of JSC's FOF) from September 30, 2004 to December 13, 2004. (Dunn 12/22/04 Aff.) JSC also sought $4,231 in additional costs, based on the methodology previously agreed on by the parties and approved by the Court. (*Id* .)

Thus, JSC's attorneys' fees motion seeks $69,453 plus $39,493, for a total of $*108,946...* For the reasons set forth below, the Court orders Jossem to reimburse JSC for that $108,946 in attorneys' fees.

*ANALYSIS*

I. *JOSSEM IS ORDERED TO REIMBURSE JSC $108,946 PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 37(a) AND (b)* [4]

[4]  Jossem's counsel argues in its opposition to JSC's proposed findings of fact that sanctions are not appropriate because JSC is seeking sanctions under Rule 37(a) and Rule 37(b), but "[r]ather, as Jossem has consistently maintained, Rule 37(c) governs." (Jossem Opp. Proposed Findings of Fact at 2.). Although Jossem fails to offer an explanation as to why Rule 37(c) governs, the Court suspects that Jossem is attempting to argue that the responsive documents found in Jossem's apartment are Rule 26(e)(1) documents. However,

there is not a scintilla of evidence that Jossem did not have possession, custody or control of these documents at the time of JSC's first document request (indeed, the Court gave Jossem an opportunity to submit evidence as to when she obtained the Apartment Documents, but she declined to do so; *see* page 9 above). Moreover, Rule 37(c) explicitly states that "the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A)." Thus, Jossem's contention that Rule 37(c) governs is not only incorrect but irrelevant, since the Court can impose attorneys' fees under Rule 37(c), just as under Rules 37(a) & (b).

A. *Rule 37 Sanctions: Overview*

"Rule 37 of The Federal Rules of Civil Procedure addresses the consequences of a party's failure to comply with discovery orders." *Quiles v. Beth Israel Med. Ctr.,* 168 F.R.D. 15, 17 (S.D.N.Y. June 24, 1996) (Koeltl, D.J.); *see also, e.g., Residential Funding Corp. v. DeGeorge Financial Corp.,* 306 F.3d 99, 106 (2d Cir.2002); *Source Enter., Inc. v. Tanners Ave. Corp.,* 04 Civ. 1788, 2004 WL 2471536 at *4 (S.D.N.Y. Nov. 3, 2004) (" 'Federal Rule of Civil Procedure 37 provides for the imposition of sanctions, including attorneys fees and costs, for certain discovery abuses.' ") (citing *Cielo Creations, Inc. v. Gao Da Trading Co.,* 04 Civ.1952, 2004 WL 1460372 at *2 (S.D.N.Y. June 28, 2004)); *Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.,* 212 F.R.D. 94, 102 (E.D.N.Y.2002) ("Federal Rule of Civil Procedure 37 specifically addresses discovery sanctions where, as here, a party fails to obey a discovery order.").

**\*10** Rule 37 "provides a spectrum of sanctions. The mildest is an order to reimburse the opposing party for expenses caused by the failure to cooperate. More stringent are orders striking out portions of the pleadings, prohibiting the introduction of evidence on particular points and deeming disputed issues determined adversely to the position of the disobedient party. Harshest of all are orders of dismissal and default judgment." *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d 1062, 1066 (2d Cir.1979); *accord, e.g., New York Bay Co. v. State Bank of Patiala,* 93 Civ. 6075, 1995 WL 567357 at *4 (S.D.N.Y. Sept. 25, 1995) (Peck, M.J.). "The sanctions specified under

Rule 37 are not exhaustive, and the Court may impose such sanctions as are just." *New York Bay Co. v. State Bank of Patiala,* 1995 WL 567357 at *4.

Rule 37 sanctions "serve a threefold purpose. Preclusionary orders ensure that a party will not be able to profit from its own failure to comply. Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand. Finally, although the most drastic sanctions may not be imposed as 'mere penalties,' courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault." *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.,* 602 F.2d at 1066 (citations omitted); *accord, e.g., New York Bay Co. v. State Bank of Patiala,* 1995 WL 567357 at *4; *see, e.g.,* 2 Michael C. Silberberg & Edward M. Spiro, *Civil Practice in the Southern District of New York* § 26:2 at 26-8 (2d ed.2004) [hereafter, *"Silberberg"* ], & cases cited therein; *see also, e.g., Cielo Creations, Inc. v. Gao Da Trading Co.,* 2004 WL 1460372 at *2 (" 'Rule 37 sanctions must be applied diligently both to penalize those whose conduct may be deemed to warrant such a sanction, [and] to deter those who might be tempted to such conduct in the absence of such a deterrent.' ") (quoting *Roadway Exp., Inc. v. Piper,* 447 U.S. 752, 763-64, 100 S.Ct. 2455, 2463 (1980)) (internal quotation omitted); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 96 Civ. 9721, 98 Civ. 0123, 2002 WL 54610 at *6 (S.D.N.Y. Jan. 15, 2002) (same); *Quiles v. Beth Israel Med. Ctr.,* 168 F.R.D. at 18 ("Sanctions provided under Rule 37 serve several purposes: to ensure that the parties comply with court orders in the particular case; to serve as a specific deterrent by penalizing those whose conduct warrants sanction; and to provide a general deterrent effect."); *see generally* 7 Moore's Federal Practice § 37.50[1] (3d ed.2005).

"Pursuant to these provisions [of Rule 37], the court may make awards on its own determination, and such awards do not require a finding of wilful or bad faith conduct on the part of counsel." *Brignoli v. Balch, Hardy & Scheinman, Inc.,* 86 Civ. 4103, 1989 WL 146767 at *8 (S.D.N.Y. Dec. 1, 1989).

**\*11** The Court has broad discretion in determining appropriate Rule 37 sanctions. *See, e.g.,* 2 Silberberg § 26:9 (citing cases); *New York Bay Co. v. Bank of Patiala,* 1995 WL 567357 at *5. "In view of the fact that the trial court has firsthand familiarity with all of the pertinent circumstances of the particular case, the decision of whether to impose

sanctions, and the particular type of sanctions to be imposed, are matters generally entrusted to the trial court's broad discretion." 7 *Moore's Federal Practice* § 37.50[1][b] (3d ed.2005); *see, e.g., Ashkinazi v. Sapir,* 02 Civ. 0002, 2005 WL 937597 at *4 (S.D.N.Y. Apr. 20, 2005) ("District courts have broad discretion in imposing discovery sanctions."); *Aetna Life Ins. Co. v. Lecht,* 03 Civ. 6764, 2005 WL 180873 at *1 (S.D.N.Y. Jan. 27, 2005) ("The District Court's imposition of sanctions pursuant to Rule 37 is reviewed for an abuse of discretion."); *Source Enter., Inc. v. Tanners Ave. Corp.,* 2004 WL 2471536 at *4 ("The Second Circuit has held that 'the imposition of sanctions under Rule 37 is within the discretion of the district court.' ") (quoting *John B Hull, Inc., v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988)); *Alvarado v. Manhattan Worker Career Ctr.,* 01 Civ. 9288, 2003 WL 194203 at *1 (S.D.N.Y. Jan. 28, 2003) (" 'Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses.' ") (quoting *Reilly v. Natwest Mkts. Group Inc.,* 181 F.3d 253, 267 (2d Cir.1999)), *cert. denied,* 528 U.S. 1119, 120 S.Ct. 940 (2000); *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.,* 2002 WL 54610 at *7 ("The Court has wide discretion in imposing sanctions. As the Second Circuit has observed, '[w]hen a party seeks to frustrate [the purpose of the discovery provisions of the Federal Rules of Civil Procedure] by disobeying discovery orders, thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate." ') (quoting *Daval Steel Prods. v. M/V Fakredine,* 951 F.2d 1357, 1365 (2d Cir.1991)); *Quiles v. Beth Israel Med. Ctr .,* 168 F.R.D. at 18 ("The imposition of sanctions under Rule 37 lies within the broad discretion of the trial court."). "The Second Circuit has repeatedly stated the importance of following discovery orders of the Court, warning that '[a] party who flouts such orders does so at his peril.' " *Intertec Contracting A/S v. Turner Steiner Int'l, S.A.,* 98 Civ. 9116, 2001 WL 812224 at *11 (S .D.N.Y. July 18, 2001).

Rule 37 "places the burden on the disobedient party to avoid expenses [including attorneys' fees] by showing that his failure is justified or that special circumstances make an award of expenses unjust." 1970 Advisory Committee Notes to Rule 37(b). Thus, "expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court." 1970 Advisory Committee Notes to Rule 37(a)(4); *see also* discussion below.

**B.** *Under Rule 37(a)(4)(A), Jossem is Ordered to Reimburse JSC $8,843 in Attorney's Fees and Expenses for the First Discovery Motion*

**\*12** Rule 37(a) provides that a party "may apply for an order compelling disclosure or discovery" where "a party in response to a request for inspection submitted under Rule 34, fails to ... permit inspection as requested." Fed.R.Civ.P. 37(a)(2)(B). Rule 37(a)(3) further provides that "an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond." Fed.R.Civ.P. 37(a)(3).

"An award of reasonable fees incurred in bringing a motion to compel discovery is the least harsh of all the sanctions allowed under Rule 37." *Aetna Life Ins. Co. v. Licht,* 03 Civ. 6764, 2005 WL 180873 at *1 (S.D.N.Y. Jan. 27, 2005); *see also, e.g.,* 7 *Moore's Federal Practice* § 37.23[6].

Rule 37(a)(4)(A), entitled "Expenses and Sanctions," provides that:

> If the motion [to compel discovery] is granted or if the disclosure or requested discovery is provided after the motion was filed, *the court shall,* after affording an opportunity to be heard, *require the party* or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them *to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless* the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that *the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.*

Fed.R.Civ.P. 37(a)(4)(A) (emphasis added). [5]

5    "Sanctions imposed pursuant to ... Rule 37(a) may be imposed upon either the attorney or the party or both." *Imperial Chem. Indus., PLC v. Barr Labs., Inc.,* 126 F.R.D. at 473; *see generally* 7 *Moore's Federal Practice* § 37.23[4][a] ("Expense shifting sanctions may be imposed on both counsel and client.... [C]lients who are responsible for providing clearly inadequate disclosures or discovery responses may not hide behind their attorneys."). Since JSC has not sought sanctions from Jossem's counsel, and Jossem has not argued that sanctions should be imposed on her counsel rather than her, the Court will not further address the issue of whether Jossem's counsel could or should be sanctioned.

Under Rule 37(a), a finding of bad faith or willful misconduct is not required before the Court can award attorneys' fees. *See, e.g., Devaney v. Continental Am. Ins. Co.,* 989 F.2d 1154, 1162 (11th Cir.1993); *Merritt v. International Bhd. of Boilermakers,* 649 F.2d 1013, 1018-19 (5th Cir.1981); *Green v. Baca,* 225 F.R.D. 612, 614 (C.D.Cal.2005) ("Rule 37(a)(4)(A) does not require a finding of 'bad faith' as a prerequisite to an award of 'reasonable expenses' to the moving party."); *Messier v. Southbury Training Sch.,* No. 94-CV-1706, 1998 WL 841641 at *5 (D.Conn. Dec. 2, 1998); *Imperial Chem. Indus. PLC v. Barr Labs., Inc.,* 126 F.R.D. 467, 473 (S.D.N.Y.1989); *Boulos v. Cato,* 87 Civ. 2985, 1988 WL 70292 at *2 (S.D.N.Y. June 30, 1988) ("Rule 37(a)(4) does not require a finding of 'deliberate and wilful' misconduct before expenses may be imposed. Rather, assessment of expenses is mandatory unless opposition to the motion was substantially justified...."). 6

6    In any event, the Court finds that Jossem's failure to produce the Apartment Documents in response to JSC's first document request and before numerous court orders was willful and in bad faith. The Court finds that Jossem did not originally produce the Apartment Documents so that she could continue to auction property through Christie's and send the money abroad to avoid possible attachment by JSC (or other creditors). The Court also finds that Jossem refused to produce the documents even after JSC's initial motion, and frivolously asserted Fifth Amendment claims, because the documents are extremely helpful to JSC, and harmful to Jossem, on JSC's alter ego claims.

The Advisory Committee Notes make clear that attorneys' fees *should* be awarded to the prevailing party:

> Subdivision (a)(4). This subdivision amends the provisions for award of expenses, including reasonable attorney's fees, to the prevailing party or person when a motion is made for an order compelling discovery. At present, an award of expenses is made only if the losing party or person is found to have acted without substantial justification. The change requires that expenses be awarded unless the conduct of the losing party or person is found to have been substantially justified. The test of "substantial justification" remains, but the change in language is intended to encourage judges to be more alert to abuses occurring in the discovery process.

> **\*13** On may occasions, to be sure, the dispute over discovery between the parties is genuine, though ultimately resolved one way or the other by the court. In such cases, the losing party is substantially justified in carrying the matter to court. But the rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.

> ....

> *The proposed change provides in effect that expenses should ordinarily be awarded unless a court finds that the losing party acted justifiably in carrying his point to court.* At the same time, a necessary flexibility is maintained, since the court retains the power to find that other circumstances make an award of expenses unjust- as where the prevailing party also acted unjustifiably. The amendment does not significantly narrow the discretion of the court, but rather presses the court to address itself to abusive practices.

1970 Advisory Committee Note to Rule 37(a)(4) (emphasis added).

As a result, a "rebuttable presumption exists in favor of imposing expense shifting sanctions on the party against whom a motion to compel disclosures or discovery is resolved.... Expense shifting sanctions are defined as 'the reasonable expenses incurred in making the motion, including attorney's fees.' ' 7 *Moore's Federal Practice* § 37.23[1] (3d ed.2005) (quoting Fed.R.Civ.P. 37(a)(4)(A)). Indeed, "Rule 37 states that the court 'shall' award reasonable fees to the movant if the motion to compel is granted ..." *Aetna*

*Life Ins. Co. v. Licht,* 2005 WL 180873 at *1. Numerous decisions note that Rule 37(a) "provides, in fact, that the losing party on a motion to compel *must* pay reasonable expenses, barring extenuating circumstances." *Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.,* 212 F.R.D. at 103 (emphasis in original, citing cases); *see, e.g., In re Omeprazole Patent Litig.,* No. M-21-81, No. MDL 1291, 2005 WL 818821 at *13 (S.D.N.Y. Feb. 18, 2005) (" 'Under Rule 37(a), Fed.R.Civ.P., when a party moves to compel disclosure or discovery and the court finds that the opposing party's position in opposing the motion was not "substantially justified," the judge *must* impose costs on the opposing party or on his attorney. *See* Rule 37(a), Fed.R.Civ.P. Advisory Committee Notes to 1970 Amendment (cost award is *mandatory* unless court finds that non-moving party acted justifiably)." ') (emphasis added, quoting *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 262 (S.D.N.Y.1995)), *aff'd,* 227 F.R.D. 227 (S.D.N.Y.2005); *Creative Res. Group of New Jersey v. Creative Res. Group, Inc.,* 212 F.R.D. 94, 104 (E.D.N.Y.2002) ("Rule 37(a)(4)(A) expressly provides that parties are entitled to the expenses, including attorneys fees, incurred in making a motion to obtain a court order, unless the court finds that the adversary's position was substantially justified or that other circumstances make an award unjust. The rule provides, in fact, that the losing party on a motion to compel *must* pay reasonable expenses, barring extenuating circumstances."); *Envirosource, Inc. v. Horsehead Res. Dev. Co.,* 981 F.Supp. 876, 880 (S.D.N.Y.1998) ("Defendant ignores another critical fact, which is that the [Rule 37(a)(4)(A) ] essentially *mandate[s]* an award of attorney's fees under the instant circumstances.") (emphasis in original); *Fund Comm'n Serv ., II, Inc. v. Westpac Banking Co.,* 93 Civ. 8298, 1996 WL 469660 at *5 (S.D.N.Y. Aug. 16, 1996) ("Rule 37(a) provides that the losing party on motion must pay reasonable expenses, including attorney's fees, unless the court finds that the position was substantially justified or that other circumstances make an award unjust."); *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. at 262 ("Under Rule 37(a), F.R.Civ.P., when a party moves to compel disclosure or discovery and the court finds that the opposing party's position in opposing the motion was not 'substantially justified,' the judge must impose costs on the opposing party or on his attorney."); *Boulos v. Cato,* 1988 WL 70292 at *2; *see generally* 7 *Moore's Federal Practice* § 37.23[1] at 37-42 ("Moreover, a principal purpose of the presumption in favor of imposing expense shifting sanctions against a party who unsuccessfully litigates a motion to compel is to encourage judges to be more alert to abuses

occurring in the discovery process. Courts did not often use the power they had been granted pursuant to the older formulation of the Rule to impose sanctions when a party's opposition to discovery was not substantially justified. The 1970 amendments, which established the present formulation of the rule, was intended to '[press] the court to address itself to abusive practices' and to 'utilize the most important available sanction to deter abusive resort to the judiciary." ') (fn.omitted). 8A Charles Allan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure: Civil 2d* § 2288 at 664-66 (1994) (award of attorneys' fees "is mandatory unless one of the conditions for not making an award is found to exist ... [T]he burden of persuasion has since 1970 been on the losing party to avoid assessment of expenses and fees....").

**\*14** In sum, in the words of Professors Wright and Miller, "[t]he great operative principle of Rule 37(a)(4) is that the loser pays." 8A Charles Allan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure: Civil 2d* § 2288 at 657-58; *accord, e.g., Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 265 (S.D.N.Y.1995) (quoting Wright & Miller).

Pursuant to Rule 37(a), Jossem is ordered to reimburse JSC $8,843 in attorneys' fees. During the seizure of personal property at Jossem and Reich's apartment, JSC's counsel found thousands of pages of documents that were responsive to their first (and second) Rule 34 document requests, but which Jossem had not produced. (*See* page 6 above.) On May 14, 2004, JSC moved for sanctions against Jossem for withholding the documents, which Judge Koeltl referred to this Court; during a conference before this Court on May 21, 2004, JSC raised Jossem's failure to produce the responsive Apartment Documents. [7] (*See* pages 6-7 above.) The Court granted JSC's application to compel Jossem to produce all non-privileged responsive documents. (*See* page 7 above.) Because JSC's request was granted and the discovery was, after much unjustifiable delay, provided after the application was made to this Court, and because Jossem's conduct necessitated the application, Jossem is required under Rule 37(a)(4)(A) to pay JSC's reasonable attorneys' fees for its first request for judicial intervention, which amounted to $8,843. (*See* JSC FOF ¶ 20 n. 12.) The Court finds that Jossem's failure to produce the responsive Apartment Documents was not substantially justified, and Jossem has not rebutted the presumption in favor of the fee shifting. [8] JSC thus is entitled to its attorneys' fees. [9]

7    Pursuant to S.D.N.Y. Local Civil Rule 37.2, "no motions under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall be heard unless counsel for the moving party has first requested an informal conference with the court and such request has either been denied or the discovery dispute has not been resolved as a consequence of such a conference." JSC's application for judicial assistance with respect to Jossem's non-production of the Apartment Documents functioned as the equivalent of a motion to compel under Fed.R.Civ.P. 37(a). *See, e.g., Penthouse Int'l, Ltd. v. Playboy Enter., Inc.,* 663 F.2d 371, 387-88 (2d Cir.1981) ("[T]he record is clear that Penthouse deliberately disobeyed Judge Griesa's March 22, 1978, order to produce in full all of its financial statements for the relevant periods relating to gross income, net income and circulation revenue.... Equally clear was the relevance of the requested data.... The fact that the March 22 order was oral rather than written, and that it was not entered pursuant to a formal written Rule 37(a) motion, does not deprive it of any of its binding force and effect.... The 1977 Rule 34 demand was made in writing, and was followed by an oral application by Playboy's counsel for an order directing that the requested records be produced. The court acted only after a thorough due process hearing at which the relevance of the requested records was discussed. In addition Judge Griesa had heard extensive testimony on the issues and reviewed the pretrial depositions. His order was recorded by the court reporter."); *Kahn v. General Motors Corp.,* 88 Civ. 2982, 1992 WL 208286 at *2 (S.D.N.Y. Aug. 14, 1992) ("Since Hazeltine did not prevail on any of the claims of privilege raised in that letter or its subsequent motion for reconsideration, it is unfair to pass on to GM any portion of the cost of litigating that issue. This is the rule with respect to formal discovery motions, Rule 37(a)(4), Fed.R.Civ.P., and I perceive no reason, on this record, why a different result should obtain with respect to a dispute resolved by informal submission.").

While the informal procedure of Local Rule 37.2 often resolves discovery issues without much expenditure of lawyer (or court) time such that counsel do not even seek Rule 37(a)(4) fees (or if sought, the Court has the discretion to deny

them under the "other circumstances" prong of Rule 37(a)(4)), in this case there were extensive proceedings before the Court before Jossem produced all but 6 of the 8,400 Apartment Documents that she initially withheld. (*See* page 12 above.) It would be unfair to JSC to deprive it of Rule 37's cost shifting protection because of the absence of a formal motion despite extensive judicial proceedings. Local Rule 37.2 should not have that effect in a case like this. Indeed, despite Jossem's vigorous opposition to this Court's award of attorneys' fees to JSC, Jossem has never argued that fees should be denied because of the absence of a *formal* Rule 37(a) motion.

8    Jossem's October 5, 2004 Objections to my September 21, 2004 award of attorneys' fees to JSC argued that this Court "failed to rule, as Rule 37 requires, that Reich and Jossem's assertion of Fifth Amendment and/or attorney client privilege was not substantially justified." (Dkt. No. 391: Jossem Objections to 9/21/04 Order at 3, 21.) As the Findings of Fact above attest, the fact that a mere *six* of *over eight thousand documents* were in fact privileged clearly show that Jossem's efforts to assert privilege were not only *not* substantially justified, but asserted in remarkably bad faith. But it is more than the number of documents withheld and eventually produced. Jossem and her counsel invoked the Fifth Amendment on a blanket basis as to *all* the documents, despite the Court's warning that that would not be sufficient. (*See* page 7 above.) Indeed, when the Court forced Jossem's counsel to actually review the documents (against the categories of documents Jossem previously produced without invoking her Fifth Amendment privilege), counsel produced more than half of the previously withheld documents. (*See* page 11 above.) And the Court's own review of a portion of the remaining documents found that few appeared to be privileged. (*See* page 10 above.) Finally, while Jossem's objections claimed that this Court did not make the appropriate findings of not substantially justified, Jossem has offered no argument that her position was substantially justified, other than claiming there was a "genuine dispute" involved. (*See* Jossem Objections to 9/21/04 Order at 21.) To the contrary, the conduct of Jossem throughout

the dispute surrounding the Apartment Documents showed bad faith, not substantial justification.

9    *See, e.g., Aetna Life Ins. Co. v. Licht,* 2005 WL 180873 at *2 ("Defendants have provided the Court with no explanation as to their failure to respond to plaintiff's interrogatories and document requests. Therefore, the only proper course is to grant plaintiff's instant motion and find that an award of fees and expenses incurred in bringing this motion is properly granted to plaintiff under Rule 37(a)(4)(A)."); *Pullen v. Arrow Fin. Servs., LLC,* 02 Civ. 647, 2002 WL 32864712 at *6 (D. Conn. Oct. 17 2002) (Court ordered payment of attorney's fees pursuant to Rule 37(a)(4)(A) where "[t]he court finds that the defendant has resisted plaintiff's discovery requests and that its resistance was without substantial justification. Defendant's actions have resulted in the unfair and unnecessary expenditure of the court's resources and those of the plaintiff."); *Pier v. Long Island Sav. Bank,* 97 Civ. 6295, 1998 WL 671442 at * (S.D.N.Y. Sept. 29, 1998) (Denying objections to magistrate judge's award of Rule 37(a) attorneys fees for "failure to comply with the Magistrate Judge's order to produce certain documents."); *Land Ocean Logistics, Inc. v. Aqua Gulf Corp.,* 181 F.R.D. 229, 242 (W.D.N.Y.1998) ( "Defendants' refusal [based upon lack of relevancy, confidentiality, and possession of the documents by the plaintiff] to voluntarily produce the [requested] documents was not substantially justified" and plaintiff thus was entitled to Rule 37(a)(4)(A) expenses.).

C. *Under Rule 37(b) Jossem is Ordered to Reimburse JSC for $100,103, JSC's Remaining Attorneys' Fees Connected With the Apartment Documents Discovery Dispute*

Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that if a party "fails to obey an order to provide or permit discovery," the Court "may make such orders in regard to the failure as are just," including imposing attorneys' fees. Fed.R.Civ.P. 37(b)(2). [10] The sanctions specified under Rule 37 are not exhaustive, and the Court may impose such sanctions as are just. *New York Bay Co. v. State Bank of Patiala,* 93 Civ. 6075, 1995 WL 867357 at *4 (S.D.N.Y. Sept. 25, 1995) (Peck, M.J.) (citing *Miltope Corp. v. Hartford Casualty Ins. Co.,* 94 Civ. 4564, 1995 WL 456377 at *3 (S.D.N.Y. Aug. 2, 1995) (Peck, M.J.); *see also, e.g., A.V.*

*by Versace, Inc. v. Gianni Versace S.p.A.,* 96 Civ. 9721, 98 Civ. 0123, 2002 WL 54610 at *6 (S.D.N.Y. Jan. 15, 2002) ("Plaintiff's motion for sanctions is brought under Rule 37(b)(2) of the Federal Rules of Civil Procedure, which provides the framework for the imposition of sanctions for failure to comply with a court's discovery orders. The Rule provides that the court may make such orders in regard to a discovery failure 'as are just,' including (1) an order striking out pleadings or rendering a judgment by default; (2) an order of contempt; and (3) an order requiring the disobedient party to pay the reasonable expenses, including attorneys' fees, caused by the disobedient party's failure ."); *Intertec Contracting v. Turner Steiner Int'l, S.A.,* 98 Civ. 9116, 2001 WL 812224 at *7 (S.D.N.Y. July 18, 2001) ("Rule 37(b)(2), Fed.R.Civ.P., provides that a district court may impose sanctions, among them the imposition of expenses including attorney's fees, where a party fails to comply with an order of the Court directing such party to 'provide or permit discovery.' ").

10    The order may, but need not be, a Rule 37(a) order, and the order disobeyed "does not have to be a formal, written order." 7 *Moore's Federal Practice* §§ 37.42[2], 37.42[3]; *see also, e.g.,* 8A Wright, Miller & Marcus, *Federal Practiace & Procedure: Civil 2d* § 2289 at 670 & n. 6 (citing cases).

*15    Rule 37(b)(2) specifically provides for the award of attorneys' fees to the prevailing party:

> In lieu of any of the foregoing orders or in addition thereto, the court *shall* require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Fed.R.Civ.P. 37(b)(2) (emphasis added).

The Advisory Committee Notes make clear that the Court *should* award attorneys' fees pursuant to Rule 37(b)(2), as with Rule 37(a), to place the burden on the disobedient party to avoid expenses:

Subdivision (b)(2) is amplified to provide for payment of reasonable expenses caused by the failure to obey the failure.... *The provision places the burden on the disobedient party to avoid expenses by showing that his failure is justified* or that special circumstances make an award of expenses unjust. Allocating the burden in this way conforms to the changed provisions as to expenses in Rule 37(a), and is particularly appropriate when a court order is disobeyed.

1970 Advisory Committee Note to Rule 37(b) (emphasis added); *see, e.g., John B. Hall, Inc. v. Waterbury Petroleum Prods ., Inc.,* 845 F.2d 1172, 1177 (2d Cir.1988) ("Rule 37(b) (2) mandates" the award of attorneys' fees unless disobedient party's action was substantially justified.); *Alvarado v. Manhattan Worker Career Ctr.,* 01 Civ. 9288, 2003 WL 194203 at *1 (S.D.N.Y. Jan. 28, 2003) (Rule 37(b)(2) "places the burden on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.") (internal quotations omitted); *Intertec Contracting v. Turner Steiner Int'l, S.A.,* 98 Civ. 9116, 2001 WL 812224 at *11 (S.D.N.Y. July 18, 2001) ("[F]ailure to comply with discovery orders justly allows the court to impose costs upon the failing party.... The Second Circuit has repeatedly stated the importance of following discovery orders of the Court, warning that '[a] party who flouts such orders does so at his peril." '); 2 *Silberberg* § 26:13 ("Fed.R.Civ.P. 37(b), (d) *requires* the court to impose the sanction [of awarding attorneys' fees] unless the court finds that the failure to obey a discovery order or to make discovery was substantially justified or that other circumstances make an award of expenses unjust."); 7 *Moore's Federal Practice* § 37.51[9] ("If a party disobeys a discovery order, the district court *must* require the disobedient party, or the attorney advising that party, or both, to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified, or that other circumstances make an award of expenses unjust.... The disobedient party bears the burden of proving that its failure was substantially justified, or that it would be unjust for some other reason to impose compensatory monetary sanctions.") (emphasis added); 8A

Wright, Miller & Marcus, *Federal Practice & Procedure: Civil 2d* § 2289 at 672-74 (Attorneys' fee is "one sanction that must always be considered [under Rule 37(b)(2) ] no matter what action is taken under the five lettered paragraphs.... The 1970 amendment [to Rule 37(b)(2) ] made the award [of attorneys' fees] mandatory, regardless of what other sanctions may be imposed unless the delinquent party shows substantial justification for its failure or other circumstances making an award unjust. This provision is in most respects similar to the award of expenses and fees provided for in Rule 37(a) (4) and the discussion of that portion of the rule should be consulted.") (fns. citing cases omitted).

**\*16** Pursuant to Rule 37(b)(2), Jossem is ordered to reimburse JSC the remaining $100,103 associated with judicial involvement in the discovery disputes over the Apartment Documents. As discussed in detail above, in response to JSC's application, the Court ordered the non-privileged Apartment Documents produced, and further ordered that any Fifth Amendment assertion must be "sufficiently asserted" and "not just a blanket, I assert the Fifth now, find me 6 weeks later" assertion. (*See* page 7 above.) Jossem, however, disobeyed this order, submitting a blanket Fifth Amendment assertion through her attorney. (*See* page 7 above.) As a result, JSC was forced to expend thousands of dollars to fight Jossem for the Apartment Documents, which, at the end of the day, comprised 8,400 non-privileged documents (only six documents were privileged, and that was based on the attorney-client, not Fifth Amendment, privilege). (*See* pages 12-13 above.) For the reasons stated above (*see* page 30 n. 8 above), Jossem was not substantially justified in failing to produce the documents in response to the Court's initial (and several follow-up) orders. The attorneys' fees sought by JSC is a just sanction that relates directly to the fees expended by JSC in connection with judicial proceedings necessary to get Jossem to obey the Court's orders to produce all of the non-privileged Apartment Documents. *See, e.g., Daval Steel Prods v. M/V Fakredine,* 951 F.2d 1357, 1366 (2d Cir.1991) ("[W]e find that the district court's imposition of sanctions upon Ekco [under Fed.R.Civ.P. 37(b)(2) ] was wholly justified. Ekco was subject to an unequivocal order of the court requiring it to produce a witness for deposition, and to produce documents relating to that deposition. The court's order was issued at a hearing during which the scope of required discovery was fully discussed, and Ekco's objections to that discovery were explicitly rejected. The order itself was necessitated only by Ekco's inexcusable refusal to comply voluntarily with proper party-initiated discovery. The conduct of Ekco's

counsel at the July 12, 1991 deposition, the repeated failure to produce demanded documents subject to an explicit court order, and Ekco's unilateral refusal to continue the deposition following a largely aborted initial session evince a willful frustration of plaintiffs-appellees' efforts to discover the true facts concerning potential alter ego liability. The district court was accordingly justified in imposing severe sanctions for this failure to comply with court-ordered discovery."); *Knox v. Palestine Liberation Org ., 03 Civ. 4466, 2005 WL 712005 at *1, 6-7 (S.D.N.Y. Mar. 21, 2005)* ("Plaintiffs seek the award of the costs and attorneys' fees they incurred in attempting to secure responses to their discovery requests.... The Court ... concludes that Plaintiffs are entitled to recover the costs and attorneys' fees incurred in attempting to secure compliance with the Court's discovery Orders."); *Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc., 212 F .R.D. 94, 102 (E.D.N.Y.2002)* ("Rule 37 allows for the imposition of sanctions in the form of reasonable fees and costs incurred by reason of a party's discovery failures. This court finds that the plaintiff was forced to expend wholly unnecessary time and effort in its unsuccessful attempts to get the defendants to comply with their discovery obligations. This waste of time and resources was caused by the defendants' bad conduct, which required the plaintiff to make motions to compel and motions for sanctions."); *A.V. by Versace, Inc. v. Gianni Versace S.p.A., 96 Civ. 9721, 98 Civ. 0123, 2002 WL 54610 at *8 (S.D.N.Y. Jan. 15, 2002)* ("There is no question that plaintiff has expended substantial time and effort in attempting to secure responses to its document requests and compliance with this Court's Orders, over a period of over two years. Clearly, it is entitled to the attorneys' fees and costs it has incurred in these efforts" pursuant to Rule 37(b)(2).); *Bowne of New York City, Inc. v. AmBase Corp., 161 F.R.D. 258, 261, 265 (S.D.N.Y.1995)* (Rule 37 attorneys' fees awarded where party "and its counsel refused to produce more than 1,500 documents or answer more than 100 deposition questions on the grounds of attorney-client privilege and work product protection" where defendant's opposition to production ignored clear Second Circuit law.). [11]

---

[11]      Were Jossem to argue that any of its actions after the first Court conference about the Apartment Documents were not in "violation" of a Court order, the sanction of attorneys' fees still would be proper pursuant to Fed.R.Civ.P. 37(a)-JSC was required to make numerous applications to the Court, and the Court was required to issue numerous orders and hold several conferences, in order to get Jossem to produce over eight thousand pages of

documents that should have been produced without the need for any judicial involvement. *See, e.g., Alvarado v. Manhattan Worker Career Ctr., 01 Civ. 9288, 2003 WL 194203 at *1 (S.D.N.Y. Jan. 28, 2003)* (Rule 37(b)(2) sanction of attorneys' fees ordered: "After the October 8, 2002 hearing, this court found that plaintiff failed to establish that his repeated failures to abide by orders of this court were substantially justified.... Accordingly, pursuant to an exercise of its discretion in this area, the court awarded defendants attorneys' fees and costs incurred in addressing the extended discovery dispute."); *Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc., 212 F.R.D. at 102; AFP Imaging Corp. v. Philips Medizin Sys., 92 Civ. 6211, 1994 WL 698322 at *1 (S.D.N.Y. Dec. 13, 1994)* ("Defendant ... was entitled to reimbursement of its attorneys' fees and expenses pursuant to Rule 37(a)(4), Fed.R.Civ.P., as the prevailing party on various discovery motions as to which Plaintiff's opposition was not substantially justified. In addition to its repeated failure to meet its discovery obligations under the Federal Rules of Civil Procedure, Plaintiff violated two Court Orders requiring discovery production."); *Brignoli v. Balch, Hardy & Scheinman, Inc., 86 Civ. 4103, 1989 WL 146767 at *14 (S.D.N.Y. Dec. 1, 1989)* ("Counsel's bad faith is illustrated by a course of conduct which consisted of routinely failing to produce ... documents ...; requiring defense counsel to bring the failure to the attention of the court for the setting of a hearing or conference, at which time counsel for plaintiff would agree or be ordered to produce documents within a fixed period of time, following which counsel for plaintiff would fail to produce the documents within the agreed or established period, requiring defense counsel to again seek the court's intervention. All told, the cycle was repeated across four court-ordered production deadlines, none of which was satisfied. The conduct set forth above is a paradigm of discovery abuse.").

**\*17** Indeed, Jossem's counsel acknowledged at the September 21, 2004 conference that generally the prevailing party is entitled to attorneys' fees under Rule 37:

THE COURT: And under Rule 37 the loser pays if the court wishes to go that route on any discovery motion?

MR. AKBAR

[Jossem's Counsel]: Agreed.

(9/21/04 Peck Conf. Tr. at 37, quoted more fully at pages 13-17 above.) Jossem's only argument for not imposing fees on her was that JSC did not show "prejudice." (9/21/04 Peck Conf. Tr. at 36-40, quoted at page 13 above; *see also, e.g.,* Dkt. No. 391: Jossem Objections to 9/21/04 Order, at 3, 18-21.) Jossem's argument that if she had the documents at the time of the first document demand, JSC would have had to make the same motions to compel production, and thus JSC had no additional expense from their "late" discovery is frivolous. (Jossem Objections to 9/21/04 Order at 3, 20-21.) If Jossem had required JSC to jump through the same hoops earlier, the Court could-and would-have imposed Rule 37(a)-(b) attorneys' fees sanctions at that earlier time.

Second, Jossem argues that JSC has not shown "prejudice." As the Court stated at the September 21, 2004 conference, at a minimum JSC's prejudice is that it spent over $100,000 in attorneys' fees. To the extent prejudice is necessary before imposing attorneys' fees as a sanction-which it is not-the expenditure of money in legal fees constitutes the prejudice. Moreover, while the Court may need to consider the issue of prejudice before imposing more severe sanctions (such as preclusion, dismissal, default judgment, etc.), it is not a factor for the award of attorneys' fees to the prevailing party. *See* 7 *Moore's Federal Practice* § 37.50[1][a] ("Prejudice, however, is not an essential prerequisite for the imposition of sanctions. It is important to the administration of justice for courts to respond to unexcused violations of their orders, even when it is not clear that the violations have adversely affected another party's substantive rights ... [A] court should not permit the moving party to suffer net economic losses as a result of another party's violation of a discovery order.") (fns. citing cases omitted); *Metropolitan Opera Ass'n, Inc. v. Local 100, Hotel Employees & Rest. Employees Int'l Union,* 212 F.R.D. 178, 229 (S.D.N.Y.2003) ("[T]he Union's assertion that the Met must show prejudice before a sanction may be ordered under Rule 37 is without merit."); *Yeboah v. United States,* 99 Civ. 4923, 2000 WL 1576886 at *4-5 (S.D.N.Y. Oct. 20, 2000) (attorneys' fees awarded, rejecting plaintiff's argument that defendant was not prejudiced because the documents ultimately were produced. "[T]his assertion is irrelevant to the imposition of Rule 37 [monetary] sanctions. Counsel simply ignores the fact that the required compliance with the discovery request only came about as the result of months of effort by defendant's counsel...."). None of the cases (and

treatises) cited above awarding attorneys' fees under Rule 37(a) or 37(b) required (or even discussed) any need for prejudice (beyond the expense to the prevailing party) in order to award attorneys' fees. [12]

[12]  In contrast, Jossem cites to an opinion from the District of Kansas which states that "[f]ailure to comply with the mandate of [Rule 37(c)(1) ] is harmless when there is no prejudice to the party entitled to the disclosure." *Nguyen v. IBP, Inc.,* 162 F.R.D. 675, 680 (D.Kan.1995); *see also Kara Holding Corp. v. Getty Petroleum Mktg., Inc.,* 99 Civ. 0275, 2004 WL 1811427 at *24 (S.D.N .Y. May 12, 2004) (quoting *Nguyen* ). (*See* Dkt. No. 390: Akbar 10/5/04 Aff. Ex. Z: Jossem Opp. Br. at 3.) After citing to *Nguyen* and *Kara,* Jossem argues that JSC has not demonstrated that it was prejudiced by Jossem's conduct. (Jossem Opp. Br. at 4.) According to the cases that Jossem cited, whether the non-disclosure was harmless is Jossem's burden to prove. *See, e.g., Nguyen v. IBP, Inc.,* 162 F.R.D. at 680 ("The burden of establishing substantial justification and harmlessness is upon the party who is claimed to have failed to make the required disclosure."). However, in both *Kara* and *Nguyen,* the issue was whether evidence should be precluded because of missing information in the expert's report. Preclusion is a far more severe sanction than attorneys' fees. The Court does not find *Kara* or *Nguyen* applicable to the issue of awarding attorneys' fees under Fed.R.Civ.P. 37(a)-(b); if it were, the Court declines to follow them.

**\*18**  As the Court warned Jossem's counsel at the September 21, 2004 conference (*see* pages 16-17 above), JSC also is entitled to its fees for the sanctions motions. *See, e.g., Creative Res. Group of New Jersey, Inc. v. Creative Res. Group, Inc.,* 212 F.R.D. at 103 ("Here, the plaintiff is entitled to costs incurred both in making motions to compel and in seeking to have the orders that followed from these motions enforced ..."); 7 *Moore's Federal Practice* § 37.23[6] at 37-52 ("Attorneys' fees incurred in preparing a request for expense shifting sanctions are also recoverable. Likewise, the costs of defending on appeal an award of expense shifting sanctions may be added to the original sanction award.") (fns. citing cases omitted); *Bowne of New York City, Inc. v. AmBase Corp.,* 161 F.R.D. 258, 263 (S.D.N.Y.1995) ("Judge Dolinger's finding that AmBase's positions on all three [Rule 37] motions were not substantially justified, and

his ruling that AmBase must pay Bowne and Chemical's expenses in preparing all three motions, specifically applied to all three motions. It is true that because Judge Dolinger found that AmBase had largely waived its privilege claims he did not need to rule on each individual document or deposition question addressed by the testimony and document motions. However, it would be perverse to hold that the fact that AmBase lost on the waiver motion meant that its opposition to the other motions was justified or that Bowne and Chemical must therefore cover the costs of bringing the motions to compel. Therefore, AmBase will only be relieved of its obligation to pay expenses related to a specific motion if it can show that its position on that motion was substantially justified.... Therefore, Judge Dolinger's decision that AmBase's opposition to these two motions was not substantially justified was neither contrary to law nor clearly erroneous, and the ruling awarding Bowne and Chemical the costs of defending the testimony and document motions must stand .").

II. *AS AN ALTERNATE GROUND, JOSSEM IS ORDERED TO REIMBURSE JSC $108,946 UNDER THE COURT'S INHERENT POWER TO IMPOSE SANCTIONS*

The Court finds that the sanction of requiring Jossem to pay JSC's attorneys' fees in connection with the discovery applications that-after several Court orders-led to Jossem's production of all but 6 of the 8,400 Apartment Documents is fully justified under Rule 37(a)-(b) of the Federal Rules of Civil Procedure. Nevertheless, if a reviewing court for some reason fails to find the $108,946 sanction unavailable under Rules 37(a)-(b), the sanction would be appropriate pursuant to the Court's inherent power to impose sanctions for Jossem's discovery abuses.

"Even in the absence of a discovery order, a court may impose sanctions on a party for misconduct in discovery under its inherent power to manage its own affairs.... Where, as here, the nature of the alleged breach of a discovery obligation is the non-production of evidence, a district court has broad discretion in fashioning an appropriate sanction ..." *Residential Funding Corp. v. Degeorge Financial Corp.,* 306 F.3d 99, 106-07 (2d Cir.2002); *see also, e.g., Blauinsel Stiftung v. Sumitomo Corp.,* No. 03-7636, 88 Fed. Appx. 443, 445 (2d Cir. Feb. 12, 2004) ("Although appellants take issue with the district court's authority under Fed.R.Civ.P. 37(b) to have sanctioned them to nearly the full amount of defendants' expenses, we need not reach that issue as we find the district court's 'inherent power to manage its own affairs'-on which the district court also expressly relied-provided the court

with sufficient authority."); *Reilly v. Natwest Mkts. Group Inc.,* 181 F.3d 253, 267 (2d Cir.1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses."), *cert. denied,* 528 U.S. 1119, 120 S.Ct. 940 (2000); *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 135-36 (2d Cir.1998); *Alaimo v. Trans World Airlines, Inc.,* 00 Civ. 3906, 2005 WL 267558 at *3 (S.D.N.Y. Feb. 3, 2005) ("Even in the absence of a discovery order, sanctions may be imposed pursuant to the Court's inherent power to manage its own affairs."); *Marathon Ashland Petroleum LLC v. Equili Co.,* 00 Civ.2935, 2004 WL 992196 at *3 (S.D.N.Y. May 5, 2004) (same); *Cielo Creations, Inc. v. Gao Da Trading Co.,* 04 Civ.1952, 2004 WL 1460372 at *3-4 (S.D.N.Y. June 28, 2004).

**\*19** "Because of the potency of the court's inherent power, courts must take pains to exercise restraint and discretion when wielding it. Accordingly, this court has required a finding of bad faith for the imposition of sanctions under the inherent power doctrine. That bad faith must be shown by (1) 'clear evidence' or (2) 'harassment or delay or ... other improper purposes.' " *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d at 136. [13]

[13]    Although *United States v. Seltzer,* 227 F.3d 36, 40-48 (2d Cir.2000), limited the *DLCMgmt. Corp.* holding that required a showing of bad faith in circumstances not applicable here, this Court must make a finding of bad faith in order to sanction Jossem using the Court's inherent powers. As explained in a recent decision in this District:

The Second Circuit has set out two different circumstances under which a district court may assess attorney's fees against counsel pursuant to its inherent authority. First, '[w]hen a district court invokes its inherent power to impose attorney's fees or to punish behavior by an attorney in the actions that led to the lawsuit or conduct of the litigation, which actions are taken on behalf of a client, the district court must make an explicit finding of bad faith.' *United States v. Seltzer,* 227 F.3d 36, 41-42 (2d Cir.2000) (internal quotation marks and citations omitted). Second, 'when the district court invokes its inherent power to sanction misconduct by an attorney that involves that attorney's violation of a court order or other misconduct that is not

undertaken for the client's benefit, the district court need not find bad faith before imposing a sanction under its inherent power.' *Id.* at 42. *Rowe Entm't, Inc. v. William Morris Agency, Inc.,* 98 Civ. 8272, 2005 WL 1804233 at \*3 (S.D.N.Y. Aug. 1, 2005).

This Court thus finds support for its award to JSC of $108,946 in attorneys' fees pursuant to the Court's inherent powers. As described on pages 11-12 above, Jossem clearly acted in bad faith when she ceased to use her name in her Christie's dealings (which has never been explained to the Court), in her failure to produce the Apartment Documents when they were first requested (apparently to allow her to continue her Christie's dealings), in seeking stays of the time to provide an affidavit supporting her Fifth Amendment privilege claim where she then only asserted a blanket claim that the Court already held would be insufficient and, in any event, where no Fifth Amendment privilege existed for the documents, and in not producing the responsive Apartment Documents without Court intervention once they were discovered by JSC's counsel (solely because the documents appear to be devastating to Jossem concerning JSC's alter ego claims). (*See* pages 3-18 above; *see also* page 25 n. 6 above.) The Court itself had reviewed a large number of the withheld documents, and finds that there was no justification for Jossem's failure to produce them. Indeed, Jossem ultimately decided to withdraw its remaining Fifth Amendment claim after filing objections to one of my orders, belatedly being concerned by defendant JSC's arguments. (*See* page 14 above.) Jossem's bad faith is shown by clear evidence and because her failure to produce was for purpose of delay and other improper purposes. Sanctions of JSC's attorneys' fees clearly are justified under the case law as to the Court's inherent power to impose sanctions. *See, e.g., Blauinsel Stiftung v. Sumitomo Corp.,* 88 Fed. Appx. at 445 ("The district court found that the appellants here engaged in a series of actions, orchestrated by counsel in bad faith, to evade their discovery obligations, and that appellants, with full knowledge that they were under a court order to produce the trustees for deposition, chose instead to voluntarily dismiss their suit for the purpose of evading that order. Further, although appellants' counsel represented otherwise to the district court, the court found that appellants then quickly filed the same lawsuit in state court under different plaintiffs' names. Because none of the foregoing findings are clearly erroneous, the district court 'was within [its] discretion to vindicate itself and compensate [defendants] by requiring [appellants] to pay for all attorney's fees.' "); *DLC Mgm't Corp. v. Town of Hyde Park,* 163 F.3d at 136 (Finding of bad faith by magistrate

judge upheld and deemed "sufficiently concise and based on clear evidence" where magistrate found that "defendants had acted in 'conscious disregard of their discovery obligations.' "); *D'Ascoli v. Roura & Melamed,* 02 Civ. 2684, 2003 WL 22019730 at \*4 (S.D.N.Y. Aug. 6, 2003) (Default judgment recommended by magistrate judge using inherent powers where "Roura & Melamed did not file a response to D'Ascoli's sanctions motion, and Serrins ignored a telephone message from the Court inquiring as to their response. Such behavior shows a complete disregard for the judicial system, bad faith in the conduct of this litigation, willful disobedience of the Court's orders, and a vexatious delay of proceedings. Roura & Melamed and Serrins have failed to offer any justification for their noncompliance."), *modified,* 2003 WL 22439648 at \*1 (S.D.N.Y. Oct. 23, 2003); *Alvarado v. Manhattan Worker Career Ctr.,* 01 Civ. 9288, 2003 WL 194203 at \*1 (S.D.N.Y. Jan. 28, 2003) (Attorney's fees awarded under Rule 37(b) and the court's inherent power where "[a]fter the ... hearing, this court found that plaintiff failed to establish that his repeated failures to abide by orders of this court were substantially justified. Specifically, the court found that plaintiff's failure to comply with provisions of three Orders 'was willful and that plaintiff and/or his attorney acted in bad faith.' "); *Murphy v. Board of Educ. of Rochester City School Dist.,* 196 F.R.D. 220, 228 (W.D.N.Y.2000) ( "[T]his Court finds that Logan-Baldwin's decision to issue the third-party subpoenas discussed herein without notice to opposing counsel was without any colorable basis and was undertaken in bad faith. Having so found, it is the decision of this Court that Logan-Baldwin should pay as a compensatory sanction the attorneys' fees and costs incurred by the School District defendants as a result of her conduct.").

## CONCLUSION

**\*20** For the reasons set forth above, the Court orders Jossem to reimburse JSC for $108,946 in attorneys' fees pursuant to Rules 37(a)-(b) of the Federal Rules of Civil Procedure and, to the extent necessary, the Court's inherent power..

## FILING OF OBJECTIONS TO
## THIS OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Opinion and Order to file written objections. *See also* Fed.R.Civ.P. 6. Such objections

2005 WL 1958361

(and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable John G. Koeltl, 500 Pearl Street, Room 1030, and to my chambers, 500 Pearl Street, Room 1370. Any requests for an extension of time for filing objections must be directed to Judge Koeltl. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466 (1985); *IUE AFL-CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825 (1992); *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57-59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237-38 (2d Cir.1983); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 1958361

---

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (2)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.  Declaration of Paul B. Stephan III**<br>JCS FOREIGN ECONOMIC ASSOCIATION TECHNOSTROYEXPORT, Plaintiff, v. INTERNATIONAL DEVELOPMENT & TRADE SERVICES, INC., et al., Defendants.<br>2003 WL 26113929 | PDF | S.D.N.Y. | Dec. 10, 2003 | Expert Materials |
| **2.  Expert Resume of Paul Brooke Stephan, III**<br>Paul Brooke Stephan, III.<br>2003 WL 26113010 | PDF | S.D.N.Y. | Dec. 10, 2003 | Expert Resume |

**History (11)**

**Direct History (1)**

1. JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.
   2005 WL 1958361 , S.D.N.Y. , Aug. 16, 2005

**Related References (10)**

2. AAOT Foreign Economic Ass'n (VO) Technostroyexport v. International Development and Trade Services, Inc.
   139 F.3d 980 , 2nd Cir.(N.Y.) , Mar. 23, 1998

🚩 3. AAOT Foreign Economic Association (VO) Technostroyexport v. International Development and Trade Services, Inc.
   1998 WL 633668 , S.D.N.Y. , Sep. 15, 1998

   *Report and Recommendation Adopted in Part, Rejected in Part by*

4. AAOT Foreign Economic Ass'n (VO) Technostroyexport v. International Development and Trade Services, Inc.
   1999 WL 970402 , S.D.N.Y. , Oct. 25, 1999

🚩 5. JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.
   295 F.Supp.2d 366 , S.D.N.Y. , Dec. 20, 2003

6. JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.
   306 F.Supp.2d 482 , S.D.N.Y. , Mar. 04, 2004

7. JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.
   220 F.R.D. 235 , S.D.N.Y. , Mar. 25, 2004

8. JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.
   2005 WL 1983905 , S.D.N.Y. , Aug. 18, 2005

9. JSC Foreign Economic Association Technostroyexport v. International Development and Trade Services, Inc.
   386 F.Supp.2d 461 , S.D.N.Y. , Sep. 06, 2005

10.  JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.
2006 WL 1148110 , S.D.N.Y. , Apr. 28, 2006


11.  JSC Foreign Economic Ass'n Technostroyexport v. International Development and Trade Services, Inc.
2006 WL 1206372 , S.D.N.Y. , May 01, 2006

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 334 of 364
Cintron v. Gettman, Not Reported in Fed. Supp. (2017)

2017 WL 2303604

2017 WL 2303604
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David CINTRON, Plaintiff,
v.
Gary GETTMAN, et al., Defendants.

9:15-CV-0542(BKS/TWD)
|
Signed 05/01/2017

**Attorneys and Law Firms**

DAVID CINTRON, 1010 E. 178th Street, Apt 8-C, Bronx, NY 10460-2973, Plaintiff pro se.

HON. ERIC T. SCHNEIDERMAN, OF COUNSEL: RACHEL M. KISH, ESQ., Assistant Attorney General, Attorney General for the State of New York, The Capitol, Albany, New York 12224, Counsel for the Defendants.

**ORDER and REPORT-RECOMMENDATION**

Thérèse Wiley Dancks, United States Magistrate Judge

**\*1** This *pro se* civil rights action, commenced by Plaintiff David Cintron pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3. Plaintiff claims that while he was in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") and confined at Upstate Correctional Facility ("Upstate C.F."), Defendants Gary Gettman ("Gettman"), Joshua J. Whitford ("Whitford"), Smith, Timothy Ramsdell ("Ramsdell"), and Chris DeMers ("DeMers") violated his Eighth Amendments rights and Defendant L. LaBarge ("LaBarge") violated his First Amendment rights. (*See generally* Dkt. No. 14.) Plaintiff seeks compensatory and punitive damages. *Id.* at 12.

Currently pending before the Court is Defendants' motion pursuant to Federal Rule of Civil Procedure 37 to dismiss the action as a sanction for Plaintiff's failure to attend his scheduled depositions. (Dkt. No. 33.) In the alternative, Defendants move pursuant to Federal Rule of Civil Procedure 41 to dismiss the action for failure to prosecute. *Id.* Plaintiff

has not opposed the motion. For the reasons that follow, I recommend that the Court dismiss this action.

**I. FACTUAL BACKGROUND**

In this action, Plaintiff Cintron claims that Defendant LaBarge contaminated his food in retaliation for grievances that plaintiff filed against him. (Dkt. No. 14 at 6-7.) Plaintiff also alleges that Defendants Gettman, Whitford, Smith, Ramsdell, and DeMers assaulted him and refused to provide medical treatment. *Id.* at 7-8.

On March 23, 2016, the Court issued a Mandatory Pretrial Discovery and Scheduling Order. (Dkt. No. 27.) In that order, the Court granted Defendants leave to take Plaintiff's deposition. *Id.* at 4. The order stated that:

> Defense counsel shall provide plaintiff[ ] with notice of the date of the deposition in the form provided in Rule 30(b)(1) and such notice shall be deemed sufficient if the notice is mailed to plaintiff[ ] at least fifteen (15) days prior to the scheduled date for the deposition. The deposition may not commence until at least fifteen (15) days after defense counsel has filed a notice of compliance with [mandatory discovery].

*Id.* at 4–5.

On June 23, 2016, defense counsel filed a notice of compliance with mandatory discovery. (Dkt. No. 28.) On June 24, 2016, Defendants served a notice of deposition on Plaintiff. (Dkt. No. 33-3.) The notice of deposition was served on Plaintiff at 1010 E. 178 th Street, Apt. 8-C, Bronx, New York 10460-2973. [1] *Id.* at 2. Plaintiff's deposition was scheduled for August 16, 2016, at the Attorney General's Office in Albany, New York. *Id.* Plaintiff did not appear for his deposition and did not contact Defendants' counsel to advise that he would not appear. (Dkt. No. 29.) On September 14, 2016, the Court issued an Order directing Defendants to reschedule Plaintiff's deposition on proper notice. (Dkt. No. 30.) The Court instructed Plaintiff to attend the deposition and cautioned that his failure to appear may result in the dismissal of the action for failure to prosecute, and failure to follow

**Cintron v. Gettman, Not Reported in Fed. Supp. (2017)**

2017 WL 2303604

court directives. *Id.* On September 14, 2016, Defendants served a notice of deposition on Plaintiff. (Dkt. No. 33-4.) The notice of deposition was served on Plaintiff at 1010 E. 178 th Street, Apt. 8-C, Bronx, New York 10460-2973. *Id.* Plaintiff's deposition was rescheduled for October 7, 2016, at the Attorney General's office in Albany, New York. *Id.* Plaintiff did not appear for the deposition and did not contact defense counsel. (Dkt. No. 31.)

[1]
>   In a Decision and Order filed on October 29, 2015, the Court listed Plaintiff's address as Southport Correctional Facility but noted:
>
>>   According to the New York State Department of Corrections and Community Supervision website, plaintiff was released to parole supervision on October 9, 2015. *See* http:// nysdoccslookup.doccs.ny.gov/ (information for inmate David Cintron, DIN 08-A-4014) (last visited October 29, 2015). Plaintiff has not provided the Clerk of the Court with an updated address.
>
>   Dkt. No. 13 at 1, n. 1.
>   On November 2, 2015, the Clerk of the Court amended the docket report in this action to update Plaintiff's address to 1010 East 178 th Street, Apt 8-C, Bronx, NY 10460-2973. *See Cintron v. Gettman, et al.*, No. 15-CV-0542, Docket Report, Minute Entry dated November 2, 2015. The amendment was based upon a Notice of Change of Address filed by Plaintiff in another case pending in this district. *See Cintron v. Weissman*, No. 9:14-CV-0116 (TJM/DEP), Docket No. 105 (N.D.N.Y. October 30, 2015).
>   On November 13, 2015, mail addressed to Plaintiff at Southport Correctional Facility was returned to the Court as "undeliverable." *See Cintron v. Gettman*, Docket No. 16. On February 4, 2016, the Court received a letter from Plaintiff with the return address listed as 1010 East 78 th Street, Apt 8-C, Bronx, NY 10460. *Id.*, Docket No. 19.

**\*2**  On October 12, 2016, the Court issued an Order granting Defendants leave to file a motion to dismiss. (Dkt. No. 32.) On October 17, 2016, Defendants filed the motion to dismiss. (Dkt. No. 33.) On October 18, 2016, the Court advised Plaintiff that any response to the motion should be filed on or before November 14, 2016. (Dkt. No. 34.) Plaintiff has not opposed the motion.

## II. APPLICABLE LEGAL STANDARDS

Defendants move under Federal Rule of Civil Procedure 37(b) to dismiss the complaint as a sanction for Plaintiff's failure to appear at his properly noticed deposition. (Dkt. No. 33.) Under Rule 37(b), if:

>   a party ... fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders. They may include the following: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed.R.Civ.P. 37(b)(2)(A). Further, "[i]nstead of or in addition to the orders above, the court must order the disobedient party ... to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed.R.Civ.P. 37(b)(2)(C).

A court may consider several factors when considering a motion to dismiss for failure to comply with discovery. *S. New England Tel. Co. v. Global NAPs,* Inc., 624 F.3d 123, 144 (2d Cir. 2010). Those factors are: (1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the duration of the period of noncompliance; (3) whether the non-compliant party had been warned of the consequences of noncompliance; and (4) the efficacy of lesser sanctions. *Id.* Sanctions may be imposed against a pro se litigant "so long

Cintron v. Gettman, Not Reported in Fed. Supp. (2017)

2017 WL 2303604

as a warning has been given that noncompliance can result" in a sanction. *Valentine v. Museum of Modern Art*, 29 F.3d 47, 50 (2d Cir. 1994).

In the alternative, Defendants move for dismissal pursuant to Rule 41 of the Federal Rules of Civil Procedure. Rule 41 provides, "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed.R.Civ.P. 41(b). The term "these rules" in Rule 41(b) is construed to mean not only the Federal Rules of Civil Procedure but the local rules of practice for a district court. *See Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006). Even in the absence of a motion, federal district courts have the inherent power to dismiss a case sua sponte pursuant to Rule 41(b). *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–32 (1962). The appropriateness of dismissing an action pursuant to Rule 41(b) is determined in light of five factors:

> (1) the duration of the plaintiff's failure to comply with the court order [or the court's procedural rules], (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

**\*3** *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (citations omitted).

## III. ANALYSIS

Defendants move for dismissal arguing that Plaintiff has, on two occasions, failed to appear for a deposition and has refused to comply with Court orders. (Dkt. No. 33 at 6.) Moreover, Defendants argue that plaintiff has consistently delayed the litigation and thus, plaintiff's complaint should be dismissed due to his failure to prosecute. *Id.* at 7.

With respect to Defendants' Rule 37 motion, regarding the first factor, "[n]on-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control. In addition, a party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault." *Handwerker v. AT & T Corp.*, 211 F.R.D. 203, 209 (S.D.N.Y. 2002) (citations omitted). Here, the Court's orders were clear. There is no indication that Plaintiff did not understand the orders. Plaintiff has not advised the Court that his failures to appear for his scheduled depositions were due to factors beyond his control. As discussed in the Factual Background Section, *supra*, there had been confusion regarding Plaintiff's address. Despite the initial confusion, Plaintiff mailed correspondence to the Court in February 2016 from the address listed on the docket report and notice of deposition. Thus, it cannot be said that Plaintiff did not receive the notices of deposition. Accordingly, I find that Plaintiff's failure to appear at his deposition was willful. Therefore, this factor weighs in favor of dismissal.

Regarding the second factor, the duration of Plaintiff's noncompliance is lengthy. *See Handwerker*, 211 F.R.D. at 210 (finding that failure to provide discovery or respond to proposed dates for deposition for "over nine months" weighed in favor of dismissal); *see also Colella v. New York City Transit Auth.*, No. 12 Civ. 6041, 2015 WL 906168, at \* 3 (S.D.N.Y. March 3, 2015) (finding a three to four month period of noncompliance with discovery demands to be sufficiently lengthy). Here, Plaintiff has been noncompliant since August 16, 2016. Over eight months of noncompliance is lengthy. Thus, the second factor weighs in favor of dismissal.

Regarding the third factor, the Court advised Plaintiff of his duty to appear at his deposition. On September 14, 2016, the Court stated that Plaintiff's failure to appear at his deposition may result in sanctions which may include a recommendation to dismiss the case for failure to provide discovery and for failure to prosecute. (Dkt. No. 30.) Therefore, this factor weighs in favor of dismissal.

Regarding the fourth factor, the Court has not previously imposed lesser sanctions. Namely, this Court has not issued an order requiring Plaintiff's appearance at a deposition on a specific date and time, nor has this Court ordered Plaintiff to reimburse Defendants for any costs that may have been incurred for failing to appear at his deposition. In fact,

Cintron v. Gettman, Not Reported in Fed. Supp. (2017)

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 337 of 364

2017 WL 2303604

Defendants do not argue that they incurred the costs of the deposition due to Plaintiff's failure to appear. At the time this action was commenced, Plaintiff was an incarcerated inmate who was granted in forma pauperis status. Accordingly, a financial sanction is not warranted. *See Davidson v. Dean*, 204 F.R.D. 251, 256 (S.D.N.Y. 2001) (holding that uncollectible financial sanctions imposed upon an inmate are meaningless). Moreover, Plaintiff has not taken any action in furtherance of his litigation for over fifteen months. [2] Accordingly, any lesser sanction or Court order with preclusive sanctions would be inconsequential. *See Sease v. Doe*, No. 04 CIV. 5569, 2006 WL 3210032, at *5 (S.D.N.Y. Nov. 6, 2006) (finding preclusive sanctions "useless since plaintiff is plainly no longer interested in the lawsuit").

[2]    The last correspondence received from Plaintiff was a letter with six copies of the complaint and forms for service dated February 4, 2016. (Dkt. No. 19.)

**\*4** Dismissal of this action is also warranted pursuant to Rule 41. In considering the duration of Plaintiff's failure to prosecute his claims, the Court notes that Local Rule 41.2(a) of the Northern District states that "the plaintiff's failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y.L.R. 41.2(a). As discussed supra, plaintiff has not taken any action in this litigation in fifteen months. Despite prodding from the Court, Plaintiff has not followed the Court's directives. Moreover, Plaintiff did not respond to the motion to dismiss.

Because Plaintiff has abandoned his case, the Court's need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case. As discussed *supra*, the Court has considered less drastic sanctions and finds that none is appropriate. Weighing the factors with the special solicitude that must be granted to pro se litigants, dismissal is warranted in this case. Therefore, I recommend that the Court grant Defendants' motion to dismiss without prejudice.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Court **GRANT** Defendants' motion to dismiss (Dkt. No. 33) without prejudice.

**ORDERED** that the Clerk provide Plaintiff with copies of *Colella v. New York City Transit Auth.*, No. 12 Civ. 6041, 2015 WL 906168, at * 3 (S.D.N.Y. March 3, 2015); and *Sease v. Doe*, No. 04 CIV. 5569, 2006 WL 3210032, at *5 (S.D.N.Y. Nov. 6, 2006); and it is further

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [3] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roland v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b) (1) (Supp. 2013); Fed.R.Civ.P. 72, 6(a).

[3]    If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2303604

---

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:15-CV-00542**<br>Cintron v. Gettmann et al | — | N.D.N.Y. | May 01, 2015 | Docket |

**History (2)**

**Direct History (2)**

1.  Cintron v. Gettman
    2017 WL 2303604 , N.D.N.Y. , May 01, 2017

*Report and Recommendation Adopted by*

2.  Cintron v. Gettmann
    2017 WL 2303990 , N.D.N.Y. , May 25, 2017

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

Cintron v. Gettmann, Not Reported in Fed. Supp. (2017)

2017 WL 2303990

2017 WL 2303990
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

David CINTRON, Plaintiff,

v.

Gary GETTMANN, et al., Defendants.

9:15-CV-0542 (BKS/TWD)

|

Signed 05/25/2017

**Attorneys and Law Firms**

David Cintron, Bronx, NY 14060, pro se.

Rachel M. Kish, Esq., Hon. Eric T. Schneiderman, Office of New York State Attorney General, The Capitol, Albany, NY 12224, for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Brenda K. Sannes, U.S. District Judge

**\*1** Plaintiff David Cintron, a former New York State inmate, commenced this civil rights action asserting claims under 42 U.S.C. § 1983 arising out of his incarceration at Upstate Correctional facility. Dkt. Nos. 1 and 14. On October 17, 2016, Defendants filed a motion under Fed. R. Civ. P. 37(b) and 41(b) for sanctions against plaintiff and for dismissal of the complaint for lack of prosecution. Dkt. No. 33. Plaintiff has not responded to Defendants' motion. This matter was assigned to United States Magistrate Judge Thérèse Wiley Dancks who, on May 1, 2017, issued an Order and Report-

Recommendation recommending that Defendants' motion to dismiss be granted, without prejudice. Dkt. No. 35. Magistrate Judge Dancks advised the parties that under 28 U.S.C. § 636(b)(1), they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. Dkt. No. 35, p. 9. No objections to the Report-Recommendation have been filed.

As no objections to the Report-Recommendation have been filed, and the time for filing objections has expired, the Court reviews the Report-Recommendation for clear error. *See Petersen v. Astrue*, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012); Fed. R. Civ. P. 72(b) advisory committee's note to 1983 amendment. Having reviewed the Report-Recommendation for clear error and found none, the Report-Recommendation is adopted in its entirety.

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 35) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 33) is **GRANTED** and Plaintiff's Amended Complaint is **DISMISSED**, without prejudice; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2303990

---

End of Document    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|---|---|---|---|---|
| **1. Docket 9:15-CV-00542**<br>Cintron v. Gettmann et al | — | N.D.N.Y. | May 01, 2015 | Docket |

**History (2)**

**Direct History (2)**

1.  Cintron v. Gettman
2017 WL 2303604 , N.D.N.Y. , May 01, 2017

*Report and Recommendation Adopted by*

2.  Cintron v. Gettmann
2017 WL 2303990 , N.D.N.Y. , May 25, 2017

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 344 of 364

Galberth v. Bielwiez, Not Reported in Fed. Supp. (2019)

2019 WL 5895680

KeyCite Yellow Flag

On Reconsideration  Galberth v. Bielwiez,  N.D.N.Y.,  June 18, 2020

2019 WL 5895680
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Gregory GALBERTH, Plaintiff,

v.

J. BIELWIEZ, et al., Defendants.

9:15-CV-1443 (TJM/TWD)
|
Signed 11/12/2019

**Attorneys and Law Firms**

Gregory Galberth, Brooklyn, NY, pro se.

Keith J. Starlin, New York State Attorney General, Albany,
NY, for Defendants.

### DECISION & ORDER

Thomas J. McAvoy, Sr. U.S. District Judge

 **\*1**  The Court referred this *pro se* civil action, brought
pursuant to 42 U.S.C. § 1983, to Magistrate Judge Thérèse
Wiley Dancks for a Report-Recommendation pursuant to 28
U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff alleges
that the Defendants, New York State prison guards and
employees, violated his Eighth Amendment rights in the
conditions of his confinement and by using excessive force
against him.

Magistrate Judge Dancks's Report-Recommendation, dkt.
# 157, issued on September 20, 2019, recommends that
Defendants' motion to dismiss for failure to prosecute be
granted. Magistrate Judge Dancks finds that Plaintiff has
repeatedly refused to sit for a deposition, defied court orders
to appear, and ignored warnings that the case could be
dismissed for failure to prosecute if he did not make himself
available for discovery. Finding that Plaintiff has wilfully
refused to participate in the matter, ignored court orders,

repeatedly missed scheduled depositions, and failed to keep
the Clerk of Court updated with his current address despite
direction from the Court, Magistrate Judge Dancks concluded
that no option existed but to grant the Defendants' motion to
dismiss.

The docket indicates that on October 21, 2019, the Plaintiff
called the Clerk of Court from Rikers Island in New York
City. The Clerk informed him of Magistrate Judge Dancks'
Report-Recommendation, and Plaintiff claimed he had never
received a copy. Despite direction from the Court, Plaintiff
did not provide a written change of address in the six weeks
since that conversation. While that conduct supports the
Magistrate Judge's conclusion that the motion to dismiss
should be granted, the Court will treat these communications
as evidence that Plaintiff objects to the Magistrate Judge's
recommendation that the Court grant Defendants' motion to
dismiss. When a party objects to a magistrate judge's Report-
Recommendation, the Court makes a "*de novo* determination
of those portions of the report or specified proposed findings
or recommendations to which objection is made." See 28
U.S.C. § 636(b)(1). After such a review, the Court may
"accept, reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge. The judge
may also receive further evidence or recommit the matter to
the magistrate judge with instructions." Id.

Having engaged in a *de novo* review of the Magistrate Judge's
Report-Recommendation, the Court will accept and adopt the
Report-Recommendation for the reasons stated therein.

Accordingly,

The Report-Recommendation of Magistrate Judge Dancks,
dkt. # 157, is hereby **ACCEPTED** and **ADOPTED**.
Defendants' motion to dismiss for failure to prosecute, dkt. #
153, is hereby **GRANTED**. The Clerk of Court is directed to
**CLOSE** the case.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5895680

End of Document                              © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.  Docket 9:15-CV-01443**<br>Galberth v. Bielwiez et al | — | N.D.N.Y. | Dec. 07, 2015 | Docket |

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

## History (8)

**Direct History (5)**

1. Galberth v. Bielwiez
2019 WL 5909861 , N.D.N.Y. , Sep. 20, 2019

*Report and Recommendation Adopted by*

🚩 2. Galberth v. Bielwiez ⚲
2019 WL 5895680 , N.D.N.Y. , Nov. 12, 2019 , reconsideration granted ( Mar 20, 2020 )

*On Reconsideration*

3. Galberth v. Bielwiez
2020 WL 3286527 , N.D.N.Y. , June 18, 2020

4. Galberth v. Bielwiez
2019 WL 5909861 , N.D.N.Y. , Sep. 20, 2019

*Report and Recommendation Adopted by*

5. Galberth v. Bielwiez
2020 WL 3286527 , N.D.N.Y. , June 18, 2020

**Related References (3)**

6. Galberth v. Bielwiez
2018 WL 5729290 , N.D.N.Y. , Nov. 02, 2018

7. Galberth v. Bielwiez
2018 WL 7825456 , N.D.N.Y. , Dec. 20, 2018

*Report and Recommendation Adopted by*

8. Galberth v. Bielwiez
2019 WL 1368861 , N.D.N.Y. , Mar. 26, 2019

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 348 of 364

Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2020)
2020 WL 2062123

2020 WL 2062123
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Darryl L. HAWTHORNE, Plaintiff,

v.

Tyson RUECKER, Albany Police Officer, in his
individual and official capacity; Devin Anderson, Albany
Police Officer, in his individual and official capacity;
Sean Perkins, Albany Police Officer, in his individual and
official capacity; Alex Cheban, Albany Police Officer, in
his individual and official capacity; John Norris, Albany
Police Officer, in his individual and official capacity;
and Sergeant Christ, Albany Police Dept., Defendants.

1:17-CV-0716 (GTS/TWD)
|
Signed 04/29/2020

**Attorneys and Law Firms**

DARRYL L. HAWTHORNE, Plaintiff, Pro Se, 18 Union
Avenue, Staten Island, NY 10303.

OF COUNSEL: ABIGAIL W. REHFUSS, ESQ., STEPHEN
J. REHFUSS, ESQ., THE REHFUSS LAW FIRM, P.C.,
Counsel for Defendants, 40 British American Boulevard,
Latham, NY 12110.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this *pro se* civil rights
action filed by Darryl L. Hawthorne ("Plaintiff") against
Albany Police Department officers Tyson Ruecker, Devin
Anderson, Sean Perkins, Alex Cheban, John Norris, and
Sergeant Christ ("Defendants"), is Defendants' motion for
summary judgment under Fed. R. Civ. P. 56 or, in the
alternative, motion to dismiss with prejudice for failure to
prosecute under Fed. R. Civ. P. 41(b). (Dkt. No. 56.) For the
reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Amended Complaint

Generally, in his Amended Complaint, Plaintiff asserts five
claims: (1) a claim for illegal search and seizure against
Defendants Anderson and Perkins; (2) a claim for use of
excessive force against Defendants Anderson, Perkins, and
Cheban; (3) a claim for false arrest against Defendants
Anderson, Perkins, Cheban, Christ, Ruecker, and Norris;
(4) a claim for malicious prosecution against Defendants
Anderson, Perkins, Cheban, Norris, and Ruecker; and (5) a
claim of deprivation of property without due process against
Defendants Anderson, Perkins, and Christ. [1] (Dkt. No. 8, at
13-23 [Pl.'s Am. Compl.].) All of these claims arise from
an incident occurring on March 16, 2015, in which Plaintiff
alleges that Defendants variously accosted him in a hallway of
the Capitol Green Apartments, abused him with racial slurs,
threats of violence, and actual violence, performed cavity
searches of his anus without his consent, arrested him on false
charges, and manufactured or planted evidence of narcotics
to support those false charges. (*Id.* at 2-13.)

[1]     Plaintiff's claims against the City of Albany were
        dismissed with prejudice by this Court's Decision
        and Order of December 19, 2017. (Dkt. No. 14
        [Decision and Order filed Dec. 19, 2017].)

### B. Undisputed Material Facts on Defendants' Motion
for Summary Judgment

Plaintiff did not provide a response to Defendants' Statement
of Material Facts as required by the Local Rules of this
Court. *See* N.D.N.Y. L.R. 7.1(a)(3) ("The opposing party
shall file a response to the Statement of Material Facts. The
non-movant's response shall mirror the movant's Statement
of Material Facts by admitting and/or denying each of the
movant's assertions in a short and concise statement, in
matching numbered paragraphs. Each denial shall set forth
a specific citation to the record where the factual issue
arises."). Even considering Plaintiff's *pro se* status, his failure
to respond according to the Local Rules entitles the Court
to deem the factually supported assertions in Defendants'
Statement of Material Facts to be admitted because he was
repeatedly informed of the consequences of such a failure
to respond. *See* N.D.N.Y. L.R. 7.1(a)(3) ("The Court shall
deem admitted any properly supported facts set forth in the
Statement of Material Facts that the opposing party does
not specifically controvert."); *Sankara v. Montgomery*, 16-
CV-0885, 2018 WL 4610686, at \*4 (N.D.N.Y. June 25, 2018)
(Dancks, M.J.) (noting that the Court will accept a movant's
statement of facts as true if a *pro se* plaintiff has not properly
responded despite being specifically advised of the possible
consequences of failing to respond to the motion), *adopted by*

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 349 of 364

Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2020)

2020 WL 2062123

2018 WL 3408135 (N.D.N.Y. July 13, 2018) (Scullin, J.). *See also, infra,* note 14 of this Decision and Order.

**\*2**  In particular, on June 30, 2017, Plaintiff acknowledged his receipt of (1) a courtesy copy of Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court, (2) pages 39 and 40 of the District Court's *Pro Se* Handbook (specifically notifying a non-movant of the consequences of failing to respond to a motion for summary judgment's Statement of Material Facts), and (3) a page repeating that notice. (Dkt. No. 3.) Moreover, on December 9, 2019, Plaintiff was mailed the District's form Notification of the Consequences of Failing to Respond to a Summary Judgment Motion, which specifically states that he was required to provide a response to Defendants' Statement of Material Facts and warns of the consequences of failing to do so. (Dkt. No. 57 [attaching Notification of the Consequences of Failing to Respond to a Summary Judgment Motion to Defendants' motion].) Despite receiving these notices, Plaintiff did not provide any response to Defendants' Statement of Material Facts. (*See generally* Docket Sheet.)

However, this does not end the Court's analysis of Defendants' Statement of Material Facts because the Court must assure itself that the facts contained in that Statement are supported by admissible record evidence. *See, infra,* Part II of this Decision and Order. In doing so, the Court may, and does, consider Plaintiff's sworn Amended Complaint. [2] (Dkt. No. 8.) Having done so, the Court has deemed as admitted the following asserted facts, which are each supported by the admissible evidence and not controverted by any admissible record evidence. (Dkt. No. 56, Attach. 1 [Defs.' Rule 7.1 Statement].) [3]

[2]    The Court notes that Plaintiff declared in his Amended Complaint that the allegations contained in that pleading were true and correct under penalty of perjury. (Dkt. No. 8, at 23 [Pl.'s Am. Compl.].) As a result, Plaintiff's Amended Complaint must be treated as verified, and thus must be considered to the same extent as a affidavit for the purposes of determining whether a material fact exists. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir. 1995) (noting that a complaint can be verified by attesting under penalty of perjury that the statements in the complaint are true to the best of the plaintiff's knowledge, and that "[a] verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in

determining whether material issues of fact exist"); *accord, Ross v. Koenigsmann,* 14-CV-1321, 2016 WL 11480164, at \*17 (N.D.N.Y. Sept. 8, 2016) (Stewart, M.J.), *adopted by* 2016 WL 5408163 (N.D.N.Y. Sept. 28, 2016) (Suddaby, C.J.).

[3]    The Court notes that Defendants' asserted facts numbers 30 through 50 relate to the procedural history of this case. (Dkt. No. 56, Attach. 1, at ¶¶ 30-50 [Defs.' Rule 7.1 Statement].) Although these facts are material to Defendants' motion to dismiss for failure to prosecute, these facts are not material to Defendants' motion for summary judgment. This is because the determination of whether to dismiss an action for failure to prosecute is the responsibility of the Court, not a factfinder such as a jury. *See Joseph Muller Corp. Zurich v. Societe Anonyme De Gerance Et D'Armement,* 508 F.2d 814, 815 (2d Cir. 1974) ("Dismissals under Rule 41[b] are, of course, largely a matter of the trial court's discretion."). As a result, the Court has omitted these asserted facts from this Decision and Order's Statement of Undisputed Material Facts.

1. On March 16, 2015, Detective Ruecker and Detective Norris received investigative intelligence from a confidential source that an individual was transporting crack cocaine inside the Capitol Green Apartments located at 400 Central Avenue.

2. The confidential informant advised Detective Ruecker that the individual was a black male with dark skin and black hair, with a height of 5'2" and a weight of 150 pounds, who was wearing a grey sweatsuit, brown leather jacket, and black sneakers, and who was possibly wearing a gray hat.

**\*3**  3. The confidential informant further advised that the subject was in possession of crack cocaine located in the rear of his pants area and would most likely be wearing double layers underneath; Detective Ruecker considered this informant to be a reliable source who had been used by other detectives in the past.

4. This intelligence was forwarded to Officer Perkins and Sergeant Anderson, both of whom were with the Neighborhood Engagement Unit ("NEU"). Upon receiving this information, they responded to 400 Central Avenue on March 16, 2015.

**Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2020)**

2020 WL 2062123

5. After arriving at 400 Central Avenue, Officer Perkins and Sergeant Anderson witnessed Plaintiff (who matched the description given by the confidential informant) wait for a tenant to go through the locked main front door of the Capitol Green Apartments, follow that tenant inside the building, fail to sign in at the front desk, and get on an elevator to the 11th floor.

6. The Capitol Green Apartments building is part of the Albany County Trespass Affidavit Program; as part of the program, and in an effort to exclude intruders, the apartment building has key-card access and has signs posted at each entryway stating "No Trespassing."

7. In order to become part of the Albany County Trespass Affidavit Program, property owners must contact the District Attorney's Office, fill out a provided affidavit with a list of registered tenants who live in the building and file that affidavit with the District Attorney's Office, which will send to the property owners signs that read, "No Trespassing. This building is for tenants and their guests only. Safe Homes–Safe Streets Trespass Affidavit Program. To report any violations call [number]."

8. Upon observing Plaintiff unlawfully enter the building, Sergeant Anderson and Officer Perkins entered the building, took the elevator to the 11th floor, approached Plaintiff and requested his pedigree information; Plaintiff responded that he did not have any identification. [4]

[4]     Defendants assert that Plaintiff provided them with the name Tyseek Simmons upon questioning him for pedigree information in the hallway of the Capitol Green Apartments. (Dkt. No. 56, Attach. 1, at ¶ 8 [Defs.' Rule 7.1 Statement].) However, Plaintiff swears in his verified Complaint that Defendant Christ gave him that name after Plaintiff had been at the police station for more than 30 minutes (which Defendant Christ got from Plaintiff's Facebook page after Defendant Perkins had gone through Plaintiff's phone) in order to charge him with false impersonation. (Dkt. No. 8, at 17 [Pl.'s Compl.].) Additionally, in the evidence cited by Defendants, it is noted that Defendant Perkins stated that Plaintiff provided the name Jayshawn Litrell during the interaction in the hallway of the Capitol Green Apartments. (Dkt. No. 56, Attach. 8, at 5.) For all of these reasons,

the Court has deemed disputed the assertion that Plaintiff provided Defendants with the name Tyseek Simmons in the hallway.

9. While talking to Plaintiff, Sergeant Anderson noticed what appeared to be the outline of a credit card or driver's license in Plaintiff's front left chest pocket; Sergeant Anderson therefore asked Plaintiff to produce the contents of that pocket, and, when Plaintiff complied, marijuana fell out of that pocket. [5]

[5]     Although Plaintiff does not mention this exchange or the marijuana in his Amended Complaint, he never affirmatively asserts that it did not occur. Thus, the Court finds that this fact has not been disputed by the admissible record evidence.

 **\*4** 10. Specifically, one marijuana cigarette fell out of his left chest pocket and two plastic bags containing a quantity of marijuana were located in his left hand.

11. Plaintiff admitted that the marijuana was his when it fell out of his pocket by stating, "that's mine."

12. Plaintiff was placed under arrest and was searched incident to his arrest. He was wearing several layers of pants and Sergeant Anderson asserts that, in the process of separating those layers to check for weapons or illegal substances, he saw a clear plastic bag sticking out of Plaintiff's buttocks area. [6]

[6]     The Court notes that, because Plaintiff (in his verified Amended Complaint) denies that any such bag or drugs were present, the Court has modified the asserted fact to reflect what Defendant Anderson reported in the cited evidence.

13. Sergeant Anderson and Officer Perkins had Plaintiff transported to the Albany Police Department in the vehicle driven by Officer Cheban ("Unit 101").

14. After arriving at the Albany Police Department Central Booking, Plaintiff was brought to the designated strip search area, where Officer Perkins and Sergeant Christ were present.

15. During the strip search conducted at the precinct, the plastic bag that Sergeant Anderson asserts he saw earlier in Plaintiff's buttocks area was gone. The central booking area and Unit 101 were both searched.

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 351 of 364

Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2020)
2020 WL 2062123

16. Officer Perkins found the plastic bag in Unit 101 secreted under the passenger seat where Plaintiff had previously been sitting.

17. The Albany Police Department's Standard Operating Procedures require officers to conduct vehicle inspections before going on patrol, and to notify a supervisor if contraband is found during inspection. Officer Cheban advised that no contraband was found during the inspection of Unit 101 prior to transporting Plaintiff on March 16, 2015.

18. The plastic bag recovered from Unit 101 contained 16 smaller vacuum sealed plastic bags containing a quantity of crack cocaine.

19. The crack cocaine was weighed and field tested by Officer Anderson with positive results; it had an aggregate weight of eight grams (more than one-eighth of an ounce).

20. Plaintiff was charged with violating N.Y. Pen. L. § 220.16 (criminal possession of a narcotic drug with intent to sell), N.Y. Pen. L. § 220.09(1) (criminal possession of a narcotic drug), N.Y. Pen. L. § 221.05 (unlawful possession of marihuana), N.Y. Pen. L. § 140.10 (criminal trespass in the 3 rd degree, enclosed property), and N.Y. Pen. L. § 190.23 (false personation).

21. The allegation of intent to sell was based on the quantity of the drug, the packaging of the drugs, Plaintiff's prior criminal history, the amount of cash and bill denominations found on Plaintiff's person, and the lack of drug paraphernalia present.

22. Plaintiff filed a citizen complaint against Officer Perkins and Sergeant Anderson, the result of which was a formal investigation conducted by the Albany Police Department's Office of Professional Standards ("OPS").

23. During the OPS investigation, Detective Reith and Detective Shane canvassed the entire 11 th floor of the Capitol Green Apartments building and interviewed several of the residents, none of whom heard any noise related to an altercation on March 16, 2015, and many of whom advised that they would have contacted the police had they heard anything.

**\*5** 24. Detectives Reith and Shane also observed that the 11 th floor where the alleged altercation happened appeared to be undisturbed.

25. Additionally, Plaintiff never sought medical attention after allegedly being strip-searched, punched in the stomach, put in a chokehold, and having his leg dragged in the door of a moving vehicle, and Plaintiff, while in booking, never complained to anyone about what had happened or a need for medical care. [7]

[7]    Along with his Amended Complaint, Plaintiff has attached portions of records from emergency room visits that occurred in February 23, 2016, and October 16, 2016. (Dkt. No. 8, Attach. 1.) There is no indication as to how these medical visits relate to the events of March 16, 2015.

26. A Grand Jury indicted Plaintiff on charges of Criminal Possession of a Controlled Substance in the Third Degree in violation of N.Y. Pen. L. § 220.16(1) and of Criminal Possession of a Controlled Substance in the Fourth Degree in violation of N.Y. Pen. L. § 220.09(1). These were the only two crimes charged in the indictment.

### C. Parties' Briefing on Defendants' Motion for Summary Judgment

#### 1. Defendants' Memorandum of Law

Generally, in their motion for summary judgment, Defendants make six arguments. (Dkt. No. 56, Attach. 2, at 6-18 [Defs.' Mem. of Law].) First, Defendants argue that there was reasonable suspicion to stop and detain Plaintiff at the Capitol Green Apartments for investigative purposes because (a) they were acting on a tip from a reliable confidential informant that an individual matching Plaintiff's description was transporting crack cocaine to the building, and (b) they observed him waiting for a tenant to open the locked entrance door to the apartment building, following that tenant inside the building, and failing to sign in at the front desk as was required for non-residents of the building, all of which was in violation of the Trespass Affidavit Program. (Id. at 6-8.)

Second, Defendants argue that there was probable cause to arrest Plaintiff based on (a) their observations of Plaintiff's entrance into the building (discussed above), (b) Plaintiff's use of a false name and his assertion that he did not have any identification, and (c) Defendants Anderson's and Perkins' observation that marijuana fell from Plaintiff's shirt pocket during their discussion with him. (Id. at 8-9.)

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 352 of 364

Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2020)
2020 WL 2062123

Third, Defendants argue that there was probable cause to prosecute Plaintiff based on the presumption created by the grand jury indictment for criminal possession of a controlled substance in the third and fourth degree, given that Plaintiff has not provided any admissible evidence that the indictment was obtained through fraud, perjury, or suppression of evidence. (*Id.* at 9-10.)

Fourth, Defendants argue that Plaintiff was not subjected to excessive force because (a) contrary to his assertions, he was never strip-searched or subjected to any force while engaging with the officers in the hallway of the apartment building, (b) he never sought medical attention for his alleged injuries and never informed any of the officers or anyone else at the station about the force he allegedly was subjected to, and (c) the strip search that was eventually conducted incident to his arrest was supported by probable cause and thus does not constitute excessive force. (*Id.* at 10-13.)

**\*6** Fifth, Defendants argue that Plaintiff's due process claim must be dismissed because New York provides an avenue for him to seek recovery of the property he alleges was taken by Defendants and his federal claim is thus precluded. (*Id.* at 13.)

Sixth, Defendants argue that, in the alternative, Plaintiff's Amended Complaint should be dismissed with prejudice for failure to prosecute under Fed. R. Civ. P. 41(b). (*Id.* at 13-18.) More specifically, Defendants argue that Plaintiff has a history of failing to comply with discovery orders and the Court's directives, has been given multiple warnings that failure to comply with such orders and directives could result in dismissal, and has not yet provided answers to Defendants' initial discovery demands, provided any Rule 26(a)(1) disclosures, or appeared for deposition. (*Id.*) Defendants argue that the failure to cooperate with discovery in particular has prejudiced them by hampering their ability to prepare a defense against Plaintiff's asserted claims. (*Id.*)

### 2. Plaintiff's Failure to Respond

Plaintiff failed to file a response to Defendants' motion by the deadline of December 30, 2019, and has not filed any response or a request to file a response out-of-time as of the date of this Decision and Order. (*See generally* Docket Sheet.)

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). [8] As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law.... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

[8]   As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted]. As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant. *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial. Fed. R. Civ. P. 56(a), (c), (e). [9]

[9]   Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching number paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

**\*7** Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute–even if that non-movant is proceeding *pro se*. [10] (This is because the Court extends special solicitude

2020 WL 2062123

to the *pro se* litigant by ensuring that he or she has received notice of the consequences of failing to properly respond to the motion for summary judgment.) [11] As has often been recognized by both the Supreme Court and Second Circuit, even *pro se* litigant must obey a district court's procedural rules. [12]

[10]    *Cusamano v. Sobek*, 604 F. Supp. 2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

[11]    *Cusamano*, 604 F. Supp. 2d at 426 & n.3 (citing cases).

[12]    *Cusamano*, 604 F. Supp. 2d at 426-27 & n.4 (citing cases).

Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response ... does not ... [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant. *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3). What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement [13] – even where the non-movant was proceeding *pro se*. [14]

[13]    Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises. N.D.N.Y. L. R. 7.1(a)(3).

[14]    *Cusamano*, 604 F. Supp. 2d at 427 & n.6 (citing cases).

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed

to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3). [15]

[15]    *See, e.g., Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31, 1999 WL 325378 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]); *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein...."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## III. ANALYSIS

**\*8** After carefully considering whether Defendants' unopposed motion should be granted, the Court answers this question in the affirmative; the Court finds that, at the very least, the alternative argument asserted in Defendants' motion (arising under Fed. R. Civ. P. 41[b]) possesses facial merit for the reasons stated in Defendants' memorandum of law. (Dkt. No. 56, Attach. 2, at 13-18 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis (which is meant to supplement, and not supplant, the reasons offered by Defendants).

Rule 41(b) of the Federal Rules of Civil Procedure states that, "[i]f a plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 354 of 364

Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2020)

2020 WL 2062123

or a claim against it" and such a dismissal "operates as an adjudication on the merits." Fed. R. Civ. P. 41(b). Dismissal of an action with prejudice under this rule is a "harsh remedy to be utilized only in extreme situations." *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001) (internal quotation marks and citation omitted). This is particularly true where a plaintiff is proceeding *pro se. See, e.g., Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996) (holding that the circuit court will give due deference to the district court's Fed. R. Civ. P. 41[b] dismissal of a *pro se* litigant's complaint "only when the circumstances are sufficiently extreme"). However, notwithstanding a plaintiff's *pro se* status, Fed. R. Civ. P. 41(b) gives the district court explicit authority to dismiss a case where the plaintiff fails to comply with the court's orders or otherwise fails to prosecute the action "diligently." *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982). As explained in *Lyell Theatre*, this authority "is vital to the efficient administration of judicial affairs and provides meaningful access for other prospective litigants to overcrowded courts." *Lyell Theatre Corp.*, 682 F.3d at 42.

The Second Circuit has indicated that, before dismissing a case for failure to prosecute, the court must weigh five factors: (1) the duration of the plaintiff's failure to comply with the court order; (2) whether the plaintiff was on notice that failure to comply would result in dismissal; (3) whether the defendant is likely to be prejudiced by further delay in the proceedings; (4) balancing the court' interest in managing its docket with the plaintiff's interest in receiving a fair chance to be heard; and (5) whether the judge has adequately considered a sanction that is less drastic than dismissal. *Lewis v. Frayne*, 595 F. App'x 35, 36 (2d Cir. 2014).

Plaintiff filed his Amended Complaint on October 6, 2017, as well as supplemental exhibits to that Amended Complaint on November 6, 2017. (Dkt. Nos. 8, 12.) On December 20, 2017, the Court directed Plaintiff to forward six copies of the Amended Complaint and attachments to the Clerk's Office by January 10, 2018. (Dkt. No. 16.) On March 13, 2018, the Court noted that Plaintiff had failed to forward these copies, but extended the deadline for him to do so to April 13, 2018, and warned him that failure to comply "may result in dismissal of the Amended Complaint for failure to follow Court Orders and failure to prosecute. (Dkt. No. 17.) On April 18, 2018, the Court noted that Plaintiff still had not forwarded the copies and directed Plaintiff to do so by May 7, 2018, and also to show good cause why the Court should not recommend that the Amended Complaint be dismissed for failure to prosecute. (Dkt. No. 18.) After

receiving an explanation from Plaintiff on April 30, 2018, the Court granted Plaintiff until May 16, 2018, to forward the copies. (Dkt. Nos. 19, 20.) On May 24, 2018, the Court noted that Plaintiff did not provide anything until May 17, 2018, and that the materials he submitted were incomplete, but that it would not require Plaintiff to submit anything further. (Dkt. No. 21.) Plaintiff completed the Civil Case Management Plan on August 15, 2018. (Dkt. No. 36.)

**\*9** However, despite the fact that Plaintiff had been directed to provide a telephone number where he could be reached for the initial telephone conference, the Court was unable to reach Plaintiff for that conference on August 23, 2018, at which time it indicated it would issue an order that Plaintiff's failure to participate in conferences and follow Court directives might result in sanctions, including dismissal of his case. (Text Order filed Aug. 23, 2018.) On August 30, 2018, the Court scheduled a telephone status conference for January 8, 2019, but, when mail sent to the given address (including notice of the telephone conference) was returned as undeliverable on December 12, 2018, and January 2, 2019, the Court adjourned that conference and directed Plaintiff to file an updated address and phone number by February 1, 2019, warning him that failure to do so might result in dismissal of the action. (Dkt. No. 43.) On January 22, 2019, Plaintiff contacted the Court with an updated phone number, and he formally updated his address on February 1, 2019. (Dkt. No. 44, 45.) On July 2, 2019, a telephone status conference was scheduled for July 16, 2019; however, on that date, Plaintiff failed to join the call and could not be reached at the telephone number he had provided. (Text Minute Entry filed July 16, 2019.) At that time, Defendants notified the Court that Plaintiff had not responded to any discovery demands and that they had been unable to conduct a deposition of Plaintiff. (*Id.*) The Court consequently extended the discovery deadlines and warned Plaintiff that his failure to serve responses to Defendants' discovery demands and follow all Court orders might result in sanctions including dismissal of the action for failure to prosecute and failure to follow Court orders. (Dkt. No. 49.) Plaintiff failed to provide a telephone number and, on August 14, 2019, the Court again warned Plaintiff that failure to comply with Court orders and participate in discovery and other proceedings could result in the dismissal of his action. (Dkt. Nos. 50, 51.) On September 30, 2019, Plaintiff filed a letter in which he provided a telephone number and requested that deadlines be extended so that he could obtain counsel. (Dkt. No. 54.) On that same day, the Court noted that pretrial deadlines (such as discovery) had already expired and would not be extended, but it did grant an extension of the time to

Case 9:22-cv-01156-DNH-MJK    Document 119    Filed 07/14/25    Page 355 of 364

Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2020)

2020 WL 2062123

file dispositive motions. (Dkt. No. 55.) Defendants filed their current motion for summary judgment on December 6, 2019, and, on December 9, 2019, the Court filed a notice to Plaintiff that his response to that motion was due by December 30, 2019, and also informed him of the consequences of failing to respond to the motion, including that failure to respond could result in dismissal of his claims. (Dkt. No. 57.)

As to the duration of the non-compliance, the Court finds that, based on the available evidence, it has been approximately two-and-a-half-years since Plaintiff filed his Amended Complaint and he still has not provided any disclosures or discovery to Defendants. Plaintiff requested an extension of all deadlines (including discovery) on September 30, 2019 (after the time for discovery had already closed), based on his desire to obtain counsel; however, Plaintiff never expressed a desire to obtain counsel at any point prior to that time. The case was delayed for four months due to Plaintiff's failure to submit copies of the Amended Complaint as directed, and it was not until the end of that four-month period that Plaintiff explained the delay had been due to (a) his inability to afford such copies, and (b) injuries from a more-recent assault by police officers that allegedly rendered him unable to walk between January and April 2018. (Dkt. No. 19.) Even with these explanations, Plaintiff's submission, once provided, was late and did not materially comply with the Court's order. Plaintiff then failed to appear for two separate telephone conferences on August 23, 2018, and July 16, 2019, despite the fact the Court had made multiple attempts to obtain a correct address and telephone number for Plaintiff over a prolonged period of time (requests to which Plaintiff either did not respond or responded with incomplete information). Additionally, Plaintiff completely failed to respond to the discovery demands Defendants made as early as September 2018 (in part due to some of Plaintiff's mail being undeliverable to the address that Plaintiff had provided to the Court) and Defendants' deposition of Plaintiff had to be cancelled due to this failure to respond. (Dkt. No. 56, Attach. 2, at 12 [Defs.' Mem. of Law].) Notably, Defendants indicate that, once Plaintiff provided an appropriate address, they re-sent their discovery demands to that address on February 6, 2019. (*Id.* at 16.) However, Plaintiff still had not provided any disclosures or discovery by the July 2019 telephone conference (which, as noted above, he did not appear for), nor by the time the discovery deadline passed on September 18, 2019, approximately seven months after Defendants had re-sent their demands. Plaintiff has not offered any explanation for this failure other than that he is *pro se* and "do[es] not know what is required of [him] at this point." [16] (Dkt. No.

54.) He also failed to respond to Defendants' current motion despite being on notice that the deadline for the submission of such motion would not be extended, and that his claims could be dismissed if he failed to respond to the motion. (Dkt. Nos. 55, 57.) Of note, Plaintiff had approximately two months to obtain counsel before the dispositive motion deadline, and there is no indication that he has done so despite his previously expressed intent. The Court therefore finds that there have been significant delays that were within the control of Plaintiff, and that such fact weighs in favor of dismissal for failure to prosecute.

[16]    The Court notes that, as a *pro se* plaintiff, Plaintiff was provided with the Court's standard *Pro Se* Handbook and other documents that explain the litigation process and Plaintiff's responsibilities. Plaintiff also filed a Case Management Plan in August 2018 in which Plaintiff indicated that the parties agreed that discovery was needed, that the parties understood the timing of discovery, and that discovery such as interrogatories, documents, demands, and depositions would likely be needed. (Dkt. No. 36, at 7-8.) These facts undermine any argument that Plaintiff's *pro se* status rendered him incapable of understanding or complying with the Court's orders and the discovery expectations, because the facts show that he reasonably understood that he had certain obligations specifically related to discovery.

**\*10** As to whether Plaintiff was on notice that the failure to comply would result in dismissal, the Court finds, as already detailed above, that Plaintiff has been provided with multiple warnings that failing to comply with Court orders and procedures might result in dismissal of his claims. Additionally, as noted above, Plaintiff was also provided with the Court's standard *Pro Se* Handbook and other documents that warn of the need to comply with Court procedures. (Dkt. No. 3.) This fact also weighs in favor of dismissal.

As to whether Defendants are likely to be prejudiced by further delays, the Court finds that Defendants have been prejudiced by Plaintiff's actions already, particularly Plaintiff's failure to attend telephone conferences and to comply with any of Defendants' requests for discovery, and will likely continue to be prejudiced. *See Lyell Theatre Corp.*, 682 F.3d at 43 ("Prejudice to defendants from unreasonable delay may be presumed."). At this point, at which this case has been pending for a few months short of three years and discovery has closed, Defendants have been unable to

Hawthorne v. Ruecker, Not Reported in Fed. Supp. (2020)

2020 WL 2062123

get even basic disclosures from Plaintiff, much less more extensive discovery such as depositions. The only materials they have received from Plaintiff are the attachments to the Amended Complaint, which are various documents related to his arrest and prosecution for the underlying criminal charges. Being denied the chance to obtain relevant information from Plaintiff has directly hampered Defendants' ability to present a full defense, and such prejudice will only worsen as time continues to pass and memories of the events in question begin to fade. This fact also weighs in favor of dismissal.

As to whether the Court's interests outweigh Plaintiff's interest in having a chance to be heard, the Court finds that they do. The Court again notes that this case has been pending for approximately two-years-and-nine-months and, in the approximately two-and-a-half-years since Plaintiff filed the Amended Complaint, he has made very little effort to move this litigation forward and has given little indication that he has any genuine intent to do so. At this point, the Court's options are essentially (a) to extend the time for Plaintiff to comply with discovery requirements without any indication that Plaintiff will take advantage of the opportunity, or (b) decide Defendants' motion for summary judgment on the merits based on an incomplete record and very likely proceed to a trial in which Defendants will have to mount a defense against testimony by Plaintiff for which they had no reasonable or fair opportunity to prepare. Neither of these options presents a situation that is in the interests of judicial economy or fairness. Given that Plaintiff's past conduct suggests that he will not take advantage of any further opportunity to pursue his case diligently, the Court finds that its need to manage its docket and attend to the matters it is assigned outweighs Plaintiff's interest in having his claims continue. See *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 123 (2d Cir. 1988) ("[A]ll litigants, including pro [se litigants], have an obligation to comply with court orders. When they flout that obligation, they, like all litigants, must suffer the consequences of their actions."). This factor therefore also weighs in favor of dismissal.

Lastly, the Court has considered less severe sanctions, but has concluded that none would adequately address Plaintiff's conduct. As discussed above, Plaintiff has shown a total disregard for the orders and procedures of this Court up to this point despite the many multiple warnings that continuing to act in that manner could result in the dismissal of his claims. Plaintiff has also not only failed to take the necessary actions to move his case forward, but has actively hampered the efforts of Defendants and this Court to do so. These actions suggest that less severe sanctions would not adequately address Plaintiff's actions.

**\*11** This finding is supported by decisions of other courts in similar cases. See *Hunter v. New York State Dept. of Corr. Servs.*, 515 F. App'x 40, 42-43 (2d Cir. 2013) (finding district court did not abuse its discretion in dismissing complaint for failure to prosecute where, among other reasons, plaintiff caused a 14-month delay and was provided with notice of the consequences of failing to comply with court requirements and deadlines); *Galberth v. Bielwiez*, 15-CV-1443, 2019 WL 5895680, at \*1 (N.D.N.Y. Nov. 12, 2019) (McAvoy, J.) (adopting recommendation of dismissal for failure to prosecute where plaintiff refused to attend a deposition, defied court orders to appear, failed to keep the court updated with his current address and was warned that the case could be dismissed due to his actions); *Lewis v. Livingston Cnty.*, 314 F.R.D. 77, 80 (W.D.N.Y. 2016) (finding that, among other reasons, the plaintiff's failure to provide responses to the defendant's discovery demands that resulted in a ten-month delay in the case constituted sufficient justification to dismiss for failure to prosecute); *Samman v. Conyers*, 231 F.R.D. 163, 165 (S.D.N.Y. 2005) (finding dismissal warranted, in part, where the plaintiff failed to advance the discovery process and failed cooperate with the defendants' efforts to advance the discovery process in the course of the two years since the amended complaint was filed because such actions were within the plaintiff's control and prevented the defendants from effectively preparing their defense); *Schwed v. Gen. Elec. Co.*, 193 F.R.D. 70, 73 (N.D.N.Y. 2000) (Mordue, J.) (finding dismissal appropriate where plaintiffs had not done anything to further their case for four years, had failed to file opposition papers, and failed to cooperate with discovery requests, noting in particular that failure to respond to discovery had prejudiced the defendants by inhibiting their ability to prepare its defense).

For all of the above reasons, the Court dismisses Plaintiff's Amended Complaint with prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' alternative motion to dismiss for failure to prosecute (Dkt. No. 56) is **GRANTED**; and it is further

**ORDERED** that Defendants' motion for summary judgment is **DENIED** as **moot**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 8) is **<u>DISMISSED</u>** with prejudice.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2062123

---

**End of Document**                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Filings (1)**

| Title | PDF | Court | Date | Type |
|-------|-----|-------|------|------|
| **1.  Docket 1:17-CV-00716**<br>Hawthorne v. Ruecker et al | — | N.D.N.Y. | June 30, 2017 | Docket |

 © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**History (5)**

**Direct History (1)**

1. Hawthorne v. Ruecker
   2020 WL 2062123 , N.D.N.Y. , Apr. 29, 2020

**Related References (4)**

2. Hawthorne v. City of Albany
   2017 WL 3822112 , N.D.N.Y. , July 25, 2017

   *Report and Recommendation Adopted by*

3. Hawthorne v. Ruecker
   2017 WL 4351520 , N.D.N.Y. , Oct. 02, 2017

4. Hawthorne v. City of Albany
   2017 WL 6520774 , N.D.N.Y. , Nov. 14, 2017

   *Report and Recommendation Adopted by*

5. Hawthorne v. Ruecker
   2017 WL 6542481 , N.D.N.Y. , Dec. 19, 2017



**User Name:** Chaim Jaffe
**Date and Time:** Friday, July 11, 2025 1:20□PM EDT
**Job Number:** 257535459

## Document (1)

1. _Barnes v. Dominic, 2024 U.S. Dist. LEXIS 34863_
   **Client/Matter:** -None-
   **Search Terms:**
   **Search Type:**


Neutral
As of: July 11, 2025 5:20 PM Z

## *Barnes v. Dominic*

United States District Court for the Northern District of New York

February 29, 2024, Decided; February 29, 2024, Filed

9:22-cv-62 (BKS/CFH)

**Reporter**

2024 U.S. Dist. LEXIS 34863 *; 2024 WL 862165

JESSIE J. BARNES, Plaintiff, v. STACY DOMINIC, et al., Defendants.

**Subsequent History:** Appeal dismissed by, Motion denied by, As moot, Motion denied by *Barnes v. Dominic, 2024 U.S. App. LEXIS 23654 (2d Cir., Aug. 7, 2024)*

**Prior History:** *Barnes v. Dominic, 2024 U.S. Dist. LEXIS 9429 (N.D.N.Y., Jan. 18, 2024)*

**Counsel:** [*1] Jessie J. Barnes, Plaintiff, Pro se, Brocton, NY.

For Defendants: Letitia A. James, Attorney General of the State of New York; Amanda K. Kuryluk, Assistant Attorney General, of Counsel, Albany, NY.

**Judges:** Hon. Brenda K. Sannes, Chief United States District Judge.

**Opinion by:** Brenda K. Sannes

## Opinion

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

Plaintiff Jessie J. Barnes, an inmate, commenced this civil rights action asserting *Eighth Amendment* excessive force and failure to intervene claims under *42 U.S.C. § 1983* arising out of his incarceration at the Upstate Correctional Facility. (Dkt. No. 1). On June 15, 2023, Defendants filed a motion to dismiss under *Fed. R. Civ. P. 37* and *41* based upon Plaintiff's repeated failure to attend his deposition, failure to comply with the Court's discovery order, and failure to prosecute this action. (Dkt. No. 68). After having been given numerous extensions of time to file a response to the motion, (Dkt. Nos. 76, 79, 84, 87), Plaintiff filed an untimely response on January 10, 2024. (Dkt. No. 88).[1] This matter was assigned to United States Magistrate Judge Christian F. Hummel who, on January 18, 2024, issued a Report-Recommendation and Order recommending that Defendants' motion to dismiss [*2] for lack of prosecution be granted and that Plaintiff's complaint be dismissed without prejudice. (Dkt. No. 89). Magistrate Judge Hummel advised the parties that under *28 U.S.C. § 636(b)(1)*, they had fourteen days within which to file written objections to the report, and that the failure to object to the report within fourteen days would preclude appellate review. (Dkt. No. 89, at 2).

Plaintiff filed a timely objection to the Report-Recommendation. (Dkt. No. 91). For the reasons set forth below, the Report-Recommendation is adopted in its entirety.

### I. STANDARD OF REVIEW

---

[1] Plaintiff's response was due by December 18, 2023. (Text Order dated December 6, 2023). Plaintiff disputes that his response was untimely, but the Court does not need to consider that issue because the Court has considered his response.

2024 U.S. Dist. LEXIS 34863, *2

This court reviews *de novo* those portions of the Magistrate Judge's findings and recommendations that have been properly preserved with a specific objection. *Petersen v. Astrue, 2 F. Supp. 3d 223, 228-29 (N.D.N.Y. 2012)*; *28 U.S.C. § 636(b)(1)(C)*. "A proper objection is one that identifies the specific portions of the [report-recommendation] that the objector asserts are erroneous and provides a basis for this assertion." *Kruger v. Virgin Atl. Airways, Ltd., 976 F. Supp. 2d 290, 296 (E.D.N.Y. 2013)* (internal quotation marks omitted). Properly raised objections must be "specific and clearly aimed at particular findings" in the report. *Molefe v. KLM Royal Dutch Airlines, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009)*. "[E]ven a pro se party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal . . . ." *Machicote v. Ercole, No. 06-cv-13320, 2011 WL 3809920 at *2, 2011 U.S. Dist. LEXIS 95351, at *4 (S.D.N.Y. Aug. 25, 2011)* (citation **[*3]** omitted). Findings and recommendations as to which there was no properly preserved objection are reviewed for clear error. *Id.* To the extent a party makes "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments" in the original submission, the Court will only review for clear error. *Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008)*.

## II. DISCUSSION

Magistrate Judge Hummel placed his decision on the record on January 11, 2024, and on January 12, 2024, and incorporated these rulings into the Report-Recommendation. (Dkt. No. 89, at 2; *see* Dkt. No. 89-1 (Transcript of Jan. 12, 2024 proceedings); Dkt. No. 89-2 (Transcript of Jan. 11, 2024 proceedings)).

## A. The January 11, 2024 Ruling

Magistrate Judge Hummel detailed how Plaintiff's deposition was scheduled on two separate occasions, but he refused to participate because corrections officers would not remove his shackles. (Dkt. No. 89-2, at 3-4). "[C]orrections officers would not remove Plaintiff's handcuffs and shackles because of his security status." (*Id.* at 3). Magistrate Judge Hummel cited to the mandatory pretrial discovery and scheduling order, issued on August 1, 2022, which gave Defendants leave to take Plaintiff's deposition, **[*4]** and which specifically provided that "disagreement with any directive of security staff at the correctional facility at which the deposition is scheduled is not a ground on which plaintiff may refuse to answer appropriate questions." (*Id.* at 2 (citing Dkt. No. 36, at 5)). The order further provided that "[t]he failure of the plaintiff to attend, be sworn, and answer appropriate questions may result in sanctions, including dismissal of the action pursuant to *Fed. R. Civ. P. 37*." (Dkt. No. 36, at 5).

Following Plaintiff's second refusal to be deposed while shackled, Magistrate Judge Hummel gave Defendants leave to file a motion to dismiss. Magistrate Judge Hummel noted that he granted Plaintiff four extensions of time to respond to Defendants' July 15, 2023 motion to dismiss, extending the due date for a response to December 18, 2023, and that as of the date of this ruling, on January 11, 2024, Plaintiff had not responded to the motion. (Dkt. No. 89-2, at 5-7).

Magistrate Judge Hummel noted that all of the relevant factors weighed in favor of dismissal under *Rule 41(b)*. The duration of Plaintiff's failure to comply with the Court order weighed in favor of dismissal because "almost two years have elapsed since the **[*5]** filing of the complaint," "over ten month have elapsed since the service of the notice of the deposition and Plaintiff has still not been deposed." (*Id.* at 8). Plaintiff was on notice because, inter alia, "[t]he scheduling order specifically advised Plaintiff that a failure to attend, [be] sworn and answer appropriate questions may result in sanctions including dismissal." (*Id.*). The likelihood of prejudice to the Defendants weighed in favor of dismissal because the action has been

pending for two years and Plaintiff has continued to refuse to be depose until his restraints are removed. (*Id.* at 9). Given the time consuming, multiple conferences necessitated by this issue, Magistrate Hummel concluded that the Court's interest in managing its docket weighed in favor of dismissal. Finally, Magistrate Judge Hummel found that no lesser sanction would be effective considering Plaintiff's in form pauperis status and his continued refusal to be deposed while in restraints.

With respect to Defendants' motion to dismiss under *Fed. R. Civ. P. 37*, Magistrate Judge Hummel noted that "the Court and defense counsel have repeatedly advised plaintiff, [that] the determination as to what shackles will be placed on plaintiff [**6] during his deposition is made by the Department of Corrections and Community Supervision rather than the Court and defense counsel," and found that Plaintiff's refusal to be deposed unless the restraints were removed was "another ground weighing in favor of dismissal of the complaint." (*Id.* at 11)

## B. The January 12, 2024 Ruling

The next day, Magistrate Judge Hummel reviewed the docket and noticed that a response from Plaintiff had been filed on January 10, 2024, after the initial ruling had been placed on the record. (Dkt. No. 89-1, at 2). Plaintiff's response, which was due by December 18, 2023, was untimely. (*Id.*). However, because Plaintiff is pro se, Magistrate Judge Hummel reviewed and considered Plaintiff's 87-page response. (*Id*) In addition to several documents Plaintiff submitted without any "discussion or explanation of how all of those documents relate to the pending motion to dismiss," Plaintiff submitted what appeared to be a grievance that he filed regarding his deposition on May 23, 2023. (*Id.* at 3). Magistrate Judge Hummel concluded that after reviewing "the entirety" of Plaintiff's response it was:

> devoid of any direct response to the motion to dismiss or any indication [**7] that Plaintiff

will voluntarily participate in a deposition unless Plaintiff gets to determine what restraints, if any, will be placed on Plaintiff. As such, it continues to be the recommendation that Plaintiff's complaint be dismissed without prejudice.

(*Id.* at 4).

## C. Discussion of Plaintiff's Objections

In his one-page objection, Plaintiff asserts, inter alia, that it is "not true" that he "never refused to sit for [his] deposition." (Dkt. No. 91). The Court has considered that claim de novo.

The basis for Magistrate Judge Hummel's recommendation is Plaintiff's refusal to be deposed unless restraints were removed. Magistrate Judge Hummel found that on March 24, 2023, Plaintiff refused to participate in a deposition for which he had been produced "because the correction officers would not remove his shackles." (Dkt. No. 89-2, at 3). This finding is amply supported in the record. In her declaration in support of the motion to dismiss, Assistant Attorney General Amanda Kuryluk states that when she arrived at Mid-State Correctional Facility on March 24, 2023 to take Plaintiff's deposition, "Plaintiff initially came out of his cell, but then Plaintiff advised everyone in the room that he [**8] was not going to sit for his deposition unless the correction officers removed his handcuffs." (Dkt. No. 68-1, at 2) AAG Kuryluk further stated that "the officers on duty advised Plaintiff that because of his current PIMS level that it would be against DOCCS' policy to remove his handcuffs." (*Id.*).

With respect to the second deposition scheduled for May 23, 2023, Magistrate Judge Hummel noted that Plaintiff filed a letter stating that he would not participate in the deposition until restraints were removed. (Dkt. No. 89-2 at 4). In his letter dated May 1, 2023, Plaintiff wrote "I will not sit in restraint on 5/23/23 at 10:30 a.m. because policy states I will not be under restraints on a visit." (Dkt.

No. 59). AAG Kuryluk averred that when she arrived at Mid-State Correctional Facility on May 23, 2023, "Plaintiff was again escorted to the room in the facility where the deposition was going to be taken place, but then proceeded to announce that he would not sit for his deposition." (Dkt. No. 68-1, at 3). Plaintiff appears to have filed a grievance regarding officers' failure to remove his restraints on May 23, 2023, (Dkt. No. 88, at 47), which was denied on May 31, 2023, with a note "left **[*9]** in restraints per DOCCS policy," (*id.* at 48). Having reviewed de novo Judge Hummel's findings regarding Plaintiff's refusal to be deposed unless restraints were removed, the Court finds that the findings are overwhelmingly supported in the record.

The Court need not address Plaintiff's assertion that his response to the motion to dismiss was timely because, in deference to Plaintiff's pro se status, Judge Hummel considered that response and continued to recommend that Plaintiff's complaint be dismissed without prejudice.[2]

The Court has reviewed the remainder of the Report-Recommendation for clear error and found none. Accordingly, the Report-Recommendation is adopted in its entirety for the reasons stated therein.

## III. CONCLUSION

For these reasons, it is

**ORDERED** that the Report-Recommendation (Dkt. No. 89) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Defendants' motion to dismiss for lack of prosecution, (Dkt. No. 68), is **GRANTED**, and Plaintiff's complaint, (Dkt. No. 1), is **DISMISSED** without prejudice; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case; and it is further

**ORDERED** that the Clerk serve a copy of this Order upon the parties in accordance **[*10]** with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 29, 2024

Syracuse, New York

/s/ Brenda K. Sannes

Brenda K. Sannes

Chief U.S. District Judge

**End of Document**

---

[2] To the extent Plaintiff's allegation that Magistrate Judge Hummel is biased and prejudiced against him is an objection to the Report-Recommendation, it is rejected. The record reflects that Magistrate Judge Hummel provided great solicitude to the Plaintiff, scheduling numerous conferences in an attempt to resolve the discovery issues and granting Plaintiff numerous extensions of time to respond to Defendants' motion to dismiss. Finally, Plaintiff's assertion that the Assistant Deputy Attorney General handling this case is biased against him is not an objection to Magistrate Judge Hummel's Report-Recommendation and the Court does not consider it here.